Thomas F. Vandenburg (State Bar No. 163446)
tvandenburg@wshblaw.com
Alice Charkhchyan (State Bar No. 332670)
acharkhchyan@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
505 North Brand Boulevard, Suite 1100
Glendale, California 91203
Phone: 818 551-6000 ♦ Fax: 818 551-6050

Attorneys for Defendant/Cross Defendant/ Counter
Claimant/Cross Claimant, CITY OF SAN DIEGO


Stefan J. Bachman (SC Bar No. 102182)
Mark Albert Rigau (CA Bar No. 223610)
Samuel F. Hobbs (AL Bar No. 9776O19E)
U.S. DEPARTMENT OF JUSTICE
P.O. Box 7611
Washington, DC 20044
Phone: 202-616-6536

Attorneys for Plaintiff UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>CITY OF SAN DIEGO; SAN DIEGO UNIFIED PORT DISTRICT; and SAN DIEGO AIRPORT AUTHORITY<br><br>             Defendants.<br><br>――――――――――――――――――<br>AND RELATED CROSS-CLAIMS AND COUNTER CLAIMS | Case No. 3:23-CV-00541-LL-BJC<br><br>Honorable Linda Lopez<br>Magistrate Judge Benjamin J. Cheeks<br><br>**MOTION TO EXTEND DISCOVERY CUT-OFF DEADLINE**<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

/ / /

/ / /

/ / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant CITY OF SAN DIEGO ("Defendant" or the "City") will and hereby moves to Extend Discovery Deadline Dates assigned by this Court on the grounds that the nature and complexity of this case requires additional time to conduct discovery. Plaintiff the United States of America opposes an extension of discovery.

In accordance with Judge Ferraro's Chambers Rule III.C, the parties set forth their respective positions in a joint motion.

This Motion is based upon this Notice, the accompanying Joint Memorandum of Points and Authorities setting forth the parties' respective positions, and the Declaration of Thomas F. Vandenburg ("Vandenburg Decl."), and on such other and further matters as may be presented to the Court at the time of the hearing on this matter.

DATED: August 2. 2024            WOOD. SMITH. HENNING & BERMAN LLP

By: _____
THOMAS F. VANDENBURG
ALICE CHARKHCHYAN
Attorneys for Defendant/Cross Defendant/
Counter Claimant/Cross Claimant, CITY OF
SAN DIEGO

DATED: August 2. 2024            U.S. DEPARTMENT OF JUSTICE

By: ___*/s/Stefan J. Bachman*___
STEFAN J. BACHMAN
MARK ALBERT RIGAU
SAMUEL F. HOBBS
Attorneys for Plaintiff, UNITED STATES OF
AMERICA

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

**CERTIFICATION OF CONCURRENCE FROM ALL SIGNATORIES**

I, Thomas F. Vandenburg, am the ECF user whose ID and password are being used to file the **JOINT MOTION TO EXTEND DISCOVERY DEADLINES**.  I hereby attest that I have obtained the concurrence of each signatory to this document.

_____
Thomas F. Vandenburg

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1

# TABLE OF CONTENTS

2  I.   INTRODUCTION    ……………………………………………………... 1

3  II.  LEGAL STANDARD ............................................................................2

4  III.   ARGUMENT ....................................................................................3

5     A.  GOOD CAUSE EXISTS FOR A TWELVE MONTH EXTENSION  OF

6         DISCOVERY AND RELATED DEADLINES IN THIS CASE......................3

7     B.  EVEN WHEN ESTABLISHING THE CURRENT     AGGRESSIVE

8         DISCOVERY SCHEDULE, MAGISTRATE    JUDGE SKOMAL

9         REPEATEDLY EXPRESSED HIS     OPENNESS TO EXTENDING IT....6

10    C.  THE CITY HAS DILIGENTLY PURSED AND RESPONDED    TO

11        DISCOVERY THROUGHOUT THE SIX-MONTH     DISCOVERY

12        PERIOD; THE NAVY, HOWEVER, HAS NOT. ..........................................6

13    D.  ADDITIONAL DISCOVERY IS CRUCIAL TO THE CITY'S    CLAIMS

14        AND DEFENSES IN THIS CASE...............................................................11

15  V.  CONCLUSION .................................................................................19

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ..............2

4

*Johnson*, 975 F.2d at 609 ...........................................................................................3

5

**Statutes**

6

Fed. R. Civ. P. 16(b)(4) ..............................................................................................2

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

## MEMORANDUM OF POINTS AND AUTHORITIES

## ISSUE PRESENTED

The parties have asserted claims under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*, and breach-of-contract claims against each other.  Under the scheduling order (Dkt. No. 61), the deadline to complete fact discovery in this matter is August 7, 2024.  The City of San Diego moves to amend the scheduling order and extend all discovery and related deadlines by twelve months.  The United States is willing to consent to extend discovery and related deadlines by three months for the contract claims only.  The United States otherwise opposes the City's motion.

## DEFENDANT CITY OF SAN DIEGO'S POSITION

## I.   INTRODUCTION

The City of San Diego ("City") respectfully moves this Court for an order continuing discovery and related deadlines in this case for a period of twelve (12) months.  Good cause for this motion exists based on (1) the complexity of factual and legal issues presented in this case, which involves environmental contamination dating back over 100 years; (2) Plaintiff United States of America's ("Navy") ongoing refusal to provide initial disclosures and other essential discovery relating to the City's breach of contract cause of action; and (3) the need for the City's consultant to conduct a comprehensive site investigation that the City maintains will reveal significant deficiencies in the Navy's limited investigation and remediation of the Naval Training Center Boat Channel site ("NTC").  Additional time is also required to conduct discovery relating to the Navy's recently filed counterclaim for breach of contract premised on the City's refusal to accept transfer of two still-contaminated parcels, precisely because they are still contaminated.  While the Navy unsurprisingly also wants more time for discovery relating to its newly filed parcel transfer claim, it unreasonably opposes all other aspects of this motion.

This case involves disputes over approximately $16 million in alleged response costs incurred by the Navy under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 United States Code ("U.S.C.") section 9601 *et seq.* ("CERCLA").  Shortly after the case was filed, Magistrate Judge Skomal established an initial six-month timeline for all non-expert discovery to be completed.  When the City expressed strong reservations at the time about such an aggressive timetable, Magistrate Judge Skomal assured the parties that he would be open to lengthening that discovery schedule for "good cause" provided that the City prosecuted its case diligently in the ensuing six months, and could explain why additional time for further discovery was necessary.  (Vandenburg Decl., ¶ 2).  The City does so below, in addition to noting two other reasons establishing good cause: namely, the Navy's unreasonable dereliction of fundamental discovery obligations, and its new cause of action to compel the City to accept two contaminated parcels even though the agreement in question required the Navy to take "all remedial action necessary to protect human health and the environment and obtain regulatory site closure prior to transfer, which the Navy has failed to do."

## II.   **LEGAL STANDARD**

A scheduling order may be modified upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). The most important factor in determining whether to modify a scheduling order is whether the party seeking the modification diligently worked to meet the initial deadline. *See* Federal Rules of Civil Procedure Rule 16 Advisory Committee Notes (1983 amendment); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (citing *Johnson* and holding that while the court may take into account prejudice, the primary consideration is diligence). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension."

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

*Johnson*, 975 F.2d at 609 (citations omitted). As explained below, the Parties have diligently engaged in discovery, but despite their best efforts, they simply cannot properly prepare this complex environmental matter for trial within the deadlines set forth in the Scheduling Order.  The City, therefore, respectfully requests that the Court exercise its discretion to extend discovery and related deadlines in this case.

## III.   <u>ARGUMENT</u>

### A.   GOOD CAUSE EXISTS FOR A TWELVE MONTH EXTENSION OF DISCOVERY AND RELATED DEADLINES IN THIS CASE

This lawsuit involves decades of complex factual history requiring extensive discovery that could never have been reasonably completed in six months. The central issue of this lawsuit revolves around the inadequacy of the Navy's investigation and remediation of the Naval Training Center ("NTC") Boat Channel site. That may sound simple, but it gives rise to a host of complex factual issues that require extensive discovery.

First, the two-parcel site in question has over 100 years' worth of contaminants located in its soil, water, and sediments, dating back to the early 1900s. The Navy owned and operated the NTC Boat Channel site during that entire period to the present, and contributed extensively to its former and currently contaminated condition. The administrative history of the Navy's investigation and cleanup measures alone spans approximately twenty (20) years.

The Navy also conducted the limited remediation at issue solely in one small area on only one of the two contaminated parcels, based on now-obsolete regulatory standards, the adequacy of which the City disputes. The Navy also relied on data from the 1990's to perform the remediation, and most contaminants at the site were not even remediated, much less to currently required cleanup levels. (Michael Trapp Report, attached to Vandenburg Decl., as ***Exhibit A*** Moreover, known emerging contaminants, such as PFAs, were not addressed at all.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

As a result, the Navy's investigation and remediation measures were woefully inadequate based on current regulatory standards. Indeed, following over a decade of negotiations with the Navy regarding the extent of the investigation and cleanup, the San Diego Regional Water Quality Control Board (RWQCB) finally allowed the Navy to be "grandfathered" into pre-2009 regulatory standards. Notably, although acknowledging that the Navy may have satisfied those pre-2009 regulatory standards for the limited area the Navy remediated in 2018, the RWQCB never signed off on the entire site as having been adequately remediated. Instead, the RWQCB in 2019 ultimately issued a "no further comment" letter that left open the possibility of ordering anyone who acquired the site to conduct a much more extensive investigation and remediation in accordance with the current, more stringent regulatory standards, stating that it "appreciates the opportunity to assist in addressing environmental issues at [NTC] and looks forward to continuing to assist with these efforts …"  (RWQCB No Further Comment Letter, attached to Vandenburg Decl., as ***Exhibit M*).**

Second, the Navy has failed and refused to provide initial disclosures and other essential discovery relating to the City's breach of contract cause of action for violation of the 2000 "Memorandum of Agreement" (MOA) between the City and the Navy for the transfer of former NTC parcels to the City. Discovery regarding the terms, intent, and understanding of the parties regarding the MOA is fundamental to the City's breach of contract claim. Yet, the Navy has ignored its obligations to furnish discovery on this claim.

