TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

STEFAN J. BACHMAN (SC Bar No. 102182)
BRIAN SCHAAP (DC Bar No. 1780655)
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 616-6536

MARK ALBERT RIGAU (CA Bar No. 223610)
Environmental Defense Section
450 Golden Gate Avenue, Suite 07-6714
San Francisco, CA 94102
Phone: (415) 744-6487

ALASTAIR M. GESMUNDO (CABN 316573)
SAMUEL F. HOBBS (AL Bar No. 9776O19E)
Civil Division
Commercial Litigation Branch
Phone: (202) 305-4664

*Attorneys for Plaintiff and Counterclaim Defendant United States of America*

*(Attorneys for Defendant and Counterclaim Plaintiff City of San Diego on next page)*

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et. al.<br><br>    Defendants.<br><br>*AND RELATED CROSS CLAIMS* | Case No. 3:23-cv-00541-LL-BJC<br><br>**SECOND JOINT DISCOVERY STATUS REPORT DESCRIBING UNRESOLVED DISCOVERY DISPUTES** |

THOMAS F. VANDENBURG (State Bar No. 163446)
tvandenburg@wshblaw.com
ALICE CHARKHCHYAN (State Bar No. 332670)
acharkhchyan@wshblaw.com
WOOD, SMITH, HENNING & BERMAN LLP
505 North Brand Boulevard, Suite 1100
Glendale, California 91203
Phone: (818) 551-6000
Fax: (818) 551-6050

*Attorneys for Defendant/Cross Defendant/Counter Claimant/Cross Claimant, City of San Diego*

Pursuant to the Court's September 6 minute entry following the parties' status conference with the Court on September 5, 2024, the parties—the United States of America, on behalf of the Department of the Navy, and the City of San Diego—submit this Joint Discovery Status Report describing unresolved discovery disputes and each party's position on the disputes.

**A. The discovery requests in dispute along with a brief description (not argument) of each party's position on each request.**

The following discovery issues are unresolved between the parties.

**1. Access to responsive information from the City's Stormwater Infrastructure Viewer Geographic Information Systems (SIV-GIS) database.**

**United States' Position**:

On September 12 the City produced GIS map files and Excel files to the United States and represented that these files describe all MS4 components in the Boat Channel Basin. The United States will review and evaluate these files to determine whether they provide all the relevant information requested by the United States in its requests for production. The City of San Diego claims below that it has previously provided As Built documents as part of its document production; the United States will request specific bates numbers to support this assertion.

**City of San Diego's Position**:

On September 12th City of San Diego provided USA Counsel with all GIS map files (.CPG, .DBF, .PRJ, .SBN, .SBX, and .SHP) and spreadsheet files from the City's Stormwater Infrastructure Viewer (SIV) of the MS4 components (drain structures, drain structure BMP's, and drain conveyances) within the Boat Channel Basin. This data includes both City-owned and private BMP assets. The BMP dataset also includes Owner information. City of San Diego had previously

provided As Built documents as part of its document production, which contained the same information. Many of these documents are also publicly available.

**2. Access to responsive information from the City's MS4 Asset Management Program database(s).**

**United States' Position**:

On September 12, the City produced incomplete data that relates to the MS4 Asset Management Program ("MS4 AMP"). The United States is still reviewing these files, but it appears the City has not provided complete MS4 AMP data and information for the entire Boat Channel Basin, including the data and information related to: (1) MS4 AMP facilities and features outside of the former NTC, (2) operation and maintenance activities, (3) sampling data from any stormwater conveyances (and the locations collected), (4) sampling of stormwater diversions and the first flush data (including locations), and (5) sampling data for any sanitary sewer overflows (and the locations sampled). The United States requested stormwater sampling data for the MS4 in the February 20, 2024, First Set of Requests for Production ("RFPs") Nos. 7, 9, 11, and 24. The RFPs sought all documents relating to the MS4 and specifically requested sampling data, which broadly included identifying the locations of the MS4 stormwater diversions and the first flush sampling data. As mentioned above, the United States is still reviewing the just-produced data from September 12, but this data does not appear to include sampling data for sanitary sewer overflows or the other categories of information listed above.

