UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.<br><br>                              Defendants. | Case No.: 23cv0541-LL-BJC<br><br>**ORDER GRANTING MOTION TO DISMISS CITY OF SAN DIEGO'S AMENDED SECOND THROUGH FOURTH COUNTERCLAIMS WITH LEAVE TO AMEND**<br><br>**[ECF No. 38]** |

Pending before the Court is Plaintiff/Counter-Defendant United States' Motion to Dismiss Defendant/Counter-Claimant City of San Diego's Amended Second Through Fourth Counterclaims Pursuant to Rules 12(b)(1) and 12(b)(6) (the "Motion to Dismiss"). ECF No. 38. The City opposed the Motion to Dismiss and the United States replied. ECF Nos. 47, 50. The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the Motion to Dismiss **WITH LEAVE TO AMEND**.

I.     **BACKGROUND**

The United States, by the authority of the Attorney General and on behalf of the Department of the Navy acting under the authority of the President of the United States, sued the City of San Diego, the San Diego Unified Port District, and the San Diego County

Regional Airport Authority pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, ("CERCLA") § 107(a),[1] to recover over sixteen million dollars in costs it incurred in responding to the release of hazardous substances at Installation Restoration Site 12, Boat Channel Sediments, former Naval Training Center in San Diego, California (the "Site"). ECF No. 25, ¶ 1. The United States also seeks a declaratory judgment pursuant to CERCLA § 113(g), for liability to be binding in any subsequent action seeking to recover further response costs not inconsistent with the National Contingency Plan ("NCP"), 40 C.F.R. § 300. *Id.*, ¶ 2.

The United States settled with the San Diego Unified Port District and the San Diego County Regional Airport Authority, which was memorialized into a Consent Decree and subject to a public comment period. ECF No. 65. After the United States confirmed it received no public comments during that period, the Court approved the Consent Decree and entered a final judgment between those parties. ECF Nos. 67–69.

The remaining defendant, City of San Diego, brings five counterclaims against the United States: (1) contribution pursuant to CERCLA § 113(f)(1); (2) cost recovery under CERCLA § 107(a); (3) breach of contract; (4) equitable indemnity; and (5) declaratory relief pursuant to CERCLA § 113(g)(2) and other federal and state laws. ECF No. 31. The United States moves to dismiss counterclaim two for failure to state a claim under Rule 12(b)(6) and counterclaims three and four for lack of subject matter jurisdiction under Rule 12(b)(1). ECF No. 38.

## II.   LEGAL STANDARD

A party may move to dismiss based on the Court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff has the burden of establishing that this Court has subject

---

[1] Practitioners often cite to specific sections in CERCLA rather than where it is codified in the U.S. Code, e.g., CERCLA § 107(a) instead of 42 U.S.C. § 9607(a). *See Crescent Mine, LLC v. Bunker Hill Mining Corp.*, No. 2:21-cv-00310-DCN, 2022 WL 612394, at *3 n.2 (D. Idaho Mar. 2, 2022) (noting the same). Similarly, this Court uses them interchangeably.

matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Challenges to subject matter jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Facial challenges assert that the allegations are insufficient to invoke federal jurisdiction, while factual challenges dispute the truth of legally sufficient allegations. *Id*. The court resolves a facial challenge "as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor" to determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Conversely, if a defendant brings a factual challenge, "usually by introducing evidence outside the pleadings," a plaintiff must support "her jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *Id.* (quotation marks and citation omitted).

If the Court has jurisdiction to address the merits, a complaint may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The Court evaluates whether a complaint states a cognizable legal theory, sufficient facts, and a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Still, courts are not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

/ / /

## III.   DISCUSSION

The United States argues the City has not sufficiently alleged a cause of action for its second counterclaim and that subject matter jurisdiction lacks for its third and fourth counterclaims. ECF No. 38, at 3.

