TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

STEFAN J. BACHMAN (SC Bar No. 102182)
BRIAN SCHAAP (DC Bar No. 1780655)
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 616-6536

MARK ALBERT RIGAU (CA Bar No. 223610)
Environmental Defense Section
450 Golden Gate Avenue, Suite 07-6714
San Francisco, CA 94102
Phone: (415) 744-6487

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ALASTAIR M. GESMUNDO (CABN 316573)
SAMUEL F. HOBBS (AL Bar No. 9776O19E)
Commercial Litigation Branch
Corporate Financial Litigation Section
Phone: (202) 616-8077
Email: Samuel.Hobbs@usdoj.gov
*Attorneys for Plaintiff United States of America*

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et. al.<br>Defendants. | Case No. 3:23-cv-00541-LL-BJC<br><br>**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS THE CITY OF SAN DIEGO'S AMENDED COUNTERCLAIMS** |

i

1

## TABLE OF CONTENTS

2   TABLE OF AUTHORITIES ....................................................................... III

3   BACKGROUND ....................................................................................... 1

4   STANDARD OF REVIEW ........................................................................ 3

5   ARGUMENT ............................................................................................ 3

6   I.   The Recoupment Counterclaim Should Be Dismissed for Lack of Subject
7        Matter Jurisdiction and for Failure to State a Claim. ............................... 3

8        A.   CERCLA bars recoupment counterclaims because they are
             incompatible with CERCLA's remedial design. ............................... 4

9        B.   The recoupment counterclaim is duplicative of the contribution
10            counterclaim. ........................................................................... 8

11  II.  The APA Counterclaim Should Be Dismissed for Lack of Subject Matter
        Jurisdiction and for Failure to State a Claim. ...................................... 9

12       A.   The APA does not provide judicial review of the City's third
13            counterclaim. ........................................................................... 9

14            1.   The Tucker Act impliedly forbids the relief sought because
                   the APA counterclaim asserts contract-based rights and
15                 remedies. ......................................................................... 9

16            2.   The City seeks certain injunctive relief that is unavailable
                   under the APA. ................................................................ 12

17            3.   The APA counterclaim should be dismissed because the
18                 City has an adequate alternative remedy under CERCLA. ......... 14

19       B.   The APA counterclaim should be dismissed for failure to state a
              claim. ................................................................................... 16

20  III. The First and Fourth Amended Counterclaims Should Be Dismissed for
        Failure to State a Claim to the Extent They Reallege a Cost Recovery
21      Claim Under CERCLA § 107 .............................................................. 17

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Arkema Inc. v. Anderson Roofing Co., Inc.*,
4
   719 F. Supp. 2d 1318 (D. Or. 2010) ............................................................ 25

5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................... 22, 23, 26
6

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
7
   459 U.S. 519 (1983) ............................................................ 22

8

*Bell Atl. Corp. v. Twombly*,
9
   550 U.S. 544 (2007) ............................................................ 9, 22

10

*Benzman v. Whitman*,
11
   523 F.3d 119 (2nd Cir. 2008) ............................................................ 20

12

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ............................................................ 20
13

*Calif. Dep't of Toxic Substances Control v. NL Indus., Inc., Case No. 2:20-cv-11293-SVW-AGR*,
14
15
   2021 WL 6496813 (C.D. Cal. Dec. 22, 2021) .................................. 11, 12

16

*City of Spokane v. Monsanto Co.*,
17
   237 F. Supp. 3d 1086 (E.D. Wash. 2017) .................................... 26

18

*For Biological Diversity, Inc. v. DP Am. Prod. Co.*,
   704 F.3d 413 (5th Cir. 2013) ............................................................ 21
19

*Kokkonben v. Guardian Life Ins. Co. of Am.*,
20
   511 U.S. 375 (1994) ............................................................ 9

21

*Leite v. Crane Co.*,
22
   749 F.3d 1117 (9th Cir. 2014) ............................................................ 9

23

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
24
   519 F.3d 1025 (9th Cir. 2008) ............................................................ 9

25

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   575 U.S. 209 (2012) ............................................................ 16
26

27

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ............................................................ 16

28

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ................................................................... 19

*New York v. Gen. Elec. Co., No. 1:14-CV-747,*
    2015 WL 12748007 (N.D.N.Y. Sept. 29, 2015) ........................... 11, 12

*North Side Lumber Co. v. Block,*
    753 F.2d 1482 (9th Cir. 1985) ...................................................... 15, 16

*Norton v. S. Utah Wilderness Alliance,*
    542 U.S. 55 (2004) ......................................................................... 19

*PPG Inds., Inc. v. United States,*
    52 F.3d 363 (D.C. Cir. 1995) ........................................................ 18

*Resort Cntr. Assoc., LLC v. Regan,*
    2023 WL 3676680 (10th Cir. 2023) .............................................. 21

*Rimmer v. Holder,*
    700 F.3d 246 (6th Cir. 2012) ........................................................ 21

*S. Cal. All. of Publicly Owned Treatment Works v. EPA,*
    8 F.4th 831 (9th Cir. 2021) ........................................................... 23

*Salarian v. Blinken,*
    2024 WL 4008758 at *3, Case No. 23-cv-1315-LL-BJC, (S.D. Cal., August 24), .... 22

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ........................................................ 9

*Tarkett v. USAA Gen. Indem. Co.,*
    2024 WL 2925325 at *7 (S.D. Cal. June 10, 2024) ...................... 14

