Barry P. Steinberg (admitted *Pro Hac Vice*)
barry.steinberg@kutakrock.com
**KUTAK ROCK LLP**
1133 Connecticut Avenue, NW
Suite 1200
Washington, DC 20036
Telephone: (202) 828-2400
Facsimile: (202) 828-2488

Dwyer Arce (admitted *Pro Hac Vice*)
dwyer.arce@kutakrock.com
**KUTAK ROCK LLP**
1650 Farnam Street
The Omaha Building
Omaha, NE 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148

Thomas F. Vandenburg (State Bar No. 163446)
tvandenburg@wshblaw.com
Alice Charkhchyan (State Bar No. 332670)
acharkhchyan@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
505 North Brand Boulevard, Suite 1100
Glendale, CA 91203
Telephone: (818) 551-6000
Facsimile: (818) 551-6050

Attorneys for Defendant/Counter-Claimant
CITY OF SAN DIEGO

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    v.<br><br>CITY OF SAN DIEGO,<br><br>               Defendant.<br><br>*AND RELATED CROSS CLAIMS AND COUNTER CLAIMS* | Civil No. 3:23-CV-00541-LL-BJC<br><br>**CITY OF SAN DIEGO OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS THE CITY OF SAN DIEGO'S AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>The Hon. Linda Lopez<br><br>Trial Date: None Set |

/ / /

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................... 1

III.  PROCEDURAL HISTORY ........................................................................ 3

IV.   RELEVANT LEGAL AUTHORITIES ....................................................... 5

    A.    Procedural Standards Governing the United States' Motion ............... 5

        1.    Rule 12(b)(6) of the Federal Rules of Civil Procedure .............. 5

        2.    Rule 12(b)(1) of the Federal Rules of Civil Procedure .............. 6

V.    ARGUMENT ............................................................................................ 6

    A.    The City properly pleads a recoupment claim ..................................... 6

        1.    The Court has subject-matter jurisdiction over the City's claim for recoupment ................................................................... 6

        2.    The recoupment claim is viable and not duplicative of the City's CERCLA counterclaim ..................................................... 9

    B.    The City properly pleads a claim under the APA .............................. 10

        1.    The Court has subject-matter jurisdiction to review the actions of the United States under the APA ............................. 10

        2.    The City's APA claim properly states a claim for relief ......... 13

    C.    The City does not seek recovery under CERCLA § 107(a) ............... 14

VI.   CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Appleton v. Cnty. of Sacramento*,
  2005 WL 3555470 (E.D. Cal. 2005) ................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 5

*Becerra v. Allstate Northbrook Indem. Co.*,
  2022 WL 2392456 (S.D. Cal. 2022) ................................................................ 10

*Bell Atlantic Corp. v. Twombly*,
  550, 570 US 544 (2007) .................................................................................... 5

*Bull v. United States*,
  295 U.S. 247 (1935) ........................................................................................ 7

*Comm'r of Dep't of Plan. & Nat. Res. v. Century Alumina Co., LLLP*,
  2009 WL 1749952 (D.V.I. 2009) ...................................................................... 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  144 S. Ct. 2440 (2024) .................................................................................... 14

*Emps. Ins. of Wausau v. Clinton*,
  848 F. Supp. 1359 (N.D. Ill. 1994), *aff'd sub nom. Emps. Ins. of
  Wausau v. Browner*, 52 F.3d 656 (7th Cir. 1995) ........................................... 13

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ........................................................................................ 12

*Frederick v. United States*,
  386 F.2d 481, 488 (5th Cir. 1967) .................................................................... 6

*Frederick v. United States*,
  386 F.2d 481 (5th Cir. 1967) ............................................................................ 7

*Gall v. First Liberty Ins. Corp.*,
    2021 WL 4771692 (M.D. Fla. 2021)....................................................... 10

*Gallardo v. DiCarlo*,
    203 F. Supp. 2d 1160 (C.D. Cal. 2002)...................................................... 5

*Hall v. City of Santa Barbara*,
    833 F.2d 1270 (9th Cir. 1986) .................................................................. 5

*Kentucky v. United States Env't Prot. Agency*,
    ___ F.3d ___, 2024 WL 5001991 (6th Cir. 2024)...............................11-12

