# Exhibit 2





16 December 2024

**AtkinsRéalis**
11452 El Camino Real
Suite 120
San Diego, CA 92130

Tel: +1 858 874 1810
Fax: +1 858 259 0741

atkinsrealis.com

AtkinsRealis USA Inc.
Registered office: 4030 West Boy Scout Boulevard, Suite 700, Tampa FL 33607, United States

Review of the administrative record regarding the investigation, planning / analysis, and remediation of the Former Naval Training Center (NTC) Boat Channel reveals a number of issues that bring into serious question the adequacy of these efforts. The Navy's overall process and remediation of the contamination of the Boat Channel was inadequate for the following reasons:

1. The site characterization was inadequate, out of date, and not representative of the current conditions at the time of the remediation.
The data on which the 2016 remediation efforts relied were collected in 1998 and thus 18 years old when the dredge remediation was conducted. No additional sampling was conducted to show the contemporary conditions of the sediment for areas scheduled to be dredged, or the area not included in the cleanup. The concentrations and spatial distribution of the pollutants of concern could have changed significantly through numerous natural and anthropogenic processes including tidal flushing, small boat traffic, erosion of side slopes, storm water discharges, and weather-driven disturbances.

2. There was inadequate evaluation of Contaminants of Concern (COCs)
Analytes collected and quantified for the Remedial Investigation (RI) and Remedial Action Plan (RAP) are incomplete, and insufficient evidence is provided to adequately evaluate sediment sample concentrations for COCs. These COCs are identified as contaminants in other areas of the San Diego Bay for which Investigative or Cleanup and Abatement Orders (CAOs) have been issued (e.g., Former Campbell Shipyards, Laurel Hawthorne Embayment, Tenth Avenue Marine Terminal, Continental Maritime of San Diego, Harbor Island, and Tow Basin) and thus should have been fully evaluated. There were no, or limited, data for polychlorinated biphenyls (PCB), per- and polyfluoroalkyl substances (PFAS), polycyclic aromatic hydrocarbons (PAHs), Total Petroleum Hydrocarbons (TPH), and pesticides including Dichlorodiphenyltrichloroethane (DDT) where only 3/6 isomers were measured.

3. The site investigation failed to address all the areas potentially contaminated.
The Boat Channel parcels (III-B and VII) extend to top of the bank of the parcels. The Navy did not conduct sediment sampling of slopes, shorelines, riprap areas, and shallower areas. These areas are the closest to the outfalls, which the Navy considers to be important conduits of contributing pollutants. The failure to conduct sampling of these areas makes it impossible to assess the environmental impacts of potential contamination and initiate required remediation for contamination in those areas. This

means that the Navy failed to perform remediation of potentially contaminated parts of the parcels including beach and slope sediments as well as areas covered in riprap as required by the Memorandum of Agreement (MOA). The administrative record fails to address these concerns.

4.   The Project failed to clean up the Boat Channel to current regulatory standards. The Navy's analysis was based on the old or outdated regulation benchmarks prior to the 2008 Sediment Quality Objective (SQO) adoption and the later SQO updates issued in 2011 and 2018. The Navy instead hid behind grandfathering protections they knew would not apply to the City upon land transfer to keep from conducting additional work required to meet current standards. This has resulted in the probable issuance of a new Investigative Order (IO) to be issued by the Water Quality Control Board. The pre-design and confirmatory sampling conducted to verify the COCs in the Boat Channel was limited in extent and quality.

The data collection for the RI involved collected 26 samples in a 60 acre area. Therefore a single data point was considered representative of approximately 1 to 3 acres of submerged sediments. This density of sampling and the sample locations are insufficient to represent the effects of spatial conditions as the entirety of the Boat Channel has been subject to deposition, resuspension, and potentially loading of additional contaminants.

Analytes for the RI and remedial action completion report (pre-design investigation and Post-dredge Confirmation [PDC]) samples are incomplete, and insufficient information is provided to adequately evaluate sediment sample concentrations for COCs.

5.   The Project failed to address all the existing contamination in the Boat Channel. As mentioned above, there were important areas of the Boat Channel parcels that were not properly evaluated for pollutants, nor was any remediation performed. The dredge operations on the submerged bottom sediments of the Boat Channel missed portions of the polygons determined to be impacted by avoiding eel grass areas and avoiding any sloped areas. Further depths reported for sampling and dredging are inconsistent and insufficient as shown in the bathymetric survey and lack of PDC samples.

At each reporting phase of the Navy's investigation and potential implementation plan, the City and other adjacent landowners and residents were given the opportunity to address concerns related to the investigation and remediation process. The City and other stakeholders submitted repeated and well-documented objections related to the above issues over the past 20 years citing specific actions, non-actions, and decisions. These concerns were disregarded or worked around rather than positively addressed. This has resulted in well-founded ongoing concerns about the completeness of the cleanup and unresolved issues of noncompliance with current standards, creating an immediate liability for additional remediation,

Since the Navy has been unwilling to conduct the efforts necessary to confirm the integrity of their remediation, the City has scoped and offered to conduct a site



investigation to confirm or disprove these concerns prior to the land transfer. This investigation will define where, if any, additional remediations are required to meet current standards and provide the documentation in alignment with expectations of ongoing investigative orders in the San Diego Bay under the purview of the local Water Board.

Sincerely,

Dr. J. Michael Trapp

