1 | ADAM R.F. GUSTAFSON
2 | Acting Assistant Attorney General
  | Environment and Natural Resources Division
3 | U.S. Department of Justice

4
5 | STEFAN J. BACHMAN (SC Bar No. 102182)
  | BRIAN SCHAAP (DC Bar No. 1780655)
6 | NICHOLAS MCDANIEL (MA Bar No. 682742)
  | Environmental Enforcement Section
7 | P.O. Box 7611
8 | Washington, DC 20044
  | Phone: (202) 616-6536
9

10 | MARK ALBERT RIGAU (CA Bar No. 223610)
11 | Environmental Defense Section
   | 450 Golden Gate Avenue, Suite 07-6714
12 | San Francisco, CA 94102
13 | Phone: (415) 744-6487

14
15 | ALASTAIR M. GESMUNDO (CABN 316573)
   | SAMUEL F. HOBBS (AL Bar No. 9776O19E)
16 | Civil Division
   | Commercial Litigation Branch
17 | Phone: (202) 305-4664

18 | *Attorneys for Plaintiff and Counterclaim Defendant United States of America*
19

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 3:23-cv-00541-LL-VET |
|---|---|
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON RECOVERY OF RESPONSE COSTS FROM THE CITY OF SAN DIEGO UNDER CERCLA** |
| v. | |
| CITY OF SAN DIEGO, et al. | |
| Defendants. | |
| *AND RELATED CROSS CLAIMS* | |

**Table of Contents**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    I. The Court Should Enter Summary Judgment for $17.1 Million in Past Costs Incurred by the United States. ................................................................................2

        A. The United States' Costs Are Response Costs of the Type Recoverable Under CERCLA. ......................................................................................2

            1. Navy Costs ............................................................................................2

            2. DOJ Costs ............................................................................................3

            3. Prejudgment Interest ............................................................................4

        B. The United States' Costs Are Sufficiently Documented. ..........................5

            1. Navy Costs ............................................................................................5

            2. DOJ Costs ............................................................................................6

            3. There Is No Genuine Dispute That the United States' Costs Are Sufficiently Documented. ......................................................................7

        C. The Costs Incurred by the United States are Consistent with the NCP, and the City Does Not Argue Otherwise. .........................................................9

CONCLUSION ....................................................................................................................10

## Table of Authorities

**Federal Cases**

*California Dep't. of Toxic Services v. Neville Chem. Co.*,
    213 F. Supp. 2d 1134 (C.D. Cal. 2002), *aff'd*, 358 F.3d 661
    (9th Cir. 2004) ……………………………………………………………4,5
*State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*,
    138 F.3d 772 (9th Cir. 1998) ..................................................................9
*Triton Energy Corp. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) ................................................................. 9
*United States v. 45/194 Kg. Drums of Pure Vegetable Oil*,
    961 F.2d 808 (9th Cir. 1992) ................................................................. 9
*United States v. Am. Cyanamid Co.*,
    786 F. Supp. 152 (D.R.I. 1992) ……………………………………....... 3
*United States v. Chapman*,
    146 F.3d 1166 (9th Cir. 1998) …………….....…….………..  3, 4, 5, 10
*United States v. Chromalloy Am. Corp.*,
    158 F.3d 345 (5th Cir. 1998) ……………………….…………………. 5
*United States v. Domenic Lombardi Realty, Inc.*,
    290 F. Supp. 2d 198 (D.R.I. 2003) ..........…………………………… 4
*United States v. Findett Corp.*,
    220 F.3d 842 (8th Cir. 2000) …………………………………….….... 5
*United States v. Hardage*,
    982 F.2d 1436 (10th Cir. 1992) …………………………………….... 5
*United States v. JG-24, Inc.*,
    331 F. Supp. 2d 14 (D.P.R. 2004) …………………….……………… 3
*United States v. Northernaire Plating Co.*,
    685 F. Supp. 1410 (W.D. Mich. 1988) ……..…….………………...… 3
*United States v. Puerto Rico Indus. Dev. Co.*,
    386 F. Supp. 3d 162 (D.P.R. 2019), *aff'd*, 18 F.4th 370 (1st Cir. 2021) ..…. 5
*United States v. R.W. Meyer, Inc.*,
    889 F.2d 1497 (6th Cir. 1989) …………………………….....……..... 3
*United States v. Twp. of Brighton*,
    153 F.3d 307 (6th Cir. 1998) …………………………………….…... 4

