UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.<br><br>    Defendants.<br><br>_____<br><br>AND RELATED CROSS-ACTION. | Case No.: 23cv0541-LL-VET<br><br>**ORDER GRANTING MOTION TO DISMISS CITY OF SAN DIEGO'S AMENDED SECOND AND THIRD COUNTERCLAIMS WITH PREJUDICE FOR LACK OF SUBJECT-MATTER JURISDICTION**<br><br>[ECF No. 111] |

The Court previously granted Plaintiff/Counter-Defendant United States' Motion to Dismiss Defendant/Counter-Plaintiff City of San Diego's Amended Second Through Fourth Counterclaims with leave to amend. ECF No. 89. The City amended some of those counterclaims and, once again, the United States moved to dismiss them. ECF Nos. 96, 111. The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the United States' Motion to Dismiss under Rule 12(b)(1).

I.   **BACKGROUND**

The United States sued the City of San Diego, San Diego Unified Port District, and San Diego County Regional Airport Authority under the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA")[1] to recover over sixteen million dollars it spent cleaning up hazardous substances at Installation Restoration Site 12, Boat Channel Sediments, former Naval Training Center in San Diego, California (the "Site"). ECF No. 25 ¶ 1. In case the Site continues to be contaminated, the United States also sought a declaratory judgment to make Defendants liable for more response costs not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan. *Id*. ¶ 2.

The United States settled with the Port District and Airport Authority. ECF No. 65. That settlement was reduced to a consent decree and subject to public comment for objections. *Id*. Receiving no objections, the Court approved the consent decree and entered final judgment between those parties. ECF Nos. 67–69.

The remaining party, City of San Diego, brings four counterclaims: (1) contribution, CERCLA § 113(f)(1); (2) recoupment; (3) declaratory and injunctive relief, Administrative Procedure Act; and (4) declaratory relief, CERCLA § 113(g)(2). ECF No. 96 ("Cross-Compl."). The United States moved to dismiss claims two and three,[2] the City opposed, and the United States replied. ECF Nos. 111-1 ("Mot."), 115 ("Opp."), 116 ("Reply").

## II.   LEGAL STANDARD

"Federal courts" have "limited jurisdiction," possessing "only that power authorized by Constitution and statute," which is "not to be expanded by judicial decree." *Kokkonen*

---

[1] Practitioners often cite to specific sections in CERCLA rather than where it is codified in the U.S. Code, e.g., CERCLA § 107(a) instead of 42 U.S.C. § 9607(a). *See Crescent Mine, LLC v. Bunker Hill Mining Corp.*, No. 21-cv-0310-DCN, 2022 WL 612394, at *3 n.2 (D. Idaho Mar. 2, 2022) (noting the same). Similarly, this Court uses them interchangeably.

[2] The United States also moved to dismiss claims one and four "to the extent they reallege a cost recovery claim under CERCLA § 107(a)." Mot. at 25. The City clarified that it "does not attempt to reallege § 107(a) claims" in light of "the Court's previous [dismissal] order." Opp. at 21. Still, since the Cross-Complaint's language includes § 107(a) as a basis to recover the City's alleged response costs, the Court **DISMISSES WITH PREJUDICE** Counterclaims 1 and 4 to the extent that they reallege a § 107(a) claim, which this Court already dismissed. *See* ECF No. 89. In all other respects, Counterclaims 1 and 4 survive.

*v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A party may therefore move to dismiss a claim based on "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The "party asserting jurisdiction" bears "the burden" of showing that we have jurisdiction to decide the matters before us. *Kokkonen*, 511 U.S. at 377. For facial challenges to subject-matter jurisdiction, as here, courts accept the nonmoving party's well-pled "allegations as true," draw "all reasonable inferences" in its favor, and determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Still, the "United States can be sued only to the extent that it has waived its sovereign immunity," and those suing it must show that such waiver was "unequivocal." *Baker v. U.S.*, 817 F.2d 560, 562 (9th Cir. 1987). The United States, in other words, "may not be sued without its consent and the terms of such consent define the court's jurisdiction." *Id.*; *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text," "will not be implied," and "will be strictly construed, in terms of its scope, in favor of the sovereign.").

For example, Congress unequivocally waived sovereign immunity on CERCLA claims when it penned that the United States "shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity." CERCLA § 120(a)(1); 42 U.S.C. § 9620(a)(1). This is how the Court has jurisdiction over the City's first and fourth counterclaims—both are pled under CERCLA. By contrast, the City's second and third counterclaims are not pled under CERCLA, which raises the jurisdictional questions before us.

