

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>Defendants.<br>_____<br><br>AND RELATED CROSS-ACTION. | Case No.: 23cv0541-LL-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT ON CITY OF SAN DIEGO'S PRIMA FACIE LIABILITY UNDER CERCLA § 107(a) AND FUTURE LIABILITY UNDER § 113(g)(2)**<br><br>**[ECF No. 118]** |

Before the Court is Plaintiff United States' Motion for Partial Summary Judgment on Defendant City of San Diego's prima facie liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107(a) for cost recovery and future liability under § 113(g)(2) for declaratory judgment. ECF No. 118. The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion for Partial Summary Judgment.

I.    **BACKGROUND**

The United States sued the City of San Diego, San Diego Unified Port District, and San Diego County Regional Airport Authority under CERCLA to recover over sixteen

million dollars it spent cleaning up hazardous substances at Installation Restoration Site 12, Boat Channel Sediments, former Naval Training Center in San Diego, California (the "Site"). ECF No. 25 ("Compl.") ¶ 1. In the event the Site continues to be contaminated, the United States also sought a declaratory judgment to make Defendants liable for more response costs not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"). *Id*. ¶ 2.

After settling with the Port District and Airport Authority, the United States moved for partial summary judgment on the City's prima facie liability under CERCLA § 107(a) for cost recovery (Claim 1) and future liability under § 113(g)(2) for declaratory judgment (Claim 2). ECF No. 118-1 ("Mot."). The City opposed and the United States replied. ECF Nos. 133 ("Opp."), 144 ("Reply").

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law," and a dispute over a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those parts of the pleadings and record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant carries this burden of production, then the non-movant must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. Courts must view the facts and draw all reasonable inferences "in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (brackets omitted). There are no mini-bench trials on "affidavits;" the "evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255. Still, if the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment is appropriate. *Id*. at 249–50. Nor is it our task

2

"to scour the record in search of a genuine issue of triable fact;" we may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## III.    DISCUSSION

### A.    Cost Recovery, CERCLA § 107(a) (Claim 1)

"CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 814 (1994). "We construe CERCLA liberally in order to effectuate its two primary goals: (1) to ensure the prompt and effective cleanup of waste disposal sites, and (2) to assure that parties responsible for hazardous substances [bear] the cost of remedying the conditions they created." *U.S. v. Sterling Centrecorp Inc.*, 977 F.3d 750, 756 (9th Cir. 2020) (quotation marks omitted).

"Section 107(a)" is a mechanism by which one can "recover expenses associated with cleaning up contaminated sites." *U.S. v. Atl. Rsch. Corp.*, 551 U.S. 128, 131 (2007). To establish a prima facie case for cost recovery under § 107(a), a governmental party like the United States must show that "(1) the site is a 'facility'; (2) a 'release' or 'threatened release' of a hazardous substance occurred; (3) [it] incurred costs in responding to the release or threatened release; and (4) the defendant falls within one of the four classes of responsible persons defined by the statute." *Cal. ex rel. Cal. Dep't. of Toxic Servs. Control v. Neville Chem. Co.*, 213 F. Supp. 2d 1115, 1123 (C.D. Cal. 2002) (citing § 107(a) and *U.S. v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998)).

The United States argues that it has made out a prima facie case for the City's liability under § 107(a) on undisputed evidence. *See* Mot. at 14–24. In doing so, the United States discusses why each of the four elements has been met while citing to its Statement of Undisputed Material Facts. *See id*; ECF No. 137 ("UMF") ¶¶ 1–54. In its 20-page response, the City spends but a single page opposing that argument. *See* Opp. at 15. And even then, the City does not expressly tie its disagreement to any § 107(a) element. Instead, putting the cart before the horse, the City mainly argues that the response costs incurred by

the United States are inconsistent with the NCP, which is the subject of the United States'
subsequent motion for partial summary judgment—not this one. *See* Mot. at 9 n.2; Opp.;
Reply; ECF No. 154; *Wash. State Dep't of Transp. v. Wash. Nat. Gas Co., Pacificorp*,
59 F.3d 793, 798 (9th Cir. 1995) ("[F]ailure to comply with the NCP is not a defense to
[prima facie] liability, but rather a factual issue affecting damages.").

