BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ALASTAIR M. GESMUNDO (CABN 316573)
SAMUEL F. HOBBS (AL Bar No. 9776O19E)
Commercial Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-8077

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
STEFAN J. BACHMAN (SC Bar No. 102182)
BRIAN SCHAAP (DC Bar No. 1780655)
Environmental Enforcement Section
MICHAEL AUGUSTINI (DC Bar No. 452526)
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 616-6536

*Attorneys for Plaintiff and Counterclaim Defendant United States of America*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et. al.<br><br>    Defendants.<br><br>*AND RELATED CROSS CLAIMS*<br>*AND COUNTER CLAIMS* | Case No. 3:23-cv-00541-LL-VET<br><br>**UNITED STATES' RESPONSE TO CITY OF SAN DIEGO'S RULE 72(A) OBJECTION TO THE MAGISTRATE JUDGE'S ORDER ON THE MOTION TO COMPEL** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STANDARD OF REVIEW ......................................................................................1

ARGUMENT ...........................................................................................................2

  I.   The Magistrate Judge's Ruling that the City's Sampling Request Was Untimely Is Not Clearly Erroneous. ............................................................ 2

  II.  The Magistrate Judge's Decision that the City Sought Discovery Beyond the Scope of Judicial Review Is Not Contrary to Law. ........................................5

    A.  The Magistrate Judge Correctly Decided that § 9613(j) Limits Judicial Review of the Adequacy of the Cleanup to the Administrative Record for All Claims in this Action. ...........................................................................6

      1.   This case is a "judicial action under" CERCLA to which § 9613(j)(1) applies because there are CERCLA claims in this case. ........................8

      2.   Section 9613(j) applies to any claim that challenges the adequacy of a CERCLA cleanup. ...........................................................................9

      3.   The APA limits judicial review of the Navy's final agency action of selecting the remedy to the administrative record. ...............................12

    B.  The City Fails to Show the Magistrate's Ruling Is Contrary to Law. ......13

      1.   The City's belated attempt to distinguish *Fort Ord* and *ARCO* is confused and incorrect. ..................................................................14

      2.   The magistrate judge's finding that the City challenges the Navy's remediation is not clearly erroneous or contrary to law. ......................15

      3.   The City's other grab-bag of objections to the magistrate judge's ruling are baseless. ....................................................................18

CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Am. Paper Inst., Inc., v. Am. Elec. Power Serv. Corp.*,
461 U.S. 402 (1983) ................................................................................11

*ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality*,
213 F.3d 1108 (9th Cir. 2000)...........................................................passim

*Burlington N. & Santa Fe Ry. Co. v. United States*,
556 U.S. 599 (2009) ................................................................................14

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
317 F. Supp. 2d 1188 (C.D. Cal. 2004)...................................................10

*Chu v. Commodity Futures Trading Comm'n*,
823 F.3d 1245 (9th Cir. 2016)..................................................................11

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ................................................................................12

*Computer Econ., Inc. v. Garner Grp., Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999) .........................................................1

*Dickinson v. Zurko*,
527 U.S. 150 (1999) ................................................................................11

*F.T.C. v. AMG Serv., Inc.*,
2015 WL 4073192 (D. Nev. July 2, 2015)................................................11

*Farquhar v. Jones*,
141 F. App'x 539 (9th Cir. 2005) .............................................................13

*Fort Ord Toxics Project, Inc. v. Cal. Env't Prot. Agency*,
189 F.3d 828 (9th Cir. 1999).............................................................passim

*Greenhow v. Sec'y of Health & Hum. Servs.*,
863 F.2d 633 (9th Cir. 1988)....................................................................13

*Hanford Downwinders Coalition, Inc. v. Dowdle*,
    71 F.3d 1469 (9th Cir. 1995) ................................................................15

*Jadwin v. Cnty. of Kern*,
    767 F. Supp. 2d 1069 (E.D. Cal. 2011) .................................................1

*Javins v. First Nat. Realty Corp.*,
    428 F.2d 1071 (D.C. Cir. 1970) ............................................................4

*Kelley v. Thomas Solvent Co.*,
    790 F. Supp. 719 (W.D. Mich. 1990) ..................................................12

*Lehman Bros., Inc. v. City of Lodi*,
    333 F. Supp. 2d 895 (E.D. Cal. 2004) ..............................................9, 15

*Lessin v. Ford Motor Co.*,
    756 F. Supp. 3d 885 (S.D. Cal. 2024) ................................................7, 8

*McClellan Ecological Seepage Situation v. Perry*,
    47 F.3d 325 (9th Cir. 1995) ................................................................15

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
    442 F.3d 101 (2nd Cir. 2006) ................................................................3

*Ninilchik Traditional Council v. United States*,
    227 F.3d 1186 (9th Cir. 2000) ............................................................11

*Razore v. Tulalip Tribes of Wash.*,
    66 F.3d 236 (9th Cir. 1995) ................................................................15

*San Luis & Delta Mendota Water Auth. v. Jewell*,
    747 F.3d 581 (9th Cir. 2014) ..............................................................12

*U.S. Capitol Police v. Off. of Compliance*,
    908 F.3d 748 (Fed. Cir. 2018) ............................................................11

*United States v. Akzo Coatings of America, Inc.*,
    949 F.2d 1409 (6th Cir. 1991) ............................................................10

*United States v. Iron Mountain Mines, Inc.*,
   987 F. Supp. 1250 (E.D. Cal. 1997) ........................................................................6

*United States v. Ne. Pharm. & Chem. Co.*,
   810 F.2d 726 (8th Cir. 1986) ...............................................................................12

