Barry P. Steinberg (admitted *Pro Hac Vice*)
barry.steinberg@kutakrock.com
**KUTAK ROCK LLP**
1133 Connecticut Avenue, NW
Suite 1200
Washington, DC 20036
Telephone: (202) 828-2400
Facsimile: (202) 828-2488

Dwyer Arce (admitted *Pro Hac Vice*)
dwyer.arce@kutakrock.com
**KUTAK ROCK LLP**
1650 Farnam Street
The Omaha Building
Omaha, NE 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148

Thomas F. Vandenburg (SBN 163446)
tvandenburg@wshblaw.com
Alice Charkhchyan (SBN 332670)
acharkhchyan@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
505 North Brand Boulevard, Suite 1100
Glendale, CA 91203
Telephone: (818) 551-6000
Facsimile: (818) 551-6050

Attorneys for Defendant/Cross Defendant/
Counter Claimant/Cross Claimant
City of San Diego

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF SAN DIEGO,<br><br>　　　　　Defendant.<br><br>*AND RELATED CROSS CLAIMS AND COUNTER CLAIMS* | Case No. 3:23-CV-00541-LL-VET<br><br>**REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES**<br><br>The Hon. Linda Lopez<br><br>Trial Date: None Set |

3:23-CV-00541-LL-VET

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

## I. INTRODUCTION

Although the United States concedes that the Memorandum of Agreement ("MOA") is a contract between the parties, it does so for a limited purpose: the applicability of its motion for specific performance is dependent upon that equitable remedy for contractual enforcement. Such reliance on that equitable contract remedy is repudiated by the United States' effort to avoid the plain language implications of contract law. The United States has exposed itself to conflicting positions. If the plain language interpretation of the MOA is controlling, then there is a factual dispute about the meaning and the issue before the court is not ripe for summary judgment. If, on the other hand, the language of the MOA is unambiguous, then its meaning is derived from the volumes of information, statutes, regulations, and decisions that the United States would bring to bear upon the meaning of the words. The need for this extensive library of interpretative information repudiates any notion of unambiguity. One need not speculate about why the United States would paint itself into such a corner: it must bring the contract under the ambit of CERCLA to avail itself of the limitation on what the Court can consider in determining the factual predicate of the United States' satisfaction of its contractual obligation. The preclusion of probative evidence not found in the Administrative Record ("AR") is established in 42 U.S.C. § 9613. Further, the standard of review is asserted to be arbitrary and capricious, another hurdle that the United States would assert to ensure that its identification of the applicable evidence is unilaterally determined and constrained.

## II. ARGUMENT

### A. Application of CERCLA Section 113 to the Contract is a Clear Error

Simply put, the United States desperately needs the protective umbrella of CERCLA to preclude the Court from looking behind the shrouded curtain of the AR while applying a sharply constrained burden of proof. The United States asserts that

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

Section 113 was found to apply to the breach of contract claim. The actual statement of the magistrate judge qualified the City's action as a "challeng[e] to the adequacy of the CERCLA cleanup." To avail itself of section 113, the United States must show that the City's argument that the United States failed to satisfy the MOA contractual requirements is a *challenge* to CERCLA compliance of the Boat Channel cleanup. It is not. Rather, the challenge is to the satisfaction of the contractual conditions precedent to conveyance, conditions from which the United States must run. The suggestion that the magistrate judge's opinion was an unlimited determination of Section 113 applicability in this matter is misleading. The City does not seek any action that would impose upon the United States any obligation with respect to the Boat Channel. *Fort Ord Toxics* and *Arco* clearly establish that Section 113 is limited to challenges to CERCLA actions but not every matter associated with property involved in CERCLA activities is a challenge. *See Fort Ord Toxics Project, Inc.* v. *California E.P.A.*, 189 F.3d 828 (9th Cir. 1999); *ARCO Env't Remediation, L.L.C.* v. *Dep't of Health & Env't Quality of Montana*, 213 F.3d 1108 (9th Cir. 2000).

