BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ALASTAIR M. GESMUNDO (CABN 316573)
SAMUEL F. HOBBS (AL Bar No. 9776O19E)
Commercial Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-8077

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
STEFAN J. BACHMAN (SC Bar No. 102182)
BRIAN SCHAAP (DC Bar No. 1780655)
Environmental Enforcement Section
MICHAEL AUGUSTINI (DC Bar No. 452526)
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 616-6536

*Attorneys for Plaintiff and Counterclaim Defendant United States of America*

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CITY OF SAN DIEGO, et. al.

Defendants.

*AND RELATED CROSS CLAIMS AND COUNTER CLAIMS*

Case No. 3:23-cv-00541-LL-VET

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT COUNTERCLAIM-IN-REPLY**

The City's opposition is not persuasive. It barely engages with the United States' arguments. The City ignores that the Water Board approved the Navy's remediation, and the authority holding the Water Board's approval is conclusive. The City ignores the United States' arguments interpreting the MOA. And the City ignores the evidence showing that the Navy investigated the shoreline and considered future use. When the City does respond, it often cites no supporting evidence or relies heavily on expert reports outside the administrative record and beyond the scope of judicial review. The court should grant summary judgment.

**I. The Administrative Record Limit Applies.**

The court already ruled that administrative record review applies to the contract claim. ECF 184 at 14. The parties have fully briefed this issue three times: on the City's motion to compel sampling, ECF 117; on the United States' motion to limit review to the administrative record, ECF 156; and on the City's objection to the magistrate judge's ruling on the motion to compel, ECF 191. Yet the City waited until its response to the United States' motion for partial summary judgment to argue that administrative record review should not apply because of the Supreme Court's decision in *Atlantic Richfield Co. v. Christian*, 590 U.S. 1 (2020). The *Atlantic Richfield* decision did not address § 9613(j), CERCLA's provision mandating administrative record review here.[1] And the decision has no effect whatsoever on the United States' first and third arguments from prior briefing for why administrative record review applies: this litigation qualifies as a "judicial action under" CERCLA pursuant to § 9613(j)(1) because there are CERCLA claims in this case, *see* ECF 156-1 at 5–6, ECF 199 at 13–14; and the APA limits review of the Navy's final agency action of selecting a remedy to the administrative record, *see* ECF 156-1 at

---

[1] Much of the reasoning in *Atlantic Richfield* was specific to jurisdictional issues such as stripping concurrent jurisdiction from state courts. *See* 590 U.S. at 13–15. This reasoning does not apply to § 9613(j), which is not jurisdictional. Additionally, unlike *Atlantic* Richfield, this case includes CERCLA claims and is thus a "judicial action under" CERCLA for purposes of § 9613(j).

9–11, ECF 199 at 17–18. The court should limit review to the administrative record on either basis.

The City incorrectly argues that administrative record review never applies in contract cases. Though contract performance is typically reviewed de novo, if the performance also qualifies as a final agency action, then review is limited to the administrative record. *See United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1089–90 (N.D. Cal. 2010) (rejecting the defendant's argument "that breach of contract actions are always reviewed de novo" and holding that "finding a contract does not automatically make the APA standard of review inapplicable"); *Doty v. United States*, 24 Cl. Ct. 615, 626 n.14 (1991) ("[C]ontract claims like the one in this case constitute appeals from final agency action subject to judicial review. Thus, we turn to the APA, 5 U.S.C. § 706, for standards to guide review of the agency action in question."). The cases the City cites are either inapplicable or unpersuasive.[2]

Additionally, the City's statements regarding the application of the arbitrary and capricious standard are profoundly wrong. Citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which is not relevant because the United States has not suggested that the court should apply *Chevron* deference, the City says the court should exercise its "independent judgment" regarding the "underlying facts of the

