# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     v.<br><br>CITY OF SAN DIEGO,<br><br>           Defendant.<br><br><br>AND RELATED CROSS CLAIMS | Case No.: 3:23-cv-00541-LL-VET<br><br>**ORDER DENYING MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**<br><br>**[ECF No. 153]** |

Before the Court is Defendant City of San Diego's ("City") Motion to Supplement the Administrative Record ("Motion"). ECF No. 153. Plaintiff United States of America ("United States") timely opposed the Motion. ECF No. 162 ("Opposition"). For the reasons discussed below, the Motion is **DENIED**.

/ / /

/ / /

/ / /

/ / /

1

3:23-cv-00541-LL-VET

## I.    BACKGROUND

On March 20, 2025, the City filed the instant Motion, seeking to add six documents to the administrative record. *See generally* Mot. Specifically, the City seeks to supplement the record with the following exhibits:

- Exhibit A: Press Release, Southern Environmental Law Center, "Members of Congress propose protections from toxic PFAS pollution for military members, firefighters, and communities" (dated Mar. 6, 2025), *see* ECF No. 153-3;

- Exhibit B: Draft Addendum to Memorandum to File Regarding Identification of Per- and Polyfluoroalkyl Substances (PFAS) Investigation Locations (dated Apr. 22, 2020), *see* ECF No. 153-4;

- Exhibit C: Draft Memorandum to File Regarding Identification of Per- and Polyfluoroalkyl Substances (PFAS) Investigation Locations (dated Apr. 22, 2020), *see* ECF No. 153-5;

- Exhibit D: Excerpt of J. Michael Trapp, PhD's Expert Report: Review of NTC Boat Channel Sediment Contamination Remediation (dated Dec. 23, 2024), *see* ECF No. 153-6;

- Exhibit E: Final Finding of Suitability to Transfer for Parcels III-B and VII (dated Mar. 1, 2021), *see* ECF No. 153-7; and

- Exhibit F: U.S. EPA, Memorandum regarding Revised Guidance on Compiling Administrative Records for CERCLA Response Actions (dated Sep. 20, 2010), *see* ECF No. 153-8 (collectively, the "Exhibits").

## II.    LEGAL STANDARD

When an agency takes response actions and later seeks reimbursement under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the agency must "compile and maintain" an "administrative record" that "includes all documents that form the basis for the selection of the response action." 40 C.F.R. § 300.800. This administrative record serves as the sole basis for "judicial review of any issues concerning the adequacy of any response action taken[.]" 42 U.S.C. § 9613(j)(1); *see also Cal. Dep't of Toxic Substances Control v. Alco Pac.*, 317 F. Supp. 2d 1188, 1193

(C.D. Cal. 2004) (explaining that, in a CERCLA case, "judicial review will be limited to the administrative record"). Limiting judicial review to the administrative record is consistent with the congressional intent behind § 113(j)(1), which was enacted to make CERCLA litigation more efficient. *See Cal. Dep't of Toxic Substances Control v. NL Indus., Inc.*, 785 F. Supp. 3d 629, 641 (C.D. Cal. 2025) ("Limiting judicial review of response actions to the administrative record also expedites the process of review, avoids the need for time-consuming and burdensome discovery, and assures the reviewing court's attention is focused on the information and criteria used in selecting the response."). "Thus, as a general rule, information created or discovered after an agency has made a decision will not be considered," including "documents, deposition testimony, and expert opinions generated during the course of litigation." *United States v. Iron Mountain. Mines, Inc.*, 987 F. Supp. 1250, 1260 (E.D. Cal. 1997).

Still, CERCLA explicitly provides that "[o]therwise applicable principles of administrative law shall govern whether any supplemental materials [outside of the Administrative Record] may be considered by the court." 42 U.S.C. § 9613. General principles of administrative law permit expansion of the administrative record in four narrowly construed circumstances: "(1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) . . . bad faith on the part of the agency." *Fence Creek Cattle Co. v. United States Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). "The party challenging the adequacy of the administrative record . . . has the burden of showing that supplementation is warranted." *Iron Mountain*, 987 F. Supp. at 1260.

Courts presume that an "agency properly designated the [a]dministrative [r]ecord absent clear evidence to the contrary," and therefore "a court reviewing an agency's action may examine extra-record evidence only in limited circumstances that are 'narrowly construed and applied.'" *Goffney v. Becerra*, 995 F.3d 737, 747–48 (9th Cir. 2021) (quotations omitted).

3

## III.   DISCUSSION

In support of its request, the City primarily argues that the Navy failed "to investigate, sample, and test for the likely presence of perfluorinated compounds" ("PFAS"). *See* Mot. at 2. However, the City does not show how this purported failure fits within the four limited circumstances that permit expanding the administrative record nor cite case law to support its request. *See generally* Mot.

First, the City does not advance any arguments showing that the Exhibits are necessary to determine whether the Navy considered all the relevant factors or fully explained its decision. *See generally* Mot. For example, PFAS was not designated as a hazardous substance under CERCLA until 2024, more than seven years after the final Record of Decision and Remedial Action Plan ("ROD") was issued in March 2017. *See* ECF No. 162-1 at 9; 89 Fed. Reg. 39124 (May 8, 2024) (classifying PFAS as a hazardous substance). Yet the City fails to articulate how or why each of the Exhibits, most of which post-date the ROD and/or concern PFAS, relate to the factors that the Navy considered in selecting the remedial action plan for the Boat Channel or are explanatory of the information originally before the Navy.

