UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>Defendants.<br>_____<br><br>AND RELATED CROSS-ACTION. | Case No.:  23cv0541-LL-VET<br><br>**ORDER GRANTING UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON RECOVERY OF RESPONSE COSTS FROM THE CITY OF SAN DIEGO UNDER CERCLA**<br><br>**[ECF No. 154]** |

Before the Court is Plaintiff United States of America's ("United States") motion for partial summary judgment on the recovery of response costs from Defendant City of San Diego's ("City") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). ECF No. 154 ("Motion"). The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the United States' Motion.

/ / /

/ / /

/ / /

1

23cv0541-LL-VET

## I.    BACKGROUND

### A. Factual Background

The United States filed the instant cost recovery action under CERCLA to recover $17,131,016.38 in response costs the United States incurred in connection with the Navy Boat Channel Site ("Site") at the former San Diego Naval Training Center. United States' Statement of Undisputed Material Facts[1] (hereinafter "SOF") ¶ 1, ECF No. 154-2. Specifically, the United States Navy ("Navy") incurred at least $15,944,926.65 through July 31, 2023, and the United States Department of Justice ("DOJ") incurred at least $1,186,089.73 through October 31, 2024. *Id*. The response costs include contracts that the Navy entered into with contractors such as Bechtel Environmental, Inc. to perform remedial investigation activities and Parsons Government Services to develop the remedial design and implement the remedial action. *Id*. ¶ 3. The DOJ also incurred direct and indirect costs associated with the enforcement-related legal services it has provided to the Navy for the Site. *Id*. ¶ 4. On December 27, 2016, the United States sent the City a written demand for payment of all response costs incurred and to be incurred. *Id*. ¶ 5.

### B. Procedural Background

On March 27, 2023, the United States commenced the underlying action to seek reimbursement for the costs the Navy incurred in connection with the cleanup of the Site. ECF No. 1. In April 2024, the United States settled with defendants San Diego Unified Port District ("Port District") and San Diego County Regional Airport Authority ("Airport Authority") for $2,412,029.89, plus interest. ECF No. 65. On June 18, 2024, the Court approved the consent decree and entered a final judgment between those parties, thereby leaving the City as the only remaining defendant in this case. ECF Nos. 67–69.

On August 28, 2025, this Court granted United States' motion for partial summary

---

[1] The City failed to respond to the United States' Statement of Undisputed Facts and instead inserted its own unrelated facts. Because the City failed to dispute the United States' facts, the Court will deem those facts undisputed. *See* Civil Chamber Rules at 5–6.

judgment on the City's prima facie liability under CERCLA § 107(a) for cost recovery but denied it on the City's future liability under § 113(g)(2) for declaratory judgment. ECF No. 190. The United States filed the instant motion to recover $17,131,016.38 in response costs.

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law," and a dispute over a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Id*. at 252.

The moving party bears the initial burden of identifying those parts of the pleadings and record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant carries this burden of production, then the non-movant must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. In judging the evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, it draws all inferences in the light most favorable to the nonmoving party. *Id*. at 630–31. However, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Nor is it our task "to scour the record in search of a genuine issue of triable fact;" we may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

/ / /

/ / /

23cv0541-LL-VET

## III.   DISCUSSION

### A. National Contingency Plan

Section 107(a)(4)(A) of CERCLA allows the United States to recover "all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(A)(4). The national contingency plan ("NCP"), promulgated by the EPA as required by CERCLA § 105, 42 U.S.C. § 9605, "provide[s] the organizational structure and procedures for preparing for and responding to . . .  releases of hazardous substances, pollutants, and contaminants." 40 C.F.R. § 300.1. It outlines "specific steps parties must take in choosing a remedial action plan and cleaning up hazardous waste." *Carson Harbor Vill. v. Cnty. of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006); *see also Washington State Dep't of Transp. v. Washington Natural Gas Co., Pacificorp*, 59 F.3d 793, 799 (9th Cir.1995) (stating that the NCP "identifies methods for investigating the environmental and health problems resulting from a release or threatened release and criteria for determining the appropriate extent of response activities" (citation omitted)). "The NCP is designed to make the party seeking response costs choose a cost-effective course of action to protect the public health and the environment." *Washington State*, 59 F.3d at 802.

