BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ALASTAIR M. GESMUNDO (CABN 316573)
SAMUEL F. HOBBS (AL Bar No. 9776O19E)
Commercial Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington, DC 20044
Phone: (202) 598-0743

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
STEFAN J. BACHMAN (SC Bar No. 102182)
BRIAN SCHAAP (DC Bar No. 1780655)
Environmental Enforcement Section
MICHAEL AUGUSTINI (DC Bar No. 452526)
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 616-6536

*Attorneys for Plaintiff and Counterclaim Defendant United States of America*

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:23-cv-00541-LL-VET |
| Plaintiff, | **UNITED STATES' RESPONSE TO CITY'S MOTION FOR CERTIFICATION FOR IMMEDIATE APPEAL** |
| v. | |
| CITY OF SAN DIEGO, et. al. | |
| Defendants. | |

i

**INTRODUCTION**

Though the United States would benefit from a final judgment ordering the City to accept transfer of the Boat Channel parcels, neither of the City's requests meets the demanding standard for an immediate appeal.

First, the City requests entry of a partial judgment under Federal Rule of Civil Procedure 54(b) on the Navy's claim for breach of contract, on which the court ruled the Navy is entitled to summary judgment, ECF 224. A Rule 54(b) certification is inappropriate because there is substantial overlap between the Navy's contract claim and the other claims in this litigation. The City fails to identify a compelling reason to depart from the final judgment rule and hazard a piecemeal appeal of the same facts and issues. Contrary to the City's suggestion, an immediate appeal would not eliminate the need for further proceedings. An appellate decision on the contract claim would not resolve the remaining issue before this court: the allocation of costs under CERCLA. Nor would an immediate appeal be decided in time to forestall a bench trial, with the final pretrial conference currently set for July 14, 2026. *See Blair v. Shanahan*, 38 F.3d 1514, 1522 (9th Cir. 1994) (holding the district court reasonably withheld a Rule 54(b) certification where "a short bench trial was to begin in only four months, and the entire case could be reviewed after trial").

Second, the City asks the court to certify the order limiting review to the administrative record for interlocutory appeal under 28 U.S.C. § 1292(b). This request fails because an immediate appeal of this order, ECF 220, would not materially advance the end of the litigation. The actual dispute this order decided concerned the scope of review of the Navy's contract claim, which has been fully adjudicated. It does not materially advance the end of litigation to revisit the scope of review for a resolved claim.

The court should thus deny the City's motion for failing to satisfy the requirements under Rule 54(b) and § 1292(b).

## BACKGROUND

A brief summary of the claims presented in this action is appropriate in order to assess the interrelationship among the claims.[1]

The United States asserted three claims: (1) a claim to recover the costs of its remediation of the Boat Channel under CERCLA, 42 U.S.C. § 9607(a); (2) a claim for a declaratory judgment under CERCLA, 42 U.S.C. § 9613(g) finding the City liable for any future response costs to remediate the Boat Channel; and (3) a breach of contract claim against the City for refusing to accept transfer of the Boat Channel parcels under the Memorandum of Agreement ("MOA"). ECF 25, ECF 73 at 13–21.

The City initially asserted five counterclaims: (1) a claim for contribution against the Navy for its share of the cost of the City's liability for the Boat Channel remediation under CERCLA, 42 U.S.C. § 9613(f); (2) a claim to recover the City's costs incurred to remediate the Boat Channel under CERCLA § 9607(a); (3) a breach of contract claim against the Navy for failing to remediate the Boat Channel pursuant to its obligations under the MOA;  (4) a claim for equitable indemnity against the Navy for causing the City's liability for the Boat Channel's contamination; and (5) a claim for a declaratory judgment of the Navy's liability for any future response costs under CERCLA § 9613(g)(2). *See* ECF 31 at 12–33.

The court dismissed the City's second counterclaim for cost recovery for failure to state a claim. ECF 89 at 4–9. The court dismissed the City's third and fourth counterclaims for breach of contract and equitable indemnification, respectively, for failure to identify a waiver of sovereign immunity. *Id.* at 9–13.

