Barry P. Steinberg (admitted *Pro Hac Vice*)
barry.steinberg@kutakrock.com
**KUTAK ROCK LLP**
1133 Connecticut Avenue, NW
Suite 1200
Washington, DC 20036
Telephone: (202) 828-2400
Facsimile: (202) 828-2488

Dwyer Arce (admitted *Pro Hac Vice*)
dwyer.arce@kutakrock.com
**KUTAK ROCK LLP**
1650 Farnam Street
The Omaha Building
Omaha, NE 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148

Thomas F. Vandenburg (SBN 163446)
tvandenburg@wshblaw.com
Alice Charkhchyan (SBN 332670)
acharkhchyan@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
505 North Brand Boulevard, Suite 1100
Glendale, CA 91203
Telephone: (818) 551-6000
Facsimile: (818) 551-6050

Attorneys for Defendant/Cross Defendant/
Counter Claimant/Cross Claimant
City of San Diego

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>Defendant.<br><br>*AND RELATED CROSS CLAIMS AND COUNTER CLAIMS* | Case No. 3:23-CV-00541-LL-VET<br><br>**CITY OF SAN DIEGO'S BRIEF REGARDING THE SCOPE OF CERCLA § 113(j) EVIDENCE EXCLUSION AND ADMISSIBILITY OF EVIDENCE FOR EQUITABLE ALLOCATION**<br><br>The Hon. Linda Lopez<br><br>Trial Date: November 18, 2026 |

## I. INTRODUCTION

The City of San Diego (the "City") respectfully submits this brief to address the limited scope of CERCLA § 113(j)'s evidence exclusion. The City submits that § 113(j)'s administrative record restriction does not preclude consideration of equitable factors in determining the City's share of costs as a potentially responsible party ("PRP"). Specifically, testimony by Dr. J. Michael Trapp is admissible for the limited purpose of addressing the City's potential liability for future environmental costs arising from the Court's specific performance order requiring the City to accept conveyance of the Boat Channel parcels.

Section 113(j) limits the administrative record restriction to "any issues concerning the adequacy of any response action." 42 U.S.C. § 9613(j)(1). As the United States of America ("United States") has acknowledged, the remaining issue for trial is equitable apportionment of costs between the two remaining PRPs, not the adequacy of the response. This is a fundamentally different inquiry not subject to this evidentiary limitation. The Court's equitable discretion in making that allocation should not be constrained by evidentiary limitations designed to protect administrative remediation decisions.

## II. STATEMENT OF RELEVANT PROCEEDINGS

On August 28, 2025, this Court granted in part the United States' motion for partial summary judgment, establishing the City's prima facie liability under CERCLA § 107(a) for cost recovery. (ECF No. 190).

On March 13, 2026, the Court granted the United States' motion to limit judicial review to the administrative record pursuant to 42 U.S.C. § 9613(j). (ECF No. 220 at 4). In so ruling, the Court excluded the testimony of Dr. J. Michael Trapp and Mr. Johnson as "*post-decisional material outside the administrative record.*" (*Id.*).

On March 19, 2026, the Court denied the City's motion to supplement the administrative record. (ECF No. 222).

On March 24, 2026, the Court granted the United States' motion for partial summary judgment on recovery of response costs in the approximate amount of $17 million. (ECF No. 223).

In March 2026, the Court granted summary judgment for specific performance, requiring the City to accept ownership of the Boat Channel parcels. (ECF No. 224).

On April 10, 2026, the City filed a motion for certification of an interlocutory appeal on the § 9613(j) issue. (ECF No. 227).

The United States has acknowledged in its pretrial contentions (ECF No. 238) that the remaining issues for trial include: (1) the City's liability for additional response costs not covered by summary judgment; and (2) determining the City's equitable allocation of CERCLA response costs under § 113(f)(1). The United States further acknowledges that "[r]esolving the City's counterclaim therefore requires an equitable apportionment of costs among the two remaining potentially responsible parties." (ECF No. 238).

