ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
STEFAN J. BACHMAN (SC Bar No. 102182)
BRIAN SCHAAP (MI Bar No. P89334)
Environmental Enforcement Section
MICHAEL C. AUGUSTINI (DC Bar No. 452526)
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 616-6536

*Attorneys for Plaintiff and Counterclaim Defendant United States of America*

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CITY OF SAN DIEGO, et al.

Defendants.

*AND RELATED CROSS AND COUNTER CLAIMS*

Case No. 3:23-cv-00541-LL-VET

**PLAINTIFF UNITED STATES OF AMERICA'S RESPONSE TO CITY OF SAN DIEGO'S SUPPLEMENTAL BRIEF REGARDING DR. TRAPP**

Hearing Date: Oct. 15, 2026, 11:00 a.m., Courtroom 14B and Zoom
Trial Date: November 18, 2026

Hon. Linda Lopez

## I. INTRODUCTION

The City's supplemental brief (Dkt. 247) provides no basis to admit Dr. Trapp's testimony at the CERCLA allocation trial. Dr. Trapp proposes to offer the same critiques of the Navy's investigation and cleanup of the Boat Channel that the Court excluded in March 2026. *See* Dkt. 220 at 2-4 (order granting the United States' motion in limine); Dkt. 240 (U.S. objection to the City's pretrial disclosures). Recasting those excluded opinions as an appeal to "fairness" does not make them admissible under CERCLA or the Court's rulings; allowing them would improperly undermine the Court's liability determination and circumvent CERCLA's limits on challenges to response actions. *See* 42 U.S.C. § 9613(j).

The City's "forced conveyance" theory fares no better. *See* Dkt. 247 at 1, 4-7. The City voluntarily entered the contract with the Navy to take title to the Boat Channel parcels, *see* Dkt. 224, and assumed any attendant obligations, including potential owner liability. *See* 42 U.S.C. § 9607(a)(1). The Court has already rejected the City's attempt to manufacture a triable issue based on speculative future liability. *See* Dkt. 224 at 13-17. Invoking the Court's general equitable authority does not open the door to relitigating these legal rulings. But that is exactly what the City is trying to do by contending that the contractual remedy the Court ordered can be deemed "unfair." To the extent Dr. Trapp believes that the City may face future response-action obligations, that opinion is inadmissible speculation: the City identifies no specific response action, timeframe, or cost estimate. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993).

Nor does the City show how Dr. Trapp's opinions bear on allocating the United States' past response costs already adjudicated in its favor. The roughly $17 million at issue were incurred while the United States owned the Boat Channel, and the City's liability rests on its stormwater discharges – not future ownership. A declaratory judgment is forward-looking, but it rests on that same established liability for past costs. *See* 42 U.S.C. § 9613(g)(2); Dkt. 190 at 9-10. Dr. Trapp's

excluded critiques therefore remain irrelevant and inadmissible at allocation.

## II. DR. TRAPP'S OPINIONS ARE NOT ADMISSIBLE.

### A. The Court Correctly Excluded Dr. Trapp's Opinions.

Dr. Trapp's Rule 26 reports contained three opinions: (1) the Navy conducted an inadequate site characterization of the Boat Channel; (2) the Navy's remediation of the Boat Channel did not meet current regulatory standards or address all possible environmental risks; and (3) the Navy did not properly remediate the Boat Channel sediments. *See* Dkt. 156-2 (Trapp report's table of contents). According to the description in the City's pretrial filings, Dr. Trapp intends to offer *the same* opinions. *See* Dkt. 239 at 29 (stating that Dr. Trapp is expected to provide expert testimony about how the U.S. Navy allegedly "conducted an inadequate site characterization, the U.S. Navy's remediation did not meet current regulatory sediment framework, and that the U.S. Navy's dredge operations did not properly remediate the areas identified as impacted in the Remedial Action Plan."). Indeed, the City's supplemental brief confirmed that Dr. Trapp's proposed testimony is grounded on alleged deficiencies in the Navy's remedial work that the Court previously declined to consider when determining the City's liability. *See* Dkt. 247 at 4-6.

In March 2025, the United States filed a motion in limine to exclude Dr. Trapp's opinions at trial. The motion explained that Dr. Trapp's views are inadmissible because CERCLA requires that judicial review of the Navy's response actions relating to the Boat Channel be limited to the administrative record for the response action. *See* Dkt. 156; *see also* 42 U.S.C. § 9613(j). The City opposed the motion in limine, arguing, among other things, that the United States' breach-of-contract claim should be analyzed separately from its CERCLA claim and that Dr. Trapp's critiques were relevant to the contract claim. *See* Dkt. 167 at 2. At no point did the City assert that Dr. Trapp's opinions were relevant to the equitable allocation of the United States' CERCLA costs.

