UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,
v.
CITY OF SAN DIEGO, et al.,
Defendants.

AND RELATED CROSS AND COUNTERCLAIMS.

Case No.: 23cv0541-LL-VET

**PRETRIAL ORDER**

Following the Final Pretrial Conference on August 11, 2025, and pursuant to Federal Rule of Civil Procedure 16 and Civil Local Rule 16.1, the Court enters this Pretrial Order. With entry of this Order, the parties may not expand their claims or defenses, witness lists, exhibit lists, or deposition testimony to be used at trial beyond what is set forth below.

## I. JOINT NEUTRAL STATEMENT

The United States initiated this action in 2023 to establish the City of San Diego's liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, for response costs incurred in connection

with the Boat Channel Sediments Site at the former Naval Training Center in San Diego, California.

## II. CLAIMS TO BE TRIED

### A. Procedural Background

After completing discovery, the Parties filed several summary judgment motions, and the Court's rulings significantly narrowed the issues remaining for trial.

First, in August 2025, the Court held that the City is liable under CERCLA for releasing the contaminants of concern found in the Boat Channel's sediment. *See* Dkt. 190. Second, in March 2026, the Court granted summary judgment in favor of the United States for over $17 million in CERCLA costs. *See* Dkt. 223. Third, in March 2026, the Court ruled on the United States' counterclaim-in-reply for breach of contract and held that the City was liable to the United States for breach of contract for refusing to accept ownership of the Boat Channel parcels and granted specific performance as the remedy. *See* Dkt. 224.

Based on these rulings, adjudicating the City's liability for the remaining costs and performing the equitable allocation of the United States' CERCLA costs are the issues for trial. *See* 42 U.S.C. § 9613(f)(1) ("In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."); *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 140 (2007) (describing the interplay when a contribution counterclaim is asserted in response to a CERCLA cost claim).

### B. The United States' Claims

#### 1. Cost Allocation of Recovery Cost under CERCLA

This Court has already found that the City is liable for $17,131,016.38 in recovery costs under CERCLA for discharging hazardous substances to the Boat Channel. Dkts. 190, 223. At trial, the Court will determine the equitable allocation of $17,131,016.38 between the City and the United States, incorporating the prior settlement payment from the San Diego Unified Port District and the San Diego Regional Airport Authority (Dkt. 69).

**2. Additional CERCLA Costs**

The United States seeks to recover additional CERCLA costs that it did not seek in its prior motion for partial summary judgment. According to the United States, these include response costs the Navy incurred prior to July 31, 2023 in the amount of $173,945.59 and enforcement costs the DOJ incurred prior to October 31, 2024 in the amount of $33,838.04.

Section 107(a)(4)(A) of CERCLA allows the United States to recover "all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A); *see also Carson Harbor Vill. v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006); *Wash. State Dep't of Transp. v. Wash. Nat. Gas Co., Pacificorp*, 59 F.3d 793, 799 (9th Cir.1995) (discussing the NCP). "[W]hen the United States government . . . is seeking recovery of response costs, consistency with the NCP is presumed." *Wash. State*, 59 F.3d at 799–800 (citing *United States v. Hardage*, 982 F.2d 1436, 1442 (10th Cir. 1992)). The objecting party has the burden of proving inconsistency with the NCP. *Wash. State*, 59 F.3d at 800.

To prove that the United States' response costs were inconsistent with the NCP, the City therefore must show that the government's selection of the response action was "arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(2); *Wash. State*, 59 F.3d at 802.

In turn, the City seeks contribution from the United States to offset the amounts it owes to the United States.

**3. Prejudgment Interest**

The Parties do not dispute that the United States is entitled to prejudgment interest and agreed to address it in post-trial briefing.

**4. Declaratory Judgment**

The United States seeks a declaratory judgment under 42 U.S.C. § 9613(g)(2). CERCLA provides that when a party succeeds in an action under 42 U.S.C. § 9607, "the court shall enter a declaratory judgment on liability for response costs or damages that will

be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2); *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1007 (9th Cir. 2010) ("[I]f a plaintiff successfully establishes liability for the response costs sought in the initial cost-recovery action, it is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions.").