Third, as evidenced by its newly filed breach of contract counterclaim, the Navy now wishes to foist the still-contaminated NTC Boat Channel parcels on to the City pursuant to the MOA.  That MOA contemplated transfer of the Boat Channel site to the City, but only after the Navy had performed the required remediation and obtained regulatory site closure of the contaminated parcels, which has still not occurred. The MOA also contemplated that the deeds transferring the

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

Boat Channel parcels to the City would contain a CERCLA covenant which would protect the City if historical contamination is discovered at the Boat Channel post-transfer. To add insult to injury, the Navy now refuses to provide the covenant. Thus, the contractual intent behind the MOA represents a further area of required inquiry in discovery.

Fourth, in addition to CERCLA and the parties' MOA, the Navy's investigative and remedial work to date was conducted pursuant to the heavily regulated Base Realignment and Closure (BRAC) Act process. (10 U.S.C. section 2687), which intersects with the environmental cleanup requirements under CERCLA. Discovery to date has indicated that the Navy's actions with respect to the Boat Channel investigation and cleanup has also violated specific goals and purposes of BRAC. Again, the BRAC issues require separate and additional discovery that remains only partially completed.

The foregoing facts reflect that assessing the adequacy of the Navy's site investigation and cleanup is integral to every claim and counterclaim at issue in this case. They also reflect the lengthy and complex history of this . . That history includes underlying contamination, pervasively. And it also involves the parties' negotiations in the 1990s concerning their MOA and potential transfer of the parcels, BRAC compliance requirements, and the RWQCB administrative proceedings that oversaw the Navy's limited measures before finally ending in a noncommittal "no further comment" letter that leaves the City exposed to future CERCLA liability, administrative orders, and lawsuits.

Especially under such circumstances, the City's need to conduct additional discovery to include that sought in Section III.D, below, is critical to defending against the Navy's claims and to prosecuting the City's own causes of action against the Navy.

///

///

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

**B.    EVEN WHEN ESTABLISHING THE CURRENT AGGRESSIVE DISCOVERY SCHEDULE, MAGISTRATE JUDGE SKOMAL REPEATEDLY EXPRESSED HIS OPENNESS TO EXTENDING IT**

On November 20, 2023, Magistrate Judge Skomal conducted an Early Neutral Evaluation videoconference ("ENE") that appeared to make progress toward a global settlement. No discovery had yet occurred in the case but, in light of that perceived progress toward settlement, the parties and Magistrate Judge Skomal agreed to stay further discovery until another ENE videoconference was conducted on January 24, 2024. However, shortly before that second ENE, the Navy's settlement position changed, leaving Magistrate Judge Skomal on February 12 to establish the case management deadlines that the City now moves to amend.

The City urged the Court to allow at least one year for initial disclosures and non-expert discovery to occur. Magistrate Judge Skomal instead set an extremely aggressive timetable of only six months for discovery, providing for a current non-expert discovery cutoff of August 7, 2024. The City suggested that such an aggressive schedule was unrealistic given the nature, length, and complexity of the parties' longstanding CERCLA, BRAC, and contractual disputes.  In response, Magistrate Judge Skomal repeatedly assured the parties that he would be open to extending that six-month window, if, at the end of it, the City could show "good cause" by proceeding diligently and identifying a reasonable basis for whatever additional discovery might be sought.

**C.    THE CITY HAS DILIGENTLY PURSED AND RESPONDED TO DISCOVERY THROUGHOUT THE SIX-MONTH DISCOVERY PERIOD; THE NAVY, HOWEVER, HAS NOT.**

Since the Court's order setting the discovery schedule on February 12, 2024, the City has: (i) produced over 52,000 documents following an extensive search by 20 different City employees across nine City departments; (ii) responded to the Navy's requests to identify 30(b)(6) witnesses to testify regarding thirty-six (36)

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1   different topics, including multiple requests for testimony spanning over an 80 year

2   period; (iii) engaged in numerous meet and confer conferences with the Navy's

3   attorneys regarding various discovery issues; (iv) served its initial disclosures,

4   discovery requests, and 30(b)(6) categories on the Navy; and (v) commenced taking

5   and defending depositions.

6       Discovery began immediately following the Court's February 12 order. (Dkt.

7   No. 61.) Upon receipt of the Navy's first set of extensive discovery requests on

8   February 20, the City began searching for responsive documents going back almost

9   100 years, and located those documents across seven different City departments.

10  ((Vandenburg Decl., ¶ 3).  Many of the Navy's discovery requests, which ranged

11  from historic airport operations to construction of City sewage systems dating back

12  to 1929, were so vague and overly broad that it required at least four (4) meet and

13  confer sessions to narrow the scope of the requests.  (Vandenburg Decl., ¶ 4). Indeed,

14  on February 21, the City proposed a meet and confer session to address questions

15  and concerns about the expansive discovery.  ((Vandenburg Decl., ¶ 5).  The City

16  also proposed setting a deposition schedule. (Vandenburg Decl., ¶ 6).  The City and

17  Navy engaged in a meet and confer conference on February 23, which the City

18  followed up with an email on February 28 further documenting the City's concerns.

19  (Vandenburg Decl., ¶ 7; *Exhibit B*).  The parties met again on February 29, and on

20  March 7, the Navy sent an email further clarifying definitions in the Navy's

21  discovery requests. (Vandenburg Decl., ¶ 8; *Exhibit C*).  On March 8, the parties

22  held another meet and confer conference, and on March 12, the City again sent

23  follow up correspondence to the Navy regarding remaining concerns with the scope

24  of the discovery requests and offered additional dates to meet and confer still further.

25  (Vandenburg Decl., ¶ 9; *Exhibit D*).  On March 13, the City provided the Navy with

26  documents responsive to four of the Navy's discovery requests, and on March 15,

27  the parties met again, after which the Navy sent  a nine-page letter revising

28  definitions and the scope of the requests.  (Vandenburg Decl., ¶ 10; *Exhibit E*).

The City continued to pursue and respond to discovery diligently. On March 15, the City provided the Navy with dates the City was available to depose Navy witnesses, and on March 20, the City and Navy exchanged emails regarding witness availability. (Vandenburg Decl., ¶ 11). In late March, the Navy produced the administrative record and its first set of cost documents, and on April 1, the City produced documents identified in the City's initial disclosures. (Vandenburg Decl., ¶ 12). As additional questions arose during the City department's search for documents, the City emailed the Navy again on April 8 concerning remaining issues regarding the initial discovery requests. (Vandenburg Decl., ¶ 13). On April 9, the City informed the Navy that it had located approximately 40 additional boxes of historic documents that were responsive to the Navy's requests. (Vandenburg Decl., ¶ 14).

On April 15, the City proposed new deposition dates for Navy witnesses and requested to know why the Navy's initial disclosures failed to contain any documents relating to the City's counterclaims. (Vandenburg Decl., ¶ 15; ***Exhibit F***). The Navy responded on April 17 that it was refusing to provide initial disclosures on the City's counterclaims until after the Court ruled on the Navy's pending motion to dismiss. (Vandenburg Decl., ¶ 16; ***Exhibit G***). One week later, the Navy doubled down on that absurd position by asserting that it would only provide initial disclosures concerning the City's counterclaims if the City stipulated to allow the Navy belatedly to amend its complaint in order to add the breach of contract claim that has recently become part of this case. (Vandenburg Decl., ¶ 17; ***Exhibit H***).

On April 30, the City responded to the Navy's first set of interrogatories, document requests, and requests for admissions. (Vandenburg Decl., ¶ 18). On May 7, the Navy and City had another meet and confer conference regarding the City's document production. (Vandenburg Decl., ¶ 19). The Navy and City exchanged emails on May 8 and 9 regarding how to handle the voluminous number of boxes of

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1   historical paper documents the City had located, in addition to the tens of thousands

2   of digitized documents the City was producing.  (Vandenburg Decl., ¶ 20; *Exhibit

3   I*). In all, the City has located approximately 40 boxes at the City Clerk's office, 156

4   boxes offsite related to stormwater enforcement, and 8 additional boxes from various

5   departments. The parties had another meet and confer conference concerning those

6   materials on May 10.  (Vandenburg Decl., ¶ 21).

7        On May 16, 2024, the City emailed  the Navy seeking access to the Boat

8   Channel so the City could conduct a further investigation of the Boat Channel and

9   attached a detailed scope of work. On May 24, 2024, the Navy ultimately denied the

10  request on the grounds that providing access was "highly burdensome" (even though

11  the Navy allows the public to use the Boat Channel) and  "irrelevant." (Vandenburg

12  Decl., ¶ 22).  On May 21, the Navy provided a supplemental production of cost

13  documents, and on May 24, the City produced additional documents to the Navy.

14  (Vandenburg Decl., ¶ 23).  On May 31, the Navy propounded a second set of

15  discovery requests on the City, which again included overly broad requests,

16  including sweeping requests for sampling and analysis of the City's sewer system

17  and drinking water systems which, at most, have only tangential relevance to isolated

18  issues in this case. (Vandenburg Decl., ¶ 24).