**City of San Diego's Position**:

The City of San Diego made a significant production of documents / information / data to USA Counsel on September 12th, as described in #1 above.

-4-   Case No. 3:23-cv-00541-LL-BJC
SECOND JOINT DISCOVERY STATEMENT DESCRIBING UNRESOLVED DISCOVERY DISPUTES

USA Counsel has not communicated directly to City of San Diego Counsel regarding its concerns herein.  City of San Diego Counsel offered to meet and confer with USA Counsel on either September 12th or September 13th, but USA Counsel did not agree to do so.

City of San Diego previously produced documents regarding sampling, operation and maintenance information in response to USA RFPs Nos. 6, 11, 24, 28, and 43.  The RFPs served by USA did not request "sampling data locations collected" nor did USA's RFPs request "sampling of stormwater diversions and the first flush data (including locations)."  On September 12th City of San Diego produced documents showing "sampling data for any sanitary sewer overflows (and the locations sampled)."

**3. The City's privilege log.**

**United States' Position**:

During the September 5 status conference, the Court ordered the City to address the deficiencies in its amended privilege log—which the United States had identified to the City in a September 3 email message—by September 12.  The City has not rectified these deficiencies.  The City's amended privilege log, produced to the United States on August 29, 2024, remains deficient for at least the following reasons:

1. Although the City's amended log identifies whether a document has been withheld based on the Attorney-Client or the Attorney Work Product privilege, it provides no justifications describing the nature of the items withheld that would allow the United States to assess each claim of privilege, in violation of Fed. R. Civ. P. 26(b)(5)(A).

2. It appears to include only electronic documents withheld by the City, despite deposition testimony by a City 30(b)(6) witnesses indicating that City employees avoided reviewing hard copy documents that had

been segregated as "privileged." The amended log does not clearly identify whether the documents withheld were electronic or hard copy.

3. Based on the limited information provided in the amended log, the City appears to inappropriately assert Attorney-Client privilege in numerous instances where the document being claimed as privileged was either authored by or sent to individuals who are outside the scope of the City's protected attorney-client relationship.

The City did not provide the United States with its position on the City's amended privilege log deficiencies until after 4:30 PM on September 13. It then demanded that the parties' joint status report filing include the parties' privilege logs as attachments, and did not engage with United States' counsel's attempt to reach a compromise position. Although the United States feels strongly that including attached exhibits is not appropriate for a joint status report, counsel for the U.S. has attached the privilege logs upon the City's insistence that it would not sign the status report without the exhibits attached and in order to meet this Court's filing deadline.

**City of San Diego's Position**:

To clarify, the Court's Minute Order required the parties to "exchange additional updates on outstanding discovery items discussed at the status conference." The City has complied with the Court's order in every respect. Attached are the City's Amended Privilege Log listing 130 documents and the USA's Privilege Log listing 1,818 documents withheld. As the Court can see, both Privilege Logs provide essentially the same information regarding the privileges asserted and the basis for such privileges. Contrary to the USA's assertion, the City's privilege log contains a column that identifies the applicable privilege. In addition, the privilege log clearly identifies both email and hard copy documents. Furthermore, if a hard copy document is stored in electronic format, it is unclear why the City has to identify the document twice.

1   City of San Diego has reviewed its Amended Privilege Log, and its agrees to produce the following documents:

15664 - email from J. Dawe to various parties including DOJ and State Lands Commission.

16554  - email from Lansdale (Navy) to Ostrye (City)

16777 - email from Kilmek (Navy) to City, et al.