### A.   Second Counterclaim, Cost Recovery under CERCLA § 107(a)

CERCLA "is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994). Under CERCLA § 107(a), a private party may "recover expenses associated with cleaning up contaminated sites." *United States v. Atl. Research Corp.,* 551 U.S. 128, 131 (2007).

To establish a prima facie claim for recovery of response costs under CERCLA § 107(a)(4)(B), a private party like the City must demonstrate:

> (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a).

*3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1358 (9th Cir. 1990) (footnote omitted); *see also City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1002–03 (9th Cir. 2010) (applying § 107(a)(4)(B)'s private-party standard to the municipality seeking to recover its response costs under CERCLA).

The United States argues the City has not adequately pled the third element, that is incurring response costs that were necessary and consistent with the NCP. ECF No. 38-1, at 15. This third element requires a private party to establish its costs are related to a "response," those response costs were "necessary" under the NCP, and those response costs were "consistent" with the NCP. *See City of Spokane v. Monsanto Co.*, No. 2:15-cv-00201-

SMJ, 2017 WL 2945729, at *3 (E.D. Wash. July 10, 2017) (breaking down this element in the same way).

"Response" and "respond" mean "remove, removal, remedy, and remedial action" and "include enforcement activities related thereto." *Key Tronic Corp.*, 511 U.S. at 813 (quoting 42 U.S.C. § 9601(25)). Costs are "necessary" when "an actual and real threat to human health or the environment exist before initiating a response action." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001). "Necessary costs are costs that are 'necessary to the containment and cleanup of hazardous releases.' " *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1263, 1271 (E.D. Cal. 1997) (quoting *United States v. Hardage*, 982 F.2d 1436, 1448 (10th Cir. 1992)). "[C]osts cannot be 'necessary' to the containment and cleanup of hazardous releases 'absent some nexus between the alleged response cost and an actual effort to respond to environmental contamination.' " *City of Spokane v. Monsanto Co.*, 237 F. Supp. 3d 1086, 1094 (E.D. Wash. 2017) (quoting *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005)). The NCP "outlines specific steps for preparing and responding to contaminations that have been promulgated by the EPA under CERCLA section 105," and was "designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 961 (9th Cir. 2013) (quoting *City of Colton*, 614 F.3d at 1003). Response "action is consistent with the NCP if the action, when evaluated as a whole, is in substantial compliance with certain procedural requirements, and results in a CERCLA-quality cleanup." *Id*. (quotation marks and alterations omitted) (citing *Carson Harbor Vill. v. Cnty. of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006)).

Here, the City alleges the following costs it has incurred and will continue to incur in responding to the contaminated sediments in Installation Restoration Site 12, located within the former Naval Training Center in the San Diego Boat Channel (the "NTC Boat Channel"), an area which appears slightly broader than the Site in the operative complaint. *Compare* ECF No. 25, ¶ 1 *with* ECF No. 31, at 13 n.1.

> Counter-Claimant has incurred, and will continue to incur, response costs in relation to the investigation, mitigation, and/or remediation of any and all disposals and/or releases of hazardous substances at the NTC Boat Channel including the response costs related to potential migration of hazardous substances to the NTC Boat Channel from surrounding properties that are not part of the NTC Boat Channel. These response costs are both necessary and consistent with the National Contingency Plan and were incurred in accordance with the applicable CERCLA requirements. These response costs include, but are not limited to, assessment, investigation, evaluation, monitoring, mitigation, removal, and/or remedial action costs and/or enforcement costs, attorney's fees, consultant fees, and related costs, all of which are and will continue to be necessary costs of response consistent with the National Contingency Plan.

ECF No. 31, at 21.

The City argues its "second counterclaim sets forth a proper CERCLA 107(a) claim given that it clearly alleges response costs for cleanup that the City itself *will incur* separate from costs of reimbursement to the United States pursuant to a legal judgment or settlement." ECF No. 47, at 7 (emphasis added). The City elaborates: "*If* the City was forced to accept the [NTC Boat Channel] transfer without proper remedial action taken by the United States, the City *would incur* costs of its own to undertake the required remedial action . . . *if* historical contamination is discovered at the NTC Boat Channel." ECF No. 47, at 9 (emphases added); *see also* ECF No. 31, at 27.