*United Aeronautical Corp. v. U.S. Air Force,*
    80 F.4th 1017 (9th Cir. 2023) ....................................................... 16

*United States v. Am. Color & Chem. Corp.,*
    858 F. Supp. 445 (M.D. Pa. 1994) ................................................ 11, 13

*United States v. Atl. Research Corp.,*
    551 U.S. 128 (2007) ....................................................................... 22

*United States v. Atlas Minerals and Chemicals, Inc.,*
    797 F. Supp. 411 (E.D. Pa. 1992) ................................................. 13

iv

*United States v. Iron Mountain Mines, Inc.*,
   812 F. Supp. 1528 (E.D. Cal. 1992) ................................................. 12

*United States v. Iron Mountain Mines, Inc.*,
   881 F. Supp. 1432 (E.D. Cal. 1995) ............................................. 11, 12

*United States v. Jones*,
   131 U.S. 1 (1889) ...................................................................... 18

*United States v. Keystone Sanitation Co.*,
   867 F. Supp. 275 (M.D. Pa. 1994) .............................................. 11, 13

*United States v. Rohm and Haas, Co.*,
   939 F. Supp. 1157 (D.N.J. 1996) ................................................... 11

*United States v. Washington*,
   853 F.3d 946 (9th Cir. 2017) .......................................................... 9

*Vill. of Bald Head Island v. Army Corp of Eng'rs*,
   714 F.3d 186 (4th Cir. 2013) ........................................................ 19

*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010) .................................................. 14

**Statutes**

5 U.S.C. § 702 ................................................................................. 16

5 U.S.C. § 706 ............................................................... 19, 20, 22

28 U.S.C. § 1346 ............................................................................. 15

28 U.S.C. § 1491 ........................................................................ 15, 16

40 C.F.R. § 300.400 ........................................................................ 20

42 U.S.C. § 9601 ...................................................................... 10, 25

42 U.S.C. § 9607 .................................................................. 10, 11, 25

42 U.S.C. § 9613 ............................................................................. 10

42 U.S.C. § 9659 ............................................................................. 21

**Other Authorities**

Federal Rule of Civil Procedure 12 ................................................. 9

The United States, on behalf of the United States Department of the Navy (the "Navy"), moves to dismiss the City of San Diego's (the "City") second amended counterclaim for recoupment, third amended counterclaim for relief under the Administrative Procedure Act ("APA"), and first and fourth amended counterclaims to the extent they reassert a cost recovery claim.

## BACKGROUND

On May 30, 2000, the United States and the City entered into a Memorandum of Agreement ("MOA"), pursuant to which the Navy agreed to transfer seven parcels of land to the City at no cost. *See* ECF No. 96 at 20 ¶ 16; ECF No. 31 at 51.[1] The land to be transferred includes Parcels III-B and VII (the "Boat Channel Parcels"), which are part of the boat channel that bisects the former Naval Training Center San Diego (the "Naval Training Center"). ECF No. 96 at 16 ¶ 1; ECF No. 31 at 52–53. The MOA acknowledges that the Boat Channel Parcels were "believed to contain sediments impacted with various contaminants." ECF No. 96 at 20 ¶ 16; ECF No. 31 at 52–53. Prior to transfer, then, the Navy agreed to "take all remedial action necessary to protect human health and the environment and [to] obtain site closure from appropriate regulatory authorities based on the projected use of" the Boat Channel Parcels. *Id.*

The Navy spent years investigating and preparing a remediation plan for the contaminated portion of the Boat Channel Parcels referred to as Installation Restoration Site 12 (the "Site"). *See* ECF No. 96 at 23 ¶ 24. In 2017, the Navy issued its final Record of Decision and Remedial Action Plan, in which the Navy selected the remedy of dredging and removing the contaminated sediments from the Site. *See id.* at 25 ¶ 27. In 2019, the Navy issued a final Remedial Action Completion Report, documenting that the remediation was complete. *See id.* at 35 ¶ 49. In 2022, the Navy attempted to transfer the Boat Channel

---

[1] The MOA is fairly incorporated in the City's amended counterclaims, and a copy of the MOA is attached to the City's original counterclaims, ECF No. 31 at 50–268.

1

Parcels to the City, but the City refused to accept transfer on the basis that the Navy's remediation was inadequate. *Id.* at 36–37 ¶ 54–55.

In 2023, the United States filed this action against the City asserting two claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"): (1) a § 107(a) claim to recover $16 million in costs incurred to clean up the release of hazardous substances at the Site; and (2) a § 113(f) claim for a declaratory judgment for liability to be binding in any subsequent action seeking to recover further response costs. ECF No. 25 at 2 ¶¶ 1–2.[2]

In response, the City asserted five counterclaims against the United States: (1) contribution pursuant to CERCLA § 113(f)(1); (2) cost recovery under CERCLA § 107(a); (3) breach of contract; (4) equitable indemnity; and (5) declaratory relief pursuant to CERCLA § 113(g)(2). ECF No. 31. The United States moved to dismiss the second counterclaim for failure to state a claim and the third and fourth counterclaims for lack of subject matter jurisdiction. ECF No. 38.

While the motion to dismiss was pending, the United States filed a counterclaim-in-reply against the City for breach of contract. ECF No. 73.