*Kingsley Mgmt., Corp. v. Occidental Fire & Cas. Co. of N. Carolina*,
    441 F. Supp. 3d 1016 (S.D. Cal. 2020) ..................................................... 5

*McGinnis v. Ramos*,
    2017 WL 474054, at *2 (S.D. Cal. 2017), *report and recommendation
    adopted by* 2017 WL 469025 (S.D. Cal. 2017).......................................... 1

*Mendiondo v. Centinela Hosp Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) .................................................................. 5

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................. 12

*Mt. Adams Veneer Co. v. United States*,
    896 F.2d 339 (9th Cir. 1990) .................................................................. 13

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ............................................................................... 11

*New York v. Gen. Elec. Co.*,
    2015 WL 12748007 (N.D.N.Y. 2015).....................................................7-8

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
    795 F.3d 956 (9th Cir. 2015) .................................................................. 11

*In re Outlaw Lab'ys, LP Litig.*,
    352 F. Supp. 3d 992 (S.D. Cal. 2018) ....................................................... 5

*Pritikin v. U.S. Dep't of Energy*,

   47 F. Supp. 2d 1225 (E.D. Wash. 1999), *aff'd sub nom. Pritikin v. Dep't of Energy*, 254 F.3d 791 (9th Cir. 2001) ................................................. 13

*Quinault Indian Nation v. Pearson for Estate of Comenout*,

   868 F.3d 1093 (9th Cir. 2017) ................................................................ 7

*Schalk v. Reilly*,

   900 F.2d 1091 (7th Cir. 1990) ................................................................ 14

*Thomas v. Hickman*,

   2007 WL 470611 (E.D. Cal. 2007) ........................................................ 6

*United Aeronautical Corp. v. United States Air Force*,

   80 F.4th 1017 (9th Cir. 2023) ................................................................ 12

*United States v. Am. Color & Chem. Corp.*,

   858 F. Supp. 445 (M.D. Pa. 1994) ........................................................ 9

*United States v. Berry Eng'g Gen. Contractors, Inc.*,

   2010 WL 11515470 (C.D. Cal. 2010) .................................................... 7

*United States v. Iron Mountain Mines, Inc.*,

   881 F. Supp. 1432 (E.D. Cal. 1995) ...................................................... 8

*United States v. Iron Mountain Mines, Inc.*,

   952 F. Supp. 673 (E.D. Cal. 1996) ........................................................ 8

*United States v. Lockheed L-188 Aircraft*,

   656 F 2d 390 (9th Cir 1979) ............................................................... 6-7

*United States v. Rohm & Haas, Co.*,

   939 F. Supp. 1157 (D.N.J. 1996) .......................................................... 9

*United States v. Shell Oil Co.*,

   294 F.3d 1045 (9th Cir. 2002) ................................................................ 6

*United States v. Washington*,

   853 F.3d 946 (9th Cir. 2017) ................................................................ 8

- iii -

CIVIL NO. 3:23-CV-00541-LL-BJC

CITY OF SAN DIEGO OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS THE CITY OF SAN DIEGO'S AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

*Wichael v. Wal-Mart Stores E., LP*,

    2014 WL 5502442 (M.D. Fla. 2014)...................................................................... 10

## FEDERAL STATUTES

5 U.S.C. § 706(2)............................................................................................................... 12

5 U.S.C. § 706(2)(A) ......................................................................................................... 11

Administrative Procedure Act ............................................................... 1, 4, 10, 12-14

CERCLA § 107(a) .....................................................................................................4, 14-15

CERCLA § 113.............................................................................................................1, 14-15

CERCLA § 113(f)(1) ............................................................................................................ 4

CERCLA § 113(g)(2) .......................................................................................................... 4

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................5, 10

Fed. R. Civ. P. 8................................................................................................................5-6

Fed. R. Civ. P. 8(a)(2).....................................................................................................5-6

## OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS OF THE CITY OF SAN DIEGO'S AMENDED COUNTERCLAIMS

### I.    INTRODUCTION

Defendant City of San Diego ("the City") files this opposition to the motion to dismiss the City's first amended counterclaim filed by Plaintiff United States of America ("the United States").