**Statutes**
42 U.S.C. § 9601(23)-(25) ……………………………………..…… 3,4
42 U.S.C. § 9607(a)…………………………………………………. 1, 4
42 U.S.C. § 9607(a)(4)(A) ………………………………………….. 2

**INTRODUCTION**

The Court should grant the United States' Motion for Partial Summary Judgment on Response Costs because the United States' costs incurred in connection with the Boat Channel Site (IR Site 12) in San Diego, CA ("the Site"), are indisputably (1) the type of costs recoverable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and (2) sufficiently documented. This memorandum is submitted in support of the second of two partial summary judgment motions filed by the United States. The first motion, at ECF No. 118, seeks a ruling from the Court that the City of San Diego ("City") is liable for discharges of contaminants to the Site under CERCLA Section 107(a), 42 U.S.C. § 9607(a). This motion seeks a ruling that the United States has incurred $17,131,016.38 in response costs and that the costs are recoverable.[1] Granting summary judgment on both motions would leave only $207,783.62 in disputed past costs between the parties.

The factual background and legal standard for the Court's review of this motion are described in the United States' memorandum in support of its first motion for partial summary judgment, at ECF No. 118-1. Pursuant to this Court's Chamber Rules, attached to this motion is a separate Statement of Undisputed Material Facts with numbered paragraphs for each undisputed material fact and citations to the evidentiary record. The argument below cites these numbered paragraphs as "SOF ¶ [number]" when referencing a relevant material fact.

---

[1] Costs incurred by the Navy after July 31, 2023, and costs incurred by DOJ after October 31, 2024, can be collected under a declaratory judgment mandated by CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), if the Court confirms the City's status as a liable party in the Court's ruling on the United States' motion for partial summary judgment on the City's *prima facie* CERCLA liability (*see* ECF No. 118 and No. 118-1 § II.E).

-1-    Case No. 3:23-cv-00541-LL-VET

MEMORANDUM OF POINTS AND AUTHORITIES ISO THE UNITED STATES'
MOTION FOR PARTIAL SUMMARY JUDGMENT

# ARGUMENT

## I. The Court Should Enter Summary Judgment for $17.1 Million in Past Costs Incurred by the United States.

The United States is entitled to recover at least $17,131,016.38 in past response costs incurred in connection with the Site: $15,944,926.65 incurred by the United States Navy ("Navy") through July 31, 2023, and $1,186,089.73 incurred by the United States Department of Justice ("DOJ") through October 31, 2024. SOF ¶ 1. The City's own expert largely agrees, conceding that $14,583,167.05 of the United States' costs have been authorized, accepted, billed, and paid for by the United States and are therefore recoverable. SOF ¶ 2. His opinions about the remaining $2,721,794.92 in costs are unsupported and do not create a *genuine* issue of material fact.

### A. The United States' Costs Are Response Costs of the Type Recoverable Under CERCLA.

The costs the United States seeks to recover here fall within well-established categories of recoverable response costs. CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), sets forth the applicable standard, entitling the United States to "*all costs* of removal or remedial action incurred by the United States Government" (emphasis added) in response to releases, or threatened releases, of hazardous substances, that are "not inconsistent with the national contingency plan ("NCP")."

#### 1. Navy Costs

In responding to releases or threatened releases of hazardous substances at the Site, the Navy has incurred direct costs resulting from in-depth Site investigations and remedial actions performed by various Navy contractors. ECF No. 123 at ¶¶ 5–9. Examples include a contract with Bechtel Environmental, Inc. to perform remedial investigation activities, and a contract with Parsons Government Services to complete a remedial design and implement the remedial action. SOF ¶

3. The Navy incurred contractor costs of $15,944,926.65 through July 31, 2023.[2] These types of costs are well within the broad statutory definition of recoverable "response costs" and have long been recognized by courts as recoverable. 42 U.S.C. § 9601(23)–(25); *United States v. Chapman*, 146 F.3d 1166, 1175 (9th Cir. 1998) (costs for all investigation and activities are recoverable); *United States v. JG-24, Inc.*, 331 F. Supp. 2d 14, 45–50, 66 (D.P.R. 2004) (awarding contractor costs); *accord United States v. Am. Cyanamid Co.*, 786 F. Supp. 152, 163, 165–67 (D.R.I. 1992); *United States v. Northernaire Plating Co.*, 685 F. Supp. 1410, 1417 (W.D. Mich. 1988), *aff'd sub nom., United States v. R.W. Meyer, Inc.*, 889 F.2d 1497 (6th Cir. 1989).