### III. DISCUSSION

#### A. Recoupment (Counterclaim 2)

The City alleges that the United States is co-liable for co-contaminating the Site, so the City is "entitled to recoupment diminishing or defeating" any recovery against itself. *See* Cross-Compl. ¶ 72. The City says this counterclaim is permissible as the United States waived its immunity on recoupment when it sued the City under CERCLA. *See id.* ¶ 73.

"Under a theory of recoupment," one who is sued "by the government" may "assert any counterclaim arising from the same transaction or occurrence as the government's action, even though the counterclaim otherwise would be barred by sovereign immunity." *U.S. v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432, 1452–53 (E.D. Cal. 1995). This is due to the common-law "notion that the government waives sovereign immunity" when "it brings suit." *Id*. at 1453.

However, courts routinely decline to extend the recoupment doctrine to CERCLA. "Waivers of sovereign immunity may not be implied," for starters, "and CERCLA nowhere purports to waive a governmental agency's immunity from suit under other laws." *Id*. at 1456. Indeed, "CERCLA itself expressly limits its waiver of sovereign immunity to CERCLA counterclaims," not common-law recoupment. *Id*. There is also "no compelling need for application of the recoupment doctrine in the context of a government cost recovery action under CERCLA because CERCLA itself permits the defendant in a suit by the government to seek contribution and make claims against the government." *Id*. This is precisely what the City seeks against the United States in counterclaim one for contribution under CERCLA § 113(f)(1)—similarly serving to diminish or defeat any recovery against the City—which the United States did not move to dismiss. Finally, "to permit a claim made under another legal regime, brought by way of recoupment, simply because the government brought suit under CERCLA, could well undermine CERCLA's scheme of allocating cleanup costs and of setting standards for liability for government activities." *Id*. As a seminal case on this issue summarized it:

> In short, there is nothing in CERCLA that can be read to exact a waiver of governmental sovereign immunity from claims under other laws as to which it is immune as the price of bringing a cost recovery action under CERCLA. Recoupment doctrine, with its tenuous basis in the common law, cannot serve as a substitute for a clearly expressed congressional intent to subject the United States and California to state or non-CERCLA federal law counterclaims, as to which they would otherwise be immune, in the context of a CERCLA action, when CERCLA itself expressly limits its waiver of sovereign immunity to CERCLA counterclaims.

*Id*.

The Court finds no cases within the Ninth Circuit to undermine this well-reasoned opinion exercising judicial restraint. Dismissing the City's recoupment counterclaim for lack of jurisdiction is therefore warranted. *See id*. at 1457 (dismissing "recoupment" counterclaims against the government in "CERCLA" action for lack of jurisdiction); *Cal. Dep't of Toxic Substances Control v. NL Indus., Inc*., No. 20-cv-1293-SVW-AGR, 2021 WL 6496813, at * 2 (C.D. Cal. Dec. 22, 2021) (same).

### B.   Declaratory and Injunctive Relief under the APA (Counterclaim 3)

A "person suffering legal wrong because of [final] agency action" may open a case in federal court seeking "review" of that action, even when it is "against the United States." 5 U.S.C. §§ 702, 704 (Administrative Procedure Act). Still, the APA's waiver of sovereign immunity is subject to three limitations: (1) one must seek "relief other than money damages," (2) one must have "no other adequate remedy," and (3) the relief sought must not be "expressly or impliedly forbid[den]" by "any other statute." *See id*. §§ 702, 704.

Before determining whether the City sufficiently pled an APA counterclaim, appreciating the City's core grievance is needed. The City alleges it conveyed land to the United States in 1916 so it could construct and use what came to be known as the Naval Training Center. Cross-Compl. ¶ 13. The NTC closed around 1997. *Id*. ¶ 14. Beginning in 2000 the United States conveyed NTC parcels back to the City and other entities for redevelopment, but the United States continued to own the NTC Boat Channel along with nearby properties like the Marine Corps Recruit Depot. *Id*. ¶ 15.

In 2000 the City and the United States entered into a Memorandum of Agreement. *Id*. ¶ 16. The MOA lays out terms under which the City agrees to accept Parcels IIIB and VII from the United States, an area which the City says is the same as the NTC Boat Channel and includes the Site in the complaint, too. *Id*. Because the MOA states that these parcels are "believed to contain sediments impacted with various contaminants," it directs the United States to (1) "take all remedial action necessary to protect human health and the environment" and (2) "obtain site closure from appropriate regulatory authorities based on the projected use of Parcel[s] IIIB [and VII]" before transfer to the City. *Id*.