Because a "party waives or abandons an argument at the summary judgment stage
by failing to provide more than a passing remark in support of its position," the City's
misguided opposition is susceptible to abandonment. *See DZ Bank AG Deutsche Zentral-
Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. 14-cv-5880-JLR, 2016 WL
631574, at *25 (W.D. Wash. Feb. 16, 2016) (collecting cases). In fact, when presented with
a similar posture, another court held "that the United States is entitled to partial summary
judgment on the issue of the [defendant's] liability" after "[h]aving determined that the
[defendant's] arguments regarding response costs do not apply to the plaintiff's prima facie
case." *See U.S. v. Wash. State Dep't of Transp.*, No. 05-cv-5447-RJB, 2006 WL 3327071,
at *5 (W.D. Wash. Nov. 15, 2006). This Court finds the same.

Nonetheless, for good measure, the Court will briefly consider each element on the
merits to confirm that there is no genuine issue of material fact over the City's prima facie
liability under § 107(a) for cost recovery. Inasmuch as the Court relies on the United States'
Statement of Undisputed Material Facts, to which the City sometimes objects in part based
on alleged vagueness, irrelevance, speculation, overbroadness, or lack of foundation, such
objections are **OVERRULED**;[1] meanwhile, any objections to the United States' Statement
of Undisputed Material Facts that the Court does not rely on are **DENIED AS MOOT**.

---

[1] While some of these objections may be cognizable at trial, the City has not shown that
the facts stated within the United States' evidence "cannot be presented in a form that
would be admissible in evidence," at least pertaining to the facts needed to show the City's
prima facie liability. *See* Fed. R. Civ. P. 56(c)(2); *Fraser v. Goodale*, 342 F.3d 1032, 1036
(9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of
the evidence's form. We instead focus on the admissibility of its contents.").

### 1.    Facility

CERCLA defines "facility" as any "installation," "pipe or pipeline (including any pipe into a sewer or publicly owned treatment works)," "aircraft," etc. 42 U.S.C. § 9601(9). Indeed, "any site or area where a hazardous substance has been deposited" or "otherwise come to be located" is also a "facility." *Id*. Facility, then, is "broadly construed." *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1360 n.10 (9th Cir. 1990).

Here, the United States argues that the City's storm sewer system and airport are facilities. *See* Mot. at 15–17; UMF ¶¶ 10–13, 16, 21–25, 30, 36–37, 49–52. The City, while objecting in part to certain evidence underlying this rather obvious conclusion, ultimately does not dispute that the storm sewer system and airport are facilities. *See generally* Opp. It is undisputed that the "City owns and operates a municipal separate storm sewer system" containing "storm drains, pipes, culverts, ditches, and outfalls and other discharge points." UMF ¶¶ 15–16. While the City does not own the airport anymore, it is also undisputed that it owned and operated the airport for decades. *See id*. ¶¶ 11, 14. Therefore, the Court finds no genuine dispute undermining the material fact that the sewer system and airport are facilities. *See* 42 U.S.C. § 9601(9); *see, e.g.*, *Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188, 1202 (E.D. Cal. 2009) ("[W]ithin and beyond the Ninth Circuit, the court concludes that the sewer in this case is a 'facility' for purposes of CERCLA.").

### 2.    Release of Hazardous Substances

CERCLA defines "release" as any "spilling," "discharging," "disposing," etc. "into the environment." 42 U.S.C. § 9601(22). What counts as a release of hazardous substances is thus quite broad. *See Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1075 (9th Cir. 2006) ("Our precedents establish that the passive migration of hazardous substances into the environment from where hazardous substances have come to be located is a release under CERCLA."). Arguing that one's release of hazardous substances into the environment was trivial is not a winning defense to liability, either. *See Cose v. Getty Oil Co.*, 4 F.3d 700, 708–09 (9th Cir. 1993) ("Liability is imposed under CERCLA *regardless of* the concentration of the hazardous substances present in a defendant's waste, *as long as*

the contaminants are listed 'hazardous substances' pursuant to 40 C.F.R. § 302.4(a).").

Here, the United States argues that the City's storm sewer system and airport have released copper, lead, zinc, chlordane, and DDT into the Site. *See* Mot. at 17–21; UMF ¶¶ 6, 13, 19–20, 22–40, 46–55. These five substances are "hazardous" under CERCLA. *See* 40 C.F.R. § 302.4; 42 U.S.C. § 9601(14). The City objects to certain evidence beneath this conclusion. *See* Opp. at 15. However, when reviewing the evidence in support of the United States, the Court finds that the City's objections do not undermine the fact that, at least at some point over the course of several decades, some hazardous substances were released from its facilities into the Site. *See* UMF ¶¶ 24–29 (car tires, brakes, and gasoline sometimes left behind copper, lead, and zinc on public streets, which stormwater runoff picked up and carried downstream into storm sewer system); *id.* ¶¶ 30–32 (stormwater sampling data showed City sometimes had copper, lead, and zinc in storm sewer system); *id.* ¶¶ 33–37 (prior to ban, chlordane and DDT sometimes found on public streets and carried into sewer system via stormwater runoff); *id.* ¶¶ 22–23, 30 (storm sewer system sometimes released into Site); *id.* ¶¶ 38–48 (untreated sanitary sewage containing copper, lead, zinc, chlordane, or DDT sometimes released into Site); *id.* ¶¶ 49–55 (aircraft tires, brakes, and gasoline sometimes left behind copper, lead, and zinc on runways, which stormwater runoff picked up and carried into Site); *id.* ¶ 6 (copper, lead, zinc, chlordane, and DDT sometimes found in Site). Thus, the Court finds no genuine issue undercutting the material fact that the City's facilities have released hazardous substances into the Site. *See Neville*, 213 F. Supp. 2d at 1123 (finding a "release" into the environment in part because "CERCLA-defined hazardous substances" like "copper, zinc, and lead" were "detected in the soil, groundwater, surface water, and air at the [defendant's] site").