*United States v. Ward*,
   618 F. Supp. 884 (E.D.N.C. 1985) .......................................................................12

*United States v. Wash. Dept. of Transp.*,
   450 F. Supp. 2d 1207 (W.D. Wash. 2006) ...............................................................6

**Statutes**

5 U.S.C. § 706 ...........................................................................................................12

28 U.S.C. § 636(b)(1)(A) ...........................................................................................1

42 U.S.C. § 9613(j)(1) ...............................................................................................5

**Rules**

Fed. R. Civ. P. 72(a) ..................................................................................................1

**Regulations**

40 C.F.R. §§ 300.430(f) ............................................................................................18

**Other Authorities**

1986 U.S. Code Cong. & Ad. News 2835 ...................................................................5

1

## **INTRODUCTION**

2      On the eve of the close of fact discovery, the City served a Rule 34 request
3 for access to the Navy's property to collect samples in search of evidence of
4 contamination. ECF No. 117-3. After the United States objected, ECF No. 117-4,
5 the City filed a motion to compel, ECF No. 117-1. The magistrate judge denied the
6 motion to compel because the sampling request was untimely and because it sought
7 discovery that is beyond the scope of judicial review in this matter. ECF No. 184
8 ("Order"). The City filed an objection, ECF No. 191, but the City fails to show that
9 the magistrate's ruling is clearly erroneous or contrary to law.

10      The court should affirm the magistrate judge's decision. The magistrate
11 judge's ruling that the City's sampling request was untimely is not clearly erroneous.
12 The City inexplicably waited six months after the receiving the scope of work for
13 the sampling request to serve it, by which point there was insufficient time to
14 complete the proposed sampling before the close of discovery, as required by the
15 court's rules. The City's proffered justifications for its delay do not withstand
16 scrutiny and do not excuse the City's lack of diligence.

17      Likewise, the magistrate judge's ruling that the City's sampling request seeks
18 discovery beyond the scope of judicial review is not contrary to law. The magistrate
19 judge correctly held that CERCLA limits judicial review of the adequacy of the
20 remediation to the administrative record for all claims in this action. The magistrate
21 judge's ruling is also correct because the Administrative Procedure Act ("APA")
22 limits judicial review of the Navy's final agency action in selecting the remedy to
23 the administrative record. The City's various arguments against the magistrate
24 judge's ruling are meritless and fail to demonstrate that the decision was contrary to
25 law. The court should thus deny the City's motion to compel.

26

## **STANDARD OF REVIEW**

27      Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge's ruling on a non-
28 dispositive matter, such as a discovery motion, may be set aside only if it is "clearly

erroneous or contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to the magistrate judge's factual findings and discretionary decisions, and permits reversal only when the district court is "left with the definite and firm conviction that a mistake has been made." *Computer Econ., Inc. v. Garner Grp., Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). The "contrary to law" standard applies to "purely legal determinations." *Id.* A magistrate judge's decision is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1110–11 (E.D. Cal. 2011) (citation omitted). The objecting party bears the burden to establish that the magistrate judge's ruling meets this demanding standard.

## ARGUMENT

The magistrate judge denied the City's motion to compel for two independent reasons: (1) the magistrate judge found that the City's sampling request was untimely; and (2) the magistrate judge found that the City's sampling request sought discovery that is beyond the scope of judicial review in this litigation. Order at 14–15. To reverse the magistrate judge's ruling, the City must show that both reasons are clearly erroneous or contrary to law. The City fails to do so.

### I. The Magistrate Judge's Ruling that the City's Sampling Request Was Untimely Is Not Clearly Erroneous.

The magistrate judge's hodling that the City's sampling request was untimely is a factual and discretionary determination reviewed under the clearly erroneous standard. *See Computer Econ., Inc.*, 50 F. Supp. 2d at 983. The City does not identify any reason the magistrate judge's ruling on timeliness was clearly erroneous; instead, the City offers baseless excuses for its delay, which, even if credited, would not show that the magistrate judge's ruling was clearly erroneous.

The City served its sampling request on September 12, 2024. ECF No. 117-3 at 5. At that time, the scheduling order required the parties to ***complete*** discovery by

1   November 6, 2024. ECF Nos. 61, 87.[1] The scheduling order emphasized that
2   "[c]ompleted means that all discovery . . . must be initiated a sufficient period of
3   time in advance of the cut-off date, so that it may be completed by the cut-off date."
4   ECF No. 61 at ¶ 2. The City failed to comply with that requirement. To start, the
5   City's sampling request sought entry onto the Navy's property beginning on October
6   15, 2024 and terminating on November 7, 2024—already one day after the close of
7   discovery. ECF No. 117-3 at 3. But the time the City required to analyze the samples
8   would extend far beyond that. The scope of work attached to the City's sampling
9   request estimated that it would take the City another five months to analyze the
10  samples and prepare a report. *See* ECF No. 117-3 at 28. The terms of the City's
11  sampling request thus revealed that the City's request would exceed the close of
12  discovery by at least five months, in clear violation of the scheduling order.

13          In fact, the delays to the schedule would have compounded beyond the City's
14  projected timeline. After the City performed its sampling analysis, the Navy would
15  be entitled to serve written discovery and take depositions concerning the City's
16  methodologies and findings. Then the parties would likely need to revise, at
17  potentially great time and expense, the expert reports they had already completed
18  and exchanged, or even designate new experts to opine on the sampling methods and
19  results. The magistrate judge thus correctly noted that granting the City's motion to
20  compel would have required reopening major portions of the fact and expert
21  discovery periods that would have already concluded. Order at 15.