The United States' effort to limit the Court from addressing the contractual nature of the City's establishment of the breach of contract by the United States is focused on a circuitous argument where only the AR is relevant for the Court's decision and summary judgment is limited to the AR. The argument fails for two reasons: (1) the application of Section 113 to this litigation would ignore the lack of a challenge to remedy, and (2) the limited application of Section 113 to judicial action under *this chapter* [42 U.S.C. §§ 9601 *et seq*]. The United States' penultimate statement in its opposition demonstrates that what it seeks—specific performance— is a remedy or action nowhere recognized in CERCLA. The United States' tortured path to specific performance is built on inapplicable legal principles. Without the benefit of Section 113, the posture of this case rests on the facts, not the United States' attempt to shield its own failures from scrutiny, failures that are relevant at this stage

- 3 -

3:23-CV-00541-LL-VET

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

of the proceeding solely to address the satisfaction of the MOA. The United States' effort to shield in that regard is nowhere more evident than its erroneous and misleading quotation of Section 113(j)(1), where it omits the qualification of Section 113(j)(1): "In any judicial action under this chapter ....". (ECF No. 207 at PageID.6595). By omitting that phrase, the Court is presented with a misleading and unlimited statutory mandate which is inapplicable in this matter. Further, the United States repeats its incomplete statement of the law to apply an arbitrary and capricious standard of review.

### B.     The Plain Language Meaning of the Contract

The contractual requirement that the United States take all action necessary to protect human health and the environment, like any other contractual term in any other contract, requires an analysis to determine its meaning, an analysis that the United States is unwilling to undertake. Instead, it explains that it is just too hard to derive what the parties meant and intended when the Navy drafted the MOA. But the parties meant more than the United States' effort to avoid interpretation of the phrase. The United States, in this regard, rejects the validity of Justice Steven's holding in *Burlington Northern and Santa Fe Ry. Co.* v. *U.S.*, 556 U.S. 599 (2009), that the plain meaning is essential to an understanding of CERCLA provisions that are not otherwise defined in the statute. The decision of the Court was 8-1.

That meaning may be difficult and the parties may not agree to the meaning. But difficulty does not eliminate the disagreement and is not a basis to skip over the meaning to preserve the issue for summary judgment. It is not, as asserted by the United States, for the City to establish a coherent standard. Such a standard, of necessity in this case, would include a determination of what is necessary to satisfy the intended recreational use, a clearly articulated contractual standard for which the United States takes no issue.

- 4 -   3:23-CV-00541-LL-VET

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

The unwillingness of the United States to submit the contract language to the Court for interpretation is curious. Why must the United States look beyond the words that it crafted to state what they mean as plain language? Justice Steven's did not create a "too hard" exception to his plain language criterion. The United States, not the City, seeks specific performance of a contract it drafted. It now attempts to invoke yet another barrier to scrutiny of its performance. It should not go unnoticed that the MOA imposes upon the United States environmental performance standards that are in addition to "all action necessary to protect human health and the environment." These additional requirements demonstrate conclusively that the parties meant more than what CERCLA § 120(h)(3) specifies. The Navy could have qualified the language with a clear and unambiguous reference to CERCLA. It could have eliminated the need for a recreational use requirement and regulatory approval. Neither of these additions are found in CERCLA, so contrary to its effort to limit what it could have agreed to, these are contractual obligations which are not limited by some constraint on Naval authority. As a last resort, the words in question are now alleged to be "technical" and "words of art." This case is not about some technical matter which only the technical elite can opine. The United States now elevates the words in question to a meaning that mere mortals cannot discern. Justice Stevens would no doubt repudiate that interpretive condition on the words in question.

### C. PFAS Failure

The United States' suggestion that the addition of perfluorinated compounds (PFAS) to the inventory of CERCLA hazardous substances is not a novel event because other substances have been added to the list of hazardous substances. This misstatement ignores the vehicle for PFAS listing. EPA has never before added to the list of hazardous substances. Only EPA could add PFAS because no other vehicle exists to do so. PFAS was identified as an emerging contaminant pursuant to the Safe Drinking Water Act (42 U.S.C. §§ 300f *et seq.*). That statute is not included in the

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

- 5 -   3:23-CV-00541-LL-VET

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

definition of "hazardous substance" in 42 U.S.C. § 9601(14), thereby precluding its addition under that statute. An addition under the Toxic Substances Control Act would similarly require a determination by the Administrator of EPA.