[2] *Shaw v. Connecticut General Life Insurance Company* does not address whether administrative record review would apply to a contract that involves a final agency action. 353 F.3d 1276 (11th Cir. 2003). The court in *American Savings v. Bell*, 562 F. Supp. 4, 8 (D.D.C. 1981), noted that the government cited "no support" for its position that the administrative record should apply, and the court thus did not have the opportunity to consider the relevant authority. *County of Suffolk v. United States*, 19 Cl. Ct. 295 (1990) actually supports the United States position. In that case, the court recognized that the APA standard of review could apply when reviewing final agency action pursuant to a contract, but held that the APA did not apply in that particular case. *Id.* at 300. While the court in *Defenders of Wildlife v. Salazar*, 877 F. Supp. 2d 1271 (M.D. Fla. 2012) adopted the position the City asserts here, the weight of authority the United States cites to the contrary—which the City ignores—outweighs this lone district court opinion. *See* ECF 156-1 at 9–10 (citing cases), ECF 199 at 17–18 (citing cases).

actions of the United States." ECF 206 at 43–44. This suggestion is directly at odds with binding and well-established precedent on arbitrary and capricious review. *See, e.g.*, *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130–31 (9th Cir. 2012) (noting the court should not "substitute its judgment for that of the agency" when exercising arbitrary and capricious review). The City also says this case is similar to one where the court held a state cleanup was arbitrary and capricious because the state "failed to undertake a feasibility study." *State of Minn. v. Kalman W. Abrams Metals, Inc.*, 155 F.3d 1019, 1024 (8th Cir. 1998). This case is not remotely similar. Here, the Navy completed an exhaustive, 968-page feasibility study. *See* FS Report, ECF 189-4. The City fundamentally misunderstands the nature of arbitrary and capricious review.

## II. The MOA Uses the Remediation Standard Under CERCLA.

Tellingly, the City does not respond to most of the United States' arguments: pursuant to CERCLA, the remediation process for the Boat Channel parcels was already underway before the parties executed the MOA; the City's acknowledgement in the Reuse Plan that CERCLA would govern the remediation; the MOA's numerous express references and citations to CERCLA; and the parties' adherence to and reliance on CERCLA through their course of performance. Nor does the City ever explain how the plain meaning of the language in the MOA somehow creates a different and heightened obligation than the established meaning of the exact same words in CERCLA.

Rather than engage with the United States' analysis, the City distorts the United States' position. The United States does not maintain that the MOA "incorporate[s] the entirety of CERCLA." ECF 206 at 23.[3] The United States' position is simply that when the MOA says the Navy shall take all remedial action

---

[3] CERCLA and its implementing regulations do not occupy "tens—perhaps hundreds—of thousands of pages." ECF 206 at 23. CERCLA and the NCP are approximately 600 pages long.

necessary to protect human health and the environment, the parties intended to refer to the identical and well-known standard under CERCLA, and the court should thus look to the relevant parts of CERCLA and the NCP to determine whether the Navy met that standard. Nor is the reference to CERCLA "silent." *Id.* The MOA expressly cites and refers to CERCLA repeatedly, including to the specific provision that provides the exact standard repeated in the MOA. *See* MOA, ECF 189-1 at 19, 22–23, 51, 62, 69–70, 94, 98, 102, 107, 178, 191, 204, 217.[4]

The City cites caselaw about incorporating regulations in contracts, but these cases miss the mark. ECF 206 at 24. Courts routinely look to statutes and their regulations to interpret a contract's meaning when the contract implements a statutory requirement. *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001) ("For determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose."); *Dalles Irr. Dist. v. United States*, 82 Fed. Cl. 346, 355 (2008) (collecting cases for the doctrine that "where a contract implements or fulfills a statutory requirement, the interpretation of the contract will be guided by the underlying statute"). Applying this and other principles of contract interpretation—such as giving technical terms their technical meaning, interpreting contracts in context and as a whole, and considering course of performance—the United States has shown the parties' unmistakable intent to refer to CERCLA's standard. *See* ECF 207 at 19–24.

Contrary to the City's suggestion, the United States does not argue the MOA is vague.[5] ECF 206 at 26. The MOA clearly refers to the remedial standard under

---

[4] Protecting human health and the environment is the seminal cleanup standard under CERCLA. The City's dismissive suggestion that the language appears only "once" in a subclause is false. ECF 206 at 23. CERCLA refers to the standard of protecting "human health and the environment" 29 times in its statutory text. *See* 42 U.S.C. §§ 9601–9675.