Rather, it is evident that the City wishes to use the subsequent classification of PFAS as a hazardous substance as a new basis to challenge the adequacy of the Navy's remedial actions of the Boat Channel. *See, e.g.*, Mot. at 8–9 ("With respect to PFAS at the Boat Channel, the Navy failed to address it as a pollutant and contaminant and now refuses to address it as a hazardous substance. . . . Inclusion of these matters in the AR will provide the court with the opportunity to evaluate the adequacy, accuracy, and protectiveness of the Navy's activities."). Such use is impermissible and fails to provide a basis for supplementing the administrative record. *See, e.g.*, *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 450 F.3d 930, 943–44 (9th Cir. 2006) (holding that it was impermissible to use post-decision documents to establish a new rationale for attacking the Service's decision). And contrary to the City's assertion, *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113 (9th Cir. 2012), does not stand for the proposition that

"supplementation of the AR is required when new significant evidence or circumstances appear." ECF No. 171 at 2. Instead, the Ninth Circuit's ruling in *Tri-Valley* is clear that new, post-decisional information, like the kind the City wishes to introduce here, *cannot* be used to attack an agency's decision. *See Tri-Valley*, 671 F.3d at 1130–31 (holding that the district court did not abuse its discretion in refusing to supplement the record with a report created two years after litigation began because it was not being used to determine whether the agency considered the relevant factors but rather challenge the adequacy of the agency decision post hoc); *see also Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980) ("Consideration of the [extra-record] evidence to determine the correctness or wisdom of the agency's decision is not permitted, . . .").

Second, the City does not contend or otherwise show that the Navy relied on the Exhibits in selecting the remedy in the ROD. *See generally* Mot.; *see also Iron Mountain*, 987 F. Supp. at 1262 (holding that because defendants did not show that the EPA relied on the extra-record communications in selecting remedies, supplementation was not warranted). Nor does the City show that the Exhibits are necessary to explain any technical terms or complex subject matter involved in the Navy's decision. *See generally* Mot. For instance, while Exhibits A, B, C, and D provide information on PFAS, the City does not identify a specific complex or technical issue in the administrative record that can only be explained by supplementing the record with these documents. *See Iron Mountain*, 987 F. Supp. at 1262 (denying motion to supplement, in part, because defendant did not show any complex or technical issue that could only be explained by the supplemental materials).

The City also does not argue or otherwise demonstrate that the Navy acted in bad faith when creating its remedial action plan. *See generally* Mot. To establish bad faith, the City must make a "strong showing" that the Navy "engaged in wilful misconduct." *Iron Mountain*, 987 F. Supp. at 1260. While the City argues that the Navy purportedly had a duty to investigate and sample the Boat Channel for PFAS, *see* Mot. at 2, PFAS was not a

5

CERCLA hazardous substance when the Navy selected a remedial action plan. *See* 89 Fed. Reg. 39124 (May 8, 2024). And the City offers no evidence of willful misconduct.

Moreover, the City asks the Court to supplement the administrative record with post-decisional information.[1] *See* ECF No. 1 at 7. Critically, while CERCLA may permit expansion of the administrative record in limited circumstances, "exceptions to the normal rule regarding consideration of extra-record materials only appl[y] to information available at the time, not post-decisional information." *Tri-Valley*, 671 F.3d at 1130 (*quoting Rock Creek Alliance v. U.S. Fish & Wildlife Serv.*, 390 F. Supp. 2d 993, 1002 (D. Mont. 2005)) (internal quotations omitted). "[P]ost-decisional information 'may not be advanced as a new rationalization either for sustaining or attacking an agency's decision' because 'it inevitably leads the reviewing court to substitute its judgment for that of the agency.'" *Tri-Valley*, 671 F.3d at 1130–31 (*quoting Ctr. for Biological Diversity*, 450 F.3d at 943), *but see Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811 (9th Cir. 1980) (allowing limited use of post-decisional studies to clarify or explain the original information before the deciding agency).

Here, the City fails to expressly acknowledge that several of the Exhibits represent post-decisional information that was not available to the Navy at the time of the ROD. More importantly, the City fails to specify how the post-decisional information it wishes to introduce into the administrative record clarifies or explains information originally before the Navy. Instead, as already discussed, it is evident the City intends to use the Exhibits to advance a substantive rationale for attacking the Navy's decisions of the Boat Channel. Under these circumstances, the Court sees no appropriate basis for supplementing the administrative record with post-decisional information.

Lastly, in a final effort to add the Exhibits to the administrative record, the City highlights its breach of contract claim and argues that the Exhibits are relevant to show that

---

[1] Five of the six Exhibits post-date the ROD, which is dated March 28, 2017.

6

3:23-cv-00541-LL-VET

"the United States has not satisfied its contractual obligations." *See* ECF No. 171 at 2. Thus, according to the City, the purpose of the Exhibits is not to challenge "the United States' work under CERCLA." *Id.* Nonetheless, the City readily admits that the Exhibits "may undermine the adequacy of the United States' investigation and remediation efforts" and represent "relevant and credible evidence that demonstrates . . . inconsistency with the [National Contingency Plan]." *Id.* Given these statements, it is difficult to see how the Exhibits will not be used to attack the Navy's ROD and resulting remedial actions.

In sum, the City cites no case law and advances no arguments showing that each of the Exhibits falls within the four limited exceptions that permit the Court to consider this extra-record evidence. As such, the City fails to meet its burden of demonstrating that supplementation of the administrative records is justified.

## IV.    CONCLUSION

For the reasons set forth above, the City of San Diego's Motion to Supplement the Administrative Record is **DENIED.**

**IT IS SO ORDERED**.

Dated:  March 19, 2026

_____
Honorable Linda Lopez
United States District Judge