"[W]hen the United States government . . . is seeking recovery of response costs, consistency with the NCP is presumed." *Washington State*, 59 F.3d at 799–800 (citing *United States v. Hardage*, 982 F.2d 1436, 1442 (10th Cir. 1992)). Therefore, the objecting party has the burden of proving inconsistency with the NCP. *Washington State*, 59 F.3d at 800. To prove that the costs of the United States government's response action was inconsistent with the NCP, the objecting party must prove that the government's selection of the response action was "arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(2); *Washington State*, 59 F.3d at 802.

Given that the United States established a prima facie case under CERCLA § 107(a) (*see* ECF No. 190), the burden is now on the City to show that the Navy's selection of the response action was arbitrary and capricious or otherwise not in accordance with law. The

City failed to do so.

**B. The United States Properly Documented Its Costs**

Under the NCP, the lead agency is required to complete and maintain documentation to support cost recovery actions:

> During all phases of response, the lead agency shall complete and maintain documentation to support all actions taken under the NCP and to form the basis for cost recovery. In general, documentation shall be sufficient to provide the source and circumstances of the release, the identity of responsible parties, the response action taken, accurate accounting of federal, state, or private party costs incurred for response actions, and impacts and potential impacts to the public health and welfare and the environment.

40 C.F.R. § 300.160(a)(1). Proving that costs are unreasonable, excessive, or unnecessary does not show inconsistency with the NCP. *See Hardage*, 982 F.2d at 1443 (rejecting defendant's argument that an individual cost is excessive or unreasonable demonstrates inconsistency with the NCP); *United States v. Northeastern Pharm. & Chem. Co.*, 810 F.2d 726, 748 (8th Cir. 1986) ("CERCLA does not refer to 'all reasonable costs' but simply to 'all costs.'"); *United States v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1542–43 (E.D. Cal. 1992) ("Because the statute provides that all costs may be recovered, courts have rejected the defense of failure to mitigate damages.").

Generally, response costs include, *inter alia,* the costs of investigations, clean-up, sampling, testing, security fencing and other measures to limit access, and enforcement activities. *See* 42 U.S.C. § 9601(25); *Cadillac Fairview/California, Inc. v. Dow Chem. Co.*, 840 F.2d 691, 695 (9th Cir. 1988); *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir. 1986). The United States may also recover overhead or indirect costs. *See Iron Mountain*, 812 F. Supp. at 1543.

**1. Navy Costs**

The United States seeks $15,944,926.65 in direct costs the Navy incurred for site investigations and remedial actions performed by various Navy contractors through July

23cv0541-LL-VET

31, 2023. Mot. at 5. The United States claims that this amount is the difference between $16,118,872.24 (the total Navy contractor costs) and $173,945.59 (a portion of the total amount that the City's cost accounting expert, Mr. Jason Kubota, challenges). *Id.* at 6. The City does not argue that the United States should not be entitled to this amount. *See generally* Opp'n.

The United States did not deduct $2,721,794.92 that Mr. Kubota also challenges because it claims that Mr. Kubota's opinion was "uninformed and grounded in a basic misunderstanding of the types of documents that support the Navy's incurrence and payment of costs to its various contractors." Mot. at 10. Based on the evidence submitted by the United States, this Court agrees.

Mr. Kubota claims that $2,721,794.92 is not recoverable because no invoice or proof of payment was provided by the United States or cited by United States' cost accounting expert Mr. Wiley R. Wright. Kubota Report, ECF No. 154-3 at 39–46; Kubota Tr. 26:12–28:9, ECF No. 154-3 at 98. For example, Mr. Kubota states that for the $556,574.90 that was incurred for Contract No. N68711-92-D-4670, Task Order 0092 from Bechtel National, Inc., "no invoices under this contract/task order were provided by the US, cited by Mr. Wright, or found in our search of the US' production." However, Mr. Wright stated in his report that a contractor close out package, which was produced by the United States as USN_0532936, included all the invoices for that specific task order. ECF No. 154-4 at 47. In fact, Mr. Wright listed every single invoice number in his schedules that were attached at the end of his report. *See id.* at 43–59.