The City then filed amended counterclaims. ECF 96 at 16–48. The City re-alleged its CERCLA counterclaims for contribution and for a declaratory judgment,

---

[1] This summary omits claims by or against the San Deigo County Regional Airport Authority and the San Diego Unified Port District, because the parties settled those claims and cannot appeal them. *See* ECF 69.

*id.* at 38, 45, and added two new counterclaims: (1) a claim for recoupment to diminish or defeat the Navy's recovery of its remediation costs; and (2) a claim under the Administrative Procedure Act ("APA") alleging the remediation of the Boat Channel was arbitrary and capricious because it was contrary to requirements under CERCLA and the MOA. ECF 96 at 41–45.

The court dismissed the City's recoupment counterclaim for being precluded by CERCLA. ECF 180 at 3–5. The court also dismissed the City's APA counterclaim for being a disguised breach-of-contract claim impliedly forbidden by the Tucker Act, 28 U.S.C. § 1491. ECF 180 at 5–8.

On motions for summary judgment, the court held that the City is liable under CERCLA § 9607(a) for the Navy's recoverable response costs, but the court declined to find the City liable for future response costs until the United States establishes that the Navy's incurred response costs are recoverable. ECF 190. The court subsequently held that more than $17 million of the Navy's response costs are recoverable. ECF 223.[2] Finally, the court granted the United States' motion for summary judgment on its breach of contract claim. ECF 224.

The remaining issues for litigation are the allocation of the Navy's response costs between the City and the United States, the recoverability of a small subset of the Navy's response costs and DOJ's enforcement costs, and the City's claim for a declaratory judgment under CERCLA.

## ARGUMENT

### I. A Rule 54(b) Partial Judgment on the Navy's Contract Claim Would Be Inappropriate.

When appropriate, Rule 54(b) permits courts to enter a partial final judgment on a subset of claims or parties:

---

[2] As such, summary judgment on the United States' claim for declaratory judgment is now warranted. *See* ECF 190 at 9–10.

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). This exception to the final judgment rule, which generally requires parties to wait to appeal until the trial court has resolved all claims in a case, should be used sparingly. *Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) ("Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.")

The standard for entering a Rule 54(b) partial judgment is well-established. At step one, the "district court must first determine" that the proposed partial judgment would be a final judgment of a distinct claim; that is, "an ultimate disposition" of "a cognizable claim." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980). At step two, the court must "expressly determine[] that there is no just reason for delay." Fed. R. Civ. P. 54(b). In making this determination, the court "must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp.*, 446 U.S. at 8.

Consideration of juridical interests "is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals." *Id.* The key concern is whether a partial judgment will cause the appellate court to consider the same legal or factual issues in separate appeals. *Wood v. GCC Bend, LLC*, 422 F.3d 872, 882 (9th Cir. 2005) ("The guiding principle is that a similarity of legal or factual issues will weigh heavily against entry of judgment under Rule 54(b)") (citation omitted); *see also Curtiss-Wright Corp.*, 446 U.S. at 8 (finding it proper for the district court to examine the interrelationship among the claims to

4

determine whether the "appellate court would have to decide the same issues more than once"). The presence of overlapping facts or issues does not "necessarily mean that Rule 54(b) certification would be improper." *Curtiss-Wright Corp.*, 446 U.S. at 8 n.2. But it would "require the district court to find a sufficiently important reason for nonetheless granting certification." *Id.* Thus, "[b]efore entering a Rule 54(b) judgment, the district court should make a specific finding as to whether the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court." If there are similar legal or factual issues, "a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings." *Morrison-Knudson Co.,* 655 F.2d at 965 (citation omitted).

Consideration of the equities involved will vary widely depending on the case. For example, courts have properly considered the difference between the prejudgment and market interest rates, the size of the debts at issue, the potential delay in recovery, the possibility of a setoff under pending counterclaims, and the financial condition of the parties. *See Curtiss-Wright Corp.*, 446 U.S. at 11–12.