## III. ARGUMENT

### a. Section 113(j) Is Limited to Issues Concerning the "Adequacy of Any Response Action"

The plain language of 42 U.S.C. § 9613(j)(1) is unambiguous in its scope:

> In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record.

42 U.S.C. § 9613(j)(1). The statute limits judicial review to the administrative record *only* with respect to the "adequacy of any response action”—not all issues in

CERCLA litigation. The equitable allocation of costs under § 113(f)(1) is separate and distinct from whether the response action was adequate.

Courts have consistently recognized this distinction. In *Atlantic Richfield Co. v. Christian*, 590 U.S. 1 (2020), the Supreme Court acknowledged the limited scope of § 9613's jurisdictional provisions. *See also Defs. of Wildlife v. Salazar*, 877 F. Supp. 2d 1271, 1298 n.33 (M.D. Fla. 2012) (claims not arising from the adequacy of a response action are not confined to the administrative record); *Am. Sav. v. Bell*, 562 F. Supp. 4, 8 (D.D.C. 1981) (courts not limited to agency record in breach of contract action).

Equitably allocating costs among PRPs does not implicate the adequacy of the Navy's remediation. The administrative record restriction was designed to ensure courts do not second-guess agency remediation decisions—it was never intended to restrict evidence relevant to how costs should be divided among responsible parties.

**b. The Court's Ruling on the Government's § 107 Cost Recovery Motion Does Not Preclude Consideration of Equitable Factors**

The Court's summary judgment orders established the City's prima facie joint and several liability under CERCLA § 107(a) but did *not* resolve allocation of costs among PRPs. This distinction between liability and allocation is fundamental to CERCLA's statutory scheme.

Section 113(f)(1) provides that "[*i*]*n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate*." 42 U.S.C. § 9613(f)(1). This broad grant of discretion vests the Court with the authority to consider a wide range of evidence bearing on fairness.

The Ninth Circuit has identified several equitable factors to guide this analysis. In *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000), the court

endorsed the "Gore factors": (1) the ability to distinguish contribution to a discharge or release; (2) the amount of hazardous waste involved; (3) the degree of toxicity; (4) the degree of involvement in generation, transportation, treatment, storage, or disposal; (5) the degree of care exercised; and (6) the degree of cooperation with officials to prevent harm to public health or the environment.

In *ASARCO LLC v. Atl. Richfield Co.*, 975 F.3d 859, 869-70 (9th Cir. 2020), the Ninth Circuit reaffirmed a district court's broad discretion in weighing these factors and recognized additional *Torres* factors: (1) the extent to which cleanup costs are attributable to a party's waste; (2) culpability; (3) the degree to which the party benefited from disposal; and (4) ability to pay. *See also TDY Holdings, LLC v. United States*, 372 F. Supp. 3d 1091, 1095 (S.D. Cal. 2019), *aff'd*, 825 F. App'x 525 (9th Cir. 2020); *Litgo N.J. Inc. v. Comm'r Dep't of Env'tl Prot.*, 725 F.3d 369, 387 (3d Cir. 2013) ("tremendous discretion" in equitable allocation); *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 690 (7th Cir. 2014) (same).

This broad equitable discretion necessarily entails authority to receive evidence relevant to a proposed allocation's fairness. Joint and several liability under § 107(a) is merely the first step; allocation under § 113(f)(1) is a distinct second step requiring additional evidence. *See United States v. Burlington Northern & Santa Fe Railway Co.*, 520 F.3d 918, 940-41 (9th Cir. 2008). The Supreme Court confirmed that a § 113(f) counterclaim requires equitable apportionment among liable parties. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 140 (2007). The City's evidence of potential future liability therefore goes to this second step.