On March 13, 2026, the Court granted the United States' motion and excluded Dr. Trapp's opinions, holding that judicial review must be limited to the administrative record on the CERCLA and contract claims. Dkt. 220 at 3-5. The order specifically stated that "there can be no doubt" that the statutory limitation applies to the parties' CERCLA causes of action. *Id.* at 3:8-10. The equitable allocation of the United States' response costs is an integral part of the CERCLA causes of action and no exception was sought by the City or granted by the Court to allow Dr. Trapp to provide the same testimony on that issue.[1]

In late March 2026, the Court granted partial summary judgment in favor of the United States on the Navy's claim for CERCLA costs, concluding that the City raised no triable issue regarding the accuracy of the Navy's cost accounting or its compliance with CERCLA's National Contingency Plan. *See* Dkt. 223 at 8-11. As noted above, the Court also awarded summary judgment on the United States' breach of contract claim and determined that specific performance required the City to take ownership of the Boat Channel under the terms of its contract with the Navy. Dkt. 224 at 22 ("The MOA requires the City to accept the transfer of the Boat Channel Parcels after the Navy completes its remediation and obtained site closure."). The Court's two dispositive rulings squarely rejected the City's argument that the Navy did not adequately characterize the contamination in the Boat Channel sediment and remediate the areas in accordance with CERCLA that may have presented an environmental risk.

In its supplemental brief, the City says it does not want to relitigate the Court's rulings, but, in fact, it seeks to do just that. Its arguments are no less of a

---

[1] In addition to excluding Dr. Trapp's opinions, the Court issued several other decisions declining to consider the City's unfounded criticisms of the Navy's cleanup. *See*, *e.g.*, Dkt. 184 at 12-14 (Torres, J., denying the City's motion to compel additional sampling); Dkt. 219 (Lopez, J., affirming the denial of the City's motion to compel); Dkt. 222 (denying the City's motion to supplement the administrative record with excerpts from Dr. Trapp's Rule 26 report and other non-record items).

challenge to the adequacy of the Navy's response action because they are couched as equitable allocation factors. For example, the City (again) asserts that the Navy did not exercise an adequate "degree of care" in investigating and cleaning up the Boat Channel, Dkt. 247 at 6, 8, but that contention is contradicted by the administrative record and the Court's summary judgment rulings. *See*, *e.g.*, Dkt. 224 at 14 (concluding "the record shows that the Navy went above and beyond in its investigation."). The City likewise lacks any evidentiary basis to suggest that the Navy failed to "cooperate" with regulators. Dkt. 247 at 6. The San Diego Regional Water Quality Control Board reviewed and approved all the Navy's response actions and concurred in site closure. Dkt. 224 at 16-17, 21-22. And the City's "financial benefits" argument merely repackages its claim that the Navy should have done more before tendering title to the Boat Channel – an argument the Court rejected in finding the City liable for breach of contract in this case.[2]

In sum, the Court's orders remain the law of the case and the City has provided no legal basis to admit Dr. Trapp's proposed testimony. Given the applicable legal standards, Trapp's opinions regarding the Navy's investigation and cleanup will not inform the Court's equitable analysis but would only serve to distract from the task at hand and waste trial time.

### B. <u>The City Waived the Argument and Did Not Properly Disclose That Trapp Was Offering an Allocation Opinion</u>.

The Court should also reject Dr. Trapp's testimony on procedural grounds. When faced with the United States' motion in limine, the City did not assert that Dr. Trapp had any opinions bearing on equitable allocation. By failing to make

---

[2] The specter of possible future liability for PFAS has featured in all the City's arguments, but the costs of remediating PFAS are not at issue in this case. *See* Dkt. 224 at 13 (court order stating that "the designation of PFAS as a hazardous substance in July 2024 was too late to change the Navy's remedial obligation"). The City's speculative PFAS arguments have been rejected several times and should not be entertained at the allocation trial.

this argument before the Court ruled, the City forfeited reliance on this theory of admissibility. *See Reyes v. Wells Fargo Bank*, No. CV-17-909-JFW (KKx), 2017 WL 11568871, at *4 (C.D. Cal Aug. 17, 2017) (failing to make an argument in an opposition brief normally is considered an abandonment of the issue); *El v. San Diego Unified Sch. Dist.*, Case No. 20-cv-00257-AJB-AGS, 2021 WL 3240298, at *2 (S.D. Cal. Jun. 29, 2021) (same).