Since this Court has already found that the City is liable for recovery costs under CERCLA, the Court will issue a declaratory judgment in favor of the United States after the final judgement is entered.

**C. The City of San Diego's Claims**

**1. Contribution**

The City seeks contribution from the United States for the CERCLA recovery costs it owes to the United States. Under 42 U.S.C. § 9713(f)(1), "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action . . . under 9607(a) of this title."

"In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Courts have applied the "Gore Factors" which include the following:

> (i) the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished; (ii) the amount of the hazardous waste involved; (iii) the degree of toxicity of the hazardous waste involved; (iv) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (v) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such waste; and (vi) the degree of cooperation by the parties with federal, state, or local officials to prevent any harm to the public health or environment.

*ASARCO LLC v. Atl. Richfield Co., LLC*, 975 F.3d 859, 868 n.7 (9th Cir. 2020). In addition, courts "need not allocate response costs to a mathematical certainty" and can "apply

general principles of fairness and equity in deciding whether to err on the side of over- or under-compensation." *Id*. at 869.

The United States responds that it is not seeking 100% of its costs but that the City should be required to pay its fair share of the United States' CERCLA costs, as will be determined by the Court.

**2. Declaratory Judgment**

The City also seeks declaratory relief setting forth its liability and that of the United States for past, present, and future response, removal and remediation costs, and other penalties and/or damages imposed on the City in connection with the NTC Boat Channel. *See* Dkt. 96. The United States claims that the City is not entitled to such relief on an affirmative basis because the Court dismissed the City's counterclaim for CERCLA response costs under 42 U.S.C. § 9607. *See* Dkt. 89. The City contends that it is seeking a defensive declaratory judgment, not an affirmative declaratory judgment.

## III. WITNESSES

### A. The United States' Witnesses

<u>The United States expects to call the following witnesses at trial</u>:

**1. Mr. Rene "Louie" Cardinale**

From 2016 to 2025, Mr. Cardinale served as the Remedial Project Manager and Contracting Officer's Representative assigned to the former Naval Training Center ("NTC") Boat Channel property. He may be called to provide information regarding the remedial action and the Navy's response costs.

**2. Dr. Andrew Earles**

Dr. Earles is an Executive Vice President at Wright Water Engineers, Inc. in Denver, Colorado, and a licensed professional engineer and board-certified water resources engineer. He received a PhD in civil and environmental engineering from the University of Virginia and a bachelor's degree in civil engineering from Stanford University. He has been an advisor to the International Stormwater Best Management Practices Database since 1999 and has worked on implementing urban drainage and stormwater management criteria

for multiple entities. Dr. Earles is expected to provide expert testimony about contaminants in the City of San Diego's stormwater runoff and the fate and transport of chlordane, diphenyl-trichloroethane ("DDT"), lead, copper, and zinc in the drainage area to the Boat Channel.

**3. Dr. Charles McLane**

Dr. McLane received a PhD in environmental sciences from the University of Virginia, a master's degree in geology from Colorado State University, and a bachelor's degree in geology from Susquehanna University. He has more than 30 years of experience consulting for clients in a variety of CERCLA matters, including addressing issues of site characterization, groundwater modeling, fate and transport of chemicals in the subsurface, and discharge of contaminants to surface water and sediments. Dr. McLane is expected to provide expert testimony on the equitable allocation of the United States' CERCLA costs.

**4. Mr. Wayne Lorenz**

Mr. Lorenz received master's and bachelor's degrees in civil and environmental engineering from the University of Colorado. He has more than 49 years of engineering experience and has served as the responsible engineer for the planning and design of various wastewater pipelines, pumping stations, and treatment plants. Mr. Lorenz is expected to provide expert testimony about sources of chlordane, DDT, lead, copper, and zinc in wastewater and the City of San Diego's conveyance of contaminated wastewater to the Boat Channel.

**5. Dr. Jason Gart**

Dr. Gart is a vice president and senior associate at History Associates Incorporated in Rockville, Maryland. He received a PhD in history and a master's degree in public history from Arizona State University. Dr. Gart is expected to provide expert testimony about historical use and disposal of chlordane, DDT, lead, copper, and zinc in the City of San Diego and in the drainage area to the Boat Channel. He is also expected to provide expert testimony about historical operations at the San Diego International Airport, including activities that involved the use of lead, copper, and zinc at the Airport.