19       On May 31, the City and Navy then exchanged multiple emails regarding

20  deposition notices and subpoenas, and deposition stipulations. (Vandenburg Decl.,

21  ¶ 25; *Exhibit J*). Finally, on June 5, 2024, the City took its first deposition followed

22  by another on June 11, 2024.  (Vandenburg Decl., ¶ 26).  Also on June 11, 2024, the

23  City served its first set of requests for production and interrogatories on the Navy.

24  (Vandenburg Decl., ¶ 27).  The City also sent a follow-up email regarding the status

25  of the City's continued document production. (Vandenburg Decl., ¶ 28; *Exhibit K*).

26  The parties exchanged emails on June 13 regarding the scheduling of additional

27  depositions, and on June 15 the City produced approximately 20,000 additional

28  documents. (Vandenburg Decl., ¶ 29).

1    Due to the Navy's request for Rule 30(b)(6) deponents who could testify

2   regarding thirty-three (33) broad topics spanning almost 80 years, the City and Navy

3   had another meet and confer session on June 21. (Vandenburg Decl., ¶ 30). [1] That

4   same day, the City also served its first set of requests for admissions on the Navy.

5   (Vandenburg Decl., ¶ 31).   Then, on June 28, 2024, the City served supplemental

6   responses to the Navy's first set of interrogatories.  Moreover, the City identified

7   deponents for eight (8) of the Navy's thirty-three (33) specified 30(b)(6) categories.

8   (Vandenburg Decl., ¶ 32).  Still not done, on July 3, 2024, the Navy added three

9   *more* 30(b)(6) designee categories (including one containing three subparts), and

10  exchanged correspondence regarding the 30(b)(6) requests.  (Vandenburg Decl., ¶

11  33).

12    On July 12, 2024, the Navy produced its first set of documents to the City,

13  and the parties again exchanged emails regarding (1) the second set of production

14  and (2) how to copy the voluminous historical records located in boxes.

15  (Vandenburg Decl., ¶ 34; *Exhibit L*). The Navy also filed its new breach of contract

16  claim against the City on July 12, more than a year after the Navy's initial complaint

17  had been filed and less than one month from the current  cutoff date.  (Vandenburg

18  Decl., ¶ 35).  On July 15 and 16, the Navy deposed City witnesses Ruth Kolb and

19  Peter Vroom, respectively.  The deposition of Navy witness Janet Lear was taken on

20  scheduled July 18, with additional depositions of two additional Navy witnesses

21  scheduled for July 24 and 25. (Vandenburg Decl., ¶ 36).  To date, the City alone has

22  produced over fifty-two thousand (52,000+) documents to the Navy.

23    In sum, it is difficult to imagine how the City to date could have possibly

24  prosecuted and complied with its discovery responsibilities more diligently and

25  efficiently.  Furthermore, the City has done so in the face of several unforeseen

26

27  _____

[1] Indeed, the Navy requested the City to identify Rule 30(b)(6) witnesses with knowledge regarding issues such as the measurement of sewage flows and sampling in the sewer system over an 80 year period, and sewage
28  system operational activities that occurred over a 90 year period, topics largely irrelevant for determining liability, for the specific constituents that the Navy had remediated within NTC Boat Channel sediments.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ◆ FAX 818 551-6050

delays and other Navy roadblocks along the way.  Indeed, a cynic might suspect the Navy of attempting to run out the proverbial clock on discovery to deprive the City of a full and fair opportunity to prepare its case for trial.  That would be unjust and inequitable given the large remaining amount of important discovery still needed, as explained in more detail below.

### D.    ADDITIONAL DISCOVERY IS CRUCIAL TO THE CITY'S CLAIMS AND DEFENSES IN THIS CASE

This is a complex CERCLA case, with contamination dating back over 100 years, that is inextricably intertwined with the City's claim that the Navy has breached the MOA between the parties for the transfer of the Boat Channel parcels by failing to investigate and remediate them as required by the MOA, all under the umbrella of complex BRAC transfer issues related to the contamination at issue. Document productions by both parties involve tens of thousands of documents, with review still ongoing and likely follow-up discovery needed based on that review and analysis. Simply locating historical documents from the past 100 years has proven challenging as individuals with knowledge regarding documents from decades ago are often no longer employed with the City.  Moreover, voluminous documents potentially responsive to the Navy's broad requests are often located offsite in numerous locations, and extend over six different City departments. Given that the BRAC process for the closure and transfer of NTC began in the 1990s and culminated in the 2000 MOA, together with the fact that it took 20 years for the Navy to conduct its limited cleanup, virtually all City employees who were involved in the matter are gone. Many of the current personnel in those departments have little or no familiarity with the history of this case or even the NTC site.  All of these impediments are compounded even further by the Navy's recent addition of a new breach of contract claim against the City filed less than a month before the current discovery deadline.

In discussions leading to this motion, the Navy has represented that it favors extending the discovery deadline as to its own claim for the City's alleged breach of the MOA in failing to accept the contaminated parcels. However, the Navy purportedly opposes additional time for discovery relating to site conditions or the adequacy of its investigation and remediation. That sleight of hand, however, is a distinction without a difference because the inadequacy of the Navy cleanup also lies at the very heart of the parties' breach of contract dispute. The City's primary defense to all of the Navy's causes of action – both as to CERCLA and the MOA – is that the Navy has left the NTC Boat Channel parcels in a contaminated condition and has thereby failed to satisfy its obligations under both CERCLA and the MOA. So even if this Court were theoretically to extend the discovery cutoff solely for "breach of contract" discovery, that would have no impact on the City's right to conduct further discovery relating to past and existing site conditions; fate and transport of contaminants; the remedies selected; and the likelihood of future site-related administrative orders and CERCLA lawsuits in the future.

At this time, at a minimum, the City anticipates requiring the following essential non-expert discovery. At most, only a few of these tasks can realistically be completed before the current discovery cutoff of August 7.

1. Deposition of the Regional Water Quality Control Board Person Most Knowledgeable (PMK) regarding the investigation and remediation of the Boat Channel

The RWQCB was the State agency in charge of overseeing the investigation and remediation of the Boat Channel parcels. The Navy negotiated with the RWQCB for over 15 years regarding the scope of the investigation and cleanup, and ultimately was allowed to conduct a cleanup that did not meet current regulatory standards, only remediated a limited number of CERCLA contaminants known to be at the site, didn't account for all likely sources of contamination; only remediated one of the two parcels and failed to remediate the riprap strewn banks of either

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

parcel where storm drain outfalls discharge to the Boat Channel provides no protection against recontamination of remediated areas; and was based on outdated data collected *twenty years* before the remediation began. The RWQCB claimed the Navy was grandfathered into the pre-2009 regulatory standards for its 2018 cleanup, but the authority for this decision has never been clear. The RWQCB also provided a vague "no further comment" letter rather than the usual "no further action" letter provided for site closure (only to later issue, and then rescind, a "no further action" letter). The RWQCB also failed to state that the remediation protected human health, a requirement for transfer under the MOA. Moreover, it has made multiple statements clearly suggesting that further investigation of the Boat Channel is likely post-transfer and has failed to respond to requests from the City to clarify its position on the environmental condition of the Boat Channel.  This testimony is crucial to the City's defense that the Navy failed to conduct a CERCLA quality cleanup.  The City expects to conduct this deposition within the next three months.

2. <u>Deposition of Kristin K. Schwall, Water Resources Control Engineer, Regional Water Quality Control Board</u>

Kristin Schwall is the RWQCB employee who signed the "no further comment" letter.  As discussed above, the letter did not follow the RWQCB's usual practice of issuing a "no further action" letter for site closure, and stated that the RWQCB looked forward to *continuing* to assist with addressing environmental issues at the site.  Ms. Schwall's testimony is crucial to understanding why the RWQCB did not follow its usual practice, whether the RWQCB determined that remediation had been protective of human health and the environment, and whether the RWQCB believes additional remediation is needed at the site.  The City expects to conduct this deposition within the next three months.

3. <u>Deposition of David Gibson, Executive Officer, Regional Water Quality Control Board</u>

David Gibson is the Executive Officer at the RWQCB.  He was involved in

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1   the negotiations with the Navy regarding the extent of the investigation and

2   remediation, and signed the "no further action" letter that was rescinded only a few

3   months later.  He also signed a letter dated April 6, 2022 stating that the exemption

4   from current regulatory requirements applies only to discharges analyzed in the

5   Navy's 1998 remedial investigation (RI) and not to any prior discharge not covered

6   by the RI, thus apparently leaving the door open to further investigative and cleanup

7   orders.  As discussed above, Mr. Gibson's testimony is essential to understanding

8   the negotiations between the Navy and RWQCB regarding the extend of the

9   cleanup, why a "no further comment" letter was issue, followed by a "no further

10  action" letter that was rescinded only a few months later, and then followed by the

11  April 2022 letter.  Mr. Gibson's testimony is also crucial to determine the quality

12  of the cleanup and future action contemplated by the RWQCB.  The City expects

13  to conduct this deposition within the next three months.

14  4.  Deposition of Keith Forman, former Navy BRAC Environmental Coordinator

15          Keith Forman appears to have worked as a Navy BRAC Environmental

16  Coordinator during the early stages of the investigation in the mid-1990s to at least

17  2017.   Former City employees indicate Mr. Forman was very involved in

18  discussions and negotiations regarding the Boat Channel. His name appears on a

19  number of important documents including the Navy's 2017 Record of

20  Decision/Remedial Action Plan for the Boat Channel.  On May 9, the City requested

21  that the Navy produce Mr. Forman; however the Navy simply replied that he had

22  retired.  (Vandenburg Decl., ¶ 37).  While the City has offered to reach out to its

23  former employees, and has even made former employees available for deposition,

24  the Navy has failed to reciprocate.  The City will therefore have to undertake

25  additional efforts to locate, contact, and serve Mr. Forman for deposition.  The City

26  expects to conduct this deposition within the next six months.