16972 - letter from Lester (City) to Muckerman (Navy)

16847 - email from L. Day (City) to Anthony M (Navy) and Water Board

16862 - email from S. Komeylyan (Water Board) to L. Day (City), et al.

16883 - Email between L. Day (City) and D. Newton (Navy)

16901 - email from L. Day (City) to Lansdale (Navy)

17028 - email from L. Day (City) to M. Awbrey

17029 - email from L. Day (City) to M. Awbrey

17100 - email from Carver (Matrix) to Navy, Bechtel, Water Board

**4. The City has not designated a witness to testify about the City's use of DDT or chlordane in the Boat Channel Basin.**

**United States' Position**:

On Tuesday, September 10, 2024, the United States submitted a proposed stipulation to the City, that stated, in relevant part: "The City of San Diego has investigated its records and employees' knowledge for information concerning the City of San Diego's use of DDT, DDE, chlordane, or any products containing these substances within the Boat Channel Basin between 1938 and 2017, including use by any City agency, department, other component, or agent.  The City of San Diego does not have any information about its use or any of its agents' use of DDT, DDE, chlordane, or any products containing these substances within the

Boat Channel Basin between 1938 and 2017." The City did not respond to the United States about the proposed stipulation but instead inserted new proposed language in the draft status report, as laid out below. The United States' position is that it is not appropriate for the City to attempt to negotiate a potential stipulation through the status report.

**City of San Diego's Position**:

The USA attempts to improperly expand its discovery requests by seeking a stipulation to include DDE and any products containing DDT, DDE, and chlordane. The USA's RFP 9 was limited to documents that relate to DDT and chlordane. City of San Diego proposes the following language for the Stipulation: "The City of San Diego has investigated its records and employees' knowledge for information concerning the City of San Diego's use of DDT and chlordane within the Boat Channel Basin between 1938 and 2017. After a diligent effort to locate and obtain relevant documents and information relating to these substances, the City of San Diego has not found any information about its use of either of these substances within the Boat Channel Basin between 1938 and 2017 at this time."

**5. The City has not produced all documents that the City's 30(b)(6) designees relied on in preparing to testify as a Rule 30(b)(6) representative.**

**United States' Position**:

As part of its Deposition Notice to the City under Fed. R. Civ. P. 30(b)(6), the United States included a Third Set of Requests for Production of Documents (under Rule 34), which sought a copy of each Document that the City's 30(b)(6) designees relied on in preparing to testify as a Rule 30(b)(6) representative. The Court ordered the City at the September 5 status conference to either produce the documents the City had still not produced for the following three deponents, or

explain to the United States why it will not produce them.  The current status is as follows:

1. <u>Peter Vroom</u>: On September 12 the City produced four Excel files that it represents were reviewed by Peter Vroom in advance of his deposition.  The United States will review and evaluate these files to determine whether these represent all of the files relied upon by Mr. Vroom that the City had not yet produced, or if additional files are still missing.

2. <u>Doug Campbell</u>: The City has neither produced nor provided an explanation for why it will not produce the documents relied on by Mr. Campbell, including unidentified documents contained in a "SharePoint Folder," emails from staff, and GIS and Wastewater Collection Division data on the Sanitary Sewer System in the Boat Channel Basin.

3. <u>Amanda Parra</u>: The City represents that the MS4 GIS map files and Excel files it submitted to the United States on September 12 constitute the documents Ms. Parra relied on during her deposition.  The United States will review and evaluate these files.

**City of San Diego's Position**:

As of September 13, 2024, the City of San Diego has produced the documents reviewed by 1. Peter Vroom and 3. Amanda Parra in advance of deposition.  Counsel for City of San Diego is working to produce the documents reviewed by 2. Doug Campbell in deposition by Tuesday, September 17th.

**6. Possible bifurcation of claims and the pending Motion re: Discovery Cut-Off Deadline.**

**United States' Position**:

The United States requests the opportunity to brief the issue of bifurcation.