District courts in this Circuit have dismissed CERCLA § 107(a)(4)(B) cost recovery claims when presented with similarly lacking, conclusory, and contingent allegations. In *City of Spokane*, for example, the counter-claimant alleged it "incurred and will continue to incur response costs to investigate," "assess," "and/or remediate" "contamination caused by the City's releases and/or disposal of hazardous substances to the Spokane River," along with "legal and other costs." 237 F. Supp. 3d at 1094–95. There, the court found such allegations to be "conclusory" and "simply insufficient to state a claim" because these are not "facts from which the Court could plausibly conclude that [the counter-claimant's] alleged response costs were necessary to the actual containment and cleanup of hazardous releases" or "consistent with the national contingency plan." *Id.*

After the court dismissed the cost recovery claim with leave to amend, the counter-claimant added more "investigatory and analytical activities to its alleged response costs." *City of Spokane*, 2017 WL 2945729, at *1. These included:

> (1) identification and analysis of historic and current sources of potential contamination … (2) analysis of the potential impacts on the Spokane River … (3) review and analysis of sampling and investigation data … (4) investigation and analysis of the contaminated sediments … (5) analysis of potential source control and remediation options … (6) analysis of PCBs [polychlorinated biphenyl] in the Spokane River … (7) [Potentially Responsible Party] search activities … and (8) numerous other activities.

*Id.* at *2. The counter-claimant argued that "identifying sources of PCB discharges and the locations of the resulting PCB deposits are requisite first steps to any cleanup," and so it has incurred and will continue to incur "response costs to assess and investigate, assess, identify, trace, quantify and feasibly remove and/or remediate contamination." *Id.* at *4. The counter-claimant also alleged that the counter-defendant's PCB discharges in the Spokane River create "significant contingent liability" for the counter-claimant, which "may arise" from this lawsuit and "potential future federal, state, or local regulatory actions." *Id.* at *3.

Once again, the court there concluded the counter-claimant's "allegations contain no facts from which the Court could plausibly conclude that [its] alleged costs were necessary to actual containment or cleanup of hazardous releases" and consistent with the NCP. *Id.* at *4. This was "because there are no allegations that any containment or cleanup have been undertaken by [the counter-claimant]." *Id.* So, even though "certain legal expenses relating to identifying other potentially responsible parties" and "certain investigative costs may be recoverable under CERCLA" when tied to the actual containment or cleanup of hazardous releases, there was no indication that the counter-claimant's "investigative activities" were undertaken "for any purpose other than evaluating its liability and defending against legal claims," which "are not recoverable." *See id.* at *4; *see also Hardage*, 982 F.2d at 1448 (holding that costs of defending against legal claims are not

recoverable under § 107(a)); *Atl. Research Corp.* 551 U.S. at 139 ("§ 107(a) permits a [party] to recover only the costs it has 'incurred' in cleaning up a site"); *San Diego Unified Port Dist. v. Monsanto*, 309 F. Supp. 3d 854, 865 (S.D. Cal. 2018) ("Investigation costs may support a CERCLA cost recovery claim" only if they are "necessary to the cleanup of hazardous wastes," not merely investigative "costs in connection with this litigation."). Thus, that court dismissed counter-claimant's amended cost recovery claim with prejudice.

  Similar to the *City of Spokane*, the City here alleges no facts from which the Court can plausibly conclude it already incurred costs related to an actual containment or cleanup response that is necessary and consistent with the NCP. In fact, the City's allegations are more lacking, conclusory, and contingent than the counter-claimant's in *City of Spokane*, appearing nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678; *see also San Diego Unified Port Dist.*, 309 F. Supp. 3d at 865 (dismissing the counter-claimant's cost recovery claim when presented with similar allegations because they were "insufficient to plausibly support an inference that [the counter-claimant] has incurred response costs necessary and addressed to an actual containment and cleanup of hazardous releases under CERCLA"); *id.* at 865 n.4 ("The CERLCA claim is also subject to dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6) due to insufficient factual allegations as to necessary response costs.").