The court granted the United States' motion to dismiss the second through fourth counterclaims and gave the City leave to amend. ECF No. 89. The City then filed four amended counterclaims against the United States: (1) contribution pursuant to CERCLA § 113(f)(1); (2) recoupment; (3) declaratory and injunctive relief under the APA; and (4) declaratory relief pursuant to CERCLA § 113(g)(2). ECF No. 96. The United States moves to dismiss the second and third amended counterclaims for lack of subject matter jurisdiction and for failure to state a claim. The United States also moves to dismiss the

___

[2] The United States also asserted claims against the San Diego Unified Port Authority and the San Diego County Regional Airport Authority, which the parties settled as memorialized in the Consent Decree and final judgment. ECF Nos. 65, 67–69.

first and fourth amended counterclaims to the extent they attempt to reallege a cost recovery claim under CERCLA § 107(a) for failure to state a claim.

## STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the counterclaimant has the burden of establishing jurisdiction. *Kokkonben v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For facial challenges to subject matter jurisdiction, like here, the court should accept the counterclaimant's allegations as true and determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the counterclaim must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts should "accept factual allegations in the [counterclaim] as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts should not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## ARGUMENT

**I.     The Recoupment Counterclaim Should Be Dismissed for Lack of Subject Matter Jurisdiction and for Failure to State a Claim.**

In the second amended counterclaim, the City alleges that, because the United States is liable under CERCLA for contaminating the Boat Channel Parcels, the City is "entitled to recoupment diminishing or defeating the recovery of the United States." ECF No. 96 at 42. CERCLA bars recoupment counterclaims because they are incompatible with the statute's remedial scheme, and the court thus lacks jurisdiction over this counterclaim. The court should also dismiss the recoupment counterclaim for failure to state a claim because, as pled, it is duplicative of the City's contribution counterclaim under CERCLA.

3

**A.  CERCLA bars recoupment counterclaims because they are incompatible with CERCLA's remedial design.**

Recoupment is a defense through which a defendant may recoup damages arising out of the same transaction or occurrence as the plaintiff's claims, so long as those damages do not exceed the amount sought by the plaintiff. *United States v. Washington*, 853 F.3d 946, 968 (9th Cir. 2017). Hypothetically, a defendant could establish a recoupment counterclaim through innumerable theories of liability under state law. This broad spectrum of liability is inconsistent with CERCLA, which defines a limited scope of liability for the United States and other parties.

CERCLA creates a comprehensive remedial scheme for the recovery and apportionment of costs incurred in the cleanup of hazardous substances. CERCLA creates two causes of action relevant here. Under a § 107 cost recovery claim, a party who properly incurs costs in a CERCLA response action can recover certain of those costs from other potentially responsible parties. *See* 42 U.S.C. § 9607(a). Under a § 113 contribution claim, a party who is being sued under § 107 may seek contribution from other potentially responsible parties. *See* 42 U.S.C. § 9613(f)(1). A defendant in a cost recovery claim may thus file against the plaintiff a contribution counterclaim seeking to offset the plaintiff's cost recovery through an allocation process conducted by the court. *Id.* In this way, a contribution counterclaim functions like a recoupment counterclaim.

But unlike the various recoupment theories of liability available under state law, CERCLA defines when a party is responsible, the hazardous substances at issue, which costs are recoverable, what evidence is permissible, an exclusive list of defenses, and so on. *See generally* 42 U.S.C. 9601 *et. al*. A recoupment counterclaim may not impose a different standard of liability than what Congress selected and bypass the exclusive defenses that Congress enumerated.

For these reasons, courts have rightly held that CERCLA bars recoupment counterclaims, concluding that permitting recoupment counterclaims would contradict

congressional intent.[3] "Congress enacted CERCLA to be its own statutory framework," and "allowing recoupment claims in effect allows remnants of the common law to infect what Congress meant to establish with CERCLA—the otherwise abolishment of common law doctrine with respect to clean-up of hazardous waste sites." *Rohm and Haas, Co.*, 939 F. Supp. at 1162–63. The court added that "since CERCLA provides [defendants] with clear statutory relief similar to that which they seek [through recoupment], it is reasonable to conclude, especially in light of recoupment's common law origins and history, that the doctrine not be applicable in the CERCLA context." *Id.* at 1163.

In *United States v. Iron Mountain Mines, Inc.*, the court thoroughly examined CERCLA and the recoupment doctrine and reached the same result. 881 F. Supp. at 1454–55. The court determined that finding a waiver of sovereign immunity for a recoupment counterclaim in CERCLA actions could result in "rather extraordinary exposure" to "government entities." *Id.* at 1453–54. "In the case of the federal government," the court explained, "suit under CERCLA would expose it to counterclaims under state tort law for any of its activities during the cleanup." *Id.* The court noted that CERCLA provides a negligence or arbitrary and capricious standard for actions challenging certain cleanup activities, e.g., 42 U.S.C. §§ 9607(d)(1) and 9612(j)(2), and allowing state law claims may impose standards of review that are inconsistent with CERCLA's statutory provisions. *See id.* at 1454. The *Iron Mountain Mines* decision concluded "there is nothing in CERCLA that addresses a recoupment remedy or suggests that by bringing a CERCLA action a

---

[3] *See Calif. Dep't of Toxic Substances Control v. NL Indus., Inc.*, Case No. 2:20-cv-11293-SVW-AGR, 2021 WL 6496813, at *2 (C.D. Cal. Dec. 22, 2021); *New York v. Gen. Elec. Co.*, No. 1:14-CV-747, 2015 WL 12748007, at *12 (N.D.N.Y. Sept. 29, 2015); *United States v. Rohm and Haas, Co.*, 939 F. Supp. 1157, 1162–63 (D.N.J. 1996); *United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432, 1454–55 (E.D. Cal. 1995); *United States v. Keystone Sanitation Co.*, 867 F. Supp. 275, 282–83 (M.D. Pa. 1994); *United States v. Am. Color & Chem. Corp.*, 858 F. Supp. 445, 453 (M.D. Pa. 1994).

government agency exposes itself to claims under other state or federal statutory and common law schemes as to which it would otherwise be immune from suit." *Id.* at 1454.