The motion should be denied because: (1) the City's second counterclaim sets forth a proper claim for recoupment against the United States diminishing or defeating any potential recovery; (2) this Court has jurisdiction, and the City has properly pleaded an action under the Administrative Procedure Act; and (3) the City has properly pleaded a cost recovery action under CERCLA § 113.

At this stage in the litigation, "[t]he court does not look at whether the plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *McGinnis v. Ramos*, 2017 WL 474054, at *2 (S.D. Cal. 2017), *report and recommendation adopted by* 2017 WL 469025 (S.D. Cal. 2017).

Given this, and for the reasons argued below, the motion of the United States should be denied in its entirety. If, however, the Court finds merit in any of the arguments set forth in the motion, the City respectfully requests that the Court grant leave to file a second amended counterclaim.

### II.    FACTUAL BACKGROUND

Beginning around 1916, the City conveyed various parcels of land to the United States for purposes of constructing and operating what came to be known as the Naval Training Center ("NTC"). The City alleges in its counterclaim that the United States created and has owned the NTC Boat Channel since its creation in the 1930s to 1940s. NTC was closed around 1997 under the federal Base Realignment and Closure process ("BRAC") and the property was offered for redevelopment.

The City further alleges that the United States owned, constructed, operated,

controlled, directed, managed, and conducted affairs at the NTC from 1916 until on or about 2000-2001 when NTC parcels, except for the NTC Boat Channel parcels, were conveyed to the City and other entities. The City alleges that the United States owned, constructed, operated, controlled, directed, managed, and conducted affairs at the Marine Corps Recruit Depot ("MCRD"), adjacent to both NTC and the NTC Boat Channel, from around 1919 to the present. The City alleges that the operations of the United States resulted in the generation, storage, use, discharge, release, and disposal of hazardous substances at the NTC Boat Channel.

The City's counterclaims depend, in part, on the decision of the United States to enter into an agreement with the City in 2000, otherwise known as the MOA. The counterclaim allegations make reference to the MOA, which sets forth the terms under which the City agreed to accept the United States' conveyance of certain NTC parcels, including the NTC Boat Channel, to the City for redevelopment.

The counterclaim cites to relevant portions of the MOA, with regard to the NTC Boat Channel parcels, which state:

> 2.(c) . . .
>
> "Parcel IIIB is believed to contain sediments impacted with various contaminants. Navy shall take all remedial action necessary to protect human health and the environment and will obtain site closure from appropriate regulatory authorities based on the projected use of Parcel IIIB, as described in the NTC San Diego Reuse Plan dated August 1998."
>
> 4.(b) . . .
>
> "Parcel VII is believed to contain sediments impacted by various contaminants. Navy shall take all remedial action necessary to protect human health and the environment and will obtain site closure from appropriate regulatory authorities based on the projected use of Parcel VII, as described in the NTC San Diego Reuse Plan dated August 1998."

The City alleges that the remedial action taken by the United States was flawed, including but not limited to by being developed and implemented without adequate understanding or analysis of the sources, nature, types, and extent of

contamination at the NTC Boat Channel. (ECF No. 96). If the City was forced to accept the transfer without proper remedial action taken by the United States, the City would incur costs of its own to undertake the required remedial action. The counterclaim alleges that the San Diego Regional Water Quality Control Board ("Water Board") issued only a questionable approval of the limited clean-up by the United States, which ultimately leaves the door open for further investigative and clean-up orders by the Water Board if the NTC Boat Channel is transferred to a non-federal party. This deficient Water Board acceptance of the final cleanup report made no comment on IR Site 12 or the NTC Boat Channel, preventing the United States from satisfying the conditions precedent of the MOA. (ECF No. 96 at 32 ¶ 46). The counterclaim alleges that the Water Board's letters create a reasonable expectation that further investigation and clean-up will be required at the NTC Boat Channel. (*Id.*). The counterclaim states that the Water Board's San Diego Bay strategic plan and recently issued Investigative Orders to the City and other parties for nearby areas of the San Diego Bay clearly demonstrate what is in store for the NTC Boat Channel should it be transferred to the City. (*Id.*).

Notably, the Counterclaim alleges that the United States has refused, and continues to refuse, to provide the City with a representation that all action necessary has been taken for the NTC Boat Channel without which the City will be exposed to significant liability if historical contamination is discovered at the NTC Boat Channel after the parcels are transferred. (ECF No. 96 at 36 ¶ 52).