### 2. DOJ Costs

DOJ has incurred direct and indirect costs associated with the enforcement-related legal services it has been providing to the Navy for the Site. SOF ¶ 4. Direct costs associated with this work include labor costs for DOJ attorneys and paralegals, and other direct expenses, such as travel, expert witness fees, and deposition transcripts. ECF No. 154-5, ¶¶ 9–11 and **Exhibit B**; ECF No. 154-3, **Exhibit 3** at 55 and 79–82 of 116. DOJ has also incurred indirect costs that are necessary to support all its cases but cannot be attributed directly to any specific case (*e.g.*, costs of support staff, office space, utilities, and employee benefits). ECF No. 154-5, ¶ 12 and **Exhibit B**; ECF No. 154-3, **Exhibit 3** at 55 of 116. DOJ's indirect costs are derived by applying an indirect cost rate to the DOJ direct labor costs incurred on a particular enforcement case. ECF No. 154-5, ¶ 13. DOJ

---

[2] While the United States contends that total Navy contractor costs are $16,118,872.24 through July 31, 2023, the United States is not seeking summary judgment on $173,945.59 of these costs that the City's expert, Mr. Jason Kubota, has challenged. ECF No. 154-4, **Exhibit A**, Schedule 1 (at 42 of 59); ECF No. 154-3, **Exhibit 3** at 47–52 of 116.

incurred enforcement costs of at least $1,186,089.73 through October 31, 2024.[3] As multiple courts have recognized, these costs are well within the broad statutory definition of recoverable "response costs." 42 U.S.C. § 9601(23)-(25); *Chapman*, 146 F.3d at 1175 (costs including legal work are recoverable); *Cal. Dep't. of Toxic Services v. Neville Chem. Co.*, 213 F. Supp. 2d 1134, 1137 (C.D. Cal. 2002), *aff'd*, 358 F.3d 661 (9th Cir. 2004) (litigation and indirect costs recoverable).

### 3. Prejudgment Interest

The United States is further entitled to recover prejudgment interest on Navy's costs. Under CERCLA Section 107(a), 42 U.S.C. § 9607(a), once a written demand for response costs has been made, a responsible party *must* pay interest at the rate specified for interest on investments in the Superfund. *United States v. Twp. of Brighton*, 153 F.3d 307, 321 (6th Cir. 1998) (finding that the award of interest is "mandatory"); *see also Neville Chem.*, 213 F. Supp. 2d at 1134 (government plaintiff entitled to interest on its response costs). "Congress permitted the collection of interest in these cases to ensure 'that when the government is forced to expend Superfund money on clean-up actions, Superfund will be fully replenished.'" *United States v. Domenic Lombardi Realty, Inc.*, 290 F. Supp. 2d 198, 214 (D.R.I. 2003) (citation omitted). Here, the Navy sent the City a written demand for payment of all then-current and future Navy response costs on December 27, 2016, SOF ¶ 5, and thus the City must pay interest on Navy's costs running from that date. Schaap Declaration, ECF No. 154-3 ¶ 3; ECF No. 154-3, **Exhibit 2**; ECF No. 154-4 ¶ 5.

---

[3] While the United States contends that total DOJ enforcement costs are $1,219,927.76 through October 31, 2024, the United States is not seeking summary judgment on $33,838.03 of these costs that the City's expert, Mr. Kubota, has challenged. ECF No. 154-5, **Exhibit B**; ECF No. 154-3, **Exhibit 3** at 52–53 and 79–82 of 116.