In 2019 the United States sent a final remedial action completion report to the San Diego Regional Water Quality Control Board for its cleanup. *Id*. ¶¶ 24, 40, 46–59. In accepting it the Water Board said it had "no further comment" instead of "no further action" needed. *Id*. The City alleges that, at best, the Board's lukewarm response forecloses liability for the Site, not Parcels IIIB and VII entirely. *Id*. According to the City this is because the investigation and remediation failed to include the parcels' banks, slopes, rip rap, shoreline, and shallow areas. *Id*. If the United States transfers the parcels to the City and if the Board requires additional remediation to current state standards, the City fears liability. *See id*. By not taking all remedial action necessary to protect the environment and not obtaining complete closure from the Water Board, the City argues that the United States breaches the MOA each time it tries transferring Parcels IIIB and VII to it. *See id*. The City has thus repeatedly refused to accept the parcels, prompting in part this litigation.

Against this backdrop, the City alleges that it is "aggrieved" by the United States and Water Board's "Record of Decision, Remedial Action Plan, and Remedial Action Completion Report," for which it seeks declaratory and injunctive relief. *See* ¶¶ 75–82. Specifically, through the APA, the City seeks to bar the United States from relying upon the "flawed" data within these so-called completion reports, for doing so to justify transfer "violates the obligations and conditions precedent it agreed to in the MOA." *See id*. The United States argues that such a claim for relief is impliedly forbidden by another statute, namely the Tucker Act, 28 U.S.C. § 1491(a)(1). *See* Mot. at 14–19; Reply at 5–8.

"The Tucker Act grants exclusive jurisdiction to the Court of Federal Claims over breach-of-contract actions for money damages." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1027 (9th Cir. 2023). The Ninth Circuit has also interpreted the Tucker Act to "impliedly forbid" an APA action seeking "injunctive and declaratory relief" when it is a "disguised" breach-of-contract claim. *Id.* at 1026. To unearth this, we look to (1) "the source of the rights upon which the plaintiff bases its claims" and (2) "the type of relief sought (or appropriate)." *Id*. For instance, "if rights and remedies are contractually based then only the Court of Federal Claims" has jurisdiction, "even if the plaintiff formally

seeks injunctive relief." *Id*. "This test imposes something akin to a well-pleaded complaint rule for Tucker Act-adjacent APA actions." *Id*.

The Court finds the rights and remedies underlying the City's APA counterclaim to be contractually based. For one, the City alleges that it is entitled to relief under the APA in light of the MOA. *See* Cross-Compl. ¶ 79 ("The Remedial Action Completion Report is arbitrary and capricious because it is inconsistent with the requirement of the MOA that the USA take all remedial action necessary to protect human health and the environment."); *id*. ¶¶ 80–81 (seeking to "set aside" and "prevent" the United States from "relying" on the "arbitrary and capricious actions" in "a manner that violates the obligations and conditions precedent it agreed to in the MOA"). The source of the rights upon which the City bases its APA counterclaim is thus contractual. *See United Aeronautical Corp.*, 80 F.4th at 1030 (noting that "easily-spotted breach-of-contract claims" in Tucker Act-adjacent APA actions include rights "flowing from" the "performing of contracts" (alterations omitted)); *Buckovetz v. U.S. Dep't of the Navy*, No. 23-cv-1942-CAB-MMP, 2024 WL 253630, at *2 (S.D. Cal. Jan. 23, 2024) (finding that "the source of the rights on which Plaintiff bases his claim" was his "contract" with the federal government when the core issue was whether the contract "means what it says").

The type of relief sought is also contractual. *See id*. Prayer for Relief ¶ 2 (seeking an order "prohibiting" the United States "from transferring NTC Boat Channel Parcels VII and III-B to the City" unless it can show that "(1) it has taken all remedial action necessary to protect human health and the environment and (2) it has obtained site closure from appropriate regulatory authorities"); *id*. ¶ 3 (seeking an order "compelling" the United States to fulfill those transfer conditions); *id*. ¶ 4 (seeking an order "declaring" that "the City has no legal duty to accept transfer" of the parcels "due to the breach" of "the MOA"). The two transfer conditions are copied from the MOA verbatim, and no other counterclaim deals with how to resolve the parcel transfers, so the City seeks such specific performance and other contractual relief under the APA. *See United Aeronautical Corp.*, 80 F.4th at 1026, 1030 (noting that "an injunction directing the Army to execute the [contract]" is "a

1  thinly veiled request for specific performance," a "traditional" breach-of-contract remedy);
2  *Buckovetz*, 2024 WL 253630, at *2 (finding a "claim for equitable relief based on contract"
3  when the plaintiff alleged that the federal government "provided less than the advertised
4  and contract-defined 4' x 4' x 8' of unobstructed storage space").