### 3. Incurred Response Costs

CERCLA defines "response" as any "removal," "remedy," "remedial action," or "enforcement activities." 42 U.S.C. § 9601(25). In a word, "removal" means to "cleanup" hazardous substances from the environment, including efforts "to monitor, assess, and evaluate the release or threat of release of hazardous substances." *See id.* § 9601(23)

23cv0541-LL-VET

(defining removal); *id* § 9601(24) (defining remedy and remedial action). "Recoverable response costs also include reasonable attorneys' fees for bringing cost-recovery litigation, as well as indirect costs, or overhead." *Neville*, 213 F. Supp. 2d at 1124.

Here, the United States argues that it has incurred numerous costs in responding to the Site due to the City's release of hazardous substances. *See* Mot. at 22; UMF ¶¶ 5–9. The City, while objecting in part to certain evidence underneath this conclusion, ultimately does not dispute that the United States has incurred at least some cost for its work on the Site. *See generally* Opp. It is undisputed, for instance, that the United States investigated at least part of the Site for the release of hazardous substances. *See* UMF ¶¶ 5–9 (disputed on other grounds). The same is true for the United States' cleanup of some hazardous substances from the Site—the City disputes only the breadth and adequacy of the cleanup. *See id*. The Court therefore finds no genuine dispute eroding the material fact that the United States has incurred costs in responding to the release of hazardous substances into the Site.

### 4.    Potentially Responsible Parties

CERCLA defines four classes of potentially responsible parties, including (1) "the owner and operator" of a "facility," (2) the past owner or operator of a "facility at which such hazardous substances were disposed," or (3) anyone who "arranged for disposal" of "hazardous substances" at a facility "owned or possessed by such person" or "owned or operated by another party." 42 U.S.C. § 9607(a). "Disposal" means "the discharge" or "placing of any solid waste or hazardous waste into or on any land or water." *Id*. § 6903(3); *id*. § 9601(29). There is no exception for de minimis disturbances. *See Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp*., 976 F.2d 1338, 1342 (9th Cir. 1992) ("CERCLA's definition of disposal expressly encompasses the placing of any hazardous waste on any land." (quotation marks and ellipses omitted)). Whether one arranged for the disposal of its own or another's hazardous substances is also subject to "a liberal judicial interpretation consistent with CERCLA's overwhelmingly remedial statutory scheme." *See Cadillac Fairview/Cal., Inc. v. U.S.*, 41 F.3d 562, 565 n.4 (9th Cir. 1994) (ellipsis omitted);

*Pakootas*, 452 F.3d at 1082 (holding that "one may be liable under § 9607(a)(3) if they arrange for disposal of their own waste or someone else's waste").

Here, the United States argues that the City is a potentially responsible party. *See* Mot. at 22–24; UMF ¶¶ 11, 14, 18, 22, 24, 42, 46, 48–54. The City, while objecting in part to certain evidence behind this conclusion, ultimately does not dispute that it owns and operates the storm sewer system, that it formerly owned and operated the airport, or that it is a disposal arranger. *See generally* Opp.; UMF ¶¶ 11, 14–16. As already discussed, there is also no genuine dispute that the City's facilities released some hazardous substances into the Site. That the United States or others may have also polluted the Site does not absolve the City of its own role. *See U.S. v. Hercules, Inc.*, 247 F.3d 706, 716 (8th Cir. 2001) (explaining that "the government need not trace" a "defendant's wastes" so long as "the defendant fits into one of the four categories of responsible parties"); *Atl. Rsch. Corp.*, 551 U.S. at 131 (holding that "potentially responsible parties" may "recover costs from other PRPs" under "§ 107(a)"). The Court, then, finds no genuine issue of material fact over whether the City is a potentially responsible party—it is.