22          There was no good cause for the City's delay in serving its sampling request.
23  The scope of work for the City's sampling request is dated March 2024. ECF No.
24  117-3 at 7. Yet the City inexplicably waited six months to formally serve the request.

25
26  _____

27  [1] Under the original scheduling order, fact discovery was set to close on August 7,
    2024. ECF No. 61. At the City's request, the court twice extended the fact discovery
28  deadline, first to September 6 and then to November 6. ECF Nos. 78, 87.

By then, it was self-evident that the sampling and analysis sought could not be completed before the close of discovery.

The excuses the City offers in its objection are mere pretext to obscure its lack of diligence. First, the City blames its delay on the EPA's designation of PFAS as a hazardous substance in July 2024. Objection at 11. The City suggests this new development precipitated the need for its sampling request. *See id.* But the City fails to mention that it raised PFAS as early as 2018, arguing in comments on the Remedial Action Completion Report that the Navy should have investigated for PFAS. ECF No. 189-7 at 14. The City also fails to mention that the March 2024 scope of work for its sampling request specifically describes the City's intention to sample for PFAS. ECF No. 117-3 at 9, 13–14. The designation of PFAS as a hazardous substance in July 2024 did not introduce a new issue in the litigation that suddenly revealed a before unknown need to collect additional sampling. The City had been seeking to collect additional sampling—including for PFAS—long before the EPA added PFAS to the list of hazardous substances.[2]

---

[2] The City's reliance on PFAS is also misplaced. The EPA designated PFAS as a hazardous substance in July 2024: seven years after the Navy selected a remedy, six years after the Navy completed the remediation, and two years after the Navy attempted to transfer the Boat Channel parcels. Under the MOA, the City was obligated to accept transfer of the parcels, and its refusal to accept transfer was a material breach of the MOA. *See* ECF No. 188-1 (establishing the City's material breach). A party's material breach "excuse[s] the nonbreaching party from further performance." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2nd Cir. 2006). Thus, the EPA's designation of PFAS as a hazardous substance *after* the City was already in material breach cannot somehow create a new contractual obligation for the Navy. A party does not benefit from its breach. *See, e.g., Javins v. First Nat. Realty Corp.*, 428 F.2d 1071 (D.C. Cir. 1970) (recognizing "the contract principle that no one may benefit from his own wrong"). Furthermore, as the Navy has repeatedly explained, there was no basis to remediate for PFAS. *See* ECF No. 188-1 at 25–27; ECF No. 162-1 at 9–10.

Second, the City blames its delay on the scale of the United States' document productions. The United States timely provided the documents the City requested. If the scale of the United States' production was large, it merely reflects the scale of the City's requests. There is nothing unusual or improper about the scale of the United States' production in complex litigation spanning decades of activities. Nor does the size of the United States' productions in late July and early August somehow excuse the City's failure to propound a discovery request that it should have served months earlier. The City also omits that it waited until less than two months remained in fact discovery to serve its first discovery requests, which included 51 requests for production and 25 interrogatories on a broad range of topics. ECF No. 77-1 at 2 ¶¶ 6–7. The City's complaints about the timing and size of the United States' discovery are an emergency of its own making and further illustrate the City's lack of diligence, which the court has noted in other orders. *See also* ECF No. 124 at 5.

Far from being clearly erroneous, the magistrate's finding that the City's sampling request was untimely is reasonable and amply supported by the record.

## II. The Magistrate Judge's Decision that the City Sought Discovery Beyond the Scope of Judicial Review Is Not Contrary to Law.

The magistrate judge also denied the City's sampling request because it sought discovery that is beyond the scope of judicial review, since § 9613(j) limits judicial review to the administrative record for any issues concerning the adequacy of a CERCLA cleanup. The City plainly challenges the adequacy of the Navy's remediation, and the City's sampling request seeks to gather evidence to support its allegations of the remediation's inadequacy. Such evidence is outside the administrative record and thus beyond judicial review. The magistrate judge correctly decided that review here is limited to the administrative record, and the City fails to show that the magistrate's decision is contrary to law.

## A. The Magistrate Judge Correctly Decided that § 9613(j) Limits Judicial Review of the Adequacy of the Cleanup to the Administrative Record for All Claims in this Action.

When a party challenges the adequacy of a CERCLA cleanup, Congress limits judicial review to the administrative record: "In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record." 42 U.S.C. § 9613(j)(1). New sampling data would constitute post-decisional material outside the administrative record and is thus beyond judicial review.

Congress limited judicial review to the administrative record in order to streamline litigation related to CERCLA cleanups and ensure that rulings are based on the information available to the agency when it selected the remedy. H. R. Rep. No. 99–253, 99th Cong., 2d Sess. 81, reprinted in 1986 U.S. Code Cong. & Ad. News 2835, 2863 ("[L]imiting judicial review of response actions to the administrative record expedites the process of review, avoids the need for time-consuming and burdensome discovery, reduces litigation costs, and ensures that the reviewing court's attention is focused on the criteria used in selecting the response."). The City's sampling request would contravene Congress' intent by prolonging the litigation, expanding discovery, and introducing post-decisional information.[3]

_____

[3] Mistaking the issue, the City argues that its sampling request does not contravene Congress' intent because it would not disrupt or delay a pending remediation. Congress addressed that circumstance, which does not apply here, in § 9613(h), which postpones jurisdiction over challenges to CERCLA cleanups until they are complete. Here, the issue is § 9613(j)'s limitation of judicial review to the administrative record. Congress' intent for this evidentiary limitation was to streamline litigation, reduce discovery, and focus review on the information before the agency at the time it selected the remedy. The City's sampling request undermines each of these intentions.