The response of the United States to the identified failure to address PFAS is reminiscent of a petulant child: it's not my fault, I didn't do it, and you can't make me. Addressing these "defenses" in order, first neither CERCLA nor the MOA are concerned with fault. Rather, both focus on protection from environmental harm without regard for blame or culpability. Second, regardless of who "did it," the owner is responsible for addressing it. That would be true even if the property had already conveyed. And third, the consequence of not addressing the PFAS issue is a failure of contractual consideration as well as CERCLA. That is not punitive. And the City has not sought any order or action that would impose any obligation on or challenge to the United States for such refusal.

The United States represents to the court that it had no authority, pursuant to 42 U.S.C. § 9604(a), to act with respect to PFAS before its designation as a hazardous substance because as a pollutant and contaminant, it did not represent an imminent and substantial danger. (ECF No. 207 at 22). This is yet another tortured attempt to avoid responsibility. The statute addresses when the President is authorized to act. It is not a constraint on his authority. But more telling, the statute precedes the United States' quoted language with "may present." The Navy's myopic approach to this significant public health concern cannot be reconciled with its contractual obligations. Further, examination of Department of Defense PFAS guidance documents submitted to the court establish that its representation is impeached. (ECF Nos. 153-3, 153-4, 153-5).

    **D.**    **The MOA is a Contract, Satisfaction of Which is Not a Challenge to the Navy's Remedial Activities**

- 6 -   3:23-CV-00541-LL-VET

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

Repeatedly, the United States ignores the nature of this motion. It must do so if it is to invoke otherwise inapplicable provisions of law. To be clear, the City does not question the adequacy of the remedy in this motion. Try as it may, the United States cannot characterize this motion as a challenge to its remedy selection or implementation. That is the litigation case the United States would like to try, inasmuch as that triggers the limitations on what the court can review and the standard of review under Section 113. This motion is directed to the United States' failure to satisfy the contractual conditions precedent to conveyance. If the Court were to rule in favor of the City, the non-CERCLA remedy of specific performance would be unavailable to the United States. Such a ruling would not require any action by the United States. Failure to satisfy a contractual obligation is not synonymous with statutory non-compliance, particularly where, as here, the contractual obligations exceed the statutory requirements.

### E. The NCP Does Not Establish a Substantive Standard

The National Contingency Plan (NCP) is a procedural guide for the execution of statutory obligations. It is not substantive. In its painful description of all of the Boat Channel undertakings in almost 50 years of dealing with contamination in and on the Boat Channel, the United States seeks to put checkmarks by the procedural requirements for addressing hazardous substances. That may satisfy the regulatory guidance, but those check marks do not equate to satisfaction of contractual obligations. The relevance of the NCP and the consistency cases cited do not relate to contract performance. That is an issue beyond the City's motion.

In its effort to bypass its contractual obligations, the United States looks to the NCP to define the meaning of the words ("all action necessary to protect human health and the environment") as if the MOA were a myth. The NCP is promulgated pursuant to 42 U.S.C. § 9605. The statute describes 10 procedures and standards for development of the NCP. Those procedures and standards are just that: procedures

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

- 7 -    3:23-CV-00541-LL-VET

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

and standards. Neither the statute nor the implementing regulation, 40 CFR Part 300, (*See* 40 C.F.R. § 302(b)(3), (4), and (5)) define the standard to which the parties agreed. Rather, it established a process to be followed. As expressed by EPA, the NCP provides a "blueprint" and a "framework". (EPA, *National Oil and Hazardous Substances Pollution Contingency Plan (NCP) Overview,* https://www.epa.gov/emergency-response/national-oil-and-hazardous-substances-pollution-contingency-plan-ncp-overview (July 15, 2025)). The City could have accepted that framework as sufficient for conveyance, but it did not. Instead, there is a performance requirement to be met, and it was not. Now the United States seeks to avoid its contractual commitment. Nowhere is that more evident than the United States' failure to address the presence of PFAS at and in the Boat Channel. The United States justifies this failure by asserting that the City waived this issue by failing to raise it 6 years before PFAS was designated as a hazardous substance. Crediting the City with prescience, the waiver argument is fantastical. The property belongs to the United States, its obligations with respect to protection of human health and the environment did not cease when it unilaterally declared completion of its procedural requirements, and expenditures to address a newly designated hazardous substance would not be a violation of the Anti-Deficiency Act (31 U.S.C. § 1341(a)(1)(A)).