[5] Relatedly, the City argues the United States "waived summary judgment" because it did not say the MOA was unambiguous. ECF 206 at 22. The City's argument is confused. Summary judgment

CERCLA. The United States argues the City's interpretation would be void for vagueness because it is inscrutable. The City says the MOA's remedial obligation somehow requires more than CERCLA—even though the language is the same—but the City cannot or will not say exactly what this higher standard is or how the parties and the court are supposed to figure it out.

The City similarly misunderstands the United States' point that the Navy could not agree to a remedial obligation that requires more than the statutory standard. CERCLA requires selecting a remedy "in accordance with . . . the national contingency plan." 42 U.S.C. § 9621(a). After satisfying the threshold criterion of protecting human health and the environment, the NCP requires selecting a cost-effective remedy. 40 C.F.R. § 300.430(f)(1)(ii)(D); 42 U.S.C. § 9621(b). An obligation that required the Navy to remediate more than is considered necessary under CERCLA would not be cost effective—because spending money on unnecessary remediation is not cost effective—and thus would not be in accord with the NCP. The Navy could not have agreed to a standard that creates this problem.[6]

## III. The Navy Did Not Breach Its Remedial Obligation Under the MOA.

### A. The Navy Remediated for PCB.

The City's argument about PCB is highly misleading. The City suggests the Navy did not investigate for PCB. *See* ECF 206 at 29–31. As the City knows, the

---

on a contract claim does not hinge on whether the contract is unambiguous. The contract's meaning is a legal question. Ambiguity affects whether a court may consider parol evidence to determine the contract's meaning. Unlike the City, who relies on the Term Sheet (which does not shed any light on the dispute here at any rate), the United States does not ask the court to consider any parol evidence. Instead, the United States maintains it is clear from contract itself that the parties intended to use the remedial standard from CERCLA.

[6] The City says the Navy already agreed to a higher remedial standard than CERCLA requires because the Navy agreed to clean up petroleum in Parcel X, even though CERCLA excludes petroleum from the definition of hazardous substances. ECF 206 at 28. CERCLA excludes petroleum from the definition of hazardous substances because it is addressed separately. The NCP addresses oil and petroleum removal in 40 C.F.R. §§ 300.300–335. The City overlooks that the NCP's full name is the National ***Oil*** and Hazardous Substances Pollution Contingency Plan.

Navy tested for PCB and concluded that it was not a chemical of concern in the Boat Channel. ROD, ECF 189-5 at 22 ("None of the Boat Channel surface sediment total PCBs concentrations exceeded the 95 percent upper predictive limit (UPL) of the expanded reference data set."). The Water Board agreed with the Navy's conclusion that PCB was not a chemical of concern. *See* ROD, ECF 189-5 at 12.

The City's actual grievance, which it does not plainly state to the court, is that the Navy did not test for all 209 types of PCB congeners. As is standard, the Navy reasonably tested for a range of the most toxic PCB congeners. *See* RI Report, ECF 155 at USN_526619–21, 526639–41, 526720–29 (detailing the testing of various PCB congeners). Notably, in comments on the RI Work Plan, the California EPA's Department of Toxic Substances Control expressly agreed that "chemistry protocols for . . . congener-specific [PCBs] are adequate for these studies." RI Work Plan, ECF 155 at USN_532639. The Water Board agreed that the Navy's investigation adequately characterized the site and identified the relevant chemicals of concern. *See* ROD, ECF 189-5 at 12.

**B. There Was No Basis to Remediate for PFAS.**

At the time of the remediation and when the United States attempted to transfer the Boat Channel parcels, PFAS was only a contaminant and had not yet been identified as a hazardous substance. To take remedial action for a contaminant, there must be "a release or substantial threat of release" that "present[s] an imminent and substantial danger." 42 U.S.C. § 9604(a)(1); *see also* 89 Fed. Reg. 39137. The City falsely tells the court the United States does not dispute that it knew PFAS had been released in the Boat Channel when it executed the MOA. ECF 206 at 31. The United States has plainly and consistently maintained that there is no evidence PFAS has been released in the Boat Channel. *See* ECF 162-1 at 10; ECF 188-1 at 26; ECF 207 at 29. In fact, the FOST specifically found that "PFAS have not been used or

stored within the FOST property." FOST, ECF 189-8 at 17.[7] At any rate, the City would also need to show that PFAS presented an imminent and substantial danger in the Boat Channel, which the City makes no attempt to do.