When asked about these closeout packages, Mr. Kubota replied that "The origins of [] these pages and what they mean was not clear to me." *See* Kubota Tr. 38:3–40:7, ECF No. 154-3 at 99. Mr. Kubota further testified that he did not understand that the closeout packages were prepared and submitted by the contractors even though the contractor's name and logo were prominently displayed on the documents. Kubota Tr. 40:5–41:18, ECF No. 154-3 at 99. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec.*

6

23cv0541-LL-VET

*Industrial Co., Ltd. v. Zenith Radio Corp.* (1986) 475 US 574, 586-87. Here, Mr. Kubota cannot feign ignorance to create a discrepancy of $2.7 million when the evidence states otherwise. "The very object of summary judgment is to separate real and genuine issues from those that are formal or pretended, so that only the former may subject the moving party to the burden of trial." *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (fact that there were inconsistencies between deposition given by plaintiff under oath and affidavit which he filed in opposition to motion for summary judgment did not create genuine issues of material fact precluding summary judgment); *see also Anderson*, 477 U.S. at 247–48 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"); Accordingly, the Court finds that Mr. Kubota's misunderstanding or failure to investigate these closeout packages, especially after Mr. Wright cited to specific documents, does not create a genuine dispute of material fact.

As for the missing proof of payment, Mr. Kubota continued his refusal to investigate. When asked why he did not credit certain evidence of payment, Mr. Kubota explained that he was "unclear" whether "DAY PD" referred to "days to pay" or "the date of payment." Kubota Tr. 91:7–92:25, ECF No. 154-3 at 105. Instead of asking for clarification from the Navy or analyzing the data based on the two definitions he debated, Mr. Kubota decided to completely disregard the evidence. Again, this type of speculative testimony is insufficient to raise a genuine issue of material fact.

Next, the Court analyzes whether the Navy adequately documented its response action and the costs incurred. Here, the United States submitted the Navy's itemized cost summary, which lists the names of the contractors, contract numbers, descriptions of the work performed, total amount billed, and total amount claimed. *See* ECF No. 154-3 at 6–7. Further, the tables following the cost summary list all of the contractor invoice numbers, dates of the invoice, invoiced amounts, dates paid, and amounts claimed. *Id*. at 8–23. Numerous courts have taken the same approach to assessing the adequacy of CERCLA cost documentation. *See, e.g., Cal. Dep't of Toxic Services v. Neville Chem. Co.*, 213 F.

23cv0541-LL-VET

Supp. 2d 1134, 1140–41 (C.D. Cal. 2002) (contractor invoices sufficient to document contract costs); *Hardage*, 982 F.2d at 1443 (10th Cir. 1992) (summaries of cost data sufficient); *United States v. Chromalloy American Corporation*, 158 F.3d 345, 352 (5th Cir.1998) (detailed cost summaries supporting its oversight expenses); *United States v. Chrysler Corp.*, 168 F. Supp. 2d 754, 769, 774 (N.D. Ohio 2001) (contractor vouchers/invoices, invoice approval forms, and Treasury schedules).

Moreover, the Navy's costs have been independently verified by the United States' expert Mr. Wiley Wright, a Certified Public Accountant who ensured that each claimed cost was incurred, paid, and properly documented. ECF No. 154-4, Exhibit A. Thus, this Court finds that the evidence presented by the United States is sufficient to provide an accurate accounting of the Navy's response costs.

## 2. DOJ Costs

The United States seeks $1,186,089.73 as direct and indirect costs that the DOJ incurred through October 31, 2024. Mot. at 6–7. This is the difference between $1,219,927.76 (the total DOJ enforcement costs) and $33,838.04 (the amount that the City's expert, Mr. Kubota, challenges). *Id*. at 6. Again, the City completely fails to argue that the United States is not entitled to this amount. *See generally* Opp'n.

In CERCLA actions, the United States is entitled to all response costs, including enforcement costs like attorney fees and litigation expenses incurred by the EPA and the DOJ. *See* 42 U.S.C. § 9601(25); *United States v. Chapman*, 146 F.3d 1166, 1175 (9th Cir. 1998) (costs including legal work are recoverable); *Neville*, 213 F. Supp. 2d at 1137 (litigation and indirect costs recoverable).