Here, the proposed partial judgment easily satisfies the first step in the analysis: the summary judgment ruling on the Navy's contract claim is the ultimate disposition of a distinct claim. *See* Wright & Miller, *Fed. Practice & Proc.* § 2656 (4th ed. 2024) ("[A] summary judgment that completely disposes of one of several claims will be final and appealable if a Rule 54(b) certificate is made."). The court's summary judgment order did not leave any issues remaining on the Navy's contract claim beyond executing the judgment. *See* ECF 224.

However, for the second step in the analysis, juridical and equitable interests do not support certifying a Rule 54(b) judgment. Starting with juridical interests, there is substantial overlap between the Navy's contract claim and the claims remaining with the district court that would create the risk of a piecemeal appeal of the same facts and legal issues.

Most glaringly, two claims that would remain with the district court are mirror images of the Navy's contract claim: the City's contract and APA claims.[3] The City's contract claim presents the exact same facts and issues as the Navy's contract claim—namely, the meaning of the MOA's requirement to take all necessary action to protect human health and the environment, whether the Navy fulfilled that obligation, and whether the Navy obtained site closure from the appropriate regulatory authorities. *See* ECF 31 at 21–29. These same facts and issues are also central to the City's APA claim, which asserted the Navy's remediation was arbitrary and capricious because it was "inconsistent with the obligations of the United States under the MOA." ECF 96 at 44. As such, the court properly found that the City's APA claim was merely a disguised breach-of-contract claim. ECF 180 at 6–8. Certifying the Navy's contract claim for immediate appeal under Rule 54(b) while leaving the City's contract and APA claims with the district court would cause a piecemeal appeal of the same key facts and issues. The City's proposed scope of the Rule 54(b) judgment precludes certification.

For this reason, if the court decides to issue a Rule 54(b) certification, the court may consider including all the contract-based claims in the judgment—that is, the Navy's contract claim, the City's contract claim, and the City's APA claim—in order to mitigate the risk of piecemeal appeals of the same issues. But including all contract-based claims in the judgment would not fully solve the problem.

There is significant factual overlap among all the claims in this matter. The

---

[3] The City's focus on the lack of overlap between the contract claim and the cost allocation issue is unduly cramped. *See* ECF 227 at 4 (The Navy's contract claim "presents unique issues that have no impact on the remaining claims in the case."). All claims and issues presented in the district court proceedings could be appealed once there is a final judgment. To guard against piecemeal appeals, the court must consider overlap between the claim proposed for certification and all the other claims in this matter that could be appealed. This includes, of course, dismissed claims, such as the City's contract and APA claims. *See Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 629 n.3 (9th Cir. 2015) (noting that dismissed claims should also be considered if they were not certified under Rule 54(b) for inclusion in the appeal).

Navy's contract claim, ECF 73, the Navy's CERCLA claims, ECF 25, the City's CERCLA claims, ECF 96, the City's contract and APA claims, ECFs 31 & 96, and the City's common law claims for equitable indemnification and recoupment, ECFs 31 & 96, all arise out of the same facts: the Navy's remediation of the Boat Channel. It would be inefficient to require the appellate court to familiarize itself with this complex and technical factual background twice.

The Navy's contract claim also shares a critical legal issue with the CERCLA cost recovery claim. The central dispute in the contract claim is whether the Navy fulfilled its obligation to take all necessary remedial action to protect human health and the environment in the Boat Channel parcels. *See, e.g.*, ECF 188. As the court held in its summary judgment decision, this requirement refers to the remedial standard under CERCLA. ECF 224 at 8–13, 18–19. To determine whether the Navy fulfilled this obligation, the court looks to whether the Navy complied with the National Contingency Plan ("NCP"), which is a set of standards and procedures the EPA promulgated "to implement CERCLA's goal of selecting a remedy that 'is protective of human health and the environment.'" ECF 224 at 19 (quoting 42 U.S.C. § 9605). Compliance with the NCP thus establishes performance of the MOA's remediation requirement. *See* ECF at 19–21.