**c. Evidence of Future Environmental Liability From the Forced Conveyance of the Boat Channel Is Relevant to Equitable Allocation**

This Court has ordered specific performance requiring the City to accept ownership of the Boat Channel parcels. (ECF No. 224). Simultaneously, the United



KUTAK ROCK LLP
ATTORNEYS AT LAW
WASHINGTON DC

States seeks a declaratory judgment under 42 U.S.C. § 9613(g)(2) insulating itself from future response costs. (*See* ECF No. 238 at 4 ("The final judgment also should include a declaratory judgment of CERCLA liability against the City for the United States' future response costs relating to the Boat Channel, as provided in 42 U.S.C. § 9613(g)(2).")); (*id.* at 15 ("That judgment would declare the City liable for any future costs incurred by the United States . . . so long as those costs are properly documented and not inconsistent with the NCP.")). The inescapable consequence is that the City will inherit the Boat Channel's future environmental liability.

That conclusion is not speculative. If the United States asks the Court to insulate it from future liability, the City's potential future exposure necessarily becomes relevant to allocation. The United States cannot simultaneously invoke the significance of future environmental costs to obtain a protective declaratory judgment while maintaining that those same costs are irrelevant to equitable allocation. The City does not ask the Court to revisit the Navy's remedy selection; it asks the Court to account for the future burden that may follow from the compelled conveyance.

Nor is the City's concern speculative. It is grounded in concrete record facts. The Navy's remediation addressed only seven submerged-sediment polygons and did not extend to slopes, shorelines, riprap, outfalls, or shallow/eelgrass areas. Those seven polygons covered approximately 9.1 acres, with a single sample representing each polygon—roughly one to three acres per sample. Post-dredge confirmation sampling likewise consisted of one sample per polygon, taken at the same coordinates as the 1998 Remedial Investigation ("1998 RI") samples, and no confirmation sample was collected where the target dredging depth was not met. The remediation relied on 1998 RI data even though dredging occurred approximately 20 years later, during which tidal flushing, stormwater runoff, wind-driven mixing, shoreline erosion, and other processes could introduce, move, deposit, or remobilize contaminants. These

facts provide a concrete basis to anticipate potential future investigation and response costs. Such a determination does not require finding the Navy's remedy selection inadequate.

This future liability is directly relevant to several of the Gore and Torres equitable factors:

1. *The degree of care exercised*: The remediation's limited scope and record-supported data gaps bear on relative care exercised and the burden the City will assume. The City offers these facts not to obtain a ruling that the Navy's remedy was inadequate, but to show why its prospective exposure is a valid equitable consideration.
2. *Financial benefits from remediation*: The United States benefits financially by transferring the Boat Channel and its environmental liabilities to the City while seeking insulation from future costs.
3. *Cooperation with officials*: Cooperation must be assessed in light of the government's effort to divest environmental responsibility through forced conveyance while seeking judicial protection from the costs it transfers.

Fundamental fairness requires that if the Court compels the City to accept ownership of a contaminated site, it must consider the financial consequences when allocating response costs. The City is not asking the Court to decide now whether additional remediation will ultimately be required; it asks only that the Court recognize that the possibility is supported by the limited remedial footprint, stale baseline data, narrow confirmation sampling, and known pathways for additional or remobilized contamination. To hold otherwise would allow the United States to use CERCLA's machinery to allocate both present costs and future liability to the City while depriving the City of evidence to demonstrate the inequity of that allocation.

**d. Dr. Trapp's Testimony Is Admissible for the Limited Purpose of Equitable Allocation**

The City acknowledges that the Court's March 13, 2026 order excluded Dr. Trapp's opinions as post-decisional material outside the administrative record for purposes of reviewing the adequacy of the remediation and the Navy's remedy selection. (ECF No. 220). The City does not seek to relitigate that ruling. But it addressed remedy-selection review; it did not resolve whether the Court may consider evidence of the City's potential future liability in the separate § 113(f)(1) equitable allocation analysis.