In effect, the City seeks reconsideration of the Court's ruling on Dr. Trapp's testimony without meeting the governing standard. *See Doetsch v. Am. Household Inc.*, No. 05CV1072 J(AJB), 2007 WL 2238392, at *2-3 (S.D. Cal. Aug. 3, 2007) (declining to reconsider a ruling that found the proposed expert opinion was speculative and therefore inadmissible). As *Doetsch* states, a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.* at 1. The City offers no basis to reconsider the Court's ruling.

The City's new position also conflicts with Dr. Trapp's sworn deposition testimony. Dr. Trapp disclaimed any opinions regarding the division or equitable allocation of the Navy's response costs at his deposition. *See* Dkt. 240-2 (attaching deposition excerpts). Yet the City now characterizes him as offering "allocation-specific" opinions.[3] Dkt. 247 at 7:20. In any event, Rule 26 and the Court's case management orders required the City to disclose all Dr. Trapp's expert opinions and the City did not do so. *See, e.g.*, *Mariscal v. Graco, Inc.*, 52 F.Supp.3d 973, 983-84 (N.D. Cal. 2014) (excluding undisclosed expert opinions). Therefore, the

---

[3] The City argues that Dr. Trapp's testimony is relevant to City's "ability to pay" the future costs the City "may face" after becoming the Boat Channel's owner. Dkt. 247 at 8. But Dr. Trapp provided no "ability to pay" opinions in his Rule 26 reports and the November trial is about allocating the United States' costs, not the City's ability to pay unidentified future costs. Without knowing what the future costs will be, or if there will even be any significant costs, the City is merely inviting speculation to avoid responsibility for the costs at issue.

City should not be allowed to offer new or expanded opinions from Dr. Trapp on subjects that he confirmed at his deposition he was not addressing.

**C. <u>Dr. Trapp's Speculation Is Not Proper Expert Testimony</u>.**

Although the City invites the Court to consider the "future burden" that may follow from the "compelled conveyance" (*i.e.*, the Court's order enforcing the City's voluntary contract with the Navy), the City recognizes that it cannot ask the Court to decide whether "additional remediation will ultimately be required." Dkt. 247 at 5-6. That is because Dr. Trapp has no factual foundation to opine on what regulatory actions will occur after the City takes title to the Boat Channel, when they will occur, and how much the City's hypothetical CERCLA costs will be. As the City candidly admits in its brief, all it can do now is point to a "possibility" that additional remediation in the Boat Channel will be required someday. *Id.* at 6. Mere possibilities, speculation, and conjecture about future events do not support admitting Dr. Trapp's testimony. *See Daubert*, 509 U.S. at 590 (experts must provide "more than subjective belief or unsupported speculation"); *Prest v. Jermstad*, No. 07-cv-1771 WQH (BLM), 2009 WL 3634114, at *11 (S.D. Cal. Oct. 30, 2009) (rejecting an expert's causation opinions as speculative).

And even if the City's concerns about future regulatory actions were relevant to the allocation of the costs the United States has incurred (which they are not), Dr. Trapp did not consider that the City discharged contaminated stormwater into the Boat Channel for decades and, as the Court held, the City is therefore liable under CERCLA for the sediment contamination. As a responsible party, the City could be required to take future cleanup actions regardless of who owns the Boat Channel. The notion that the Court should consider whether the City should pay *less* of the United States's past costs because the City may also be liable as the Boat Channel's owner in the future makes no sense.

Moreover, the City's assertion that it is being "forced" or "compelled" to take ownership of the Boat Channel does not reflect reality. The City voluntarily

entered into a contract with the Navy to take ownership of the Boat Channel. The Court found that the City breached that contract and ordered specific performance as the remedy. If the City faces legal consequences after the real estate transaction is completed, the City assumed that risk when it agreed to the contract. Dr. Trapp brings no expert knowledge to bear and should not be allowed to testify about hypothetical future costs that have nothing to do with the CERCLA allocation trial.

## III. CONCLUSION

For all the above reasons, the Court should adhere to its rulings on the motions in limine and for summary judgment and preclude the City from introducing Dr. Trapp's inadmissible opinion testimony.

Respectfully Submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division

Dated: September 3, 2026

/s/ *Michael C. Augustini*

STEFAN J. BACHMAN (SC Bar No. 102182)
BRIAN SCHAAP (MI Bar No. P89334)
Environmental Enforcement Section
MICHAEL C. AUGUSTINI (DC Bar No. 452526)
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 616-6536
Stefan.bachman@usdoj.gov
Brian.Schaap@usdoj.gov
Michael.augustini@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General, Civil Division
MARCUS SACKS
ALASTAIR M. GESMUNDO (CABN 316573)
SAMUEL F. HOBBS (AL Bar No. 9776O19E)
Commercial Litigation Branch
Corporate Financial Litigation Section

P.O. Box 875, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-8077

***Attorneys for Plaintiff and Counterclaim-Defendant United States of America***