**6. Mr. Wiley Wright, CPA**

Mr. Wright is a certified public accountant with more than 40 years of experience in public accounting and experience analyzing the accounting and supporting documentation for more than 150 CERCLA claims. He has testified at trials and depositions in numerous CERCLA matters. Mr. Wright is expected to provide expert testimony about the accounting of the U.S. Navy's costs incurred remediating the Boat Channel.

**7. Mr. William Kime, CPA**

Mr. Kime is a certified public accountant with more than 38 years of experience in public accounting and 35 years of experience accumulating and summarizing costs incurred by the Department of Justice's Environment and Natural Resources Division. He is expected to provide expert testimony about the accounting of the Department of Justice's enforcement costs in this matter.

<u>The United States may call the following witnesses at trial</u>:

**Ms. Janet Lear**: Until April 2023, Janet Lear was the Deputy Base Closure Manager for the former NTC, and she previously served as BRAC Environmental Coordinator, the Remedial Project Manager, and a contractor for Brown and Caldwell assigned to the NTC remediation project. If necessary, she may be called to testify regarding the Navy's response action and any disputed costs relating to the Boat Channel.

**Mr. David Clark**: David Clark served as the Lead Remedial Project Manager for the former NTC Boat Channel Property from 2018 to 2020 and previously served as a Remedial Project Manager. If necessary, he may be called to testify regarding the Navy's response action and any disputed costs relating to the Boat Channel.

**Mr. Anthony Megliola**: Anthony Megliola was the Base Closure Manager for the former NTC Boat Channel property from approximately 2006 to 2013, and he is the current director of BRAC PMO West (since October 2022). If necessary, he may be called to testify regarding the Navy's response action and any disputed costs relating to the Boat Channel.

**Ms. Amy Jo Hill**: Amy Jo Hill is the Real Estate Director for the BRAC Program. If necessary, she may be called to testify regarding issues relating to the conveyance of property at former NTC San Diego.

**Ms. Kathryn Cranford**: Kathryn Cranford is a Contract Specialist with NAVFAC Southwest. If necessary, she may be called to testify regarding the Navy's response action and any disputed costs relating to the Boat Channel.

**Mr. Jesse Gregorio**: From 2010 to present, Jesse Gregorio has served as the lead Environmental Protection Specialist (Water Quality Manager) for the Marine Corps Recruit Depot ("MCRD"). If necessary, Mr. Gregorio may testify about the MCRD site and its storm water system.

**Ms. Diane Silva**: Diane Silva served as the Command Records Manager for NAVFAC Southwest until May of 2026 and, in that role, was a records custodian. If necessary, Ms. Silva may testify to authenticate or provide foundation for documents relating to the Navy's response action and costs relating to the Boat Channel.

**Ms. Kim Cannon**: Kim Cannon was a contractor who provided support to the Navy on the Boat Channel project. If necessary, she may testify regarding relevant cost documentation in support of Navy's CERCLA claims.

**Ms. Rachel E. Yencha**: Rachel Yencha is Deputy Director, Accounts Payable, at the Defense Finance Accounting Service. She is familiar with the Navy's systems for managing contractor invoices for payment. If necessary, Ms. Yencha may provide foundational testimony for any disputed aspects of the Navy's cost claim.

**Ms. Kristin Schwall**: Ms. Schwall is a retired, former employee of the Regional Water Quality Control Board in San Diego. If necessary, Ms. Schwall may provide testimony regarding the Water Board's oversight of the Navy's response action and the City's involvement in the administrative process.

**Ms. Chehreh Komeylyan**: Ms. Komeylyan works for the Regional Water Quality Control Board in San Diego. If necessary, Ms. Komeylyan may provide testimony

regarding the Water Board's oversight of the Navy's response action and the City's involvement in the administrative process.

**Mr. Andre Sonksen**: Mr. Sonksen is a stormwater compliance manager for the City of San Diego, and he was identified as a Rule 30(b)(6) witness for the City. He may be called to testify regarding the City's system for managing stormwater, common sources of contamination, and the City's discharge of contaminants into the Boat Channel.