27  / / /

28  / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

5. <u>Deposition of Navy 30(b)(6) Witnesses on the Following Topics The City intends to seek the deposition of Navy persons most knowledgeable on the following topics and to complete those depositions within the next six months. These subject matter areas are relevant to the City's CERCLA defenses and the City's breach of contract claim.</u>

   a.  The negotiations between the Navy and the City culminating in the MOA including the intent of the parties regarding the investigation, remediation, and transfer of the Boat Channel parcels to the City, and the CERCLA warranty.

   b  The negotiations between the Navy and the RWQCB regarding the investigation and remediation of the Boat Channel including the designation of areas for investigation, the specifics of the investigation, the exclusion of the riprap banks and other areas from the investigation, the areas of dispute between the RWQCB and the Navy and reasons therefore, the Navy's refusal to perform further investigation beyond 1998, the Navy's selection of ARARs, grandfathering into pre-2009 sediment quality objectives, and the actions/communications leading up to the RWQCB "No Further Action" Letter dated 12/16/2020.

   c.  The negotiations between the Navy and the City regarding the potential early transfer of the Boat Channel parcels to the City, in particular the scope of investigation and cleanup.

   d.  Deposition of Navy Rule 30(b)(6) Witnesses on the following topics The City intends to seek the deposition of Navy Rule 30(b)(6) designees on the following topics and to complete those depositions expeditiously.  These subject matter areas are relevant to the City's CERCLA defenses and the City's breach of contract claim.

   e.  All aspects of the storm drain system at NTC that discharged to the Boat Channel from its creation until 2001.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

f.   All aspects of the storm drain system at the Marine Corps Recruit Depot (MCRD) that discharged to the Boat Channel from its creation to the present.

g.   All aspects of the sanitary sewer system at NTC that discharged to the Boat Channel from its creation until 2001.

h.   All aspects of the sanitary sewer system at MCRD that discharged to the Boat Channel from its creation to the present.

i.   All easements, licenses, permits, approvals, consents from the Navy to any person to connect to or discharge into the storm drain system discharging to the Boat Channel from its creation to the present.

j.   All easements, licenses, permits, approvals, consents from the Navy to any person to connect to or discharge into the sanitary sewer system discharging to the Boat Channel from its creation to the present.

k.   Each and every connection the Navy claims presently exists, or previously existed, between the NTC storm drain system discharging to the Boat Channel and the City's MS4.

l.   Each and every connection the Navy claims presently exists, or previously existed, between the MCRD storm drain system discharging to the Boat Channel and the City's MS4.

m.   Each and every connection the Navy claims presently exists, or previously existed, between the MCRD storm drain system or sanitary sewer system discharging to the Boat Channel and the City's sewer system.

n.   All real property owned or leased by the United States within the Boat Channel watershed from 1916 to the present  including, but not limited to, the US Post Office, the Naval Information Warfare Systems Command (formerly SPAWAR), and the Fleet Anti-Submarine Warfare Command at Point Loma.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

o.  NTC Reuse Planning Committee meetings, discussion, and negotiations, and documents/agreements developed as a result of those meetings including, but not limited to, the 1999 ROD, the NTC Reuse Plan, the NTC Precise Plan, and the NTC EIR EIS.

p.  The Navy's determination that the City was a potentially responsible party (PRP) to the contamination at the Boat Channel including but not limited to when that determination was made, how it was made, why the Navy decided to assert the City is a PRP, and when and how the Navy notified the City that it considered the City ad PRP.

q.  Negotiations between the Navy and other federal agencies such as the EPA, the US Fish & Wildlife Service, and the National Park Service regarding the investigation and remediation of the Boat Channel and/or the transfer the  Boat Channel parcels to the City.

6. <u>Compel the Navy to provide Initial Disclosures for the City's breach of contract counterclaims</u>.

The Navy has refused to provide even Initial Disclosures related to the City's Breach of Contract cause of action.  It is essential for the City to learn which witnesses have information, and to request depositions and discovery accordingly.  Without this most basic discovery, the City cannot obtain the information it needs to prosecute its claims.  While the breach of contract claims are based on the Navy's failure to conduct a CERCLA-quality cleanup, the City needs additional discovery related to this claim.  Moreover, the Navy filed a breach of contract claim against the City on July 11, 2024, less than one month ago.  The City and Navy will need to propound written discovery and conduct depositions related to these claims, which the City anticipates completing within the next six months.

7. <u>Independent Investigation of the NTC Site by the City's Consultant, Michael Trapp, Ph.D.</u>

The City's central defense to the Navy's CERCLA claims, as well as the

basis for the City's breach of contract claims, is that the Navy failed to conduct a CERCLA-quality cleanup.  Among other deficiencies, the  Navy (i) failed to investigate the entire NTC site, (ii) relied on data from the 1990's for a remediation conducted in 2018, (iii) failed to remediate the site to current regulatory standards, and (iv) only remediated five (5) CERCLA contaminants when the Navy knew there were additional CERCLA contaminants at the site – including certain contaminants that could be traced back to the Navy.  In light of those deficiencies, further investigation is essential to determining the condition of the NTC Boat Channel site for both the CERCLA contribution claims and the breach of contract claims.  The Navy is not entitled to contribution if it failed to conduct a CERCLA-quality cleanup. It also has no right to transfer those still-contaminated parcels to the City under the terms of the MOA.  The Navy has refused to grant the City access to perform the work, claiming that it is "irrelevant" as the City must rely solely on the administrative record. That is not the case, however, when as here, the Court must hear from experts for the Parties in order to fully and accurately evaluate USA's failure to meet the relevant legal standard for NCP Compliance.  The City simply cannot sufficiently prosecute or defend its claims against the Navy without an adequate investigation of the NTC Boat Channel site. The City provided the Navy with the intended scope of work on May 16, 2024. The Navy has had more than ample time to review and comment on the scope of work, but has failed to do so, other than to reject any further investigation of the Boat Channel site. (Vandenburg Decl., ¶ 38, scope of work attached to Vandenburg Decl., as ***Exhibit A***)**.** The City expects to complete the investigation within twelve (12) months; however, the timeframe for completion will depend on whether the City encounters further Navy resistance and delays moving forward.

/ / /

/ / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

33874058.1:10874-0001                    -18-                    Case No. 3:23-CV-00541-LL-DTF
MOTION TO EXTEND DISCOVERY CUT-OFF DEADLINE

8. <u>Review Navy's Responses to the City's First Set of Interrogatories, Request for Production, and Request for Admissions.</u>

The City still has only recently received the Navy's responses to the City's first set of discovery responses. The City will require to evaluate the responses when received; will likely need to engage in meet and confer sessions after that; and follow up with additional requests based on the responses received. The City expects to complete its review and follow-up discovery within the next three to six months.

Notably, as the City has been diligently responding to the Navy's extremely broad, often tangentially related discovery, the Navy has been obstructing the City's ability to obtain the discovery the City needs to prepare its case for trial. Failing to allow the City adequate time for discovery would be unjust and inequitable, particularly in light of the substantial amount of important discovery still needed to occur in this case. Given that it took the Navy *almost 20 years* to perform any type of remediation at the NTC Boat Channel site, it is disingenuous for the Navy to assert that one additional year of discovery to ensure the City has the information it requires for this case would somehow result in undue prejudice.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the City respectfully requests that this Court issue an order amending the current case management schedule in this matter as follows:

### PROPOSED DEADLINES

| Task | Current Deadline | Proposed Deadline |
|---|---|---|
| Non-expert Discovery Cut-off | August 7, 2024 | August 7, 2025 |
| Expert Disclosure (Initial) | September 7, 2024 | September 27, 2025 |
| Expert Disclosure (Rebuttal) | September 20, 2024 | September 20, 2025 |
| Expert Discovery Cut-off | December 20, 2024 | December 20, 2025 |
| Last Day to Hear Motions | January 21, 2024 | January 21, 2025 |

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

| Last Day to Conduct ADR Proceeding | February 26, 2025 | February 26, 2026 |
|---|---|---|
| File Memorandum of Contentions of Fact and Law, Exhibit and Witness Lists, Status Report regarding settlement, and all Motions in Limine | April 24, 2025 | April 24, 2026 |
| Lodge Pretrial Conference Order, file agreed set of Jury Instructions and Verdict forms, file statement regarding Disputed Instructions and Verdict Forms, and file Oppositions | May 8, 2025 | May 8, 2026 |
| Final Pretrial Conference | May 22, 2025, at 10:00 a.m. | May 22, 2026, at 10:00 a.m. |
| Trial Date (Est. 8 to 12 Days) | TBD | TBD |

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

## PLAINTIFF THE UNITED STATES' POSITION

## TABLE OF CONTENTS

I.   INTRODUCTION   ……………………………………………………... 1

II.  LEGAL STANDARD ........................................................................2

III.  BACKGROUPD ……………………………………………… 4

IV. ARGUMENT ……………………………………………………. 6

   A.  The United States' Diligence in This Litigation Is Irrelevant Except to Demonstrate that Discovery *Can* Reasonably Be Completed Within Six Months with Diligence ……………………………………………… 6

   B.  The City's Lack of Diligence in Affirmatively Conducting Discovery Throughout the Discovery Period Should Not Be Rewarded with A 12-Month Discovery Extension ………………………………………… 8

   C.  The City Has Particularly Failed to Show Diligence In Obtaining the Discovery for Which It Seeks An Extension ……………………… 10