**City of San Diego's Position**:

The effort to bifurcate this case ignores the underlying facts and applicable law. The parties' contract breach actions are predicated upon an issue which is purely contractual, not statutory. The USA, which prepared the draft of the applicable contract allegedly breached, includes a condition precedent which the USA has failed to satisfy. This a matter to be determined in connection with the USA's assertion that it has satisfied that condition. It cannot do so, as will be demonstrated when this issue is litigated. In addition, another condition precedent is not satisfied inasmuch as regulatory approval has not been obtained.

The USA"s effort to collect some of its cost of remediation requires that its work not be inconsistent with the National Contingency Plan (NCP). The City of San Diego will establish that the work in question was inadequate, not protective of human health and the environment, was based on woefully outdated data, could not provide a permanent remedy addressing hazardous substances that it failed to investigate, and for which it has no current data to demonstrate the effectiveness of its limited investigation and consequent flawed remediation.

The factual predicate for these two theories are intertwined by the language of the contract ("all action necessary to protect human health and the environment") and the NCP consistency requirement. The underlying facts are the same. The condition precedent failure and the consistency failure will be established with essentially identical facts, obviating any efficiency from bifurcation. There is no logical basis to try this case twice.

7.  **Further Site Investigation**

**City of San Diego's Position**:

On May 16, 2024, the City emailed the USA requesting entry to the Boat Channel for the purposes of conducting a site investigation. The email contained a

detailed 23-page Scope of Work (SOW). As stated in the SOW, the purpose is "to outline a potential investigation of historic contamination in the Boat Channel that the City may be subject to, in the event ownership of the NTC Boat Channel is transferred to the City, and that is consistent with recent investigative orders issued by the Water Board for nearby areas of San Diego Bay. The purpose of the investigation would be to demonstrate that the Navy is not entitled to recovery under its CERCLA claim because it has failed to perform a CERCLA-quality clean-up." The purpose is also to show that the Navy has breached the Memorandum of Agreement (MOA) with the City by failing to investigate and remediate the Boat Channel as required by its MOA.

It is important to note that the Boat Channel is easily accessible by the public from both the east and west shores of the Boat Channel and from the San Diego Bay. The Navy has not fenced it, nor otherwise restricted access to it, nor posted any signs forbidding the public from accessing it, which the public regularly does for fishing and recreational purposes. Despite these facts, the USA said it would oppose the request because the request was unsigned, it was not specific enough (despite the 23-page SOW), they assumed the work could not be completed within the discovery schedule, it was "highly burdensome" for the Navy to provide access, and it was irrelevant to the CERCLA claims. None of these objections have any merit.

On September 12, 2024, the City served a signed, formal discovery request on the Navy to allow access to the Boat Channel from October 15, 2024 through and including November 7, 2024, for purposes of conducting a site investigation, and once again transmitted the proposed SOW. The City is awaiting the USA's response to the City's request. If the parties are unable to successfully resolve this dispute, it is likely the City will seek relief from the Court.