  The City's argument that—if it were forced to accept the NTC Boat Channel transfer from the United States, if historical contamination is discovered in it, and if proper remedial action was not and will not be taken by the United States, then it would incur costs of its own apart from this litigation to undertake the required remedial action—only underscores that it has not yet incurred necessary response costs consistent with the NCP. *See In re Dant & Russell, Inc.*, 951 F.2d 246, 249 (9th Cir. 1991) ("Under CERCLA's scheme for private action, response costs may not be recovered when there has been no commitment of resources for meeting these costs. Section 9607(a)(4)(B) permits an action for response costs 'incurred'—not 'to be incurred.' "); *City of Spokane*, 2017 WL 2945729, at *4

("[Section 107] does not provide a means for a party that fears it may face liability for some potential future cleanup costs to preemptively bring an action against another party it believes may be liable for those costs."). The current set of contingent circumstances also falls well short of the City having already incurred the cost of an existing legal obligation to pay to respond to any remaining hazardous substances in the NTC Boat Channel. *See ASARCO LLC v. Atl. Richfield Co.*, LLC, 975 F.3d 859, 866 (9th Cir. 2020) ("[Whether] a cost has been 'incurred' may be based upon an existing legal obligation. However, the mere possibility, even the certainty, that an obligation to pay will arise in the future does not establish that a cost has been incurred, but rather establishes that a cost may be incurred, or will be incurred.") (quoting *Trimble v. Asarco, Inc.*, 232 F.3d 946, 958 (8th Cir. 2000)).

Because the City has failed to plead enough facts plausibly establishing it has incurred costs related to an actual containment or cleanup response that is necessary and consistent with the NCP, the second counterclaim is **DISMISSED**.

**B.     Third and Fourth Counterclaims, Breach of Contract and Equitable Indemnity**

In its counterclaim, the City alleges it conveyed land to the United States in 1916 so it could construct and use what came to be known as the Naval Training Center ("NTC"). ECF No. 31, at 15. The NTC closed around 1997. *Id*. Beginning in 2000, the United States conveyed NTC parcels back to the City and other entities for redevelopment. *Id*. The United States remains the owner of the NTC Boat Channel, though, along with the Marine Corps Recruit Depot and some other properties within watershed draining to the NTC Boat Channel. *Id*.

In 2000, the City and the United States entered into a Memorandum of Agreement ("MOA"). *See id*. at 49–268. The MOA lays out terms under which the City agrees to accept transfer of Parcels IIIB and VII from the United States, an area which the City says is synonymous with the NTC Boat Channel, including the Site in the operative complaint. *Id*. at 13 n.1, 16. The MOA states Parcels IIIB and VII were "believed to contain sediments

impacted with various contaminants." *Id*. at 52. Before the City accepts transfer, then, the MOA states the United States shall "take all remedial action necessary to protect human health and the environment" and "obtain site closure from appropriate regulatory authorities based on the projected use of Parcel[s] IIIB [and VII], as described in the NTC San Diego Reuse Plan dated August 1998." *Id*.

In 2019, the United States submitted a final remedial action completion report to the San Diego Regional Water Quality Control Board ("Water Board") regarding its Site cleanup. *Id*. at 26. The Water Board said it had "no further comment" rather than saying it would take "no further action." *Id*. The City alleges that at best the Water Board's response foreclosed future liability for Installation Restoration Site 12, not necessarily all of Parcels IIIB and VII. *Id*. According to the City, this is because the United States' investigation and remediation failed to include the banks, slopes, rip rap, shoreline, and shallow areas of Parcels IIIB and VII. *Id*. The City also details other ways in which it believes the United States has failed to properly remedy Parcels IIIB and VII. *See id*. at 21–29. If Parcels IIIB and VII are transferred to the City, and if the Water Board requires more investigation and remediation to current state standards, the City fears liability. *Id*. at 25. By not taking all remedial action necessary to protect health and the environment and not obtaining site closure from appropriate regulatory authorities, the City argues the United States has not fulfilled the conditions necessary to transfer Parcels IIIB and VII to it and therein breach the MOA. *Id*. The City has therefore refused to accept transfer of Parcels IIIB and VII from the United States over the last few years. *Id*. at 26–29.