Similarly, in *California Department of Toxic Substances Control v. NL Industries, Inc.*, the court held that CERCLA barred counterclaims for recoupment. 2021 WL 6496813 at *2. The court observed that the "small number of courts" which "have grappled with the nuanced relationship between a common law claim for recoupment and CERCLA's statutory remedies . . . have found recoupment unavailable in the context of CERCLA." *Id.* The court agreed with these decisions that permitting recoupment counterclaims "would undermine the statutory scheme devised by Congress, which permits only those defenses listed in CERCLA section 107(b) to be asserted during the liability phase of a CERCLA cost recovery action." *Id.* (citing *New York v. Gen. Elec. Co.*, 2015 WL 12748007, at *12).

In briefing on the previous motion to dismiss, the City relied on several cases in which a defendant asserted a recoupment counterclaim in a CERCLA case to show that such counterclaims are permitted. *See* ECF No. 47 at 21 (listing cases). These cases do not withstand scrutiny.

One of these cases later reversed itself and held that CERCLA does not permit recoupment counterclaims. The City cited *United States v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1552 (E.D. Cal. 1992) ("*Iron Mountain Mines I*"), which held that the United States waived its immunity to a recoupment counterclaim by filing a CERCLA claim. However, in the same case, the court later reconsidered and held that recoupment counterclaims are incompatible with CERCLA: "to permit a claim made under another legal regime, brought by way of recoupment, simply because the government brought suit under CERCLA, could well undermine CERCLA's scheme of allocating cleanup costs and of setting standards for liability for government activities." *Iron Mountain Mines*, 881 F. Supp. at 1456 ("*Iron Mountain Mines II*"). The court's scholarly analysis in *Iron Mountain Mines II* is exhaustive. The court got it right the second time.

Another case upon which the City relies actually supports the United States' position. In *United States v. Atlas Minerals and Chemicals, Inc.*, after noting that a specific waiver of immunity was not needed for a recoupment counterclaim, the court found that the recoupment counterclaims were redundant with the relief available under CERCLA and likely due to be dismissed: "[A]t first glance, the court takes the view that . . . the defendant's recoupment claims should therefore be dismissed" as redundant "because they would not afford the defendants any additional relief" beyond what is already available under CERCLA. 797 F. Supp. 411, 422 (E.D. Pa. 1992). The court deferred a final ruling because the issue had not been fully briefed. *Id.*

The remaining cases stand only for the general principle that recoupment counterclaims are permitted against the United States. They do not address the issue here: whether CERCLA bars recoupment counterclaims because they are inconsistent with CERCLA's remedial scheme. Once courts started grappling with this issue, they have consistently held that CERCLA bars recoupment counterclaims.

The *Iron Mountain Mines* reversal was part of a trend. Each of the cases relied upon by the City was decided between 1986 and 1993. Subsequently, courts squarely addressed whether recoupment counterclaims are consistent with CERCLA's remedial scheme and found that they are not. Thus, in 1994, the court held in *United States v. American Color and Chemical Corporation* that "permitting defendants to interject claims of recoupment in defense of CERCLA claims filed against them by the United States would undermine the statutory scheme devised by Congress." 858 F. Supp. at 453. That same month, the court in *United States v. Keystone Sanitation Co.* noted that allowing recoupment counterclaims "seems inconsistent with the statutory scheme and the case law pertinent to other CERCLA pleading limitations" because it would undermine "the settled law pertinent to defensive pleading, which recognizes only a few limited defenses to liability and costs, and does not permit counterclaims that attempt to subvert these limitations." 867 F. Supp.

7

at 282–83. Since then, courts have uniformly rejected recoupment counterclaims in CERCLA cases.

This court should follow these later, well-reasoned decisions and dismiss the City's recoupment counterclaim for lack of jurisdiction.

**B.** <u>**The recoupment counterclaim is duplicative of the contribution counterclaim.**</u>

"As a matter of judicial economy, courts should dismiss a claim if its duplicative of another claim in the same suit." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010); *see also Tarkett v. USAA Gen. Indem. Co.*, 2024 WL 2925325 at *7 (S.D. Cal. June 10, 2024) (holding that the plaintiff's duplicative contract claims "must be dismissed"). "Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Id.*

Here, the City's allegations for its recoupment counterclaim are identical to its allegations for the contribution counterclaim. *Compare* ECF No. 96 at 39–40 *with id.* at 41–42. The City copies and pastes its allegations from the contribution counterclaim into the body of the count for the recoupment counterclaim and adds: "Based on the above, the City is entitled to recoupment diminishing or defeating the recovery of the United States." *Id.* at 42.