## III.  **PROCEDURAL HISTORY**

On March 27, 2023, the United States initially filed this action against the City for the clean-up of contaminated sediments at Installation Restoration Site 12 ("IR Site 12") located within the former NTC Boat Channel. The "NTC Boat Channel," as used herein, consists of Parcels III-B and VII as described in the 2000 Memorandum of Agreement between the United States and the City for Economic

Benefit Conveyance and Public Benefit Conveyances at the former NTC (the "MOA").

The City filed a counterclaim against the United States for Contribution and Cost Recovery under CERCLA, Declaratory Relief under CERCLA, Breach of Contract, Equitable Indemnity, and Declaratory Relief. (ECF No. 8). The United States, thereafter, brought a motion to dismiss the City's second through fifth counterclaims. (ECF No. 20). The City filed an opposition to said motion in response thereto. (ECF No. 27). The United States filed a reply (ECF No. 28) submitting the motion was moot given the filing of the first amended complaint by the United States.

The United States filed the first amended complaint on September 15, 2023. (ECF No. 25). In response, the City filed an answer, along with the counterclaim against the United States and crossclaims against the San Diego Unified Port District and San Diego County Regional Airport Authority. (ECF No. 31). The United States then filed a motion to dismiss the counterclaim. (ECF No. 38).

The Court ultimately granted the motion to dismiss in part. The Court held that the City's claim for cost recovery under CERCLA § 107(a) failed because "the City here alleges no facts from which the Court can plausibly conclude it already incurred costs related to an actual containment or cleanup response that is necessary and consistent with the NCP." (ECF No. 89 at 8). The Court further dismissed the City's counterclaims for breach of contract under the MOA and equitable indemnity. In doing so, the Court held that the City failed to properly plead that the United States had waived sovereign immunity. (ECF No. 89 at 12).

The Court granted the City leave to file a first amended counterclaim, which the City did on October 17, 2024. (ECF No. 96). In the first amended counterclaim, the City alleged causes of action for: (1) contribution under CERCLA § 113(f)(1); (2) recoupment; (3) relief under the Administrative Procedure Act ("APA"); and (4) relief under CERCLA § 113(g)(2). (ECF No. 96 at 38-45). The United States now

- 4 -

moves to dismiss the first amended counterclaim in part. (ECF No. 111).

## IV.    RELEVANT LEGAL AUTHORITIES

### A.    Procedural Standards Governing the United States' Motion
####    1.    Rule 12(b)(6) of the Federal Rules of Civil Procedure

The United States argues for dismissal of the City's cost recovery claim under Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), "dismissal . . . is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *In re Outlaw Lab'ys, LP Litig.*, 352 F. Supp. 3d 992, 999 (S.D. Cal. 2018) (quoting *Mendiondo v. Centinela Hosp Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)) (internal quotation marks and brackets omitted).

The claim need only contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550, 570 US 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff." *Kingsley Mgmt., Corp. v. Occidental Fire & Cas. Co. of N. Carolina*, 441 F. Supp. 3d 1016, 1023 (S.D. Cal. 2020).

"A Rule 12(b)(6) motion to dismiss for failure to state a claim is disfavored, and may be granted only in extraordinary circumstances." *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1164 (C.D. Cal. 2002) (citing *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)). "The court may not dismiss for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of the claim which would entitle him or her to relief." *Appleton v. Cnty. of Sacramento*, 2005 WL 3555470, at *2 (E.D. Cal. 2005).

Rule 8 of the Federal Rules of Civil Procedure governs a party's pleading

obligations, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This burden "is a minimal one." *Thomas v. Hickman*, 2007 WL 470611, at \*9 (E.D. Cal. 2007). Rule 8 does not require pleading detailed facts to support a claim. *Id.* Moreover, "[i]t is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met." *Id.*

### 2.    Rule 12(b)(1) of the Federal Rules of Civil Procedure

The United States also seeks to dismiss some of the City's counterclaims under Federal Rules of Civil Procedure Rule 12(b)(1)—lack of subject matter jurisdiction—arguing that the United States has not waived its sovereign immunity with respect to said claims. The motion may not be granted if there is "an 'unequivocal expression' of intent to waive sovereign immunity." *United States v. Shell Oil Co.*, 294 F.3d 1045, 1051 (9th Cir. 2002). "The waiver can be by statutory consent to be sued or by the institution of the particular action." *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967), *cited with approval by United States v. Lockheed L-188 Aircraft*, 656 F 2d 390, 395 n.11 (9th Cir 1979).