-4-   Case No. 3:23-cv-00541-LL-VET

### B. The United States' Costs Are Sufficiently Documented.

The United States' documentation of its costs follows well-established accounting principles and is supported by caselaw. When the *types* of costs sought are recoverable under CERCLA, courts have adopted a pragmatic, common-sense approach regarding the evidence needed to establish the *amount* of response costs incurred by the United States. As described below, the costs the United States seeks here are supported not only by summaries of Navy's and DOJ's underlying cost documents, but also by accounting experts' analyses validating the amounts incurred. Courts have routinely held that the types of documents, declarations, and cost summaries submitted by the United States in support of this motion are admissible and sufficient to establish the United States' costs. *See, e.g.*, *Chapman*, 146 F.3d at 1172; *United States v. Hardage*, 982 F.2d 1436, 1442–43 (10th Cir. 1992); *United States v. Findett Corp.*, 220 F.3d 842, 849 (8th Cir. 2000); *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 352 (5th Cir. 1998); *Neville Chem.*, 213 F. Supp. 2d at 1139–42; *United States v. Puerto Rico Indus. Dev. Co.*, 386 F. Supp. 3d 162, 172–75 (D.P.R. 2019), *aff'd*, 18 F.4th 370 (1st Cir. 2021) (granting summary judgment on costs based on itemized costs summary and cost summaries and information supplied by Messrs. Wright and Kime).[4]

#### 1. Navy Costs

The Navy's incurrence and payment of costs are documented by an itemized cost summary, which presents line-item summaries and cost calculations based on underlying cost documentation, including contractor invoices, payment

---

[4] The Navy itemized cost summary and the United States accounting experts' tabular summaries of the Navy and DOJ costs are admissible as summaries of voluminous backup cost documentation under Fed. R. Evid. 1006. A complete set of the underlying backup documentation was produced to the City during discovery. ECF No. 154-5, **Exhibit B**; ECF No. 154-4, **Exhibit A**, Schedules 1–8 (at 42–59 of 59); Schaap Declaration, ECF No. 154-3 ¶ 2.

1 documentation, and other supporting documents. ECF No. 154-6 ¶¶ 5–7; ECF No. 154-4, **Exhibit A**, § IV ¶¶ B, E. The Navy's costs have been independently verified by the United States' cost accounting expert, Mr. Wiley Wright, a Certified Public Accountant who has analyzed more than 150 CERCLA claims to ensure that each claimed cost was incurred, paid, and properly documented. ECF No. 154-4, **Exhibit A**, § IV ¶ C. Mr. Wright compared each cost item listed on the Navy's itemized cost summary with the supporting documentation (including underlying bills, invoices, vouchers, and other accounting records) to verify that (1) the Navy incurred the costs in connection with the Site and (2) the United States paid the costs. ECF No. 154-4, **Exhibit A**, § IV ¶¶ E–F. Mr. Wright determined that the Navy incurred a total of $16,118,872.24 in well-documented costs for response activities at or in connection with the Site through July 2023.[5] ECF No. 154-4 ¶4; ECF No. 154-4, **Exhibit A**, § III ¶ D.

### 2. DOJ Costs

The costs of the Department of Justice's enforcement efforts are confirmed by the Declaration of William Kime and his attached cost summary. ECF No. 154-5, **Exhibit B**. Mr. Kime is a Certified Public Accountant who has accumulated, processed, and reported on CERCLA enforcement costs for DOJ since 1986. ECF No. 154-5 ¶ 1-2. In the course of his ordinary work for DOJ, Mr. Kime summarizes DOJ's direct labor costs, other direct costs, and related indirect charges for each CERCLA enforcement case. ECF No. 154-5 ¶¶ 6–8. Mr. Kime compiled and summarized the DOJ cost documentation for this case, including direct costs incurred (*e.g.*, employee payroll, travel, expert witness fees, deposition transcripts),

---

[5] Mr. Wright excluded more than $110,000 in insufficiently documented Navy costs. *See* ECF No. 154-4, **Exhibit A**, § III ¶ A; *Id.*, **Exhibit A**, Schedule 1 (at 42 of 59).

-6-   Case No. 3:23-cv-00541-LL-VET

MEMORANDUM OF POINTS AND AUTHORITIES ISO THE UNITED STATES'
MOTION FOR PARTIAL SUMMARY JUDGMENT

other litigation support expenses, and indirect costs.[6] ECF No. 154-5 ¶¶ 11–20. He confirms that, from September 2022 through October 2024, DOJ incurred $1,219,927.76 in enforcement costs in connection with this case. ECF No. 154-5 ¶ 20 and **Exhibit B**.

    **3. There Is No Genuine Dispute That the United States' Costs Are Sufficiently Documented.**

The City's cost expert, Jason Kubota, overwhelmingly agrees with Mr. Wright and Mr. Kime—concluding that $14,583,167.05 of the United States' costs ($13,397,077.32 in Navy costs and $1,186,089.73 in DOJ costs) are properly documented and recoverable. SOF ¶ 2. Mr. Kubota's opinions about the balance of the United States' costs sought in this motion ($2,721,794.92), ECF No. 154-3, **Exhibit 3** at 36–47 of 116, are uninformed and grounded in a basic misunderstanding of the types of documents that support the Navy's incurrence and payment of costs to its various contractors. ECF No. 154-4 ¶¶ 7–10.