5        Because the rights and remedies under the City's APA counterclaim are contractual,
6  the Tucker Act impliedly forbids this Court from deciding it. Dismissal is warranted.
7  *See* 5 U.S.C. § 702 (stating that a limitation on the APA's waiver of sovereign immunity
8  is that the relief sought must not be "impliedly forbid[den]" by "any other statute"); *United*
9  *Aeronautical Corp.*, 80 F.4th at 1029 ("Thus, where the government's waiver includes a
10 limitation about 'what courts' may hear a claim against it, we cannot defer to the plaintiff's
11 choice of court; instead, we must 'strictly' construe the waiver to effectuate Congress's
12 limitation on it."); *Buckovetz*, 2024 WL 253630, at *2 (S.D. Cal. Jan. 23, 2024) (dismissing
13 Tucker Act-adjacent APA action with prejudice since "the waiver of sovereign immunity
14 in the APA does not apply").

15 **IV.   LEAVE TO AMEND**

16       Courts have discretion to grant leave to amend a complaint "when justice so
17 requires." Fed. R. Civ. P. 15(a)(2). This discretion is guided by the strong federal policy
18 favoring dispositions on the merits and permitting amendments with "extreme liberality."
19 *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Courts consider five
20 factors during this deliberation: (1) "undue delay," (2) "bad faith or dilatory motive on the
21 part of the movant," (3) "repeated failure to cure deficiencies by amendments previously
22 allowed," (4) "undue prejudice to the opposing party," and (5) "futility of amendment."
23 *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The district court's discretion to deny leave
24 to amend is particularly broad where plaintiff has previously amended the complaint."
25 *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

26       The City filed counterclaims against the United States in June 2023. ECF No. 8.
27 After the United States amended its complaint, the City amended its counterclaims in
28 September 2023. ECF No. 31. Then, after the Court granted the United States' motion to

1  dismiss the first amended counterclaim, the City filed this second amended counterclaim.
2  ECF No. 96. But instead of materially supplementing its factual allegations to try and cure
3  the deficiencies, the City predominately swapped out its old legal theories with new ones.
4  *Compare* ECF No. 38 (alleging Cost Recovery under § 107(a), Breach of Contract, and
5  Equitable Indemnity) *with* Cross-Compl. (alleging Recoupment and Declaratory/Injunctive
6  Relief under the APA). Fact and expert discovery are closed, pretrial deadlines have
7  already been extended, the United States' motions for partial summary judgment are
8  pending, and the parties will file any further motions for summary judgment within 30 days
9  after the Court's ruling on this matter. *See* ECF Nos. 118, 152, 154, 176.

10  Under these circumstances, the *Foman* factors tip against amendment. To explain,
11  first and foremost, the City "failed to correct [the] deficiencies in its Second Amended"
12  Cross-Complaint, which is a "strong indication" that it has "no additional facts to plead."
13  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). This is a
14  "repeated failure to cure deficiencies by amendments previously allowed," and the Court
15  further finds that "any attempt to amend would be futile." *See id*. (reasoning similarly to
16  affirm the district court's dismissal of the complaint with prejudice). Nor does the City
17  justify why it waited to raise its "new theories," which, as here, are "not reviewed favorably
18  when the facts and the theory have been known to the party seeking amendment since the
19  inception of the cause of action." *See Acri v. Int'l Ass'n of Machinists & Aerospace
20  Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). Because discovery is closed, pretrial
21  deadlines have already been extended, the United States' motions for partial summary
22  judgment are pending, and any further motions for summary judgment will be filed within
23  30 days of this Order, the Court also finds that another amendment would cause undue
24  delay and prejudice to the United States. *See Campbell v. Emory Clinic*, 166 F.3d 1157,
25  1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an amendment asserted
26  after the close of discovery and after dispositive motions have been filed, briefed, and
27  decided."); *In re Silva*, No. 17-cv-3535-SJO, 2017 WL 8186267, at *3 (C.D. Cal. Nov. 13,
28  2017) (citing the same). The City may not amend its counterclaims for a third time.

## V. CONCLUSION

Accordingly, the Court **GRANTS** the United States' Motion to Dismiss. The City's Counterclaim 2 (recoupment) and Counterclaim 3 (declaratory and injunctive relief under the APA) are **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

Dated: July 17, 2025

Honorable Linda Lopez
United States District Judge