Overall, the United States has made out a prima facie case for the City's liability under § 107(a) for cost recovery on undisputed evidence.

## B. Burden Shifting

If "the four elements of a *prima facie* case for CERCLA liability" are met, like here, the "burden shifts to [the defendant] to refute its liability." *Neville*, 213 F. Supp. 2d at 1125. The City may do this by proving that the United States' response costs were "inconsistent with the NCP" or by asserting "affirmative defenses." *Id.* at 1123. Part of that fight is for another day, though. The United States does not seek to establish that its response costs are recoverable in this request for partial summary judgment. *See* Mot. at 9 n.2 ("[T]he United States is only moving for partial summary judgment on liability at this time" and will later "move for summary judgment on the actual *amount* of costs recoverable in this case at the close of expert discovery."). Therefore, the Court presently declines to decide whether the United States' response costs were inconsistent with the NCP.

However, the Court does find that the City has waived the ten affirmative defenses in its answer to the complaint. *See* ECF No. 31, at 10–12. The United States moved for summary judgment on those defenses, arguing that they were legally or factually deficient. *See* Mot. at 25–26. The City never responded to those arguments. *See generally* Opp. It is well established that a "party waives or abandons an argument at the summary judgment stage by failing to provide more than a passing remark in support of its position," including for "affirmative defenses." *See DZ Bank AG Deutsche Zentral-Genossenschaftsbank*, 2016 WL 631574, at \*25 (collecting cases). Thus, the Court finds that the City has waived or otherwise abandoned such defenses. *See Control Laser Corp. v. Smith*, 705 F. Supp. 3d 1006, 1016 (N.D. Cal. 2023) ("Because Defendant does not address six affirmative defenses in its opposition [to summary judgment], the Court concludes that Defendant has abandoned them."); *Munoz v. PHH Mortg. Corp.*, 478 F. Supp. 3d 945, 981 (E.D. Cal. 2020) (similar); *Confederated Tribes of Warms Springs Reservation of Or. v. Vanport Int'l, Inc.*, 428 F. Supp. 3d 384, 411 (D. Or. 2019) (similar).

## C.   Declaratory Judgment, CERCLA § 113(g)(2) (Claim 2)

The United States seeks to obtain a final judgment declaring the following: regarding the Site, if the United States incurs future response costs not inconsistent with the NCP, the City shall be jointly and severally liable to the United States in any subsequent action it brings to recover those costs, offset in part, arguably, by any finding in favor of the City's counterclaims under § 113(f)(1) for contribution and § 113(g)(2) for its own declaration. *See* Compl. ¶¶ 82–83; Mot. at 25; *Atl. Rsch. Corp.*, 551 U.S. at 140 ("Resolution of a § 113(f) counterclaim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action."). Although the United States has established a prima facie case for the City's § 107(a) liability, it actively punted on whether its past response costs were not inconsistent with the NCP and thus recoverable, which will be adjudicated in another motion or perhaps trial. *See* Mot. at 9 n.2. "Of the six circuits that have considered this issue, the majority hold or suggest that *recoverable* past costs under Section 107 are a necessary condition for declaratory relief for future costs

9

under Section 113(g)(2)." *FIP Realty Co., Ltd. v. Ingersoll-Rand PLC*, 522 F. Supp. 3d 335, 341–42 (S.D. Ohio 2021) (emphasis added).

The Ninth Circuit is squarely within the majority. When first deciding this issue, it was presented with a plaintiff who had not settled that its response costs were recoverable. *See City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1006 (9th Cir. 2010). After analyzing § 113(g)(2)'s statutory text, CERCLA's overall purpose, and the objective of declaratory judgments, the court concluded that "declaratory relief is available only if liability for past costs has been established under section 107." *Id*. at 1007–08. That is to say, a plaintiff "is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions" only if it "establishes liability for the response costs sought in the initial cost-recovery action." *Id*. This Court therefore finds a genuine dispute of material fact presently foreclosing a declaratory judgment, namely whether the United States has incurred any *recoverable* response costs under § 107(a).

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** the United States' Motion for Partial Summary Judgment on the City's prima facie liability under CERCLA § 107(a) for cost recovery, but **DENIES** it on the City's future liability under § 113(g)(2) for declaratory judgment. The United States is entitled to recover its response costs not inconsistent with the NCP. But whether it has incurred such costs, and if so how many of those costs the City is actually liable for now and in the future, remains an issue for further adjudication.

**IT IS SO ORDERED.**

Dated:  August 28, 2025

_____
Honorable Linda Lopez
United States District Judge