Courts enforce this limitation and find that extra-record or post-decisional information is irrelevant to their review of the adequacy of a CERCLA cleanup. *See, e.g., United States v. Wash. Dept. of Transp.*, 450 F. Supp. 2d 1207, 1213–14 (W.D. Wash. 2006) (limiting review of the selection of response actions to the administrative record and granting a protective order prohibiting discovery of any issues that go beyond the administrative record); *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1250, 1260 (E.D. Cal. 1997) ("[A]s a general rule, information created or discovered after an agency has made a decision will not be considered. This includes documents, deposition testimony, and expert opinions generated during the course of litigation.") (citations omitted).[4]

The City argues that § 9613(j)(1)'s administrative record limit does not apply to the contract claim. The magistrate judge correctly rejected the City's position. Order at 8–14. The City is mistaken for three, independent reasons: (1) this case is a "judicial action under" CERCLA because there are CERCLA claims in this case; (2) under Ninth Circuit precedent, § 9613(j)(1) should be construed to apply to any challenge to the adequacy of a CERCLA cleanup, and not only to claims created by CERCLA; and (3) the Administrative Procedure Act ("APA") limits judicial review of the Navy's final agency action of selecting a remedy to the administrative record regardless of whether review arises under the APA.[5]

---

[4] In limited circumstances, courts may order the agency to supplement or complete the administrative record. The City has filed a pending motion to supplement the administrative record in this case. ECF No. 153. The court should deny that motion for the reasons explained in the United States' opposition. ECF No. 162.

[5] The United States has filed a pending motion to limit review to the administrative record based on these three reasons. *See* ECF No. 156. In its response to that motion, the City did not address the APA argument and thus waived the issue. *See* ECF No. 167; *Lessin v. Ford Motor Co.*, 756 F. Supp. 3d 885, 907 (S.D. Cal. 2024) ("Where the non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.") (cleaned up). The court should grant that motion and

1

2

**1.** **This case is a "judicial action under" CERCLA to which § 9613(j)(1) applies because there are CERCLA claims in this case.**

Section 9613(j)(1)'s limitation of judicial review to the administrative record applies in "any judicial action under this chapter"; that is, under Chapter 103 of Title 42 which contains CERCLA. Black's Law Dictionary defines "action" as "[a] civil or criminal judicial proceeding; esp[ecially], [a] lawsuit." Action, Black's Law Dictionary (12th ed. 2024). This lawsuit qualifies as an action under CERCLA because the parties have asserted CERCLA claims in the case. The United States has asserted two claims under CERCLA: a § 107(a) claim for response costs, and a § 113(g) claim for a declaratory judgment regarding liability for future costs. ECF No. 25 at 2. Both claims are still active. The City likewise has two active CERCLA claims against the United States: a § 113(f) claim for contribution, and a § 113(g) claim for declaratory judgment. ECF No. 96 at 38, 45. At a minimum, a lawsuit with CERCLA claims must be a judicial action under CERCLA. As such, judicial review of "any issues concerning the adequacy of any response action" is limited to the administrative record. § 9613(j)(1).

The statute does not restrict administrative record review to "claims" created by CERCLA. Instead, the statute provides that in "any judicial action" under CERCLA, review shall be limited to the administrative record for "any issues concerning the adequacy of any response action." *Id*. This broader application is consistent with Congress' intent. Congress sought to streamline judicial review of the technical and complex issues involved when evaluating the adequacy of a

_____

uphold the magistrate's ruling on that basis alone. The Navy raised the APA argument in the hearing on the motion to compel, as well as in the motion to limit review to the administrative record. ECF No. 156; *see also F.T.C. v. AMG Serv., Inc.*, 2015 WL 4073192, at *3 (D. Nev. July 2, 2015) (noting the district court may uphold the magistrate judge's ruling "on any ground supported by the record, even if it differs from the rationale used by the magistrate judge").

1    CERCLA cleanup. *See* H. R. Rep. No. 99–253. To accomplish that intent, the statute

2    applies the administrative record limit to any action under CERCLA where a party

3    seeks to review the adequacy of a remediation, regardless of whether the issue arises

4    in a claim created by CERCLA.

## 2. Section 9613(j) applies to any claim that challenges the adequacy of a CERCLA cleanup.

7        Even if there were not CERCLA claims in this action, Ninth Circuit precedent

8    indicates that § 9613(j) should be construed to apply to any challenge to a CERCLA

9    cleanup. Interpreting the jurisdictional provision in § 9613(b), the Ninth Circuit held

10   that "any 'challenge' to a CERCLA cleanup" qualifies as a "controversy arising

11   under" CERCLA over which federal courts have exclusive jurisdiction, even if

12   CERCLA did not create the claim. *ARCO Env't Remediation, L.L.C. v. Dep't of*

13   *Health & Env't Quality*, 213 F.3d 1108, 1115 (9th Cir. 2000) (quoting *Fort Ord*

14   *Toxics Project, Inc. v. Cal. Env't Prot. Agency*, 189 F.3d 828, 832 (9th Cir. 1999)).

15   The magistrate judge correctly decided that the Ninth Circuit's interpretation of the

16   scope of a "controversy arising under" CERCLA in § 9613(b) should also apply to

17   the scope of a "judicial action under" CERCLA in § 9613(j).

18       In *Fort Ord*, the Ninth Circuit analyzed the scope of CERCLA's jurisdictional

19   provisions in § 9613(b) and § 9613(h). *Fort Ord*, 189 F.3d at 832. Section 9613(b)

20   provides that federal district courts "have exclusive original jurisdiction over all

21   controversies arising under" CERCLA. Section 9613(h) generally postpones federal

22   jurisdiction over "any challenges to removal or remedial action selected under

23   section 9604 of" CERCLA. In *Fort Ord*, the lower court dismissed and declined to

24   remand the plaintiffs' state law challenge to a CERCLA cleanup based on § 9613(h).