The NCP, by its own terms is procedural. It prescribes a process to be followed. Examination of the contract demonstrates that the United States agreed to comply with the terms of the contract without invoking the NCP or CERCLA to define its obligations. If the United States were already obligated to "take all action necessary," why was that included as a condition precedent? It is more than a redundant recitation of what the parties intended. It reflects a concern that conveyance was conditioned on substantive performance rather than procedural compliance. Words have meaning and the erroneous assertion of the United States to the contrary cannot convert

process to substance. The City did not bargain for process. Its concern was for the health and safety of its constituents. The process of the NCP is not the exclusive province of what constitutes contractual compliance. Process is no substitute for substance.

F. **Introduction of Irrelevant Information into its Argument**

The United States relies heavily and repeatedly on the resolution of suspected contaminants at Parcel VIII. Parcel VIII is irrelevant to this motion. The contaminants at that site were far less concerning and the City did not specifically require that the cleanup there support recreational use as a condition precedent to conveyance. The City took no issue with the conveyance of that parcel, inasmuch as the United States had met its contractual obligations. By way of comparison, the MOA provides that Parcel VII will be used for a public park and recreational purposes. Examination of the photograph in the Trapp Report (ECF No. 206-4 at PageID.6481) demonstrates the abject failure in that regard. A paper drill conclusion that no one would recreate in the area that was uninvestigated demonstrates the Navy's contractual failure. They just did not want to look under the debris, so they declared success with no investigation, sampling, and no reasonable basis in spite of the expressed concerns with PFAS and other contaminants (ECF No. 207 at PageID.6614). But most telling about the Navy's effort to turn a blind eye with respect to the slopes and shoreline is the refusal to allow the City, at its own expense, to investigate the area in question. (*See* ECF No. 125). The simple fact is that the United States has no interest in satisfying its contractual obligations and instead, uses every avenue to thwart factual determinations and revise its contractual obligations by invoking an undefined and ambiguous provision of CERCLA. What is required is an evidentiary hearing, not a contrived effort to preclude factual disputes.

G. **Materiality**

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

The Navy argues that the breach of its contractual obligations is not material notwithstanding the clearly stated objectives of the MOA, a contract drafted by the Navy. The Navy's obligations, whether under CERCLA or the MOA include the continuing obligation to address all hazardous substances, not just those that were defined prior to initiating its remedial activities. The "delta," as the United States uses that term, is what the Navy did in comparison with what it should have done. Comparative analysis is no substitute for objective achievement. The Navy did not evaluate, sample, or test for PFAS nor did the Navy adequately test for PCBs and it repudiates any post-conveyance obligation to do so. The attempt at an algebraic formulary approach fails mathematically and logically when a critical portion of the formula cannot address a known unknown. In essence, the United States' test for materiality depends on its own refusal to perform a proper investigation. That stretches credulity beyond reason. The City bargained for more than mere CERCLA compliance. Blind acceptance of the so called "delta" is not what it bargained for. Conspicuously, the AR does not reflect the Navy's contractual failures. Under the government's theory of this litigation, those failures would remain buried.

## III.   CONCLUSION

The Navy was under no obligation to draft or accept the language of the contract that establishes the conditions precedent that are expressed in the contract. But it did so and the effort to reform the contract fails. The inclusion of the conditions precedent to conveyance demonstrates the requirement for something more that procedural compliance. And that something more is what the United States seeks to avoid at all costs.

The Court should grant the City's motion for summary judgment and dismiss the United States' claim for specific performance.

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

- 10 -

3:23-CV-00541-LL-VET

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES

| | | |
|---|---|---|
| 1 | DATED: December 5, 2025 | Respectfully submitted, |
| 2 | | KUTAK ROCK LLP |
| 3 | | |
| 4 | | By: *s/ Barry P. Steinberg* |
| 5 | | Barry P. Steinberg<br>barry.steinberg@kutakrock.com |
| 6 | | Attorney for Defendant/Cross Defendant/ Counter Claimant/Cross Claimant |
| 7 | | |
| 8 | | City of San Diego |

- 11 -

3:23-CV-00541-LL-VET

KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

REPLY IN SUPPORT OF THE CITY OF SAN DIEGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM-IN-REPLY OF UNITED STATES