**C. The Navy Investigated the Entire Boat Channel Parcels.**

The City completely ignores the United States' arguments. The United States explained in detail that the Navy included the shoreline areas in its remedial investigation and reasonably concluded that there was no risk to human health or the environment in those areas. *See* ECF 188-1 at 20–22; *see also* ECF 207 at 31–34. The Navy reasonably determined based on the sampling results that the contamination was concentrated in the deeper parts of the Boat Channel. *See id.*

Incredibly, even though the United States devoted an entire section of its brief to explaining that the Navy did not limit its remedial investigation to IR Site 12, the City falsely tells the court "there is no dispute that the United States only investigated" IR Site 12. ECF 206 at 32. The United States plainly disputes this and the evidence cited in the United States' brief shows that the Navy included the shoreline areas in its remedial investigation. The City waived its opportunity to contest this evidence. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

**D. The Navy Obtained Site Closure.**

The City continues to cite no authority or evidence for its entirely manufactured position that site closure requires a no-further-action letter. The MOA

[7] The City incorrectly suggests the FOST's finding is inconclusive because it is limited to IR Site 12 and does not include all of the Boat Channel parcels. As the United States has noted, the FOST defines the FOST property to include all of the Boat Channel parcels, not IR Site 12. *See* FOST, ECF 189-8 at 11 ("The subject property of this FOST includes two parcels, Parcels III-B . . . and VII," which "are collectively referred to as the FOST Property.").

simply requires the Navy to obtain site closure from the appropriate regulatory authority. The Water Board is that authority, and the Water Board says it closed the site. State Water Resources Control Board, *Site 12*, *NTC Boat Channel*, Geotracker, https://geotracker.waterboards.ca.gov/profile_report.asp?global_id=DOD100366600; ECF 189-25 at 3 (documenting the Water Boad had "noted in Geotracker the closed status of the case"); ECF 189-36 at 19–20 (testifying that the Water Board closed the site).[8] The Water Board's position that it closed the site is conclusive.

The City minimizes the letter as a "very simple" statement on "only one submittal by the Navy." ECF 206 at 33. In fact, the letter also notes "the completion of a remedial action" and includes the Water Board's finding that the "remedy is protective of the environment, complies with federal and state statutes and appropriate requirements, and is cost-effective." ECF 189-23. The Water Board explained in testimony that a no-further-comment letter demonstrates acceptance of the report as satisfactory, and that the Water Board will issue a no-further-comment letter only if it believes the remediation protects human health and the environment. ECF 189-35 at 17–18. The City also ignores and does not respond to the fact that the Water Board issued a concurrence or no-further-comment letter for the FS Report, the ROD, the RD/RAWP, the RACR, and the FOST. ECF Nos. 189-19, 189-5 at 12, 189-21, 189-23, & 189-26. The Water Board unambiguously found the remedy was adequate and complete.

The City also does not explain why a no-further-comment letter was enough to establish site closure for Parcel X, but is not enough for the Boat Channel parcels.

---

[8] The City dismisses the Water Board's notation of the status of the site as "closed" on Geotracker as a "nameless" and inadmissible act. ECF 206 at 33. The name of the Water Board agent who changed the status to closed is Kristen Schwall, the Water Board's project manager for the Boat Channel site. ECF 189-36 at 19–20. The Water Board referred to the closed status on Geotracker in a letter, ECF 189-25 at 3, and the court can take judicial notice of the fact that the Water Board made this notation on its website. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (permitting judicial notice of official information on government websites).

**E. The Navy Properly Considered the Reuse Plan.**

On this issue, the City's response merely repeats the same points made in its motion for partial summary judgment, *see* ECF 186-1 at 24, which largely rehashes the City's incorrect argument that the Navy did not investigate the shoreline. As the United States explained in its opposition to the City's motion, the Navy did in fact consider the Reuse Plan. *See* ECF 207 at 36–38. And the United States has repeatedly explained that the Navy did consider and investigate the shoreline. *See* ECF 188-1 at 20 – 22; ECF 207 at 31 – 34; section III.C *supra*.