Here, the United States submitted its expert witness William Kime's declaration which summarized the DOJ cost documentation for this case, including direct costs incurred (*e.g.*, employee payroll, travel, expert witness fees, deposition transcripts), other litigation support expenses, and indirect costs. ECF No. 154-5 at 2–4, ¶¶ 9–20; at 9. His declaration also included as exhibits DOJ employees' time entries from November 4, 2022 to October 31, 2024; FY 2023 Year-end Closeout Accounting Memorandum (which

8

included EPA Billing Summary, Superfund Case Cost Summary, Superfund Cases Time by Attorney/Paralegal, and Superfund Direct Costs for fiscal year 2023); and an audit of the Superfund Activities in Environment Natural Resource Division for fiscal years 2021 and 2022. ECF No. 154-5 at 10–137. Accordingly, this Court finds that the evidence presented by the United States is sufficient to provide an accurate accounting of the DOJ's response costs. *See Chapman*, 146 F.3d at 1171–72 (timesheets, cost estimates, and accountant and attorney declarations were sufficient to show documentation consistent with NCP).

### 3. Prejudgment Interests

The United States also seeks prejudgment interest on Navy's costs. Mot. at 7. The City, again, does not dispute this. *See generally* Opp'n. CERCLA provides that "amounts recoverable in an action under this section shall include interest," and that "[s]uch interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned." 42 U.S.C. § 9607(a). Here, the United States claims that it sent its written demand for payment on December 27, 2016 and therefore the prejudgment interest must start from then. Mot. at 7. However, the statute allows interest to accrue from the *later* of (1) the date of the written demand *or* (2) the date of the expenditure. Since the Navy conducted the remedial action between late 2017 and 2019 (Pl.'s Amended Compl. ¶ 48, ECF No. 25), the interest will accrue from 2019, not 2016.

### C. **The Navy's Response Cost Was Not Inconsistent with the NCP**

As discussed earlier, when the United States is seeking response costs, consistency with the NCP is presumed. *Washington State*, 59 F.3d at 799–800. To prove that the Navy's response cost was inconsistent with the NCP, the City must establish that the Navy acted arbitrarily and capriciously in choosing a particular response action to respond to a hazardous waste site. *See* 42 U.S.C. § 9613(j)(2); *Washington State*, 59 F.3d at 802. The arbitrary and capricious standard is "highly deferential," and the Court "may not substitute its judgment for that of the agency." *Fireman's Fund Ins. Co. v. City of Lodi, California*,

23cv0541-LL-VET

302 F.3d 928, 949 (9th Cir. 2002).

The City does not claim that the Navy acted arbitrarily and capriciously. *See generally* Opp'n. Thus, the Court finds that the City did not meet its burden of proving inconsistency with the NCP by failing to make *any* argument that the Navy's selection of the response action was arbitrary and capricious, or otherwise not in accordance with law. Therefore, the City failed to set forth a genuine dispute of material fact as to whether the Navy's action was inconsistent with the NCP, and thus, this Court **GRANTS** the United States' Motion. Accordingly, the United States is entitled to $17,131,016.38 in response costs.[2]

### D. City's Argument

Instead of responding to the United States' arguments, the City argues that the United States cannot bring a CERCLA § 107 claim and that it can only seek to recover its costs under CERCLA § 113 because the United States is a "potentially responsible party" ("PRP"). Opp'n. at 4. The Court does not find these arguments relevant to the United States' Motion and declines to address them fully.

In short, CERCLA allows a party to bring a contribution claim under § 113 in two circumstances: "during or following" being sued in a § 107 cost recovery action, and after the party "has resolved its liability to the United States or a State . . . in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(1), (3)(B); *see also Whittaker Corp. v. United States*, 825 F.3d 1002, 1008 (9th Cir. 2016) ("[Section] 113(f) generally allows a polluter to bring a contribution claim against other polluters if the polluter has been sued in a § 107 cost recovery action or settled with the government."). The Court agrees with the United States that "because the United States meets neither of the statutory requirements to bring a § 113 contribution claim, it cannot bring such a claim." Reply at 4.

/ / /

---

[2] The City's concern about "double recovery" (Opp'n. at 9) will be addressed in the future when the Court calculates how much of those costs the City will actually be liable for.

23cv0541-LL-VET

## IV.    CONCLUSION

The United States has presented evidence documenting the costs it incurred in responding to the release of hazardous substances. The City failed to raise any genuine dispute of material fact regarding whether the Navy's response cost was inconsistent with the NCP. Therefore, the United States' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated:  March 24, 2026

_____

Honorable Linda Lopez
United States District Judge

23cv0541-LL-VET