Compliance with the NCP is likewise a key issue in the CERCLA cost recovery claim. For costs to be recoverable under CERCLA, the costs must be "not inconsistent with the [NCP]." 42 U.S.C. § 9607(a)(4)(A). Accordingly, when the court granted partial summary judgment on the Navy's cost recovery claim, the court specifically held that the "Navy's response cost was not inconsistent with the NCP." ECF 223 at 9. A Rule 54(b) certification would thus create the risk of presenting the same key issue—consistency with the NCP—on successive appeals.

Overlapping factual and legal issues "weigh[s] heavily against" entering a Rule 54(b) judgment. *Morrison-Knudssen Co.*, 655 F.2d at 965. To overcome this weight, the moving party must show that a Rule 54(b) certification is "necessary to

avoid a harsh and unjust result." *Id*.; *see also Curtiss-Wright Corp.*, 446 U.S. at 8 n.2 (noting that if overlapping issues are present, the district court must "find a sufficiently important reason for nonetheless granting certification").

Turning to the equities, an immediate appeal of the contract claim is not necessary to avoid a harsh and unjust result. The City has not identified any harsh or unjust injury it would suffer; nor could it as the Navy will continue to hold the Boat Channel parcels until there is a final and unappealable judgment. And while there is a cost to the Navy to hold the Boat Channel parcels, the Navy has not asserted that cost is sufficiently harsh or unjust to justify departure from the standard procedure of waiting for a final judgment to appeal. There is no risk of insolvency here. Nor will there be a lengthy delay. The court has set a brisk schedule for the remaining proceedings, with the final pretrial conference set for July 14, 2026. *See* ECF 228. This court would almost certainly conclude the bench trial before the Ninth Circuit would decide the Rule 54(b) appeal. *See Blair*, 38 F.3d at 1522 (holding it was reasonable to withhold a Rule 54(b) certification where "a short bench trial was to begin in only four months, and the entire case could be reviewed after trial"). There is little reason for an immediate appeal.

The City tells the court that a Ninth Circuit decision on the contract claim is "likely to result in the ultimate termination of this matter without the need" for a bench trial on cost allocation.[4] ECF 227 on 5. The City makes no attempt to explain the basis for this assertion, and there is none. Aside from the fact that it is highly unlikely the Ninth Circuit would decide the Rule 54(b) appeal before the bench trial, a decision on the contract claim would not eliminate the need to allocate costs. Even if the Ninth Circuit reverses this court's reasoned decision and finds the Navy should

---

[4] It is hard to reconcile the City's statements. The City says that an appellate decision on the contract claim would eliminate the need for a bench trial on cost allocation, but the City also says that the contract claim "presents unique issues that have no impact on the remaining claims in this case." ECF 227 at 4.

have done more to remediate the Boat Channel pursuant to the contract, the court would still need to allocate the costs the Navy already incurred.

Because there is substantial overlap between the Navy's contract claim and the other claims in this matter, and because there is no compelling reason to expedite an appeal when a bench trial on the remaining issues is expected before an appeal could be decided, the court should not enter a Rule 54(b) judgment.

**II. The Order Limiting Review to the Administrative Record Does Not Qualify for Certification Under 28 U.S.C. § 1292(b).**

The court should also deny the City's request to certify an interlocutory appeal of the order limiting judicial review to the administrative record, ECF 220. To certify a non-final order for interlocutory appeal under 28 U.S.C. § 1292(b), the moving party must demonstrate that the order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981).

Here, an appeal of the order limiting review to the administrative record would not "materially advance" the end of the litigation. This order resolved whether the administrative record limit applied to the Navy's contract claim. *See* ECF 220. An interlocutory appeal on the scope of review for the contract claim could not possibly advance the end of the litigation because the contract claim has already been fully adjudicated. *See* ECF 224 (granting the United States' motion for summary judgment on the contract claim). Simply put, it does not advance the litigation to revisit the scope of review for an already resolved claim.