Dr. Trapp is eminently qualified to address the future environmental costs the City will face as the new Boat Channel owner. He serves as National Water Resources Market Lead for AtkinsRéalis and holds a Ph.D. in marine and atmospheric chemistry from the Rosenstiel School of Marine and Atmospheric Science, University of Miami, a Master of Science in chemistry from the University of Miami, and a bachelor's degree in biology and chemistry from Florida Southern College. (ECF No. 239).

The exclusion of the Trapp deposition for purposes of challenging the Navy's remedy selection does not preclude considering the City's potential future liability exposure in the separate § 113(f)(1) allocation analysis. The City's proffered use of Dr. Trapp's testimony is forward-looking and allocation-specific: it addresses potential environmental costs that may follow from the specific performance order. It does not ask the Court to find the Navy's remedy arbitrary and capricious, inconsistent with the NCP, or inadequate. Rather, the City seeks to have the Court recognize the sharp distinction between:

(a) Challenging the adequacy of the Navy's past remediation or remedy-selection decision (confined to the administrative record under § 113(j)); and

(b) Evaluating the City's potential future liability exposure as the Boat Channel owner—including the financial burden of investigating or responding to conditions that may remain or develop (relevant to equitable allocation under § 113(f)(1)).

The inadmissibility of evidence offered to challenge remedial obligations should not be confused with the relevance of evidence offered to allocate costs after liability is established. In *Burlington Northern*, 520 F.3d at 940-41, the Ninth Circuit held that fairness among PRPs is the proper subject of the contribution phase, not the liability phase. The same distinction applies here: evidence excluded from remedy-selection review may remain relevant to § 113(f)(1) equitable allocation. As this Court recognized in *TDY Holdings*, equitable allocation requires considering the full picture of each party's responsibilities and burdens. *See* 372 F. Supp. 3d at 1095.

Dr. Trapp's testimony regarding costs the City may face as the new Boat Channel owner—including ongoing monitoring, potential future remediation, and environmental management obligations—is directly relevant to the Torres "ability to pay" factor and the *Gore* "degree of care" factor. The evidence is not speculative merely because precise costs cannot yet be calculated; courts have recognized that § 113(f)(1) allocations may account for uncertain future response costs. *See Asarco LLC v. Atl. Richfield Co.*, 353 F. Supp. 3d 916, 952-53 (D. Mont. 2018). This testimony informs the Court of the financial reality the City faces as a consequence of its own specific performance order.

The Ninth Circuit's recognition of broad equitable discretion in *ASARCO* and *Boeing* supports the admission of such evidence. *See Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 299 F.3d 1019 (9th Cir. 2002) (equitable factors grant

"wide discretion"); *United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 571-72 (6th Cir. 1991) (courts have flexibility in determining equitable shares). Excluding this evidence would deprive the Court of information necessary to achieve an equitable allocation.

## IV. CONCLUSION

For the foregoing reasons, the City respectfully requests that this Court recognize the distinction between § 113(j)'s administrative record restriction—which applies only to issues concerning the adequacy of response actions—and the broad equitable discretion vested in this Court under § 113(f)(1) for allocating response costs among PRPs.

The Court should permit testimony by Dr. J. Michael Trapp, and other properly offered evidence, for the limited purpose of addressing the potential future environmental costs the City may face as a result of this Court's specific performance order. The City does not offer that evidence to challenge the Navy's remedy selection; it offers the evidence to inform the Court's § 113(f)(1) equitable allocation.

The City further requests that the Court confirm that its prior § 107(a) summary judgment rulings do not foreclose the broad equitable inquiry mandated by § 113(f)(1), and that the Court may consider the full range of Gore and Torres factors—including the City's future-liability exposure arising from the limited remedial footprint, stale baseline data, narrow confirmation sampling, and potential contaminant movement—in determining the City's equitable share of response costs.

DATED: August 24, 2026

Respectfully submitted,

KUTAK ROCK LLP

By: *s/ Barry P. Steinberg*
Barry P. Steinberg
barry.steinberg@kutakrock.com

Attorney for Defendant/Cross Defendant / Counter Claimant/Cross Claimant
City of San Diego