**Mr. Drew Kleis**: Mr. Kleis is an assistant director in the City of San Diego's water delivery branch, and he previously worked in the City's stormwater division. Mr. Kleis is familiar with the City's efforts to operate, maintain, and repair its streets and stormwater infrastructure. He may be called to testify regarding these topics and other related matters concerning the City's role in contributing to the contaminated sediment in the Boat Channel.

To the extent the City of San Diego disputes the admissibility of the United States' exhibits, the United States may call any other witnesses needed to authenticate or provide evidentiary foundation.

**B. The City of San Diego's Witnesses**

The City expects to call the following witnesses at trial:

**1. Adam H. Love, Ph.D.**

Dr. Love is a Vice President and Principal Scientist at Roux Associates, Inc. in Oakland, California. He received Boat Channel, historical stormwater volumes conveyance systems, contribution a PhD in civil and environmental engineering and a Master of Science degree in material science and mineral engineering both from the University of California at Berkeley. He received his bachelor's degree in geosciences from Franklin & Marshall College. He has over 20 years of experience in environmental forensics, site characterization, remediation, exposure assessment, human health risk, and contamination transport analyses. Dr. Love is expected to provide expert testimony about observed contaminant impacts of the relevant contaminants in stormwater, and the allocation of contaminant contribution to the environmental responses costs for the Boat Channel.

**2. J. Michael Trapp, Ph.D.**

Dr. Trapp is the National Water Resources Market Lead for AtkinsRéalis. He received a PhD in marine and atmospheric chemistry from Rosensteil School of Marine and Atmospheric Science at the University of Miami. He received a Master of Science degree in chemistry from the University of Miami and a bachelor's degree in biology and chemistry from Florida Southern College. Dr. Trapp is expected to provide expert testimony about how the U.S. Navy conducted an inadequate site characterization.

**3. Andrew Kleis**

Mr. Kleis previously served in the City's Stormwater Department. He is expected to testify regarding the City of San Diego's involvement in the US Navy's efforts to address contamination in the sediments of the NTC Boat Channel, including the City's efforts to provide substantive input to the US Navy and to the San Diego Regional Water Quality Control Board both through written comment letters and during meetings with these entities regarding the City's concerns about the US Navy's remedial investigation and its remedial action implemented at the NTC Boat Channel. Mr. Kleis may testify regarding the City of San Diego's stormwater compliance activities.

<u>The City may call the following witnesses at trial</u>:

**David Gibson**: Mr. Gibson works for the San Diego Regional Water Quality Control Board. If necessary, Mr. Gibson may provide testimony regarding the Water Board's oversight of the Navy's remedial action and the City's involvement in the administrative process.

**Chehreh Komeylyan**: Ms. Komeylyan works for the San Diego Regional Water Quality Control Board. If necessary, Ms. Komeylyan may provide testimony regarding the Water Board's oversight of the Navy's remedial action and the City's involvement in the administrative process.

**Sean McClain**: Mr. McClain works for the San Diego Regional Water Quality Control Board. If necessary, Mr. McClain may provide testimony regarding the Water

Board's oversight of the Navy's remedial action and the City's involvement in the administrative process.

**Kristin Schwall**: Ms. Schwall is a retired former employee of the San Diego Regional Water Quality Control Board. If necessary, Ms. Schwall may provide testimony regarding the Water Board's oversight of the Navy's remedial action and the City's involvement in the administrative process.

**Rene Luis Cardinale**: From 2016 to 2025, Mr. Cardinale served as the Remedial Project Manager and Contracting Officer's Representative assigned to the former Naval Training Center ("NTC") Boat Channel property. He may be called to provide information regarding the remedial action and the Navy's response costs.

**Amy Jo Hill**: Ms. Hill is the Real Estate Director for the BRAC Program. If necessary, she may be called to testify regarding issues relating to the conveyance of property at former NTC San Diego.

**Janet Lear**: Until April 2023, Ms. Lear was the Deputy Base Closure Manager for the former NTC, and she previously served as BRAC Environmental Coordinator, the Remedial Project Manager, and a contractor for Brown and Caldwell assigned to the NTC remediation project. If necessary, she may be called to testify regarding the Navy's response action and any disputed costs relating to the Boat Channel.