   D.  Extending Discovery Would Unfairly Prejudice the United States ……… 16

V. CONCLUSION

-i-

MOTION TO EXTEND DISCOVERY CUT-OFF DEADLINE

**TABLE OF AUTHORITIES**

**Federal Cases**

*Brunig v. Clark*,
    560 F.3d 292, 294 (5th Cir. 2009)…………………………………...2

*Gestetner Corp. v. Case Equip. Co.*,
    108 F.R.D. 138, 141 (D. Me. 1985)………………………….............2, 9

*Hwang v. Nationwide Life and Annuity Ins. Co.*, Case No. 3:23-cv-01666,
    2024 WL 1608180 at *1-*2 (S.D. Cal. Apr. 12, 2024)…………………...…4

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    715 F.3d 716, 737 (9th Cir. 2013)……………………………............ 3, 8

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604, 609, 610 (9th Cir. 1992)………………...…2, 3, 6, 7, 11, 16

*Krohne Fund, LP v. Simonsen*,
    681 Fed. Appx. 635, 638 (9th Cir. 2017)…………………………..….. 6

*Lien v. City of San Diego*, Case No. 21-cv-224, 2022
    WL 1143548 at *1 (S.D. Cal. Mar. 9, 2022)… ……………………….... 3

*Mattel, Inc. v. MGA Enter., Inc.*,
    705 F.3d 1108, 1110 (9th Cir. 2013)………………………………...… 2

*Scripps Health v. Nautilus Ins. Co.*, Case No. 21-cv-1634, 2022
    WL 18781306 at *3 (S.D. Cal. Dec. 21, 2022)……………….……… 10

*Scripps v. Nautilus Insur. Co.*, Case No. 21-cv-1634, 2023
    WL 187573 at *3 (S.D. Cal. Jan. 15, 2023)………...………….......... 10, 12

*Sentry Select Ins. Co. v. Norcold, Inc.*, Case No. 1:21-cv-00521, 2023
    WL 9110983 at *2 (E.D. Cal. Dec. 15, 2023)……………..……....….…. 4

*Simmons v. Modly*, Case No. 19-CV-1448, 2022
    WL 2918909 at *3 (S.D. Cal. July 25, 2022)……………….……..…….15

*Street Spirit IP LLC v. eHarmony, Inc.*,
    2023 WL 6620369, at *2 (C.D. Cal. Aug. 23, 2023)…………..…….…..… 2

*Thompson v. CoreLogic Rental Prop. Sol., LLC*, Case No. 21-cv-1716, 2022
    WL 16753141 at *3 (S.D. Cal. Oct. 13, 2022)………......………….. 3, 10, 12

*Wietfelt v. Comdata*, Case No. 21-cv-1684, 2022
    WL 1493256 at *1 (S.D. Cal. Apr. 7, 2022)………….. ……………..……. 4

*Wong v. Regents of Univ. of Cal.*,
    410 F.3d 1052, 1060, 1062 (9th Cir. 2005)……………………............... 2

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

**Federal Regulations**

42 U.S.C. § 9607(a)……………………………………………………..… 1

42 U.S.C. § 9613(j)(1)……………………………………………..… 14

42 U.S.C. § 9613(j)(2)…………………………………………………… 14

**Federal Rules**

Chambers Rule III.C…………………………………..………… 3, 4, 7, 10, 16

CivLR 16.1(b)……………………………………………………………. 4, 16

Fed.R.Civ.P. 16(b)(3) (1983)……………………………………………… 2

Fed.R.Civ.P. 16, Advisory Committee Notes (1983 Amendment)……...…… 3, 7, 11

# I. **INTRODUCTION**

The City has not shown good cause to extend discovery. The City could have served discovery requests at any point after the scheduling order was issued on February 12, 2024. Instead, the City did not serve any written discovery requests—not a single request for production, not a single interrogatory, and not a single request for admission—until June 11, 2024, less than two months before fact discovery closes on August 7, 2024. It cannot be said that the City discharged its duty of diligence when the City waited four months after the scheduling order to serve any discovery requests, and the City's lack of diligence should not be rewarded by tripling the allotted time for fact discovery from six months to 18 months. Moreover, the City's above characterization of events—blaming routine discovery requests from the United States and ordinary discovery obligations for its choice to delay serving discovery of its own—is riddled with inaccuracies and vastly overstates the complexity of this matter. The plain fact is that nothing prevented the City from serving discovery sooner. Under the prevailing weight of cases in this District and the Ninth Circuit, the motion should be denied for lack of good cause.

The United States is willing, however, to consent to a three-month extension of discovery for the parties' contract claims. To provide context for this limited extension, this case has two distinct types of claims: CERCLA claims and contract claims. The United States filed this suit asserting CERCLA claims against the City in March 2023 to recover millions of dollars that the Navy spent to remediate the Boat Channel site. (Dkt. No. 1.) Simply stated, CERCLA Section 107(a) imposes strict liability on owners and operators of polluting facilities for costs that the federal government incurs to respond to releases or threats of releases of hazardous substances from the facilities. 42 U.S.C. § 9607(a). The City filed its Answer asserting its breach of contract claim in June 2023. (Dkt. No. 8.) On July 11, 2024, the United States asserted a counterclaim-in-reply against the City alleging that the City breached the May 30, 2000,

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1 Memorandum of Understanding ("MOA") and seeking specific performance.[2]  (Dkt.

2 No. 73.)  The United States asserted the claim in this action because it is compulsory

3 in response to the City's breach of contract claim, which is live though subject to the

4 United States' pending motion to dismiss.[3]  (Dkt. No. 38.)

5      Though much of the discovery the City finally served in June 2024 relates to the

6 contract claims, and the United States has already responded to that discovery, the

7 United States is nonetheless willing to consent to an extension of discovery for the

8 parties' contract claims for a period of three months.  The United States presented this

9 compromise in an email to the City on July 8, but the City did not respond.  Declaration

10 of Stefan J. Bachman (hereinafter "Bachman Decl.") ¶ 4 and Exh. 1 (7/8/24 email).

11 ## II. **LEGAL STANDARD**

12      "A scheduling order 'is not a frivolous piece of paper, idly entered, which can

13 be cavalierly disregarded by counsel without peril.'" *Johnson v. Mammoth Recreations,*

14 *Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (quoting *Gestetner Corp. v. Case Equip. Co.*,

15 108 F.R.D. 138, 141 (D. Me. 1985); *see also Wong v. Regents of Univ. of Cal.*, 410

16 F.3d 1052, 1060 (9th Cir. 2005) (courts' efforts to foster efficient treatment and

17 resolution of cases "will be successful only if the deadlines are taken seriously by the

18 parties, and the best way to encourage that is to enforce the deadlines").  When Federal

19 Rule of Civil Procedure 16 was substantially amended in 1983 to reflect the needs of

20 modern litigation, it was amended to specifically require "a scheduling order that limits

21 the time . . . (3) to complete discovery."  Fed. R. Civ. P. 16(b)(3) (1983).  The reason:

22 to "deal[] with the problem of procrastination and delay by attorneys in a context in

23 which scheduling is especially important—discovery."  Fed. R. Civ. P. 16, Advisory

24

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

---

25 [2] The United States did not assert the claim sooner because it had not yet received authorization to file this
26 affirmative claim.
[3] A party may assert counterclaims-in-reply "if they are compulsory."  *Mattel, Inc. v. MGA Enter., Inc.*, 705 F.3d
1108, 1110 (9th Cir. 2013).  And a party may file an answer before the court rules on a motion to dismiss.  *Brunig*
27 *v. Clark*, 560 F.3d 292, 294 (5th Cir. 2009) (holding the defendants "were not obligated to wait to answer until
the court had ruled on the motion" to dismiss); *Street Spirit IP LLC v. eHarmony, Inc.*, 2023 WL 6620369, at *2
28 (C.D. Cal. Aug. 23, 2023) ("The filing of an answer, however, does not moot a motion under Rule 12(b), as a
defendant need not 'wait to answer until the court had ruled on the motion.'").

Committee Notes (1983 Amendment).

Under Rule 16(b)(4) and Judge Ferraro's Chambers Rule III.C,[4] the scheduling order may not be modified except for good cause shown. A court "may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Fed. R. Civ. P. 16, Advisory Committee Notes (1983 Amendment); *see also Johnson*, 975 F.2d at 609. "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609 (citing cases). A court may also consider the "existence or degree of prejudice to the party opposing the modification," but the moving party's diligence remains the focus. *Id.* "If that party was not diligent, the inquiry should end" and the motion should be denied. *Id.*

Courts have found good cause where the moving party exhibited diligence in conducting discovery, but an unforeseeable development beyond its control prevents the party from meeting the discovery deadline. *See, e.g.*, *Lien v. City of San Diego*, Case No. 21-cv-224, 2022 WL 1143548 at *1 (S.D. Cal. Mar. 9, 2022) (plaintiff's unavailability for remainder of fact discovery due to jury duty was unforeseeable); *cf. In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (no good cause "where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment [of pleadings] since the inception of the action").