|   |   |
|---|---|
| 1 | **United States' Position:** |
| 2 | On September 12, 2024, the City served upon the U.S., for the first time, a |
| 3 | formal Rule 34 discovery request seeking entry into the Boat Channel to conduct |
| 4 | sampling of the water and sediments.  The United States opposes this request. As |
| 5 | described in the United States' portion of the City's Motion to Extend the |
| 6 | Discovery Cut-Off Deadline (ECF 77, pages 42–43), the City's proposed sampling |
| 7 | would constitute irrelevant (and inadmissible) extra-record material.  Additionally, |
| 8 | the City's failure to properly and diligently pursue its desired sampling provides a |
| 9 | second, independent reason for the Court to find it improper.  The United States |
| 10 | asked the City to serve a formal Rule 34 discovery request back in May, so that the |
| 11 | United States could properly object, but the City did not pursue it further until it |
| 12 | sent the request on September 12. |
| 13 |   |
| 14 | **8.    United States' Initial Disclosures** |
| 15 | **City of San Diego's Position:** |
| 16 | USA filed a Counterclaim against City of San Diego in July 2024 alleging |
| 17 | that the USA is entitled to specific performance as to the Memorandum of |
| 18 | Agreement ("MOA") between the Parties executed in 2000.  To date, USA has not |
| 19 | produced Initial Disclosures under Rule 26 regarding this claim.  FRCP 26 requires |
| 20 | Initial Disclosures to be served.  USA Counsel asserts that USA's discovery |
| 21 | responses suffice to meet its responsibility to serve Initial Disclosures; however, |
| 22 | USA's discovery responses are deficient, as discussed in Section 10 below. |
| 23 | **United States' Position:** |
| 24 | On September 5, 2024, the United States provided the City with a second |
| 25 | supplement to the U.S.' Initial Disclosures, identifying individuals likely to have |
| 26 | discoverable information about the United States' contract claims and identifying |
| 27 | documents and information that the United States has in its possession that it may |
| 28 |   |

-12-    Case No. 3:23-cv-00541-LL-BJC

SECOND JOINT DISCOVERY STATEMENT DESCRIBING UNRESOLVED DISCOVERY DISPUTES

use to support its contract claims.  On July 11, 2024, the United States identified the persons with knowledge of the contract claims in response to the City's interrogatories numbered 1 and 17, and produced the documents in its possession that it may use to support its contract claims in response to the City's requests for production numbered 1, 10, 11, 12, 13, 14, 22, 23, 24, 25, 31, 42, 45, and 46.  The City has already taken depositions of several of the persons identified, has used several of the produced documents at depositions, and has questioned the United States' witnesses about the parties' contract claims.  The United States' September 5 supplement to its initial disclosures merely reiterated this previously provided information.

**9.    City of San Diego's Rule 30(b)(6) Deposition of the United States**
<u>**City of San Diego's Position:**</u>

The City of San Diego served a Rule 30(b)(6) deposition notice on the USA on topics relevant to the claims of the Parties, such as the Memorandum of Agreement between the Parties, the USA's partial investigation and partial remediation of the Boat Channel, the storm and sanitary sewer infrastructure at the USA's NTC and MCRD properties, which surrounded the Boat Channel since 1916, and other property owned/leased by the USA or its defense contractors within the Boat Channel watershed which could have discharged contaminants to the Boat Channel. After two meet & confers over the USA's extensive objections to this deposition notice, the City took the depositions of 3 witnesses the USA designated on these topics. FRCP 30(b)(6) states: "The persons designated must testify about information known or reasonably available to the organization." However, each of these witnesses was so ill-prepared that, for the most part, they could not answer questions other than with vague generalities and by making assumptions. They were unfamiliar with the contents of documents they stated they

had reviewed. And, the USA failed to provide any list or copy of those documents until minutes before the depositions were to begin. In one case, one week after her deposition, the USA provided a list of 25 additional documents the witness had reviewed. As a result, the City will need to re-depose these witnesses, and requests the Court order the USA to prepare the witnesses and make them available for deposition at a mutually convenient day.

**United States' Position:**

The City has completed all 30(b)(6) depositions of the United States as of September 4 and there is no basis to re-open any United States depositions. The United States has fully complied with its obligations under Rule 30(b)(6), and its 30(b)(6) witnesses were well prepared to testify on the topics for which they were designated. Additionally, the United States' position is that it is not appropriate for the City to make new arguments about the already-completed depositions for the first time in this status report.