The City asks this Court for equitable relief, including orders to (1) prohibit the United States from transferring Parcels IIIB and VII to it until the United States can fully demonstrate it has taken all remedial action necessary to protect health and the environment and obtained site closure from appropriate regulatory authorities per the MOA; (2) compel the United States to take all remedial action necessary to protect health and the environment and obtain site closure from appropriate regulatory authorities for Parcels IIIB and VII per the MOA; (3) prohibit the United States from transferring Parcels IIIB and VII to it unless

the United States provides a CERCLA covenant for each parcel to the City per the MOA; (4) declare the City has no legal duty to accept transfer of Parcels IIIB and VII due to the United States breaching the MOA; and (5) rescind the MOA parts concerning transfer of Parcels IIIB and VII to the City due to the United States breaching the MOA. *Id*. at 31–32. The City also asks this Court for indemnity, be it total or partial, equitable, implied, and/or expressed from the United States, just in case the City is held liable for the claims asserted by the United States or others relating to contamination in or around Parcels IIIB and VII. *Id*. at 33.

After the Motion to Dismiss was fully briefed, the United States filed a counterclaim-in-reply for breach of contract. ECF No. 73. In it the United States alleges it performed its obligations under the MOA and that it is the City who breaches the MOA by refusing to accept transfer of Parcels IIIB and VII. *Id*. at 13–22. The United States in turn asks this Court to order the City to accept its transfer of Parcels IIIB and VII. *Id*.

As a threshold matter, it "is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). "Any analysis of claims against the United States therefore begins with the jurisdictional question of whether sovereign immunity has been waived as to the claims at issue." *Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994, 1025 (N.D. Cal. 2017). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text," "will not be implied," and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

CERCLA § 120(a)(1), codified at 42 U.S.C. § 9620(a)(1), is an instance of Congress unequivocally waiving the federal government's sovereign immunity: "Each department, agency, and instrumentality of the United States (including the executive, legislative, and judicial branches of government) shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title." This is how

the Court has clear jurisdiction over the City's counterclaims one, two, and five, which are all explicitly pled under CERCLA.

By contrast, the City's counterclaims three and four for breach of contract and equitable indemnity were not pled under CERCLA. Indeed, the City does not allege under what grounds it believes the United States has waived sovereign immunity anywhere in its counterclaim. *See generally* ECF No. 31. It is only in the City's opposition that it lists numerous theories for how it can sue the United States for counterclaims three and four. *See generally* ECF No. 47. This includes the Administrative Procedures Act, Little Tucker Act, and the position that when the federal government files a CERCLA action it waives its sovereign immunity for non-CERCLA compulsory counterclaims, such as recoupment. *See id*. at 20–30. In reply, the United States argues that these waivers are not properly before the Court because the City did not plead them in its counterclaim. *See, e.g.*, ECF No. 50, at 11–12 ("[T]he City asserts in its opposition brief—for the first time—that 5 U.S.C. § 702 of the Administrative Procedure Act ('APA') waives immunity . . .").