As pled, both claims will also be decided under identical legal standards. The City asserts it is entitled to recoupment because the United States is liable under CERCLA. ECF No. 96 at 41–42 ¶ 71–72. Thus, the City is entitled to recoupment only to the extent the United States is liable for contribution. Consequently, the relief available for recoupment is identical to the relief available for contribution. The City would be able to offset the United States' cost recovery under CERCLA only to the extent the City would be entitled to do so through contribution.

Accordingly, the City's recoupment counterclaim is duplicative of the contribution counterclaim and should be dismissed.

8

**II.    The APA Counterclaim Should Be Dismissed for Lack of Subject Matter Jurisdiction and for Failure to State a Claim.**

Under its APA counterclaim, the City alleges that the United States' investigation and remediation of the Boat Channel violates CERCLA and the MOA. ECF No. 96 at 43–44. The City seeks a medley of injunctive and declaratory relief to compel the United States to redo its allegedly defective performance under the MOA. *Id.* The APA counterclaim should be dismissed for lack of subject matter jurisdiction for three reasons: (1) it improperly asserts a contract-based claim; (2) it demands relief that exceeds the APA's limits; and (3) the City has adequate alternative relief. The APA counterclaim should also be dismissed for failure to state a claim because the Remedial Action Completion Report is not a final agency action and the City fails to adequately state a claim against the Record of Decision and Remedial Action Plan.

**A.    The APA does not provide judicial review of the City's third counterclaim.**

1.    The Tucker Act impliedly forbids the relief sought because the APA counterclaim asserts contract-based rights and remedies.

The APA counterclaim is a transparent attempt to revive the City's breach of contract claim over which this court has no jurisdiction. The Tucker Act provides exclusive jurisdiction in the Court of Federal Claims for contract claims against the United States in excess of $10,000. 28 U.S.C. § 1491(a)(1). The Little Tucker Act provides concurrent jurisdiction in federal district courts for contract claims against the United States for $10,000 or less. 28 U.S.C. § 1346(a)(2). Neither the Tucker Act nor the Little Tucker Act waives immunity in any venue for contract claims against the United States seeking injunctive or declaratory relief. *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir. 1985).[4] Accordingly, this court did not have jurisdiction over the City's breach of contract claim, which sought injunctive and declaratory relief.

---

[4] The Tucker Act permits limited forms of equitable or declaratory relief as enumerated in

9

The City's third amended counterclaim simply substitutes the APA cause of action for the original contract cause of action. *Compare* ECF No. 31 *with* ECF No. 96. But the APA explicitly forecloses this swap. Section 702 of the APA states that nothing in its waiver of immunity "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. This exception "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 575 U.S. 209, 215 (2012).

Under this exception, the Tucker Act impliedly forbids contract-based claims seeking declaratory or injunctive relief. *North Side Lumber Co.*, 753 F.2d at 1485 ("[T]he Tucker Act "impliedly forbids' declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity in suits on government contracts."); *see also Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982) ("[A] plaintiff whose claims against the United States are essentially contractual should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute and enlarged waivers of sovereign immunity, as under the APA.").

To determine if an APA action is a "disguised breach-of-contract claim" impliedly forbidden by the Tucker Act, courts probe "the source of the rights upon which the plaintiff bases its claim" and "the type of relief sought." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023).

Here, the City expressly states that it is entitled to relief under the APA because the United States allegedly breached the MOA. ECF No. 96 at 44 ¶ 79 ("The Remedial Action Completion Report is also inconsistent with the obligations of the United States under the MOA. The Remedial Action Completion Report is arbitrary and capricious because it is

---

28 U.S.C. § 1491(a)(2), but these exceptions do not apply here.

inconsistent with the requirement of the MOA that the United States take all remedial action necessary to protect human health and the environment."); *id* at 45 ¶ 81 ("To remedy these arbitrary and capricious actions in violation of the APA, MOA, NCP, and CERCLA, the City is entitled to declaratory judgment and injunctive relief."). The MOA is thus the source of the City's asserted right to relief under the APA counterclaim.

Additionally, the City exclusively seeks contractual-based relief under the APA counterclaim. The United States will address each relief sought in turn.

First, the City seeks to "set aside" the Record of Decision, Remedial Action Plan, and Remedial Action Completion Report to "prevent the United States from relying upon" the same "in a manner that violates the obligations and conditions precedent it agreed to in the MOA." ECF No. 96 at 44 ¶¶ 80–81. The City acknowledges that the purpose of setting aside these alleged final agency actions is to prevent the United States from transferring the Boat Channel Parcels pursuant to the MOA. The United States relies on the Record of Decision and the Remedial Action Completion Report to show that it has performed its obligations under the MOA. *See* ECF No. 73 at 17–18 ¶¶ 24–28. The City wants to set aside these actions to force the United States to comply with "the obligations and conditions precedent" under the MOA that the City maintains are unsatisfied. In short, the City seeks contract-based relief.