## V.    <u>ARGUMENT</u>

### A.    The City properly pleads a recoupment claim.
#### 1.    The Court has subject-matter jurisdiction over the City's claim for recoupment.

In its previous order granting in part the motion to dismiss of the United States, the Court noted that "[a] party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity." (ECF No. 89 at 12). The Court continued: "The City may show that the United States waived its immunity under such-and-such ground, but the City must allege whatever grounds it intends to rely on in its counterclaim." (*Id.*).

The City has now remedied this in its first amended counterclaim. There, the City pleaded that "[s]overeign immunity does not prevent or preclude a recoupment

- 6 -

claim arising out of the same transaction or occurrence which is the subject matter of the suit of the United States and which seeks relief only to the extent of diminishing or defeating the recovery of the United States." (ECF No. 96 at 42 ¶ 73) (citing *Lockheed L-188 Aircraft*, 656 F.2d at 395 n.11). As an offset, this claim for recoupment has no impact on the federal fisc and does not represent a claim for money damages. *Id.*

As explained by the Ninth Circuit in *Lockheed L-188 Aircraft*, "counterclaims[] [for setoff or recoupment] arising from the same transaction as the matter sued upon[] are allowed when the government waives its sovereign immunity in suing a person." *Id.* at 395 n.11. "[W]here the United States brings suit, the Supreme Court has held that the United States impliedly waives its immunity to counterclaims for recoupment." *Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1100 (9th Cir. 2017) (citing *Bull v. United States*, 295 U.S. 247, 260-63 (1935)). "Those claims do not directly implicate sovereignty interests because they seek merely an offset to the sovereign's requested relief instead of affirmative relief from the sovereign." *Id.*; *see also New York v. Gen. Elec. Co.*, 2015 WL 12748007, at *7 (N.D.N.Y. 2015) ("Despite sovereign immunity, a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim." (internal quotation marks and brackets omitted)); *United States v. Berry Eng'g Gen. Contractors, Inc.*, 2010 WL 11515470, at *3 (C.D. Cal. 2010) ("Despite sovereign immunity, a defendant may, without statutory authorization, recoup on a counterclaim an amount equal to the principal claim.").

"[T]he government's decision to sue ... may properly subject it to affirmative defenses and counterclaims: (1) grounded in allegations of government negligence, set-off or recoupment; (2) related to the same 'transaction' as the initial suit; and (3) seeking no 'affirmative recovery' against the United States." *Id.* at *4 (quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967)). Such "[a] recoupment

claim 'must (1) arise from the same transaction or occurrence as the plaintiff's suit; (2) seek relief of the same kind or nature as the plaintiff's suit; and (3) seek an amount not in excess of the plaintiff's claim.'" *Quinault Indian Nation*, 868 F.3d at 1100 (quoting *United States v. Washington*, 853 F.3d 946, 968 (9th Cir. 2017)). There is no question that the City's recoupment claim arises out of the same transaction as the matter sued upon—the liability of the respective parties under CERCLA related to the NTC Boat Channel.

The United States claims that is not enough. It argues that "CERCLA bars recoupment counterclaims because they are incompatible with [CERCLA's] remedial scheme, and the court thus lacks jurisdiction over this counterclaim." (ECF No. 111-1 at 3). In support of this argument, the United States relies heavily on *United States v. Iron Mountain Mines, Inc.* ("*Iron Mountain Mines II*"), 881 F. Supp. 1432 (E.D. Cal. 1995), for the proposition that "the court ... held that recoupment counterclaims are incompatible with CERCLA." (ECF No. 111-1 at 6). Of course, this case is not binding on the Court, and the United States has failed to identify any Ninth Circuit or Supreme Court precedent agreeing with this statement. There does not appear to be any such binding authority.