According to his expert report and as explained by him in his deposition, Mr. Kubota concludes that $2,659,772.74 in contractor costs lack sufficient evidence of invoicing from Navy's contractors and that $62,022.18 in contractor costs lack sufficient evidence of payment by the Navy. ECF No. 154-3, **Exhibit 3** at 36–47 of 116; ECF No. 154-3, **Exhibit 4**, Kubota Tr. 26:12–28:9; ECF No. 154-4 ¶ 7. But Mr. Kubota made the following relevant admissions at his deposition:

- (Unlike Mr. Wright) He is not an accountant, has no training in accounting, and is not offering an opinion as a Certified Public Accountant;[7]

---

[6] Mr. Kime describes in his declaration the process used to calculate DOJ's indirect costs and explains that the system results in a fair and reasonable allocation of DOJ's indirect costs. ECF No. 154-5, ¶¶ 12–15.

[7] ECF No. 154-3, **Exhibit 4**, Kubota Tr. 13:2–23; 100:4–101:4

-7-   Case No. 3:23-cv-00541-LL-VET

MEMORANDUM OF POINTS AND AUTHORITIES ISO THE UNITED STATES'
MOTION FOR PARTIAL SUMMARY JUDGMENT

- (Unlike Mr. Wright) He did not follow any professional accounting standards in performing his analysis of the United States' cost claim;[8]
- (Unlike Mr. Wright) He lacks basic knowledge of government contracting regulations and applicable procedures;[9]
- (Unlike Mr. Wright) He is not qualified to assess whether the Navy's official financial management system is based on generally accepted accounting principles;[10]
- (Unlike Mr. Wright) He was unfamiliar with and did not understand contractor closeout packages submitted by contractors to the Navy that provided evidence of invoicing for the $2,659,772.74 in costs that Mr. Kubota disputes in his Opinion 1;[11] and
- (Unlike Mr. Wright) He did not understand the data produced to the City by the United States from the Navy's official accounting system showing evidence of payment for the $62,022.18 in costs that Mr. Kubota disputes in his Opinion 1.[12]

Contrary to the opinions offered in Mr. Kubota's report and at his deposition, the final closeout packages, which he admitted to not understanding, were prepared and submitted by Navy's contractors, and they document every invoice submitted to the Navy.[13] And the data from the Navy's official accounting system, which Mr. Kubota also admitted to not understanding, documents every payment made by the

---

[8] *Id*. at 105:15–106:3
[9] *Id*. at 107:19–110:25
[10] *Id*. at 103:17–23
[11] *Id*. at 39:9-40:7; 72:6–73:25
[12] *Id*. at 91:7–92:25
[13] Mr. Kubota did not credit this evidence of invoicing because he did not understand that the closeout packages were prepared and submitted by the contractors, although the contractor's name and logo were prominently displayed on the documents. ECF No. 154-4 ¶ 8; ECF No. 154-3, **Exhibit 4**, Kubota Tr. 40:5–41:18.

Navy to its contractors.[14] Mr. Kubota is simply incorrect that there is insufficient documentation of these invoices and payments,[15] and no reasonable trier of fact could conclude otherwise. When, as here, an expert's opinions are unsupported, they do not create a genuine issue of material fact. *See State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 781 (9th Cir. 1998) (finding an expert opinion did not create a genuine dispute of fact when viewed against the record in the case); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995) (finding an expert opinion does not create a genuine dispute of fact when the opinion is based on incomplete information); *United States v. 45/194 Kg. Drums of Pure Vegetable Oil*, 961 F.2d 808, 811 (9th Cir. 1992) (finding an expert opinion does not create a genuine dispute of fact when it ignores facts in the record). The Court should therefore find all $17,131,016.38 in response costs are adequately documented and recoverable.[16]

### C. The Costs Incurred by the United States are Consistent with the NCP, and the City Does Not Argue Otherwise.

Once a government plaintiff establishes a *prima facie* case that its response costs were incurred in connection with the release or threatened release of

---

[14] Mr. Kubota did not credit this evidence of payment because he did not understand the data produced to the City from the Navy's financial accounting system showing evidence of payment — including that the field "DAY PD" referred to the date of payment. ECF No. 154-4 ¶ 9; ECF No. 154-3, **Exhibit 4**, Kubota Tr. 91:7–92:25.