25   *Fort Ord*, 189 F.3d at 830. On appeal, the plaintiffs argued that their state law claim

26   was not a "controversy arising under CERCLA," and thus federal courts did not have

27   exclusive jurisdiction over their claim and the lower court should have remanded to

28   state court. *Id.* at 832. The Ninth Circuit rejected this "cramped interpretation" of

§ 9613(b). *Id.* Interpreting the statute as a whole, and considering that § 9613(h) applies to "any challenge" to a CERCLA cleanup, the Ninth Circuit held that § 9613(b) likewise extends to "any challenge to a CERCLA cleanup." *Id.* Thus, pursuant to *Fort Ord*, state law claims can qualify as controversies arising under CERCLA if they challenge a CERCLA cleanup. *Lehman Bros. v. City of Lodi*, 333 F. Supp. 2d 895, 901 (E.D. Cal. 2004) ("Section 113(b)'s jurisdictional grant is not limited to claims created by CERCLA, but can extend to purely state law claims.").

The Ninth Circuit reiterated this holding in *ARCO Environmental Remediation*. The issue in ARCO was whether the plaintiff's state law claims seeking access to documents about a CERCLA cleanup constituted a "challenge to a CERCLA cleanup" and thus qualified as federal claims subject to § 9613(b). *ARCO*, 213 F.3d at 1115. The Ninth Circuit confirmed "that jurisdiction under § 113(b) is more expansive than . . . those claims created by CERCLA, and covers any challenge to a CERCLA cleanup." *Id.* (quotation omitted). The court then held that the plaintiff's claim seeking access to documents about the cleanup did not constitute a challenge, because the claim did "not relate[] to the goals of the" cleanup. *Id.*

Here, the magistrate judge correctly decided to interpret § 9613(j) consistent with the Ninth Circuit's interpretation of § 9613(b). As the magistrate explained:

> Both subsections (b) and (j)(1) govern civil proceedings pertaining to CERCLA and use similar language to describe the claims subject to each provision. *Compare* § 9613(b) ("all controversies arising under this chapter") *with* § 9613(j)(1) ("any judicial action under this chapter"). If "controversies arising under this chapter" captures any challenge to a CERCLA cleanup, it makes no sense that "any judicial action under this chapter" has a narrower meaning or is limited, for example, to only claims expressly created by CERCLA. Such an interpretation risks creating an inconsistency between subsections (b) and (j)(1).

Order at 11.

1   The City's contrary interpretation risks conflicting holdings about the same
2   remediation. It makes no sense to evaluate the adequacy of the same remedial action
3   subject to the same cleanup standard based on two different sets of evidence.
4   Adopting the City's position would result in a dual-track review of the same cleanup
5   based on the administrative record on one hand and extra-record, post-decisional
6   evidence on the other. *Cf. Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
7   317 F. Supp. 2d 1188, 1193 (C.D. Cal. 2004) (finding that the restriction of judicial
8   review to the administrative record applied to review of state agencies' actions
9   because § 9613(j)(1) "did not impose a two-track system whereby actions taken by
10  state agencies were subject to broader review than actions taken by the federal
11  government."). The court should decline the City's invitation to establish dual-track
12  review that would theoretically allow for contradictory rulings, holding that the same
13  remedial action protected human health and the environment in the CERCLA claims
14  but failed to protect human health and the environment in the contract claim.

15      The City's position would thwart Congress' intent to streamline review of
16  technical and complex remediations. If a party could bypass the limitation of judicial
17  review to the administrative record by challenging a CERCLA cleanup under a cause
18  of action not set out in 42 U.S.C. Chapter 103, that would create a massive loophole.
19  There are innumerable potential claims under state law that a party could assert to
20  challenge a CERCLA cleanup. *See e.g., Fort Ord*, 189 F.3d at 830 (plaintiffs
21  asserting a claim that a CERCLA cleanup violated provisions of the California
22  Environmental Quality Act). Holding that parties can circumvent § 9613(j)'s
23  limitations on judicial review in this manner would open the floodgates to sprawling
24  litigation tasking judges with a "de novo review" of "scientific decisions regarding
25  toxic substance cleanup." *United States v. Akzo Coatings of America, Inc.*, 949 F.2d
26  1409, 1424 (6th Cir. 1991). This scenario is precisely what Congress sought to avoid
27  with the sensible limits and standards found in § 9613(j).

28

### 3. The APA limits judicial review of the Navy's final agency action of selecting the remedy to the administrative record.

Even if CERCLA § 9613(j) does not apply to the contract claim, it is well-established in administrative law that the APA provides the default standards for any judicial review of final agency action. *See Dickinson v. Zurko*, 527 U.S. 150, 154 (1999) ("[A] reviewing court must apply the APA's court/agency review standards in the absence of an exception."); *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1193 (9th Cir. 2000) ("[W]e hold that a reviewing court must apply the deferential APA standard in the absence of a stated exception when reviewing federal agency decisions."); *see also U.S. Capitol Police v. Off. of Compliance*, 908 F.3d 748, 756 n.5 (Fed. Cir. 2018) (collecting cases). The APA provides the default standard of review whether or not the claim is brought under the APA. *See Am. Paper Inst., Inc., v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 412 n.7 (1983) (applying the APA's standard of review in a challenge to informal rulemaking by the Federal Energy Regulatory Commission that was not brought under the APA); *Chu v. Commodity Futures Trading Comm'n*, 823 F.3d 1245, 1250 (9th Cir. 2016) (applying the APA's default standards "[w]here Congress does not specify a standard of review" in an appeal that was not brought under the APA); *see also U.S. Capitol Police*, 908 F.3d at 756 (applying the APA standards "as a default rule in this context, even though the APA is not directly applicable").