The City adds a speculative and unsubstantiated argument that regulators will not allow the City to redevelop the Boat Channel parcels. The City cites no evidence for this allegation; it's pure conjecture. It's also incorrect. The Water Board agreed the selected remedy would protect human health and the environment in the Boat Channel, ROD, ECF 189-5 at 12, agreed the remedy was implemented successfully, ECF 189-23, and agreed the entire Boat Channel parcels were suitable for transfer, ECF 189-26. The Water Board could not oppose development based on the alleged inadequacy of the Navy's remediation.

**IV. The Navy's Remediation Was Consistent with the NCP.**

The City's new, belated arguments about the NCP mostly repackage the City's allegations of breach and attempt to tie them to NCP provisions. Among other issues, the City relies on NCP provisions from 40 C.F.R. § 300.415 concerning removal actions. This case is about a remedial action. The removal action provisions are not applicable. *Compare* 42 U.S.C. § 9601(23) (defining removal) *with* § 9601(24) (defining remedial action); *see also* 40 C.F.R. § 300.5 (same).

The City's first two points repeat the arguments that the Navy failed to remediate PFAS and to investigate the shorelines. The United States' explanations for why there was no basis to remediate for PFAS and why the Navy did investigate the shorelines apply equally to the City's arguments here.

The City's argument that the Navy failed to follow the NCP's command to begin a removal action "as soon as possible" is specific to removal actions and inapplicable here. Removal actions are short-term responses to urgent threats, which is why the NCP emphasizes a rapid response. *See Carson Harbor Vill. V. Unocal Corp.*, 287 F. Supp. 2d 1118, 1155 (C.D. Cal. 2003) (explaining difference between removal and remedial actions). This does not apply to remedial actions.

In its fourth point, the City submits a laundry list of alleged problems with the sampling without citing to any evidence or support. ECF 206 at 40. Because the City does not cite any evidence to support these last-minute allegations, the court should ignore them. These allegations are also meritless. The record reports show that the Navy's sampling was reasonable, and the Water Board agreed that the sampling was adequate to assess the risk and select the appropriate remedy. *See* ROD, ECF 189-5 at 21–28 (detailing the sampling and risk assessment), & *id.* at 12 (Water Board concurring that the selected remedy protected human health and the environment).[9]

Similarly, the City's final point alleges that the Navy did not investigate to an adequate depth. ECF 206 at 41–42. But the City presents no evidence to support this allegation. The only evidence the City cites relates to dredging depth, not sampling depth. *See* ECF 137 at ¶ 8. The Navy explained in its reports why the sampling depth was sufficient, and the Water Board agreed. *See* FS Report, ECF 155 at USN_88564; ECF 189-4 at 27, 29. The City also falsely says "the Water Board repeatedly raised concerns" about a variety of sampling issues. Again, the City does not cite any evidence for this assertion, which is not true. The Water Board did not raise the concerns listed. To the contrary, the Water Board concurred in the ROD, which found the sampling and risk assessment were adequate. ROD, ECF 189-5 at 12.

---

[9] The City falsely says the Navy failed "to perform post-remediation sampling." ECF 206 at 41. As the United States has repeatedly pointed out to the City, the Navy did perform post-remediation sampling, which confirmed the remedy successfully removed the harmful contamination. *See* RACR, ECF 189-6 at 8 (reviewing the post-dredge confirmation sampling).

**CONCLUSION**

The court should grant the United States' motion for partial summary judgment on its claim for breach of contract and order the City to specifically perform its agreement to accept transfer of the Boat Channel parcels.

Dated: December 5, 2025

/s/ *Samuel Hobbs*
BRETT A. SHUMATE
Assistant Attorney General
Civil Division
KIRK MANHARDT
MARCUS S. SACKS
ALASTAIR M. GESMUNDO (CABN 316573)
SAMUEL F. HOBBS (AL Bar No. 9776O19E)
Commercial Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-8077

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
STEFAN J. BACHMAN (SC Bar No. 102182)
BRIAN SCHAAP (DC Bar No. 1780655)
Environmental Enforcement Section
MICHAEL AUGUSTINI (DC Bar No. 452526)
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 616-6536

*Attorneys for Plaintiff and Counterclaim-Defendant United States of America*