The City's argument to the contrary is a non sequitur. The City asserts that an interlocutory appeal of the order limiting review to the administrative record would somehow "render[] unnecessary" a bench trial on cost allocation and "likely result in the termination of this litigation" by "resolv[ing] one of the most hotly contested

9

issues in the case." ECF 227 at 10. The City does not explain—nor could it—how an interlocutory appeal on the scope of review for the contract claim would eliminate the need for a trial on the allocation of costs in the CERCLA claims. The City merely includes a string cite to cases that are nothing like this one. *Id.*[5] At any rate, the Ninth Circuit almost certainly would not decide the appeal in time to advance the litigation.

Accordingly, the order limiting the scope of review of the contract claim does not meet the requirements for certification under § 1292(b).[6]

## CONCLUSION

For the reasons stated above, the court should deny the City's motion for a Rule 54(b) judgment and for a § 1292(b) certification.

---

[5] Unlike here, the interlocutory appeals in those cases related to unresolved claims. In *Sterling v. Feek*, 150 F.4th 1235, 1244 (9th Cir. 2025), the claim was unresolved because the district court "denied Defendants' motion for summary judgment." In *Dilanyan v. Hugo Boss Fasions, Inc.*, 2025 WL 3549868, at *4 (C.D. Cal. Dec. 3, 2025), the claim was unresolved because the district court denied the motion to dismiss. In *Elorreaga v. Rockwell Automation, Inc.*, 2023 WL 4116623, at *1 (N.D. Cal. June 16, 2023), the claim was unresolved because the district court "denied Defendants' motions for summary judgment." In *Biederman v. FCA US LLC*, 2025 WL 1266907, at *3 (N.D. Cal. May 1, 2025), the court found an interlocutory appeal would "drastically reshape subsequent proceedings," including whether to certify a national or statewide class.

[6] The City's failure to establish the third requirement is the most clear-cut, but the United States also disputes the first two requirements under § 1292(b). First, the court's order limiting the scope of review of the contract claim is not a "controlling" question of law, because the court did not rely on this ruling in its summary judgment decision. Rather than apply the arbitrary and capricious standard applicable to review of administrative records, the court applied the standard of review under Rule 56. *See* ECF 224 at 6–7. Thus, the only practical effect of the court's order limiting review of the contract claim was to exclude two of the City's expert reports, and the exclusion of these reports was not controlling. *See In re Cement Antitrust Litig.*, 673 F.2d at 1026 (holding that a "controlling" issue could "materially affect the outcome of litigation in the district court").

Second, the United States maintains that there is not substantial ground disagreement on this issue. The United States has repeatedly explained, relying on clear and ample authority, why both CERCLA and the APA limit the scope of review for the contract claim. *See* ECF 125 at 13–22, ECF 156, ECF 199 at 10–18, and ECF 210 at 2–4. The City's motion says nothing new in response. There is especially little ground for disagreement regarding whether the APA limits review to the administrative record. Despite several rounds of briefing, the City has never addressed the cases holding that the APA limits review of any final agency action to the administrative record even if brought under another cause of action. *See* ECF 156 at 8–10.

10

Respectfully submitted,

Dated: April 30, 2026          /s/ *Samuel Hobbs*
                               BRETT A. SHUMATE
                               Assistant Attorney General
                               Civil Division

                               KIRK MANHARDT
                               MARCUS SACKS
                               ALASTAIR M. GESMUNDO (CABN 316573)
                               SAMUEL F. HOBBS (AL Bar No. 9776O19E)
                               Commercial Litigation Branch
                               Corporate Financial Litigation Section
                               P.O. Box 875, Ben Franklin Station
                               Washington, DC 20044
                               Phone: (202) 598-0743
                               Email: samuel.hobbs@usdoj.gov

                               ADAM R.F. GUSTAFSON
                               Principal Deputy Assistant Attorney General
                               Environment and Natural Resources Division

                               STEFAN J. BACHMAN (SC Bar No. 102182)
                               BRIAN SCHAAP (DC Bar No. 1780655)
                               Environmental Enforcement Section
                               MICHAEL AUGUSTINI (DC Bar No. 452526)
                               Environmental Defense Section
                               P.O. Box 7611
                               Washington, DC 20044
                               Phone: (202) 616-6536

                               *Attorneys for Plaintiff and Counterclaim-*
                               *Defendant United States of America*

11