**Thomas Macchiarella**: BRAC Base Closure Manager at Base Realignment and Closure Program Management Office for the U.S. Department of Navy.

**Anthony Megliola**: Mr. Megliola was the Base Closure Manager for the former NTC Boat Channel property from approximately 2006 to 2013, and he is the current director of BRAC PMO West (since October 2022). If necessary, he may be called to testify regarding the Navy's response action and any disputed costs relating to the Boat Channel.

**Doug Campbell**: Mr. Campbell may testify regarding the City of San Diego's stormwater compliance activities.

**Victoria Kalkirtz-Moore**: Ms. Kalkirtz Moore may testify regarding the City of San Diego's stormwater compliance activities.

**Ruth Kolb**: Ms. Kolb previously served in the City's Stormwater Department. She is expected to testify regarding the City of San Diego's involvement in the US Navy's efforts to address contamination in the sediments of the NTC Boat Channel, including the City's efforts to provide substantive input to the US Navy and to the San Diego Regional Water Quality Control Board both through written comment letters and during meetings with these entities regarding the City's concerns about the US Navy's remedial investigation and its remedial action implemented at the NTC Boat Channel. Ms. Kolb may also testify regarding the City of San Diego's stormwater compliance activities.

**Amanda M. Parra**: Ms. Parra may testify regarding the City of San Diego's stormwater compliance activities.

**Andre Sonksen**: Mr. Sonksen may testify regarding the City of San Diego's stormwater compliance activities.

**Peter Vroom, Ph.D.**: Dr. Vroom may testify regarding the City of San Diego's stormwater compliance activities.

To the extent the United States disputes the admissibility of the City of San Diego's exhibits, the City of San Diego may call any other witnesses need to authenticate or provide evidentiary foundation.

By November 10, 2026, the Parties shall exchange their Final Witness Lists and email a copy of their Final Witness Lists to the chambers.

## IV. EXHIBITS

The United States' trial exhibit list is attached as Exhibit 1, and the City's trial exhibit list is attached as Exhibit 2. The lists indicate the exhibits that the Parties expect to offer and other exhibits that the Parties do not expect to offer at this time but reserve the right to offer.

By November 10, 2026, the Parties shall exchange their Final Exhibit Lists and email a copy of their Final Exhibit Lists to the chambers. By November 13, 2026, each party shall submit courtesy copies of their trial exhibits.

/ / /

## V. STIPULATIONS

The Parties are discussing potential stipulations to address the additional CERCLA costs that the United States is seeking from the City to streamline the trial and will provide an update to the Court if stipulations of fact are finalized before the trial.

## VI. DEPOSITION TESTIMONY AT TRIAL

### A. The United States' Deposition Designations

#### 1. Doug Campbell (July 30, 2024)

City of San Diego Rule 30(b)(6) designee

| Start | End |
|---|---|
| 18:13 | 19:7 |
| 31:11 | 32:13 |
| 47:9 | 50:19 |
| 86:6 | 88:21 |
| 124:8 | 125:1 |
| 127:7 | 128:3 |
| 129:2 | 129:18 |
| 130:14 | 130:17 |
| 133:9 | 134:11 |
| 134:12 | 134:23 |
| 223:21 | 223:25 |
| 228:3 | 228:14 |
| 228:15 | 230:15 |
| 232:6 | 233:5 |
| 234:25 | 235:10 |

**2. Jason Kubota (February 11, 2025)**

| Start | End |
|---|---|
| 93:1 | 99:7 |

**3. Amanda Parra (August 5, 2024)**

City of San Diego Rule 30(b)(6) designee

| Start | End |
|---|---|
| 11:12 | 11:22 |
| 13:25 | 14:16 |
| 34:13 | 36:02 |
| 39:06 | 40:03 |

**4. Karin Peternel (August 7, 2024)**

City of San Diego Rule 30(b)(6) designee

| Start | End |
|---|---|
| 18:9 | 18:18 |
| 22:20 | 23:17 |
| 52:8 | 53:23 |
| 60:19 | 61:24 |
| 62:8 | 62:15 |
| 72:10 | 73:14 |
| 73:20 | 74:15 |
| 75:3 | 75:15 |
| 76:9 | 76:14 |
| 76:25 | 77:5 |
| 89:16 | 90:18 |
| 93:10 | 93:18 |