On the other hand, courts have found no good cause where the moving party exhibited little or no diligence in taking discovery, thereby creating the problem for which it seeks relief. *See, e.g.*, *Thompson v. CoreLogic Rental Prop. Sol., LLC*, Case No. 21-cv-1716, 2022 WL 16753141 at *3 (S.D. Cal. Oct. 13, 2022) ("Choosing to delay and notice Plaintiff's depositions for one day after the close of fact discovery, Defendant now must face the consequence of its dilatory actions"). For example, courts

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

---

[4] Judge Skomal was assigned to this case until May 1, 2024, when the case was reassigned to Judge Ferraro. (Dkt. No. 66.) Accordingly, the United States cites to Judge Ferraro's Chambers Rules in this motion. On July 30, 2024, this case was reassigned to Judge Cheeks. (Dkt. No. 75.)

have denied requests to extend discovery—sometimes even when both parties consent to an extension—when the moving party acted less than diligently by propounding written discovery months after the scheduling order is issued, serving written discovery only recently, failing to notice any depositions, and delaying taking discovery that the moving party knew was critical to its case. *See, e.g.*, *Hwang v. Nationwide Life and Annuity Ins. Co.*, Case No. 3:23-cv-01666, 2024 WL 1608180 at *1-*2 (S.D. Cal. Apr. 12, 2024) (no good cause where the parties failed to complete any discovery in the last five months, served written discovery only recently, and did not explain scheduling difficulties that prevented timely depositions); *Wietfelt v. Comdata*, Case No. 21-cv-1684, 2022 WL 1493256 at *1 (S.D. Cal. Apr. 7, 2022) (no good cause where the parties had five months to conduct fact discovery but only began propounding written discovery two months after the scheduling order was issued and provided no reasons why depositions had not been noticed); *Sentry Select Ins. Co. v. Norcold, Inc.*, Case No. 1:21-cv-00521, 2023 WL 9110983 at *2 (E.D. Cal. Dec. 15, 2023) (foreseeability of the need for expert depositions was clearly present at earlier points in litigation).

The diligence inquiry in this District may also be informed by the Local Rules, which specifically outline the counsel's duty of diligence, stating: "All counsel . . . must proceed with diligence to take *all* steps necessary to bring an action to readiness for trial." CivLR 16.1(b) (emphasis added); *see also* Chambers Rule III.C (reminding counsel of duty of diligence under local rules).

## III. <u>BACKGROUND</u>

Contrary to the City's assertions, the issues here are relatively straightforward and have been known to the parties for many years. The City misstates or provides only partial context for many facts above. The United States will not attempt to correct them all here or litigate the central issues of this case, as the primary consideration for the Court in ruling on the City's motion is whether *the City* diligently pursued discovery to meet the Court-ordered deadlines. Key facts for the Court to consider are:

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

- The United States filed its Complaint in March <u>2023</u>.  (Dkt. No. 1.)
- The City filed its counterclaim in June <u>2023</u>.  (Dkt. No. 8.)
- Judge Skomal issued a scheduling order on February 12, 2024, clearly stating that all fact discovery must be complete by August 7, 2024.  (Dkt. No. 61 at 2.)
- The City waited until June 11, 2024, to serve its first written discovery requests—51 requests for production and 25 interrogatories.  Bachman Decl. ¶¶ 5-6.  The City served 25 requests for admission on June 21, 2024.  *Id.* ¶ 7.
- The City waited until July 16, 2024, to notice two of the three RWQCB depositions that it asserts are critical to its case.  *Id.* ¶ 8.  These depositions are now scheduled to occur on August 6 and 7.  *Id.*  The City has yet to notice the third RWQCB deposition.  *Id.*
- The City waited until the evening of July 24, 2024, to send the United States its proposed motion to extend discovery.  *Id.* ¶ 9 and Exh. 2 (7/24/24 email).
- The City waited until the evening of July 26, 2024, to first send the United States its list of 23 topics and 28 subtopics for the United States' Rule 30(b)(6) deposition and unilaterally noticed the deposition for August 7.  *Id.* ¶ 13, Exh. 4 (7/26/24 email), and Exh. 5 (deposition notice).

The following characterizations of facts warrant correction, as they most directly related to the City's lack of diligence seeking discover in this matter:

- The City asserts that on May 24, 2024, the Navy denied its request to conduct further investigation of the Boat Channel.  This is false.  The City sent the United States an email on May 16, 2024, asking for access to the Boat Channel to conduct sampling.  Bachman Decl. ¶ 14.  The United States responded on May 24, 2024, that the email is not a proper discovery request and, *inter alia*, asked for more information about the proposed sampling to assess burden on the Navy.  *Id.* ¶ 14 and Exh. 6 (email chain).  The United States also made clear that it does not agree to extend the discovery deadlines.  Bachman Decl. ¶ 14 and Exh. 6

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

(email chain).  The City never responded and never initiated Judge Ferraro's discovery dispute process or sought a Court order to compel the investigation. Bachman Decl. ¶ 15.

- The City asserts that the United States did not provide its administrative record and cost documents to the City until late March 2024.  This is untrue.  The United States produced its cost documents to the City on February 27, 2024, and its administrative record on March 1, 2024.  *Id.* ¶¶ 16-17, Exh. 8 (cover letter for cost documents), and Exh. 9 (cover letter for administrative record).

- The City notes that it proposed new deposition dates for Navy witnesses in April 2024.  The City fails to inform the Court that this was at the City's request.  The United States worked extensively with the City and Navy to find suitable times for depositions and to hold dates on schedules.  Bachman Decl. ¶ 20 and Exh. 11 (4/12/24 email).  The City canceled all of them.

- The City states that it has produced over 52,000 documents to the United States. This is an exaggeration.  The City has produced about 10,000 documents to the United States.  Bachman Decl. ¶ 29.

In short, the facts here show a pattern of procrastination and failure to plan.  Both parties have known about the discovery deadlines since February 2024, and the City had every opportunity to pursue discovery diligently.

## IV. ARGUMENT

### A.   The United States' Diligence in This Litigation Is Irrelevant Except to Demonstrate that Discovery *Can* Reasonably Be Completed Within Six Months with Diligence.

As an initial matter, the Court's assessment of "good cause" must center on the diligence of the movant (*i.e.*, the City) over the course of fact discovery.  *See Johnson*, 975 F.2d at 609 (good cause standard primarily considers diligence of party seeking amendment); *Krohne Fund, LP v. Simonsen*, 681 Fed. Appx. 635, 638 (9th Cir. 2017) (assessing party's diligence "over the entire course of discovery in this case").  The City's focus on the United States' diligence is therefore irrelevant.  To be clear, the

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

United States strongly disputes the City's characterization of its efforts as less than diligent and "running out the clock." Without engaging in a point-by-point rebuttal because only the *City's* diligence can establish "good cause," the United States notes that the only thing the City has shown in its recounting of events is that the United States proactively began discovery immediately and continued apace to ensure it could complete discovery by the Court's deadline. Notably, for all the City's complaints about the Navy, the City never availed itself of the dispute process provided by Judge Ferraro's Chambers Rule V or filed discovery motions.

For purposes of assessing "good cause," the United States' conduct is irrelevant except as a counterpoint to the City's conduct. Indeed, the fact that the United States does not seek an extension of discovery from the Court demonstrates that the six-month discovery schedule *can* "reasonably be met" if pursued with ordinary diligence. *Johnson*, 975 F.2d at 609 (court may modify pretrial schedule if it cannot reasonably be met despite diligence of party seeking extension) (citing Fed.R.Civ.P. 16, Advisory Committee Notes (1983 Amendment)).

Throughout the last six months, the United States has proactively served affirmative discovery, preemptively prepared for anticipated defensive discovery, and engaged in good faith with the City to head off and resolve discovery disputes. Before the City had even served its first written discovery request on June 11, the United States had: (1) served requests for production, requests for admission, and interrogatories on February 20; (2) produced its cost documents on February 27; (3) produced its administrative record on March 1; and (4) provided the City with its proposed Rule 30(b)(6) deposition topics. Bachman Decl. ¶¶ 16, 17, 21-23, and 26. The United States accommodated the City's delays in good faith: It granted the City's requests for two extensions to respond to discovery and produce documents. *Id.* ¶ 24 and Exh. 12 (email chain). The United States also worked extensively with the City and the Navy to find suitable times for depositions and to hold dates open in April for eight witnesses, only for the City to cancel them all. Bachman Decl. ¶ 20. Throughout, the United States

1  continued apace.

2       When the City did finally serve discovery in June, the United States asked for no

3  additional time to serve its formal responses.  *Id.* ¶ 25.  Because the United States takes

4  its obligations to meet discovery deadlines seriously, it undertook the necessary effort

5  to review and produce non-privileged, responsive documents within about 30 days, and

6  expects to complete productions by August 7.  *Id.*  Under these circumstances, an

7  extension would only reward the City's procrastination and penalize the United States'

8  early and persistent efforts.

9     **B.**     **The City's Lack of Diligence in Affirmatively Conducting Discovery**
           **Throughout the Discovery Period Should Not Be Rewarded with A**
10          **12-Month Discovery Extension.**

11

12       This case has been pending for more than a year.  (*See* Dkt. No. 1 (United States'

13  Complaint filed March 2023); Dkt. No. 8 (City's Answer filed June 2023).)  Thus, the

14  CERCLA and contract issues—and the need to conduct discovery on them—have been

15  known to the City for over a year.[5]  Good cause is not met "where the party seeking to

16  modify the scheduling order has been aware of the facts and theories supporting

17  amendment since the inception of the action."  *In re W. States Wholesale Nat. Gas*

18  *Antitrust Litig.*, 715 F.3d at 737 (no good cause to amend scheduling order where

19  plaintiffs were not diligent in seeking amendment to add claims that they had known

20  were viable years earlier and before the deadline to amend pleadings) (external

21  quotations omitted).

22       The Court issued the scheduling order on February 12, 2024, following a Case

23  Management Conference with both parties.  (Dkt. No. 61.)  The scheduling order

24  established that all fact discovery must be completed on or before August 7, 2024.  (*Id.*

25  at 2.)  Taking the Court's order and the duty of diligence seriously, the United States

26  promptly served discovery requests on February 20.