**10. USA Responses to City's Interrogatories and Document Production Requests**

**City of San Diego's Position:**

On June 11, 2024, the City served its first set of Interrogatories and Requests for Production of Documents on the USA. In response, the USA sought to severely limit the scope of its responses and document production by improperly re-writing a number of the City's term definitions and otherwise placing unilateral limitations on the timeframes and document scope requested by the City. For example, the USA limited its Responses to Navy property draining to the Boat Channel when in fact there are, and have been for decades, other federal properties that could have contributed contamination to the Boat Channel. As another example, despite the fact that Navy ownership of both NTC and MCRD began in 1916, the Navy

1  limited the timeframe of its Responses to a time period that is: "within the
2  timeframe for which the Navy could reasonably be expected to have knowledge,"
3  whatever that may mean. These improper discovery response tactics render the
4  USA's Responses both evasive and incomplete, and as such the Responses must be
5  treated as a failure to disclose, answer, or respond in accordance with FRCP
6  37(a)(4). The City has emailed a list of these deficiencies to USA counsel with a
7  request to meet and confer. The City is awaiting the USA's response to the City's
8  request. If the parties are unable to successfully resolve this dispute, it is likely the
9  City will seek relief from the Court.

**United States' Position:**

The City raised these issues for the very first time on September 12 and added this issue to the status report for the first time on September 13.  Judge Cheeks' Chamber Rules (Section VI.A) require counsel to commence the meet and confer process for any discovery disputes within 14 days of the event giving rise to the dispute.  The Rules further state that "for written discovery, the event giving rise to the discovery dispute is the date of the service of the answer/response." (Section VI.E).  The United States served its Responses to the City's First Set of Interrogatories and First Set of Requests for Production of Documents on July 11.  The City therefore had until July 25 to seek to meet and confer with counsel for the U.S. about any alleged deficiencies in the U.S.' Responses.  Instead, the City raised these issues with counsel for the U.S. for the first time on September 12.  The United States' position is that the City failed to timely raise its objections to the U.S.' Discovery Responses.

**B. At least three mutually agreeable dates for a video Status Conference with the Court.**

The parties are both available on:

1. Tuesday, September 17, 2024
2. Wednesday, September 18, 2024
3. Monday, September 23, 2024
4. Tuesday, September 24, 2024
5. Thursday, September 26, 2024
6. Friday, September 27, 2024

Dated: September 13, 2024

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

/s/ Brian Schaap
BRIAN SCHAAP (DC Bar No. 1780655)
STEFAN J. BACHMAN (SC Bar No. 102182)
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 305-1167 (Schaap)
Brian.Schaap@usdoj.gov
Stefan.Bachman@usdoj.gov
MARK ALBERT RIGAU (CA Bar No. 223610)
Environmental Defense Section
Environment and Natural Resources Division
450 Golden Gate Avenue, Suite 07-6714
San Francisco, CA 94102
Phone: (415) 744-6487
ALASTAIR M. GESMUNDO (CABN 316573)
SAMUEL F. HOBBS (AL Bar No. 9776O19E)
Civil Division
Commercial Litigation Branch
Alastair.M.Gesmundo@usdoj.gov
Samuel.Hobbs@usdoj.gov

-16-   Case No. 3:23-cv-00541-LL-BJC
SECOND JOINT DISCOVERY STATEMENT DESCRIBING UNRESOLVED DISCOVERY DISPUTES

|   |   |   |
|---|---|---|
| 1 |   |   |
| 2 |   | *Attorneys for Plaintiff and Counterclaim-Defendant United States of America* |
| 3 |   |   |
| 4 |   |   |
| 5 | Dated: September 13, 2024 | /s/ Thomas F. Vandenburg (with permission) |
|   |   | THOMAS F. VANDENBURG (SBN 163446) |
| 6 |   | ALICE CHARKHCHYAN (State Bar No. 332670) |
| 7 |   | *Attorneys for Defendant/Cross Defendant/ Counter Claimant/Cross Claimant City of San Diego* |
| 8 |   |   |

-17-   Case No. 3:23-cv-00541-LL-BJC

SECOND JOINT DISCOVERY STATEMENT DESCRIBING UNRESOLVED DISCOVERY DISPUTES