The Court agrees. "A party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity." *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987). This applies to those suing the United States with "a counter claim." *See United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1493 (9th Cir. 1995). The City may show that the United States waived its immunity under such-and-such ground, but the City must allege whatever grounds it intends to rely on in its counterclaim. *See Baxter v. United States*, No. 15-cv-02138-YGR, 2016 WL 467499, at *4 (N.D. Cal. Feb. 8, 2016) ("The amended complaint must clearly identify *as to each claim for relief*: (1) a waiver of sovereign immunity, where applicable, (2) the jurisdictional basis for this Court to adjudicate the claim, and (3) the legal basis for the claim."); *La Casa de Buena Salud v. United States*, No. CIV 07-238 JB/RHS, 2008 WL 2323495, at *12 (D.N.M. Mar. 21, 2008) ("A complaint must demonstrate the basis for federal jurisdiction, and, in an action against the United States, the plaintiff must affirmatively state the jurisdictional basis for the waiver of sovereign immunity.").

1    Because the City has failed to plead how the United States has waived its sovereign
2    immunity for counterclaims three and four, they are **DISMISSED**.

3    **IV.    LEAVE TO AMEND**

4    Courts have discretion to grant leave to amend a complaint "when justice so
5    requires." Fed. R. Civ. P. 15(a)(2). This discretion is guided by the strong federal policy
6    favoring dispositions on the merits and permitting amendments with "extreme liberality."
7    *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In deciding whether
8    to grant such leave, courts consider five factors: (1) "undue delay," (2) "bad faith or dilatory
9    motive on the part of the movant," (3) "repeated failure to cure deficiencies by amendments
10   previously allowed," (4) "undue prejudice to the opposing party," and (5) "futility of
11   amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

12   Of these factors, undue prejudice is the "touchstone of the inquiry" and "carries the
13   greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).
14   "The party opposing amendment bears the burden of showing prejudice." *DCD Programs*,
15   833 F.2d at 187. "Absent prejudice, or a strong showing of any of the remaining *Foman*
16   factors, there exists a *presumption* . . . in favor of granting leave to amend." *Eminence*
17   *Cap.*, 316 F.3d at 1052.

18   Here, the City seeks leave to amend for any dismissed counterclaims, including if
19   the Court finds "that the City has not adequately" pled an APA "claim based on a federal
20   agency" or "officer's failure to act as required in an official capacity." ECF No. 47, at 29,
21   31. The United States cursorily opposes that request, raising just two factors to consider.
22   First, that there "are no apparent amendments that can cure the lack of subject matter
23   jurisdiction for the non-CERCLA" counterclaims, and second, that the "City has been on
24   notice of the failings in its CERCLA cost recovery" counterclaim and chose "not to amend"
25   it adequately. ECF No. 50, at 12.

26   On the failure to cure point, the argument seems to be that after the United States
27   moved to dismiss the City's original counterclaim, the City amended its counterclaim and
28   failed to remedy many of the defects the United States correctly identified. *See* ECF Nos.

8, 20, 31. That previous motion was mooted when the United States amended its complaint, though, which is why the City amended its counterclaim. *See* ECF Nos. 25, 43. The City never had the Court's input on any deficiencies with its counterclaim. On the futility point, the United States has cast doubt on whether the City can cure the deficiencies with specific counterclaims, but it may not be impossible.

The Court also notes that despite the United States moving to dismiss the City's breach of contract and related equitable indemnity counterclaims for lack of subject matter jurisdiction, it later filed a counterclaim-in-reply for breach of that same contract, inviting this Court to help determine who must own and maintain Parcels IIIB and VII going forward. *See generally* ECF No. 73. Resolving that disagreement seems to be in the best interest of both parties equally.

Under these circumstances, the *Foman* factors tip in favor of amendment. The City may amend its counterclaim. Any amended counterclaim "must be complete in itself without reference to the superseded pleading." S.D. Cal. CivLR 15.1. Claims not re-alleged in an amended pleading will be considered waived. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend may be considered "waived if not repled").

## V. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion to Dismiss **WITH LEAVE TO AMEND**. Within **thirty (30) days** of this Order, the City may amend its counterclaim.

**IT IS SO ORDERED**.

Dated:  September 17, 2024

_____
Honorable Linda Lopez
United States District Judge