Second, the City seeks to enjoin "the United States from transferring NTC Boat Channel Parcels VII and III-B to the City unless and until the United States can fully demonstrate to this Court that (1) it has taken all remedial action necessary to protect human health and the environment and (2) it has obtained site closure from appropriate regulatory authorities based on the projected uses of Parcels VII and III-B, as described in the NTC San Diego Reuse Plan dated August 1998." ECF No. 96 at 46 ¶ 2. The transfer of the Boat Channel Parcels relates solely to the MOA. The two conditions listed are copied verbatim from the United States' obligations under Paragraphs 2(c) and 4(b) of the MOA. This is a contractual remedy that seeks to excuse the City's failure to perform under the

1  MOA, and to compel the United States to perform its obligations under the court's
2  supervision.[5]

3      Third, the City seeks an order "compelling the United States (1) to take all remedial
4  action necessary to protect human health and the environment and (2) to obtain site closure
5  from appropriate regulatory authorities." ECF No. 96 at 47 ¶ 3. This is a straightforward
6  demand for specific performance. The City asks the court to order the United States to
7  perform its obligations under Paragraphs 2(c) and 3(b) of the MOA. Specific performance
8  is a contractual remedy, which this court does not have jurisdiction to order against the
9  United States. *See, e.g., United States v. Jones*, 131 U.S. 1 (1889).

10     Fourth, the City seeks an order "declaring that the City has no legal duty to accept
11  transfer of NTC Boat Channel Parcels VII and III-B to the City due to the breach of the
12  requirements and provisions of the MOA by the United States." ECF No. 96 at 47 ¶ 4. This
13  remedy asks the court to declare the City's rights and obligations under the MOA and to
14  find the United States in breach of contract. This is a contractual remedy. The City fails to
15  plead any basis for the court to declare the parties' obligations under the MOA.

16     Accordingly, because the MOA is a source of the City's asserted rights and the City
17  unambiguously seeks contractual remedies, the Tucker Act impliedly forbids the City's
18  APA counterclaim. The court should dismiss the APA counterclaim for lack of jurisdiction.

19          2.   The City seeks certain injunctive relief that is unavailable under the
20               APA.

21     The injunctive relief the City seeks under the APA is improper. The APA directs
22  courts to provide two specific forms of relief: to "set aside" unlawful agency action under
23  § 706(2), or to "compel agency action unlawfully withheld or unreasonably delayed" under

24  _____
25  [5] It would be inappropriate to conscript the court as an ongoing contract monitor. *PPG
26  Inds., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("Under settled principles of
27  administrative law, when a court reviewing agency action determines that an agency made
    an error of law, the court's inquiry is at an end: the case must be remanded to the agency
28  for further action consistent with the corrected legal standards.").

§ 706(1). Injunctions, in contrast, are "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

The City seeks an injunction "compelling the United States (1) to take all remedial action necessary to protect human health and the environment and (2) to obtain site closure from appropriate regulatory authorities." ECF No. 96 at 47 ¶ 3. In essence, the City seeks to compel the United States to take additional remedial action in the Boat Channel. This relief is properly considered under § 706(1) of the APA, which authorizes courts to compel agency action unlawfully withheld.

But a § 706(1) claim "can proceed only where a plaintiff asserts that an agency failed to take a ***discrete*** agency action that it is ***required to take***." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). As an initial matter, ordering the United States to perform a contract does not qualify as an agency action under the APA. Performing a contract is a quintessential example of conduct that does not qualify as agency action. *See Vill. of Bald Head Island v. Army Corp of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) ("The term 'action' as used in the APA is a term of art that does not include all conduct such as, for example, constructing a building, operating a program, or performing a contract."). Ordering the United States to "take all remedial action necessary to protect human health and the environment" is not discrete.

The City also does not identify any non-discretionary actions required by statute or regulation. Section 104(a) of CERCLA provides that where there is a release or threat of release of a hazardous substance, "the President is authorized" to take a response action. The term "is authorized," rather than "shall," demonstrates that the United States is permitted considerable discretion and cannot be compelled to implement a response action. The National Contingency Plan also expressly states that agency actions related to Hazardous Substance Response are discretionary:

> Activities by the federal and state governments in implementing this subpart are discretionary governmental functions. This subpart does not create in any private party a right to federal response or enforcement action. This subpart does not create any duty of the federal government to take any response action at any particular time.

40 C.F.R. § 300.400(i)(3); *see also Benzman v. Whitman*, 523 F.3d 119, 131 (2nd Cir. 2008) (holding that this provision in the National Contingency Plan "renders any actions or failures-to-act pursuant to Subpart E discretionary and therefore unreviewable under section 706(1) of the APA").

Because the City cannot identify a discrete, mandatory agency action, the relief sought is unavailable under the APA.

       3.   <u>The APA counterclaim should be dismissed because the City has an adequate alternative remedy under CERCLA.</u>

Section 704 of the APA permits judicial review of "final agency action for which there is no other adequate remedy." The APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Id.* Thus, if another statute provides an adequate remedy, then the APA cannot be used to obtain judicial review.

Here, CERCLA provides an adequate remedy for the relief the City seeks through the APA. At bottom, the City seeks to force the United States to perform additional remediation of the Boat Channel Parcels. *See* ECF No. 96 at 46–47 ¶¶ 1–4. The City alleges that the Navy's remediation of the Boat Channel Parcels failed to comply with CERCLA, and the City fears that it will be on the hook to perform additional remediation after it takes possession. *See id.* at 36 ¶ 52. Through CERCLA, the City could theoretically obtain a complete and adequate remedy for its concerns and the relief it seeks under the APA.