More importantly, the cases relied upon by the United States have been rejected elsewhere. As those courts have noted, "it is unclear on which counterclaims the *Iron Mountain II* court based its holding—common law recoupment or recoupment counterclaims based in CERCLA. Although the court referred to the remedy as 'CERCLA claims in recoupment,' it also [referred] to the recoupment relief as an equitable doctrine." *Gen. Elec. Co.*, 2015 WL 12748007, at *9 n.16. So the reliance of the United States on this case as a definitive statement of recoupment in the context of CERCLA is questionable at best.

The United States also overlooks the later discussion of recoupment in the same case in *United States v. Iron Mountain Mines, Inc.* ("*Iron Mountain Mines III*"),

- 8 -

952 F. Supp. 673 (E.D. Cal. 1996). The court noted there that "the doctrine [of recoupment] is sufficiently well established in at least lower court decisions that ... the United States ... concede[s] that [it is] subject to claims in recoupment." *Iron Mountain Mines III*, 952 F. Supp. at 676.

Similarly, other courts have distinguished the cases on which the United States relies. For example, in *Comm'r of Dep't of Plan. & Nat. Res. v. Century Alumina Co., LLLP*, 2009 WL 1749952 (D.V.I. 2009), the court rejected "the proposition that recoupment claims are impermissible in the rigid statutory context of CERCLA." *Id.* In doing so, the court expressly rejected the holding of cases like *United States v. Rohm & Haas, Co.*, 939 F. Supp. 1157 (D.N.J. 1996)—on which the United States relies—because those cases "sought to offset the government's recovery on the basis of its conduct during remediation of the site at issue." *Century Alumina Co., LLLP*, 2009 WL 1749952, at *6. Those claims did not "relate directly to the actual pollution of the affected site" and instead were directed "solely to the aftermath." *Id.* (quoting *United States v. Am. Color & Chem. Corp.*, 858 F. Supp. 445, 450 (M.D. Pa. 1994)).

Here, the City's claims do "relate directly to the actual pollution of the affected site" to which pollution the United States contributed. *Id.* As alleged in the counterclaim, the United States was responsible for the pollution in the NTC Boat Channel as an "owner" that "release[d]" hazardous substances into the NTC Boat Channel. (ECF No. 96 at 41-42 ¶¶ 70-74). Like in *Century Alumina*, the "counterclaims posit that the Government ... played some role in bringing about the alleged pollution at issue. Those counterclaims, as pleaded, arise out of the same transaction or occurrence as plaintiffs' claims and seek relief of the same kind and nature" and are viable. *Id.*

The Court has subject-matter jurisdiction over the City's counterclaim for recoupment.

**2.     The recoupment claim is viable and not duplicative of the City's CERCLA counterclaim.**

The United States also claims, "it is duplicative of the City's contribution counterclaim under CERCLA." (ECF No. 111-1 at 3). This, according to the United States, is sufficient to dismiss the City's recoupment claim as "a matter of judicial economy" because "the City's allegations for its recoupment counterclaim are identical to its allegations for the contribution counterclaim." (ECF No. 111-1 at 13).

This argument is meritless. "Rule 12(b)(6) is an improper vehicle for challenging duplicative claims because in the case of a duplicative claim, the issue is not that the claim is insufficient to state a cognizable legal theory as required by Rule 12(b)(6), but rather that the legal and factual issues contained in the claim are redundant with issues already present in the proceeding." *Becerra v. Allstate Northbrook Indem. Co.*, 2022 WL 2392456, at *4 (S.D. Cal. 2022) (internal quotation marks and brackets omitted). Other courts "often refuse to dismiss claims for duplicity, instead limiting Rule 12(b)(6) to test the validity of a claim, not its redundancy." *Gall v. First Liberty Ins. Corp.*, 2021 WL 4771692, at *1 & n.1 (M.D. Fla. 2021) (collecting cases); *see also Wichael v. Wal-Mart Stores E., LP*, 2014 WL 5502442, at *2 (M.D. Fla. 2014) ("[M]otions to dismiss made under Rule 12(b)(6) only test the validity of a claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid.").