[15] ECF No. 154-4 ¶ 10.

[16] Even if the Court is unwilling to issue summary judgment for these $2,721,794.92 in costs, it should at a minimum issue judgment for the recovery of $14,583,167.05 in response costs that the City does not dispute. SOF ¶ 2. This total amount of uncontested response costs is the difference between the total costs supported by Mr. Wright's and Mr. Kime's analysis ($ 17,338,800) and the portion of those costs contested by Mr. Kubota ($2,755,632.95). ECF No. 154-3, **Exhibit 3** at 55 of 116.

-9-     Case No. 3:23-cv-00541-LL-VET

MEMORANDUM OF POINTS AND AUTHORITIES ISO THE UNITED STATES'
MOTION FOR PARTIAL SUMMARY JUDGMENT

hazardous substances from a CERCLA site, the costs are presumed consistent with the NCP, and the burden shifts to the defendant to prove otherwise. *Chapman*, 146 F.3d at 1169–71. Here, Mr. Kubota has not presented any opinions that the costs incurred by the United States are inconsistent with the NCP. Two of the City's other experts, Stephen Johnson and Michael Trapp, discuss the NCP in their expert reports, but both explicitly acknowledged that they are not providing opinions about the consistency of the United States' costs with the NCP.[17] The City cannot show, and its experts do not even attempt to argue, that the United States' response costs were inconsistent with the NCP, and therefore the Court should enter summary judgment that the United States incurred $17,131,016.38 in costs not inconsistent with the NCP.

## CONCLUSION

Having presented uncontested evidence sufficient to demonstrate, as a matter of law, that the United States' response costs were incurred in connection with the Site and are recoverable under CERCLA, the United States is entitled to summary judgment as to these amounts and as to recoverability of these costs. As of July 31, 2023, the Navy had incurred $15,944,926.65 in response costs in connection with investigation and cleanup activities at the Site. As of October 31, 2024, DOJ had incurred at least $1,186,089.73 in litigation-related response costs in connection with the Site. The Court should therefore award the United States $17,131,016.38 in response costs, plus prejudgment interest on the Navy's costs.

---

[17] ECF No. 154-3, **Exhibit 5**, Johnson Tr. 18:22–19:5; *Id.*, **Exhibit 6**, Trapp Tr. 203:4–22 and 214:5–215:23.

| | |
|---|---|
| Dated: March 21, 2025 | ADAM R.F. GUSTAFSON<br>Acting Assistant Attorney General<br>United States Department of Justice<br>Environment and Natural Resources Division<br><br>*s/ Brian Schaap*<br>BRIAN SCHAAP (DC Bar No. 1780655)<br>STEFAN J. BACHMAN (SC Bar No. 102182)<br>NICHOLAS McDANIEL (MA Bar No. 682742)<br>Environmental Enforcement Section<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, DC 20044-7611<br>Phone: (202) 616-6536 (Bachman)<br>Stefan.Bachman@usdoj.gov<br>Brian.Schaap@usdoj.gov<br>Nicholas.A.McDaniel@usdoj.gov<br><br>MARK ALBERT RIGAU (CA Bar No. 223610)<br>Environmental Defense Section<br>Environment and Natural Resources Division<br>450 Golden Gate Avenue, Suite 07-6714<br>San Francisco, CA 94102<br>Phone: (415) 744-6487<br>Mark.Rigau@usdoj.gov<br><br>ALASTAIR M. GESMUNDO (CA Bar No. 316573)<br>SAMUEL F. HOBBS (AL Bar No. 9776O19E)<br>Civil Division<br>Commercial Litigation Branch |

-11-   Case No. 3:23-cv-00541-LL-VET

MEMORANDUM OF POINTS AND AUTHORITIES ISO THE UNITED STATES'
MOTION FOR PARTIAL SUMMARY JUDGMENT

Alastair.M.Gesmundo@usdoj.gov
Samuel.Hobbs@usdoj.gov

*Attorneys for Plaintiff and Counterclaim-Defendant United States of America*

-12-    Case No. 3:23-cv-00541-LL-VET
MEMORANDUM OF POINTS AND AUTHORITIES ISO THE UNITED STATES'
MOTION FOR PARTIAL SUMMARY JUDGMENT