Here, the Navy's selection of a remedy in the March 28, 2017 Record of Decision is a final agency action subject to the APA's standard of review. Under the APA, judicial review is limited to the "full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); 5 U.S.C. § 706. Review is also subject to the arbitrary and capricious standard under the APA. *See San Luis & Delta Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (applying the APA's arbitrary and capricious standard to the review of a biological opinion under the

National Environmental Policy Act and the Endangered Species Act). Accordingly, review of the Navy's selection of the remedy must be limited to the administrative record and subject to the arbitrary and capricious standard.

Consistent with the APA providing the default standard of review, before Congress added § 9613 to CERCLA in 1986, courts applied the APA's arbitrary and capricious standard when reviewing the selection of the remedy in CERCLA cleanups. *United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 748 (8th Cir. 1986) (applying the arbitrary and capricious standard "[b]ecause determining the appropriate removal and remedial action involves specialized knowledge and expertise, [such that] the choice of a particular cleanup method is a matter within the discretion of the EPA."); *United States v. Ward*, 618 F. Supp. 884, 900 (E.D.N.C. 1985) (applying the arbitrary and capricious standard "normally applied to a review of agency decisions" because CERCLA "requires deference by this court to the judgment of agency professionals"). Likewise, in *Kelley v. Thomas Solvent Co.*, 790 F. Supp. 719, 724 (W.D. Mich. 1990), the court noted "evidence in the legislative history that [section 9613(j)] was merely clarifying the standard of review previously applied to response reimbursement actions brought under CERCLA prior to the 1986 SARA amendments."

**B. The City Fails to Show the Magistrate's Ruling Is Contrary to Law.**

The City puts forth various arguments for why the magistrate judge's ruling is contrary to law. None is meritorious. The City's main argument is that the magistrate judge misapplied the Ninth Circuit's precedents in *Fort Ord* and *ARCO*. The City is incorrect, and the City failed to address these precedents before the magistrate. To avoid application of these cases, the City also argues that it does not challenge the Navy's remediation. But the City's entire position is based on its allegation that the Navy's remediation was inadequate. The City submits a grab-bag of other grievances against the magistrate judge's ruling. Each is baseless, and the City fails to explain how any would show the ruling is contrary to law.

### 1. The City's belated attempt to distinguish *Fort Ord* and *ARCO* is confused and incorrect.

As an initial matter, the court should decline to consider the City's belated attempt to distinguish *Fort Ord* and *ARCO*. The Ninth Circuit has held that "allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court" would violate Congress' intent under the Magistrates Act. *Greenhow v. Sec'y of Health & Hum. Servs.*, 863 F.2d 633, 638 (9th Cir. 1988), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) ("We do not believe that the Magistrates Act was intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court."); *see also Farquhar v. Jones*, 141 F. App'x 539, 540 (9th Cir. 2005) (finding an argument waived when first raised in objections to a magistrate's recommendation). That is precisely what the City seeks to do here.

The City did not attempt to distinguish *Fort Ord* and *ARCO* or even address these cases before the magistrate judge, despite having ample opportunity to do so. The United States' objection to the City's sampling request identified both cases and described in detail why they show that CERCLA's administrative record limit applies to the contract claim. ECF No. 117-4 at 4–5. The United States' again cited both cases for the same reasons in its opposition to the City's motion to compel. ECF No. 125 at 17. Nonetheless, the City did not address *Fort Ord* or *ARCO* in its motion to compel, did not seek a reply, and did not argue that either case is inapposite at the hearing on the motion to compel. Because the City did not make these arguments before the magistrate judge, the court should decline to consider them now.

The City's attempt to distinguish *Fort Ord* and *ARCO* is also incorrect. The City argues that these cases establish "that Section [96]13's evidentiary preclusion is limited to challenges to pending remediation[s]." Objection at 3. *Fort Ord* and *ARCO* say no such thing. The City confuses § 9613(j) with § 9613(h). *Fort Ord* and

-14-    Case No. 3:23-cv-00541-LL-VET

ARCO were analyzing § 9613(h), which generally postpones jurisdiction of challenges to pending remediations until they are complete. *Fort Ord*, 189 F.3d at 832; *ARCO*, 213 F.3d at 1115. Those cases do not mention, much less restrict, § 9613(j) to challenges to pending remediations. *Id.* Whether a remediation is pending is relevant only to § 9613(h), which is not at issue here. Restricting § 9613(j)(1)'s administrative record rule to challenges to pending remediations would be self-defeating. It would restrict the administrative record rule only to claims that, because of § 9613(h), are not yet ripe. That makes no sense.[6]

### 2. The magistrate judge's finding that the City challenges the Navy's remediation is not clearly erroneous or contrary to law.

The City argues, implausibly, that it does not "challenge" the remediation. Objection at 4. The Ninth Circuit has explained that "[a]n action constitutes a challenge to a CERCLA cleanup if it is related to the goals of the cleanup," such as where "the plaintiff seeks to dictate specific remedial actions, to postpone the cleanup, to impose additional reporting requirements on the cleanup, or to terminate the [Remedial Investigation or Feasibility Study] and alter the method and order of cleanup." *ARCO*, 213 F.3d at 1115. This action easily meets that standard.