**5. Andre Sonksen (August 6, 2024)**

City of San Diego Rule 30(b)(6) designee

| Start | End |
|---|---|
| 7:21 | 7:23 |
| 12:4 | 13:23 |
| 14:15 | 14:22 |
| 37:2 | 37:21 |
| 38:10 | 38:19 |
| 39:18 | 41:7 |
| 46:9 | 48:9 |
| 48:13 | 48:17 |
| 49:23 | 49:25 |
| 53:10 | 54:4 |
| 57:11 | 59:21 |
| 60:23 | 61:14 |
| 63:25 | 64:9 |
| 66:8 | 66:10 |
| 66:21 | 67:3 |
| 116:23 | 117:2 |
| 161:24 | 162:9 |
| 170:22 | 171:4 |
| 197:24 | 198:6 |
| 199:1 | 199:19 |
| 200:22 | 201:17 |
| 205:18 | 206:22 |
| 207:13 | 208:4 |
| 223:6 | 223:19 |

**6. Peter Vroom (July 16, 2024)**

City of San Diego Rule 30(b)(6) designee

| Start | End |
|---|---|
| 11:2 | 11:15 |
| 12:1 | 12:18 |
| 33:9 | 36:6 |
| 40:9 | 41:14 |
| 45:2 | 46:8 |
| 59:6 | 59:9 |
| 59:20 | 60:13 |
| 61:20 | 63:8 |
| 64:1 | 64:21 |
| 67:21 | 67:23 |
| 69:1 | 71:18 |
| 84:15 | 84:16 |
| 91:10 | 92:23 |
| 94:6 | 94:14 |
| 102:14 | 103:21 |
| 103:2 | 103:21 |

**7. Marc Webb (January 13, 2025)**

| Start | End |
|---|---|
| 9:8 | 10:15 |
| 11:22 | 11:25 |
| 30:15 | 31:23 |
| 32:8 | 32:11 |
| 33:12 | 34:7 |

| | |
|---|---|
| 34:8 | 36:2 |
| 36:8 | 37:13 |
| 37:18 | 38:15 |
| 38:16 | 38:25 |

**B. The City of San Diego's Deposition Designations**

The City did not designate deposition testimony in its pretrial disclosures.

## VII. TRIAL

This case will proceed as a bench trial. The trial shall commence on November 18, 2026, at 9:30 a.m., in Courtroom 14B of James M. Carter and Judith N. Keep, United States Courthouse, 333 West Broadway, San Diego, CA 92101, continuing, as needed, through noon on November 20, 2026.

Each party shall have up to eight (8) hours per side. Openings and direct and cross-examinations will count against a party's time. As discussed at the Pretrial Conference, there will be no closing arguments. Instead, the Parties shall submit closing briefs in lieu of proposed findings of fact and conclusions of law four (4) weeks after the trial transcripts become available. The closing briefs shall not exceed 25 pages.

The Parties have agreed to streamline the presentation of evidence regarding the additional CERCLA costs and prejudgment interest that the United States is seeking from the City. Instead of using trial time and incurring the expense of bringing in expert witnesses from out of town, the United States will defer until after trial (1) the tallying of DOJ enforcement costs incurred after October 31, 2024 which the Unites States expects to be awarded through a declaratory judgement; (2) the calculation of interest on all Navy and DOJ costs; and (3) the impact of the prior settlement payment from the San Diego Unified Port District and the San Diego Regional Airport Authority on the amount of Navy response costs the City is liable to pay the United States.

After the Court has issued its equitable allocation decision, the Parties will confer on the calculations needed to arrive at a final judgment amount. If an agreement on the

numbers cannot be reached, the Parties will provide written submissions in post-trial briefing to assist the Court with preparing a final judgment setting forth the total amount due to be paid to the United States, including the applicable interest.

**IT IS SO ORDERED.**

Dated: October 29, 2026

Honorable Linda Lopez
United States District Judge