27

28  _____
[5] The City has actually known about the Navy's CERCLA claims for much longer.  The Navy and the City engaged
   in discussions about settlement of the claims several years ago.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

The City provides no explanation for why it did not serve any written discovery requests in February, March, April, or May.  Nothing prevented the City from serving discovery on the United States, the RWQCB and its employees, or former Navy employees sooner, and the Court's scheduling order clearly requires the parties to serve discovery in time to be completed by August 7.

What the City characterizes as diligence in the first four months of discovery was simply responding to the United States' discovery requests that related to topics that were obvious and foreseeable since at least March *2023* when the United States filed its Complaint.  The discovery that the City now seeks an extension to conduct was just as obvious and foreseeable.

Diligence requires serving discovery requests and deposition notices sufficiently in advance of discovery deadlines to allow time for the other party to respond, time to meet and confer, time to file a motion to compel and obtain relief, if necessary, and time to conduct follow-up discovery.  Indeed, Judge Skomal's scheduling order emphasized what it means to "complete" fact discovery on or before August 7, 2024:

> "Completed" means that all discovery under Rules 30 through 36 of the Federal Rules of Civil Procedure, and discovery subpoenas under Rule 45, must be initiated a sufficient period of time in advance of the cut-off date, **so that it may be completed** by the cut-off date, taking into account the times for service, notice, and response as set forth in the Federal Rules of Civil Procedure.

(Dkt. No. 61 at 2 (emphases in original).)  There is no indication that Judge Skomal did not grasp the complexity of the legal and factual issues in this case when he set fact discovery to end within six months.  *See Gestetner Corp.*, 108 F.R.D. at 141 (scheduling order is not "frivolous" and resulted *inter alia* from magistrate's review of file and determination of a reasonable and expeditious schedule to prepare case for trial).

The meet-and-confers and back-and-forth emails described by the City are no substitute for actually serving and responding to discovery (or raising discovery

disputes with the Court if necessary).  Diligence requires seeing discovery obligations through to completion such as scheduling witnesses and identifying designees under Rule 30(b)(6).  Here, the City waited until the evening of July 26, 2024, only seven business days before the completion of fact discovery, to first send the United States a list of 30(b)(6) topics and a notice of deposition.  Bachman Decl. ¶ 13.  In contrast, the United States first sent its topics to the City on May 21, 2024, and served a formal notice of the City's deposition on June 13, 2024.  *Id.* ¶ 26; *see Scripps Health v. Nautilus Ins. Co.*, Case No. 21-cv-1634, 2022 WL 18781306 at *3 (S.D. Cal. Dec. 21, 2022) (finding lack of diligence where *inter alia* the parties still had not identified nor scheduled 30(b)(6) and Person Most Knowledgeable witnesses for deposition in the last month and a half of fact discovery).

Tellingly, the City's motion does not claim that any of the extended discovery it now seeks was unforeseeable.  Nor does it "detail[] the steps taken to comply with the dates and deadlines set in the order, and the specific reasons why deadlines cannot be met," as required by Judge Ferraro's Chambers Rule III.C.1.  In fact, the City is noticeably silent on when it knew it needed the specific discovery, when it began efforts to obtain the discovery, and why those efforts (if any) have failed despite diligence.  These omissions "suggest[] an attempt to conceal . . . lack of diligence" in obtaining discovery.  *Scripps v. Nautilus Insur. Co.*, Case No. 21-cv-1634, 2023 WL 187573 at *3 (S.D. Cal. Jan. 15, 2023) (hereinafter "*Scripps II*") (denying extension for additional time to depose a purportedly important witness where, beyond "a self-serving declaration by Defendant's counsel," parties failed to provide any dates or details Rather than be rewarded with 12 more months to take discovery, the City should now "face the consequence of its dilatory actions."  *Thompson*, 2022 WL 16753141 at *3.

### C.     The City Has Particularly Failed to Show Diligence In Obtaining the Discovery for Which It Seeks An Extension.

To justify an additional 12 months of discovery, the City asserts a need for certain discovery that it describes as "crucial" and "essential" for the City's claims and

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1  defenses.  This fails to establish good cause.  A party's need for discovery—no matter
2  how great—cannot overcome a party's lack of diligence in seeking the discovery by
3  the deadline required the scheduling order.  *Johnson*, 975 F.2d at 609 ("If that party
4  was not diligent, the inquiry should end.").  The City has not shown that it could not
5  have obtained the additional discovery by August 7, 2024, *despite its diligence*.  *See*
6  Fed. R. Civ. P. 16, Advisory Committee Notes (1983 Amendment).

7      If the additional discovery is as necessary as the City asserts, then the City was
8  not diligent in noticing and scheduling depositions, serving written discovery requests,
9  planning for expert disclosures, availing itself of Judge Ferraro's discovery dispute
10  process, and timely moving for relief.[6]  If the additional discovery is *not* actually
11  necessary, then a 12-month extension would serve no purpose but to unfairly impose
12  extended obligations on the United States to respond to discovery and needlessly delay
13  an adjudication of this case on the merits.

14      **1. Regional Water Quality Control Board depositions**

15      The City has long claimed that the RWQCB's role in the Navy's response work
16  and the RWQCB "no further comment" and "no further action" letters are critical to its
17  contract claim, as shown by the City's Answer on June 30, 2023.  (*E.g.*, Dkt. No. 8 at
18  pp. 21-22 ¶¶ 51-54.)  The City also identified the letters as potential evidence and
19  RWQCB employees Kristin K. Schwall and David Gibson as potential witnesses in its
20  initial disclosures served on October 20, 2023.  Bachman Decl. ¶ 27 and Exh. 13 (City's
21  Initial Disclosures) at 4 (Gibson), 7 (Schwall), and 10 (letters identified as items aa
22  through dd).  The City now describes a need for three more months of discovery to take
23  a Person Most Knowledgeable deposition and to depose Ms. Schwall and Mr. Gibson.

24      Two of these items are now moot for purposes of this motion because the City
25  will be taking the Person Most Knowledgeable deposition and Mr. Gibson's deposition

26

[6] For unresolved discovery disputes, Judge Ferraro's Chambers Rule V requires parties to meet and confer promptly, email a Joint Discovery Statement to the Court no later than 30 days after the discovery dispute arose, and bars a party from filing a corresponding discovery motion if the 30-day deadline passes without contacting or receiving an extension from the Court.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

on August 6 and August 7, 2024, respectively.  Bachman Decl. ¶ 8.  Nonetheless, it is revealing that the City does not say why it delayed until July 16, 2024, to notice the depositions of the agency and witnesses supposedly underpinning its "central" defense and counterclaim.  *See id.*  The RWQCB and its employees are third parties that could have been subpoenaed at any time.  But the City does not describe its efforts to subpoena them (including when it first began its efforts) and conduct the depositions sooner, and it still has not noticed Ms. Schwall's deposition at all.  *Id.*

The City's "lack of urgency" in deposing the RWQCB despite having sufficient time to do so belies the City's claims of diligence.  *Thompson*, 2022 WL 16753141 at *3 (denying request to extend fact discovery to depose plaintiff where defendant served the deposition subpoena two weeks before fact discovery cut-off and four and a half months after the fact discovery deadline had been set).  Thus the City has not shown good cause for an extension to depose Ms. Schwall (or Mr. Gibson or the Person Most Knowledgeable to the extent the City still maintains that an extension is needed for their depositions).  *Scripps II*, 2023 WL 187573 at *3 (denying discovery extension where parties "potentially have been aware of the need to locate and schedule some of these witnesses long before the last week of the fact discovery deadline" and failed to timely raise discovery issues with the court).

## 2. Deposition of Keith Forman, former Navy employee

The City identified Mr. Forman in its initial disclosures as a potential witness. Bachman Decl., Exh. 13 (City's initial disclosures) at 4.  Counsel for the City states that when the City asked the Navy to produce Mr. Forman in May 2024, "the Navy simply replied he had retired."  Vandenburg Decl. ¶ 37.  The City did not respond further about Mr. Forman until July 24, when it unilaterally noticed his deposition for August 6.  Bachman Decl. ¶ 28.  Despite the witness's purported importance, the City does not describe what efforts it took to locate and serve Mr. Forman and when it began those efforts.  Fact discovery should not be extended for this deposition—certainly not for the six months the City requests—when the City failed to diligently pursue Mr.

Forman's deposition sooner.

### 3. Rule 30(b)(6) deposition of the Navy

If the Court agrees, the United States' proposal for a limited extension would permit the City to conduct a Rule 30(b)(6) deposition of the Navy for topics related to the contract claims and defenses. Nonetheless, the United States points out that the City noticed the Rule 30(b)(6) deposition and sent a list of 30(b)(6) topics (accompanied by a request for documents relied on by the designee) a mere seven business days before the completion of fact discovery. Bachman Decl. ¶ 13 and Exh. 5 (deposition notice). Nothing prevented the City from serving its Rule 30(b)(6) notice and topics earlier, especially considering the need to confer about the topics under Rule 30(b)(6) and the amount of time required to prepare a designee.

### 4. Initial disclosures related to the contract claims

As an initial matter, the City mischaracterizes this issue. When the United States served its initial disclosures on October 30, 2023, the United States plainly stated that the disclosures "did not cover the counterclaims subject to the United States' Motion to Dismiss." Bachman Decl. ¶ 18 and Exh. 10 (United States' Initial Disclosures). The City waited more than five months and did not object to the scope of the initial disclosures until April 15, 2024. Bachman Decl. ¶ 18. The United States responded that, under the local rules, the City had waived its objection to the timing and scope of the initial disclosures, but that the United States would supplement its initial disclosures if and when the court denied the motion to dismiss. *Id.* But this issue is no longer relevant.