14

The City could assert a citizen suit to compel the United States to correct a violation of or to perform a non-discretionary requirement under CERCLA. *See* 42 U.S.C. § 9659. Under § 9659(a)(1), a person may sue the United States for violating "any standard, regulation, condition, requirement, or order which has become effective" under CERCLA. For relief of a § 9659(a)(1) claim, the statute authorizes courts "to enforce the standard, regulation, condition, requirement, or order concerned" and "to order such action as may be necessary to correct the violation." *Id.* at § 9659(c). Under § 9659(a)(2), a person may sue a federal officer for failure to perform a non-discretionary act or duty under CERCLA. For relief of a § 9659(a)(2) claim, the statute authorizes courts "to order the President or other officer to perform the act or duty concerned." *Id.* at § 9659(c). Thus, the City could seek an order compelling the United States to conduct additional remediation through a CERCLA citizen suit. *See Cntr. For Biological Diversity, Inc. v. DP Am. Prod. Co.*, 704 F.3d 413, 422 (5th Cir. 2013) (Section 9659(a) "authorize[s] citizen suits to enforce [its] requirements and also permit[s] both injunctive relief and civil penalties. Pursuant to CERCLA, the district court may 'order such action as may be necessary to correct the violation.'") (citations omitted).

To be sure, the City's citizen suit would likely fail because, among other potential defects, the City cannot identify a non-discretionary duty that the United States violated or failed to perform. *Resort Cntr. Assoc., LLC v. Regan*, 2023 WL 3676680, at \*3 (10th Cir. 2023) ("To obtain review under § 9659(a), [the plaintiff] needed to identify a nondiscretionary duty."). But the adequacy of the alternative remedy "does not depend on a party's ability to prevail on the merits." *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012). Besides, as explained in section B.2.b *supra*, the City's APA counterclaim fails for the same reason.

A citizen suit is not the only remedy that CERCLA provides. In the event the City incurs future costs to perform required remediation, the City can seek to recover those costs through a § 107 action under CERCLA. *See United States v. Atl. Research Corp.*, 551 U.S.

128, 131 (2007) (noting that under CERCLA § 107(a), a party may "recover expenses associated with cleaning up contaminated sites"). And the City already seeks a declaration under CERCLA § 113(g) that would establish the United States' liability for future response costs (if the City prevails). ECF No. 96 at 45. CERCLA thus provides a mechanism for the City to recover future response costs it may incur from the United States.

Judicial review is therefore unavailable under the APA, because CERCLA provides an adequate remedy.

**B.    The APA counterclaim should be dismissed for failure to state a claim.**

It is well established that a "complaint must plead sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Salarian v. Blinken*, 2024 WL 4008758, at *3(S.D. Cal. Aug. 24, 2024) (quoting *Twombly*, 550 U.S. at 570). A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate for a court to assume that a party "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In its third amended counterclaim, the City fails to allege facts sufficient to support a claim under the APA. The APA authorizes courts to "set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, "[t]he APA authorizes district courts to review only final agency action." *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 836 (9th Cir. 2021). For an agency action to be final it must: (1) "mark the consummation of the agency's decisionmaking process . . . [a]nd . . . (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

16

The third amended counterclaim asserts that the Record of Decision, the Remedial Action Plan, and the Remedial Action Completion Report are final agency actions subject to review under the APA. ECF No. 96 at 43 ¶ 76. But the City fails to include any allegations to support a challenge to the Record of Decision and Remedial Action Plan in its third amended counterclaim, instead focusing on the Remedial Action Completion Report. *See id.* at 42–44. The City's bare-bones allegations regarding the Record of Decision and Remedial Action Plan are insufficient to survive a motion to dismiss. *See, e.g., Iqbal,* 556 U.S. at 678.

With respect to the Remedial Action Completion Report ("Report"), there is no indication in the allegations (or the Report itself) that the Report is a final agency action subject to review. The Report merely summarizes the remedial action taken and memorializes that the selected remedial action was completed. *See* NAVAL FACILITIES ENGINEERING COMMAND, FINAL REMEDIAL ACTION COMPLETION REPORT 1-1 through 1-2 (Mar. 2019), https://media.defense.gov/2022/Mar/22/2002960991/-1/-1/0/SD_201903_FINAL_RACR_ IR_SITE_12.PDF.[6] Nothing in the report marks the consummation of any agency decisionmaking. Instead, the Report documents the work that was completed to carry out the remedial action. And the Report does not determine any rights or obligations. Thus, the Report is not a final agency action subject to judicial review.

For these reasons, the APA counterclaim should also be dismissed for failure to state a claim under Rule 12(b)(6).

### III. The First and Fourth Amended Counterclaims Should Be Dismissed for Failure to State a Claim to the Extent They Reallege a Cost Recovery Claim Under CERCLA § 107.

The amended first and fourth counterclaims should be dismissed to the extent they improperly attempt to reassert a claim under CERCLA § 107(a).

---

[6] The court may properly consider the Report because the City's amended counterclaims "necessarily relies" on the Report as the final agency action begin challenged under the APA, and because it is publicly available and its "authenticity is not contested." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

As an initial matter, the first and fourth counterclaims do not assert a separate claim for cost recovery under CERCLA § 107(a). Rather, the first and fourth counterclaims assert claims only under CERCLA § 113. Thus, based on the face of the City's pleading, the court should hold that the City's failure to reallege a CERCLA § 107(a) claim constitutes waiver of that claim. *See* ECF No. 89 at 14 ("Claims not re-alleged in an amended pleading will be considered waived.").

Instead of including a counterclaim alleging a CERCLA § 107(a) cost recovery claim, the City buried within the first amended counterclaim for contribution under CERCLA § 113(f) and the fourth amended counterclaim for declaratory relief under CERCLA § 113(g) allegations in connection with a CERCLA § 107(a) cost recovery claim without any consideration of the Court's order dismissing that claim.