The CERCLA and recoupment claims are not duplicative in any event. Cost recovery under CERCLA is a statutory remedy expressly provided by federal law. Recoupment, on the other hand, is a cause of action that rises from the limited waiver of sovereign immunity by the United States when it initiates a lawsuit. This is a viable cause of action, separate from any CERCLA claims, to diminish or defeat any recovery sought by the United States against the City.

**B.    The City properly pleads a claim under the APA.**

      1.    **The Court has subject-matter jurisdiction to review the actions of the United States under the APA.**

The United States argues that "[t]he APA counterclaim is a transparent attempt to revive the City's breach of contract claim over which this court has no jurisdiction." (ECF No. 111-1 at 9).

The United States attempts to flatten the City's APA claim into nothing more than a breach-of-contract claim in disguise. In doing so, the concession of a breach of contract makes clear that this is a contract case subject to all the rules of contracts. But, ultimately, the City's counterclaim does not ask the Court to enforce the MOA or claim that the performance of the United States under the MOA is itself arbitrary or capricious. Instead, the City alleges that the United States engaged in arbitrary and capricious agency action when it acted without authority to unilaterally ignore or countermand the obligations to which the United States originally agreed without reasoned explanation for doing so. (*See* ECF No. 96 at 44 ¶ 79).

Indeed, the United States committed to "take all remedial action necessary to protect human health and the environment" independently of any obligations it may have under CERCLA. (ECF No. 96 at 21 ¶ 16). Despite this, the United States later apparently concluded that it could completely ignore its own agreement, act on 20-year-old data, and ignore all evidence of other hazardous substances in the NTC Boat Channel. In short, it is arbitrary and capricious for the United States to commit to agency action through the MOA, but then decide later without explanation that it has no obligation to perform those commitments.

Case law from the Ninth Circuit confirms this distinction. "'Unexplained inconsistency' between agency actions is 'a reason for holding an interpretation to be an arbitrary and capricious change.'" *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

Other courts agree, with the Sixth Circuit recently holding that an "[agency] acted in an 'arbitrary' way by telling [the state] one thing and then doing another." *Kentucky v. United States Env't Prot. Agency*, ___ F.3d ___, 2024 WL 5001991, at *1 (6th Cir. 2024) (quoting 5 U.S.C. § 706(2)(A)). "When an agency departs from its prior position, the change creates unique aspects of the problem that it must confront." *Id.* (internal quotation marks and brackets omitted). "[T]he agency must acknowledge the change and explain why it sees things differently." *Id.* at *14. "Courts thus have found agency action arbitrary and capricious when it rested on an unexplained inconsistency with past practice." *Id.* (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016)) (internal quotation marks and brackets omitted); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) ("We have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner.").

Here, the United States has provided no explanation at all—let alone a "cogent" one—regarding why it exercised its "discretion" to ignore its previous commitments to "take all remedial action necessary to protect human health and the environment." Nor does the United States provide any cogent justification for the inconsistency between "[t]he Record of Decision, Remedial Action Plan, and Remedial Action Completion Report" and the requirements of the National Contingency Plan ("NCP") (nor is such inconsistency even permitted). (ECF No. 96 at 43 ¶ 80).

Contrary to the assertions otherwise, "[t]he Tucker Act does not bar an APA action if the plaintiff's rights and remedies, as alleged, are noncontractual—even if it is inevitable that the government will raise a contract provision as a defense." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023). That is precisely what happened here—the City pleads an APA claim related to the change in position adopted by the United States, prejudicing the rights of the

City, and in response the United States seeks specific performance under the MOA. Like in *United Aeronautical Corp.*, "the relief sought"—there, like here, an injunction—"was not akin to the traditional remedies available for breach of contract (damages or specific performance)." *Id.*

The City's APA claim does not seek damages, or even specific performance. Instead, the City asks the Court to "hold unlawful and set aside agency action" reflected in the Remedial Action Completion Report. *See* 5 U.S.C. § 706(2). This claim for relief is properly pleaded and plainly within the jurisdiction of the Court. *See Emps. Ins. of Wausau v. Clinton*, 848 F. Supp. 1359, 1365 n.10 (N.D. Ill. 1994), *aff'd sub nom. Emps. Ins. of Wausau v. Browner*, 52 F.3d 656 (7th Cir. 1995) ("Because CERCLA does not preclude review of this issue, and because it does not expressly provide for it, consideration under the APA is appropriate.").