The City's complaint confirms that the City challenges the Navy's remediation as inadequate. The City alleges that the Navy's investigation was

---

[6] The City also suggests the magistrate's interpretation of CERCLA disregards the Supreme Court's decision in *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 610–11 (2009), which states the well-established principle of statutory construction that courts should give statutory language, including CERCLA, its "ordinary meaning" unless the statute defines the term. Objection at 7. The City does not say what ordinary meaning the magistrate should have attached to § 9613(j)(1). *See id.* At any rate, the magistrate's interpretation of § 9613(j)(1) is consistent with the ordinary meaning of "judicial action," *see infra* Section II.A.1, and is also consistent with the other provisions in § 9613, validating another well-established principle of statutory interpretation to interpret statutes harmoniously as a whole.

outdated, ECF No. 96 at 24 ¶ 25, neglected to test for PFAS and other potential pollutants, *id.* at 25 ¶ 27, and neglected to investigate certain areas along the shoreline, *id.* at 25 ¶ 29. Because of these alleged deficiencies, the City says the Navy "failed to take all remedial action necessary to protect human health and the environment." *Id.* at 26 ¶ 31. The City says that these alleged deficiencies establish the Navy's breach of the MOA, *id.* at 29–33 ¶¶ 34–44, and that they render the Navy's remediation "inconsistent with the [National Contingency Plan]," such that the Navy cannot recover its cleanup costs under CERCLA, *id.* at 26–28 ¶ 33. The City also specifically seeks to require the Navy to take additional remedial action, requesting in the prayer for relief an order "compelling the United States to take all remedial action necessary to protect human health and the environment." *Id.* at 47 ¶ 3. It's hard to imagine how an action could more plainly challenge the adequacy of a remediation.

The City's assertions to the contrary are unavailing. Framing the issue far too narrowly, the City argues that "this motion does not seek action to enforce cleanup." Objection at 5. The issue is whether this lawsuit presents a challenge to the cleanup, not this particular motion.[7] At any rate, the City's sampling request is itself a challenge to the cleanup under *ARCO*'s standard. The City acknowledges that the

---

[7] *See Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1482 (9th Cir. 1995) (finding a challenge to a CERCLA cleanup where plaintiff sought to dictate remedial actions); *Fort Ord*, 189 F.3d at 831 (finding a challenge to a CERCLA cleanup where plaintiffs sought to postpone CERCLA cleanup based on state law); *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 330 (9th Cir. 1995) (finding a challenge to a CERCLA cleanup where plaintiff wanted to impose additional reporting requirements on the cleanup); *Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 239 (9th Cir. 1995) (finding a challenge to a CERCLA cleanup where plaintiff sought to alter the method and order of the cleanup); *Lehman Bros., Inc.*, 333 F. Supp. 2d at 901 (holding that breach of contract claim was a challenge to a CERCLA cleanup when based on alleged failure to make priority of payments disallowed by CERCLA).

purpose of the sampling request is to show that the remediation is inadequate. ECF No. 117-1 at 2 ("The purpose of [the sampling request] is to ensure that the United States has taken all action necessary to protect human health and the environment."); ECF No. 117-3 at 8 ("The purpose of the investigation would be to demonstrate that the Navy is not entitled to recovery under its CERCLA claim because it has failed to perform a CERCLA-quality clean-up.").

The City quotes *ARCO*'s statement that "an action may affect indirectly the CERCLA cleanup, but it does not challenge the cleanup." *ARCO*, 213 F.3d at 1116. In *ARCO*, the Ninth Circuit held that a claim that merely seeks to enforce "the public's right of access to information about that cleanup," does not constitute a "challenge" to a CERCLA cleanup, even though the disclosure might have an indirect effect on the cleanup. *Id.* at 1115. There is nothing indirect about the City's challenge here. The City directly alleges that the remediation was inadequate and seeks to compel the Navy to take additional remedial action. ECF No. 96 at 47 ¶ 3.[8]

The City also suggests that it challenges only the remediation pursuant to the MOA, rather than the remediation pursuant to CERCLA. Objection at 4. There was only one remedial action here. The Navy performed a single remedial action pursuant to its identical obligation under both CERCLA and the MOA. The City cannot argue that the United States' remediation failed to protect human health and the environment without challenging the United States' remediation under CERCLA. The City's complaint also confirms that the City does, in fact, challenge

---

[8] The City also contends that this case "is unrelated to disputes over environmental standards." ECF No. 191-1 at 4. Not so. The City argues the Navy selected "Alternative Cleanup Levels ('ACLs') that do not meet current sediment remediation standards." ECF No. 96 at 31 ¶ 39. The City also argues the Navy's remediation failed to "meet current sediment remediation standards, i.e., the 2009 Sediment Quality Objection (SQOs), or the 2018 SQOs." *Id.* at 31 ¶ 40. The Ninth Circuit specifically noted that lawsuits seeking to alter the applicable "environmental standards" qualify as a challenge to the cleanup. *ARCO*, 213 F.3d at 1115.

1  the adequacy of the Navy's remediation under CERCLA specifically. ECF No. 96
2  at 26 ¶ 33 (asserting that the alleged deficiencies render the Navy's remediation
3  "inconsistent with the NCP").

4  ### 3. The City's other grab-bag of objections to the magistrate judge's
5  ### ruling are baseless.