The City fails to acknowledge the United States has in fact responded to discovery relating to the contract claims, including producing documents, answering interrogatories and requests for admission, and providing deposition testimony. *Id.* ¶ 19. The United States' discovery responses provide the information required under Rule 26(a)(1) related to the contract claims, and the United States will provide any additional information required under Rule 26(a)(1) consistent with its continuing

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1   obligations.  This issue does not establish good cause to extend discovery.

2        **5. Yearlong investigation of the Boat Channel Site by consultant**

3           **Michael Trapp**

4        The City's investigation, which would involve sampling the Boat Channel site,

5   is irrelevant to the CERCLA and contract claims.  For that reason alone, giving the City

6   an additional 12 months of discovery and drawing out the rest of the case for this

7   purpose is objectionable.  For the contract claims, the Navy discharged its remedial

8   obligations under the MOA when it obtained final regulatory approval that the

9   remediation was adequate. The City's site inspection would not change the regulatory

10  approval, and thus the City's obligations under the MOA will not change.

11       For the CERCLA claims, the City's arguments about the adequacy of the Navy's

12  cleanup "shall be limited to the administrative record." 42 U.S.C. § 9613(j)(1); *see also*

13  *id.* § 9613(j)(2) (court shall uphold response action unless the objecting party can

14  demonstrate "on the administrative record" that the decision was arbitrary and

15  capricious or otherwise not in accordance with law).  The investigation and consultant's

16  testimony would constitute extra-record material that are irrelevant to the Court's

17  review.

18       Even assuming an investigation were relevant, the City's failure to timely

19  undertake the investigation is its own fault.  The City has known since at least the filing

20  of its Answer on June 30, 2023, that its "central defense" to the CERCLA claims and

21  the basis for the City's contract claim center on the Navy's allegedly deficient cleanup

22  of the Boat Channel.  (*See, e.g.*, Dkt. No. 8 at pp. 17-25 ¶¶ 38-65.)  The Scope of Work

23  provided by the City is dated March 2024, yet the City did not email the United States

24  to request access to the Boat Channel site until May 16, 2024.  Bachman Decl. ¶ 14,

25  Exh. 6 (5/16/24 email), and Exh. 7 (Scope of Work).  The City apparently intends to

26  use Mr. Trapp's investigation for expert disclosures, which are due September 7, 2024

27  (Dkt. No. 61 at 3).  Thus, the City's delay in moving for relief to undertake a

28  purportedly key part of its case indicates a lack of diligence in meeting both the fact

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

discovery and expert disclosure deadlines.

A party's duty to plan for timely expert disclosures includes hiring and talking to an expert early enough to learn about any discovery needed by the expert.  Indeed, a party need not wait until discovery begins to retain an expert.  Here, the City fails to state when it first learned of the purported need for an expert investigation and fails to explain why it could not have informed the Court earlier (such as during the Rule 16 scheduling conference in February or once it received the Scope of Work in March) of a contemplated 12-months-long investigation requiring repeated access to secure Navy property.  It also fails to state why it waited until a "scope of work" was prepared to inform the United States rather than inform the United States as soon as it was reasonably certain it would demand an investigation that would span twice the length of fact discovery.

Contrary to the City's assertions, when the City contacted the United States with the scope of work on May 16, 2024, the United States did not "refuse to grant the City access."  While noting that it would expect to oppose the request, the United States also asked for more information so that it could better assess the burden on the Navy.  Bachman Decl. ¶ 14 and Exh. 6 (5/24/24 email).  The City never responded to the United States—not by email or with a formal discovery request.  Bachman Decl. ¶ 15.  The City fails to explain why it never responded or took steps to seek a discovery extension in May.  It also provides no explanation as to why a shorter investigation or one-time entry—especially if it had occurred early on in fact discovery—would not suffice.  Thus, there is no good cause to extend fact and expert discovery deadlines.  *See Simmons v. Modly*, Case No. 19-CV-1448, 2022 WL 2918909 at *3 (S.D. Cal. July 25, 2022) (finding no good cause to extend expert discovery by 30 days to allow plaintiffs to depose opposing expert where plaintiffs noticed the deposition only 10 days before the close of expert discovery even though defendant had identified its experts two months earlier and the expert had conducted independent medical examinations of the plaintiffs three and a half months earlier).

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

**6. Review of the Navy's discovery responses**

This request fails to detail "what specific discovery remains outstanding." Chambers Rule III.C.1.  Generally reserving time to review discovery responses and follow up with more discovery (and potentially meet-and-confers, dispute resolution under Chambers Rules, and motion practice) is a foreseeable requirement of every instance of litigation.  The City's demand for up to six months—*i.e.*, the entirety of the current fact discovery period—just to review and conduct follow-up discovery is unreasonable and would reward the City for failing to prepare for ordinary litigation tasks.  This is, again, a false emergency of the City's own making, as it could have served discovery in February 2024, like the United States, but chose to wait until only two months remained in fact discovery.

To summarize, the City points to no unforeseeable issues that could explain its inability to conduct the above discovery by August 7, 2024. The City's delayed start of discovery and failure to serve discovery with sufficient time to perform the ordinary and foreseeable work of reviewing discovery responses, planning for expert disclosures, and conducting follow-up discovery can hardly be described as taking "all steps necessary to bring an action to readiness for trial." CivLR 16.1(b).  It is incumbent upon each party to plan discovery and raise discovery disputes to account for the time needed under the Federal Rules, Local Rules, and Chambers Rules, including time to meet and confer and file motions if needed.

**D. Extending Discovery Would Unfairly Prejudice the United States.**

The City's lack of diligence alone is sufficient for the Court to deny the motion. *See Johnson*, 975 F.2d at 609 (if moving party was not diligent, the inquiry should end). However, the United States notes that granting the City's motion will also prejudice the United States by enabling the City to create additional burdens on the United States to respond—burdens that the United States should not otherwise face if the City had only diligently served discovery months ago.  If the City is "permitted to disregard the deadline" for fact discovery, "the rest of the schedule laid out by the court months in

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

1   advance, and understood by the parties, would have to [be] altered as well." *Wong*, 410
2   F.3d at 1062.

3          "Disruption to the schedule of the court and other parties in that manner is *not*
4   *harmless*."  *Id.* (emphases added).  The United States' counsel, witnesses, expert
5   consultants, and records custodians have already worked intensely during fact
6   discovery to develop its litigation theories, depose witnesses, serve written discovery,
7   serve follow-up discovery, and locate documents in anticipation of receiving written
8   discovery from the City.  It is prepared to meet the remaining case deadlines and to
9   conduct trial in 2025.  Tripling the fact discovery period would necessitate pushing the
10  rest of the case deadlines back by one year, which would prejudice the United States
11  because, for example, Navy and City witnesses will continue to retire or otherwise
12  become unavailable for trial given the age of the main events at issue (*e.g.*, a
13  Memorandum of Agreement entered into 24 years ago and a remedial action by the
14  Navy that was completed in 2019).  The United States has dutifully lined up experts to
15  meet the expert discovery deadlines, whereas the City will gain an unearned advantage
16  if allowed to proceed with its expert Michael Trapp's yearlong sampling investigation.

17         This prejudice is not hypothetical.  The United States has already been prejudiced
18  by the City's slow and protracted approach to discovery.  The City, by waiting to serve
19  a whirlwind of discovery in the last two months of fact discovery, has already imposed
20  heavy burdens on the United States to respond within a compressed period.  There is
21  no guarantee that the City will not do so again if discovery is extended.  The most recent
22  example—which also exemplifies the City's lack of diligence—is this very motion,
23  which the United States did not receive until about two weeks before the fact discovery
24  cut-off.  The City initially stated in a July 2 email that it would provide its motion to
25  extend fact discovery by July 9 and offered the United States about a week to respond.
26  Bachman Decl. ¶ 9 and Exh. 3 (7/2/24 email).  During a July 11 status conference with
27  Magistrate Judge Torres, the City again stated its intent to move to extend fact
28  discovery.  Bachman Decl. ¶ 11.  Judge Torres stressed to the City that, if the City

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050

wants to seek an extension, it should not delay. *Id.* After weeks elapsed with no further word about the motion, the City emailed the United States its motion on the evening of Wednesday July 24 with a request for the United States to respond by Friday July 26. *Id.* ¶¶ 9, 12, and Exh. 2 (7/24/24 email).  The United States immediately diverted resources previously devoted to document and privilege review to responding to this motion.  Bachman Decl. ¶ 12.  This does not pass as diligence by the City.

# V. **CONCLUSION**

An extension for the City to play catch-up in serving discovery would effectively penalize the United States' diligence in litigating at the pace required by the Court's scheduling order.   Allowing the City to now escape the natural and obvious consequence of its delayed action would "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and cavalier." *Johnson*, 975 F.2d at 610.  The motion should be denied.

Respectfully submitted,

DATED:  August 2. 2024          WOOD. SMITH. HENNING & BERMAN LLP

By: _____
          THOMAS F. VANDENBURG
          ALICE CHARKHCHYAN
Attorneys for Defendant/Cross Defendant/
Counter Claimant/Cross Claimant, CITY OF
SAN DIEGO

DATED:  August 2. 2024          U.S.  DEPARTMENT OF JUSTICE

By: _____*/s/Stefan J. Bachman*_____
          STEFAN J. BACHMAN
          MARK ALBERT RIGAU
          SAMUEL F. HOBBS
Attorneys for Plaintiff, UNITED STATES OF
AMERICA

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
505 NORTH BRAND BOULEVARD, SUITE 1100
GLENDALE, CALIFORNIA 91203
TELEPHONE 818 551-6000 ♦ FAX 818 551-6050