Specifically, the City alleges CERCLA § 107(a) cost recovery claims in paragraphs 67 and 68 of the first amended counterclaim, ECF No. 96 at 39–40, and paragraph 84 of the fourth amended counterclaim, *id.* at 44. In paragraph 67, the City alleges "the United States is liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), for *any costs of response incurred or that will be incurred by the City* for the investigation and remediation of any and all disposals and/or releases of hazardous substances at the NTC Boat Channel." *Id.* at 39 (emphasis added). And in paragraph 68, the City again directly alleges a broader CERCLA § 107(a) recovery claim "for *any and all costs*, from any person who is liable or potentially liable under CERCLA, including but not limited to, assessment, investigation, evaluation, monitoring, mitigation, removal, and/or remedial action costs and/or enforcement costs, attorney's fees, consultant fees, and related costs, together with interest and court costs, *incurred by the City* in excess of the City's proportionate liability." *Id.* at 39-40 (emphasis added). In paragraph 84 of the Fourth Counterclaim for declaratory relief, the City alleges that it is "entitled to a declaration that the United States is liable for *all past, present, and future response costs* and other damages *incurred by the City* in connection with the NTC Boat Channel." *Id.* at 44 (emphasis added).

To state a claim for cost recovery under CERCLA § 107(a)(4)(B), the City must sufficiently allege that: (1) United States is a potentially responsible party under § 9607(a); (2) a release or threatened release of hazardous substance occurred; (3) the release occurred at a "facility" as defined under § 9601(9); and (4) the release or threatened release caused the City to incur necessary costs of response under CERCLA. *Arkema Inc. v. Anderson Roofing Co., Inc.,* 719 F. Supp. 2d 1318, 1331 (D. Or. 2010) (citing *Ascon Properties, Inc v. Mobile Oil Inc.,* 866 F.3d 1149, 1152 (9th Cir. 1989); 42 U.S.C. § 9607(a)(4)(B).

As this court made clear, a party must allege facts that it incurred recoverable response costs that were necessary to containment or cleanup of hazardous releases and that the costs were incurred consistent with the National Contingency Plan. ECF No. 89 at 5–6 (citing *City of Spokane v. Monsanto Co.*, 237 F. Supp. 3d 1086, 1094–95 (E.D. Wash. 2017)). Through its amended counterclaims, the City fails to heed the court's order as the City again fails to set forth the factual allegations needed to state a cost recovery claim under CERCLA § 107(a).

As the court previously observed:

[T]he City here alleges no facts from which the Court can plausibly conclude it already incurred costs related to an actual containment or cleanup response that is necessary and consistent with the NCP. In fact, the City's allegations are more lacking, conclusory, and contingent than the counter-claimant's in City of Spokane appearing nothing more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.

ECF No. 89 at 8 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In its amended counterclaim, the City has again failed to meet its burden; it did nothing to cure the deficiencies identified by the court regarding the City's § 107(a) claim. The City added no new allegations regarding any response costs it has allegedly incurred. *See generally* ECF No. 96 at 16–48.

Fact discovery is now closed. Considering the procedural posture, further amendments to the City's counterclaims would prejudice the United States and cause

undue delay in the orderly resolution of the case. The court should reject the City's attempt to replead a CERCLA § 107(a) claim and dismiss the City's first and fourth amended counterclaims, with prejudice, to the extent they allege such a claim.

## <u>CONCLUSION</u>

The court should dismiss the second and third amended counterclaims in their entirety for lack of jurisdiction and for failure to state a claim. The court should dismiss the first and fourth counterclaims to the extent they reallege a cost recovery claim under CERCLA § 107(a).

1  Respectfully submitted,

2

3  Dated: November 21, 2024                    */s/ Samuel Hobbs*

4

5                                              TODD KIM
                                               Assistant Attorney General
6                                              Environment and Natural Resources Division

7                                              BRIAN SCHAAP (DC Bar No. 1780655)
                                               STEFAN J. BACHMAN (SC Bar No. 102182)
8                                              Environmental Enforcement Section
                                               Environment and Natural Resources Division
9                                              P.O. Box 7611
                                               Washington, DC 20044-7611
10                                             Phone: (202) 305-1167
                                               Brian.Schaap@usdoj.gov
11                                             Stefan.Bachman@usdoj.gov

12

13                                             MARK A. RIGAU (CA Bar No. 223610)
                                               Environmental Defense Section
14                                             Environment and Natural Resources Division
                                               450 Golden Gate Avenue, Suite 07-6714
15                                             San Francisco, CA 94102
                                               Phone: (415) 744-6487
16

17                                             BRIAN M. BOYNTON
                                               Principal Deputy Assistant Attorney General
18                                             Civil Division

19

20                                             ALASTAIR M. GESMUNDO (CABN 316573)
                                               SAMUEL F. HOBBS (AL Bar No. 9776O19E)
21                                             Commercial Litigation Branch
                                               Corporate Financial Litigation Section
22                                             P.O. Box 875, Ben Franklin Station
                                               Washington, DC 20044
23                                             Phone: (202) 616-8077
                                               Alastair.M.Gesmundo@usdoj.gov
24                                             Samuel.Hobbs@usdoj.gov

25

26                                             *Attorneys for Plaintiff and Counterclaim-*
                                               *Defendant United States of America*
27

28
                                         21