## 2. The City's APA claim properly states a claim for relief.

The United States argues that "the City fails to include any allegations to support a challenge to the Record of Decision and Remedial Action Plan in its third amended counterclaim, instead focusing on the Remedial Action Completion Report." (ECF No. 111-1 at 22). Apparently, "there is no indication in the allegations (or the Report itself) that the Report is a final agency action subject to review." (ECF No. 111-1 at 22). The United States also appears to believe "the Remedial Action Completion Report is not a final agency action and the City fails to adequately state a claim against the Record of Decision and Remedial Action Plan." (ECF No. 111-1 at 9).

The United States ignores the City's actual pleading. As alleged there, "[t]he Record of Decision, Remedial Action Plan, and Remedial Action Completion Report are agency actions subject to review under the Administrative Procedure Act." (ECF No. 96 at 43 ¶ 76). Indeed, the United States acknowledged in its notice of default to the City that the Remedial Action Completion Report is the final step in the clean-up

process.

Case law agrees. Consistent with the City's pleading, these are final agency actions subject to APA review. "Courts must consider a number of factors in determining whether an agency act is final for purposes of review, including whether the action challenged is a 'definitive statement of an agency's position.'" *Pritikin v. U.S. Dep't of Energy*, 47 F. Supp. 2d 1225, 1232 (E.D. Wash. 1999), *aff'd sub nom. Pritikin v. Dep't of Energy*, 254 F.3d 791 (9th Cir. 2001) (quoting *Mt. Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1989)). As the Supreme Court recently held, "[a]n APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 809 (2024).

No such "definitive statement of the agency's position" and no "complete and present cause of action" existed until the United States issued the Remedial Action Completion Report. This was a definitive statement of the agency's (incorrect) position that the NTC Boat Channel clean-up was complete and no further action would be taken by the United States. Before the Remedial Action Completion Report, the City would not have had an APA cause of action because the United States had not expressed the final view of its obligations to clean the NTC Boat Channel. The United States did so in the Remedial Action Completion Report by erroneously certifying it had completed all required clean-up efforts. *Accord Schalk v. Reilly*, 900 F.2d 1091, 1097 (7th Cir. 1990) ("We have already concluded that Congress intended to remove challenges to remedial action plans from the jurisdiction of the federal courts *until the remedial action has been taken*. The district court thus lacked subject matter jurisdiction over the claims brought under the APA." (emphasis added)).

The United States next claims that "CERCLA provides an adequate remedy for the relief the City seeks through the APA." (ECF No. 111-1 at 14). But the United States talks out of both sides of its mouth. The United States claims CERCLA

provides no remedy at all to the City. Of course, the United States thinks the City should have no remedy at all, nor any defense against the relief the United States seeks. But that is not what the law requires or permits.

### C.    The City does not seek recovery under CERCLA § 107(a).

The United States argues the Court should "dismiss the City's first and fourth amended counterclaims, with prejudice, to the extent they allege" a claim under CERCLA § 107(a). (ECF No. 111-1 at 25). This is the only grounds on which the United States challenges the first and fourth counterclaims. The United States does not move to dismiss the City's allegations that the United States is liable under CERCLA § 113.

The City does not attempt to reallege § 107(a) claims, or intend to pursue recovery under § 107(a) following the Court's previous order. While it is true that the City cites § 107(a) as part of the allegations supporting those counterclaims, both focus on the liability of the United States under § 113. With the acknowledgement by the City that it is not seeking to recover under § 107(a), there is nothing for the Court to grant with regard to the first and fourth counterclaims.

## VI.    CONCLUSION

For the reasons set forth above, the City respectfully requests that the motion to dismiss of the United States (ECF No. 111) be denied in its entirety. If, however, the Court finds merit in any of the arguments set forth in the motion, the City respectfully requests that the Court grant leave to file a second amended counterclaim.

DATED: December 12, 2024

Respectfully submitted,

**KUTAK ROCK LLP**


By: *s/ Barry P. Steinberg*
Barry P. Steinberg
barry.steinberg@kutakrock.com

Attorney for Defendant/Cross
Defendant/ Counter Claimant/Cross
Claimant
City of San Diego