6      The City repeatedly accuses the magistrate of modifying the MOA. *See, e.g.*,
7  Objection at 4. But the City never actually identifies what contract terms the
8  magistrate's ruling allegedly modified, which is unsurprising since the magistrate's
9  ruling did not do this. To the contrary, the magistrate expressly declined to decide
10  the meaning of the key remedial obligation in the MOA. Order at 12 n.10 ("[T]he
11  Court declines to reach this question as it is unnecessary to the Court's ruling."). Nor
12  did the magistrate decide the meaning of any other terms in the MOA. *See id.*

13      The City protests that application of § 9613(j)(1)'s scope of review to this
14  action somehow alters the contract. Objection at 7–8. But the MOA nowhere
15  provides the rules governing evidence or discovery in a dispute on the contract. *See*
16  *generally* ECF No. 189-1 at 2–11. Federal law governs these issues. Section
17  9613(j)(1) does not displace any terms of the MOA. Similarly, the City faults the
18  magistrate's ruling for "not apply[ing] contract law." Objection at 8. It's unclear
19  what contract law the City believes the magistrate should have applied, given that
20  contract law does not typically govern the scope of discovery.[9]

21
22
    _____

23  [9] The City also complains that the magistrate's ruling denies the City the ability to
24  inspect the property to verify that the Navy performed its obligations. Objection at
6, 9. The MOA does not provide the City with a right to inspection. To the contrary,
25  Paragraph 10 of the MOA rejects any further right to inspection: "The City
26  acknowledges that it has inspected the Property as well as those parcels which are
contemplated to be transferred pursuant to public benefit conveyances, and that,
27  except as otherwise specifically provided in this Agreement, and in the exhibits
28  hereto, the Property and said parcels will be conveyed 'as is' and 'where is' without
any representation, promise, agreement or warranty on the part of Navy regarding

Nor does the magistrate's ruling somehow "permit[] the United States to unilaterally modify" the MOA. Objection at 6. Again, the City never identifies what contract terms the Navy can purportedly modify. The City's issue appears to be with what it describes as the Navy's "self-declared completion" of the remediation and "control" of the administrative record. Objection at 5, 8.

First, the Navy did not "self-declare[] completion" of the remediation. The Water Board agreed that the remediation was complete and that the Boat Channel parcels were suitable for transfer. ECF No. 189-23 (Water Board's no-further-comment letter on the Final Remedial Action Completion Report); ECF No. 189-26 (Water Board's no-further-comment letter on the Final Finding of Suitability to Transfer). And the Navy's remediation remains subject to judicial review; such review is simply limited to the administrative record under an arbitrary and capricious standard.

Second, the Navy does not "control[] the administrative record." Objection at 8. The Navy is required to solicit public comments on the reports that comprise the administrative record. 40 C.F.R. §§ 300.430(f)(3), 300.810(a)(3). These comments, including the City's, are part of what courts review. It is thus incorrect to say the Navy controls the administrative record. Interested parties have ample opportunity to ensure their comments, views, and criticisms are included—just as the City did here. *See, e.g.*, ECF No. 189-4 at 25–32 (City's comments on the Feasibility Study Report); ECF No. 189-5 at 39–40 (City's comments on the Record of Decision).

With considerable hyperbole, the City accuses the Navy of having unclean hands and shrouding the remediation in "secrecy" for declining to acquiesce to the City's sampling request. Objection at 7, 9. The City ignores that the Navy spent

---

such condition and state of repair, or regarding the making of any alterations, improvements, repairs or additions, except to the extent required by applicable law." ECF No. 189-1 at 7.

twenty years and over $16 million investigating and remediating the Boat Channel, *see* ECF No. 154-1. The City also ignores that the Water Board carefully scrutinized each step of the remediation and agreed that the selected remedy protected human health and the environment, ECF No. 189-5 at 12, 29, that the remediation was completed successfully, ECF No. 189-23, and that the Boat Channel parcels are suitable for transfer, ECF No. 189-26. The City's glib comment that the Navy has merely "mouth[ed] the words of the statute" in complying with its remedial obligation dismisses the Navy's (and the Water Board's) decades of work to clean up the Boat Channel. Objection at 6.

The City's sampling request is a fishing expedition based on pure speculation that the Boat Channel is contaminated. The City presents no evidence to suggest contamination. The City's unsupported allegations provide no basis to grant the City's sampling request. If courts allowed parties to essentially perform a new remedial investigation based on a hunch, parties could endlessly prolong closure of a CERCLA site, which is in part why Congress sensibly limited judicial review of CERCLA cleanups to the administrative record. Even if general discovery were allowed, discovery must be grounded in more than mere speculation. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021). The court should reject the City's latest attempt to endlessly prolong this litigation in order to avoid its obligation to accept transfer of the Boat Channel parcels.

## CONCLUSION

The court should affirm the magistrate judge's decision and deny the City's motion to compel.

Dated: September 19, 2025    /s/ *Samuel Hobbs*
                             BRETT A. SHUMATE
                             Assistant Attorney General
                             Civil Division
                             KIRK MANHARDT
                             MARCUS S. SACKS
                             ALASTAIR M. GESMUNDO (CABN 316573)
                             SAMUEL F. HOBBS (AL Bar No. 9776O19E)
                             Commercial Litigation Branch
                             P.O. Box 875, Ben Franklin Station
                             Washington, DC 20044
                             Phone: (202) 616-8077

                             ADAM R.F. GUSTAFSON
                             Acting Assistant Attorney General
                             Environment and Natural Resources Division
                             STEFAN J. BACHMAN (SC Bar No. 102182)
                             BRIAN SCHAAP (DC Bar No. 1780655)
                             Environmental Enforcement Section
                             MICHAEL AUGUSTINI (DC Bar No. 452526)
                             Environmental Defense Section
                             P.O. Box 7611
                             Washington, DC 20044
                             Phone: (202) 616-6536

                             *Attorneys for Plaintiff and Counterclaim-
                             Defendant United States of America*